1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Janis C. Puracal, OSB #132288
E-mail: jcp@mlrlegalteam.com
Andrew C. Lauersdorf, OSB #980739
E-mail: acl@mlrlegalteam.com
Christine A. Webb, OSB #184744
E-mail: caw@mlrlegalteam.com
MALONEY LAUERSDORF REINER, PC
1111 E. Burnside Street, Ste. 300
Portland, OR  97214
Telephone: (503) 245-1518
Facsimile: (503) 245-1417

David B. Owens, WSBA #53856, *pro hac vice* (pending)
E-mail: david@loevy.com
LOEVY & LOEVY
100 S. King Street, Ste. 100
Seattle, WA  98104-2885
Telephone: (312) 590-5449

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

NICHOLAS JAMES MCGUFFIN, as an
individual and as guardian *ad litem*, on
behalf of S.M., a minor,

           Plaintiffs,

    v.

MARK DANNELS, PAT DOWNING,
SUSAN HORMANN, MARY KRINGS,
KRIS KARCHER, SHELLY MCINNES,
RAYMOND MCNEELY, KIP OSWALD,
MICHAEL REAVES, JOHN RIDDLE,
SEAN SANBORN, ERIC
SCHWENNINGER, RICHARD

Civil No. 6:20-cv-1163

COMPLAINT FOR DAMAGES

***DEMAND FOR JURY TRIAL***

Page 1– COMPLAINT FOR DAMAGES

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

WALTER, CHRIS WEBLEY,
ANTHONY WETMORE, KATHY
WILCOX, CRAIG ZANNI, DAVID
ZAVALA, ESTATE OF DAVE HALL,
VIDOCQ SOCIETY, CITY OF
COQUILLE, CITY OF COOS BAY,
COOS COUNTY, and OREGON STATE
POLICE,

    Defendants.

_____

  COMES NOW Plaintiffs Nicholas James McGuffin and S.M., by and through

their attorneys, Maloney Lauersdorf Reiner PC and Loevy & Loevy, and allege and

claim as follows:

## I. INTRODUCTION

  1. Nicholas McGuffin spent nine years in prison for a crime that he did

not commit—the murder of Leah Freeman.

  2. McGuffin was wrongfully convicted because Defendants fabricated and

suppressed evidence and otherwise violated McGuffin's rights under the United

States constitution, the Oregon constitution, and the law.

  3. After fighting for his innocence for nearly two decades, McGuffin was

exonerated when his conviction was vacated and the Coos County District

Attorney's Office dismissed all charges against him.

  4. Though nothing can bring back that time, McGuffin now brings this

action to redress the devastating injuries that Defendants caused him.

## II. PARTIES

  5. Plaintiff Nicholas James McGuffin is, and was at all times material

and relevant to this action, an individual and resident of the state of Oregon.

  6. Plaintiff S.M. is, and was at all times material and relevant to this

action, a minor individual and resident of the state of Oregon.  S.M. appears in this

lawsuit through her father, Nicholas McGuffin, as her guardian *ad litem*.

Page 2– COMPLAINT FOR DAMAGES

MALONEY | LAUERSDORF | REINER rc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

7.     Defendants Mark Dannels, Dave Hall, Shelly McInnes (formerly Grant), Raymond McNeely, Michael Reaves, Sean Sanborn, Chris Webley, and David Zavala are, or were at times material and relevant to this action, police officers of Defendant City of Coquille acting under color of law and within the scope of their employment by and for Defendant City of Coquille.  They are sued in their individual capacity.

8.     Defendants Reaves and Dannels were, at times material and relevant to this action, the Chief of Police of Defendant City of Coquille.  Defendants Reaves and Dannels were final policymakers, or had been delegated such authority by and for Defendant City of Coquille.  Defendants Reaves and Dannels are sued in both their individual and official capacities.

9.     Defendant Richard Walter is, or was at all times material and relevant to this action, an individual employed by the Vidocq Society and an agent of Defendant City of Coquille acting under color of law and within the scope of his agency for Defendant City of Coquille.

10.     The Vidocq Society is a Pennsylvania corporation and is, or was at all times material and relevant to this action, the employer of Defendant Walter.  At all times material and relevant to this action, Defendant Vidocq Society acted as an agent of Defendant City of Coquille and was acting under color of law and within the scope of its agency for Defendant City of Coquille.

11.     Defendant City of Coquille, which includes the City of Coquille Police Department and its officers, employees, and reserves, is an Oregon municipal corporation and is, or was at times material and relevant to this action, the employer of Defendants Dannels, Hall, McInnes, McNeely, Reaves, Sanborn, Webley, and Zavala.  Defendant City of Coquille is liable for the acts of these individuals while acting within the scope of their employment and/or agency for

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Defendant City of Coquille.  Defendant City of Coquille is liable for the acts of Defendant Walter and the Vidocq Society while acting within the scope of their employment and/or agency for the City of Coquille.  In addition, Defendant City of Coquille is responsible for the policies, practices, and customs of Defendant City of Coquille, including the City of Coquille Police Department.

12.     Defendants Pat Downing, Kris Karcher, Kip Oswald, and Craig Zanni are, or were at times material and relevant to this action, officers or employees of the Coos County Sheriff's Office or the Coos County Medical Examiner, and acting within the scope of their employment for Coos County.  They are sued in their individual capacity.

13.     Defendant Zanni was, at times material and relevant to this action, the Sheriff of Defendant Coos County.  Defendant Zanni was a final policymaker, or had been delegated such authority by and for Defendant Coos County.  Defendant Zanni is sued in both his individual and official capacities.

14.     Defendant Coos County, which includes the Coos County Sheriff's Office and the Coos County Medical Examiner, and their respective officers, employees, and reserves, is an Oregon municipal corporation and is, or was at times material and relevant to this action, the employer of Defendants Downing, Karcher, Oswald, and Zanni.  Defendant Coos County is liable for the acts of these individuals while acting within the scope of their employment by and for Defendant Coos County.  In addition, Defendant Coos County is responsible for the policies, practices, and customs of Defendant Coos County, including the Coos County Sheriff's Office and the Coos County Medical Examiner.

15.     Defendants Susan Hormann, Mary Krings, John Riddle, and Kathy Wilcox are, or were at times material and relevant to this action, employees or officers of the Oregon State Police acting under color of law and within the scope of

Page 4– COMPLAINT FOR DAMAGES

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1  their employment by and for the Oregon State Police.  They are sued in their

2  individual capacity.

3       16.     Defendant Oregon State Police is, or was at times material and

4  relevant to this action, the employer of Defendants Hormann, Krings, Riddle, and

5  Wilcox.  Defendant Oregon State Police is liable for the acts of these Defendants

6  while acting within the scope of their employment.  In addition, Defendant Oregon

7  State Police is responsible for its policies, practices, and customs.

8       17.     Defendants Eric Schwenninger and Anthony Wetmore are, or were at

9  times material and relevant to this action, police officers of Defendant City of Coos

10  Bay acting under color of law and within the scope of their employment by and for

11  Defendant City of Coos Bay.  They are sued in their individual capacity.

12      18.     Defendant City of Coos Bay, which includes the City of Coos Bay Police

13  Department and its officers, employees, and reserves, is an Oregon municipal

14  corporation and is, or was at times material and relevant to this action, the

15  employer of Defendants Schwenninger and Wetmore.  Defendant City of Coos Bay is

16  liable for the acts of these Defendants while acting within the scope of their

17  employment by and for Defendant City of Coos Bay.  In addition, Defendant City of

18  Coos Bay is responsible for the policies, practices, and customs of Defendant City of

19  Coos Bay, including the City of Coos Bay Police Department.

20              ### III.  JURISDICTION AND VENUE

21      19.     This Court has jurisdiction over Plaintiffs' federal claims pursuant to

22  28 U.S.C §§ 1331 and 1343.

23      20.     This Court has jurisdiction over Plaintiffs' state law claims pursuant to

24  28 U.S.C. § 1367.

25  ///

26  ///

Page 5– COMPLAINT FOR DAMAGES

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

21.     Venue in this court is proper under 28 U.S.C. § 1391(b)(1)-(2) and LR 3-2(b) because the majority of Defendants reside or were incorporated in this judicial district, and the acts, events, and omissions giving rise to the claims asserted herein occurred primarily within this district.

## IV.  FACTUAL ALLEGATIONS

### A.    Background

22.     McGuffin grew up in Coquille, Oregon and attended Coquille High School, where he and Freeman met and began dating in 1999.

23.     On the night of June 28, 2000, while walking alone after leaving her friend Cherie Mitchell's house, Freeman was abducted and murdered.

24.     In August of 2010, after nearly ten years of being intimidated and harassed by Defendants, McGuffin was arrested without probable cause and then prosecuted for Freeman's murder.

25.     McGuffin was convicted by 10-2 verdict of manslaughter, and sentenced to 120 months in prison, plus three years of post-prison supervision.

26.     In December of 2019, all charges against McGuffin were dismissed, and McGuffin was released, free and fully exonerated, from South Fork Forest Prison Camp, in Tillamook, Oregon.

27.     McGuffin was continuously confined in either jail or prison from the time of his arrest until his exoneration in December of 2019.

28.     McGuffin had absolutely nothing to do with the abduction or murder of Leah Freeman.

### B.    Freeman's Abduction and Murder

29.     On the evening of June 28, 2000, McGuffin drove Freeman in his blue Ford Mustang to the home of Leah's friend, Cherie Mitchell.

///

MALONEY | LAUERSDORF | REINER, PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

30.    McGuffin dropped Freeman off at the Mitchell residence at approximately 7:00 p.m. on June 28, 2000.  McGuffin did not see, speak with, or otherwise interact with Freeman ever again after dropping her off at the Mitchell residence.

31.    McGuffin was scheduled to return to the Mitchell residence to pick up Freeman around 9:00 p.m. for a double date with McGuffin and their friends, Brent Bartley, and Bartley's girlfriend, Nicole Price.

32.    Sometime before 9:00 p.m., Freeman and Mitchell argued, Freeman grew angry with Mitchell, and Freeman left the Mitchell residence alone on foot.

33.    Mitchell followed Freeman out of the house and watched Freeman walk by herself in the direction of North Central Boulevard.

34.    Multiple other witnesses saw Freeman walking alone on North Central Boulevard in the direction of Coquille High School.

35.    Witnesses also saw Freeman standing outside the high school, and then across the street from the high school on the corner of West Central Boulevard and North Elm Street.

36.    The last witness known to have seen Freeman alive reported seeing her standing on the corner of West Central Boulevard and North Elm Street, in between the cemetery and the gas station, between 9:15 p.m. and 9:30 p.m. on June 28, 2000.

37.    Freeman's right Nike tennis shoe was found around 11:30 p.m. that evening on North Elm Street, near the cemetery and the gas station.

38.    On July 5, 2000, Defendant Kip Oswald, a Coos County Sheriff's Deputy, reported finding Freeman's left Nike tennis shoe on Hudson Ridge, approximately ten miles from the location where she had last been seen alive.

///

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

39.    Defendant Oswald knew the shoe was connected to Freeman's abduction, but did not photograph it, its condition, position, or location, and did not conduct any other steps to preserve evidence from the area around where the left shoe was found.

40.    On August 3, 2000, Freeman's body was found deep in the woods on an embankment of the Coquille River, approximately eight miles from the location where she had last been seen alive.

C.    McGuffin's Alibi

41.    Shortly after 9:00 p.m. on the night that Freeman was abducted, McGuffin arrived at the Mitchell residence in his Ford Mustang to pick up Freeman.

42.    There, McGuffin learned from Mitchell that Freeman had left and started walking toward town.

43.    McGuffin began to search for Freeman.

44.    McGuffin spent more than five hours searching for Freeman, and more than 20 witnesses saw and interacted with McGuffin during that time, including Freeman's mother, sister, and friends, McGuffin's family and friends, and at least two City of Coquille Police Department police officers, including Officer Danny Lee and Defendant Zavala, each of whom pulled McGuffin over at different times while he was driving his Ford Mustang.

45.    The next morning, McGuffin continued his search for Freeman with Freeman's sister, Denise.  McGuffin, Denise, and Freeman's mother together reported Freeman missing to the City of Coquille Police Department (CPD).

46.    The CPD, with knowledge and direction of the then-Chief of Police, refused to investigate or even search for Freeman.

///

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

47.    McGuffin and Freeman's family continued to search for Freeman, but failed to locate her on their own.

**D.    The Faulty and Reckless Initial Investigation into Freeman's Murder**

48.    Acting pursuant to the policies, practices, and customs of the City of Coquille, then-Chief of Police Defendant Reaves and City of Coquille police officers and investigators initially refused to investigate Freeman's abduction.

49.    In a departure from established practices and procedures, the City of Coquille even rejected assistance from other investigating law enforcement agencies.

50.    Eventually, the CPD and Defendant City of Coquille decided to actually conduct an investigation.  Defendant City of Coquille, by and through Defendant Reaves, appointed an inexperienced police officer, Defendant Hall, to lead the investigation into Freeman's abduction, despite the fact that Defendant Hall had no major case experience and had never worked a major crime, let alone a murder investigation.

51.    Defendants Reaves, Hall, McInnes, and Zavala, of the City of Coquille Police Department as well as Defendants Downing, Oswald, and Zanni of the Coos County Sheriff's Office, and Defendant Wetmore of the City of Coos Bay Police Department, and Defendant Karcher of the Office of the Coos County Medical Examiner (collectively, the "Original Investigating Officers") participated in the investigation.

52.    There was no physical evidence or evidence of motive connecting McGuffin to Freeman's abduction or murder.

53.    In fact, evidence available to law enforcement at the time—including witness statements, physical evidence, and CPDs own contact with him——made it obvious that McGuffin was innocent.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

54.     Despite his innocence, the Original Investigating Officers decided to pursue McGuffin as a suspect, agreed to violate his constitutional rights in order to implicate him in Freeman's abduction and murder, and began to deliberately fabricate evidence against McGuffin.

55.     Acting pursuant to the policies, practices, and customs of the City of Coquille, the City of Coos Bay, and Coos County, including inadequate training and procedural safeguards, the Original Investigating Officers fabricated evidence in order to implicate McGuffin in the abduction and murder of Freeman.

56.     The Original Investigating Officers fabrication of evidence included attempts to coerce false confessions by convincing McGuffin and his friend, Brent Bartley, to participate in polygraph examinations, even though the Original Investigating Officers had already decided that, no matter the actual results, they would manipulate McGuffin by withholding the actual results and telling him that he had failed the test.

57.     The Original Investigating Officers, in reports and warrant applications falsely reported that McGuffin failed the polygraph examination when, in fact, McGuffin had passed the examination.

58.     The Original Investigating Officers also reported the fabricated results of the McGuffin polygraph examination to the public, through media outlets, in an effort to manipulate public opinion and implicate McGuffin in the abduction and murder of Freeman despite his innocence.

59.     The Original Investigating Officers also pressured Bartley to participate in multiple polygraph examinations, so that they could falsely claim he was being "deceptive" and had "failed" the examinations.

60.     The Original Investigating Officers presented the fabricated polygraph evidence in two search warrants for McGuffin's property.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

61.    The Original Investigating Officers fabricated additional evidence in an effort to undermine McGuffin's alibi, including reports of CPD traffic stops with McGuffin the night of Freeman's abduction and murder.

62.    Rather than truthfully reporting McGuffin's actions and statements, these documents include information McGuffin never said and misrepresented facts to falsely implicate McGuffin in Freeman's abduction and murder.

63.    Acting pursuant to the policies, practices, and customs of the City of Coquille, the City of Coos Bay, and Coos County, including inadequate training and procedural safeguards, the Original Investigating Officers suppressed, tampered with, and/or destroyed evidence, including photographs and video recordings of the crime scene.

64.    The Original Investigating Officers also suppressed evidence confirming McGuffin's innocence, including documents related to Nick Backman, who saw Freeman after she left the Mitchell residence while he was using an ATM.

65.    The Original Investigating Officers' also suppressed evidence of their own misconduct.  In addition to actions described above, and others still unknown to Plaintiffs, the Original Investigating Officers suppressed their attempts to persuade witness Kristen Steinhoff to falsely implicate McGuffin in the abduction and murder of Freeman.

66.    The destroyed evidence also included a videotape from the US Bank on North Central Boulevard, which would have recorded, with time stamps, McGuffin driving along North Central Boulevard during his search for Freeman on the night of June 28, 2000.

67.    Acting pursuant to the policies, practices, and customs of the City of Coquille, the City of Coos Bay, and Coos County, including inadequate training and procedural safeguards, the Original Investigating Officers worked in concert with

MALONEY | LAUERSDORF | REINER rc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1  other law enforcement agencies and individuals who agreed to assist Defendant

2  City of Coquille police officers in their efforts to falsely implicate McGuffin in the

3  abduction and murder of Freeman despite his innocence.

4        68.    These other agencies and individuals included, among others, the

5  Forensic Services Division of Defendant Oregon State Police (the "OSP Lab") and

6  Defendants Krings, Hormann, and Wilcox (the "OSP Lab Defendants") of the OSP

7  Lab.

8        69.    Suppression, tampering with, and/or destruction of evidence also

9  occurred at these other agencies, or with the help of these individuals.  For example,

10  a videotape of the original crime scene where Freeman's body was found had been

11  created, but was either suppressed and/or destroyed by the Original Investigating

12  Officers.

13        70.    In July 2000, employees of the OSP Lab examined Freeman's right

14  Nike tennis shoe that was found on North Elm Street next to the cemetery on the

15  night that Freeman was abducted.

16        71.    No blood was found on the right Nike tennis shoe.

17        72.    Employees of the OSP Lab also tested the right Nike tennis shoe for

18  DNA, and found the DNA of Freeman and an unidentified male on the right Nike

19  tennis shoe.

20        73.    The male DNA on the right Nike tennis shoe did not match McGuffin.

21        74.    The presence of DNA of an unidentified male on the right Nike tennis

22  shoe was obviously of value, both for purposes of solving the crimes, and as

23  exculpatory evidence of McGuffin's innocence.

24        75.    Despite the nature and obvious importance of the DNA evidence found

25  on the right Nike tennis shoe, this exculpatory evidence was suppressed by the

26  Original Investigating Officers and OSP Lab Defendants.

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

76.    The OSP Lab Defendants also fabricated evidence by issuing a report falsely indicating that only Freeman's DNA was found on the right Nike tennis shoe.

77.    Employees of the OSP Lab examined the left Nike tennis shoe that was found on Hudson Ridge approximately one week after Freeman disappeared.

78.    Blood was found on the left Nike tennis shoe.

79.    The OSP Lab also tested the left Nike tennis shoe for DNA, and found the DNA of Freeman and a male on the left Nike tennis shoe.

80.    Though they knew the male DNA from the left shoe did not belong to Defendant Oswald, the OSP Lab Defendants and Original Investigating Officers falsely suggested that this DNA was Oswald's in a report.

81.    Defendants also suppressed evidence that would have shown the male DNA on the left shoe did not belong to Defendant Oswald.

82.    Despite these efforts, the Original Investigating Officers and OSP Lab Defendants did not obtain McGuffin's arrest or indictment.

83.    Having refused to consider other potential suspects, follow-up on the DNA evidence, or pursue other leads or possibilities, the investigation of Freeman's abduction and murder went "cold," and the CPD temporarily "closed" the investigation.

84.    Despite McGuffin's innocence, his extensive alibi, and the lack of evidence implicating McGuffin in the abduction and murder of Freeman, the Original Investigating Officers continued to target and harass McGuffin for the purpose of intimidating and provoking him in an effort to fabricate additional evidence that might be used against McGuffin.

85.    This harassment and misconduct included officers routinely following McGuffin, interfering in McGuffin's personal relationships, including his long-term

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1 relationship with the girlfriend who would become the mother of his daughter, S.M.,

2 and repeatedly arresting McGuffin when he would visit this girlfriend.

3      86.    This harassment and misconduct also included officers confronting

4 McGuffin at his place of employment, Bandon Dunes Golf Resort, and accusing

5 McGuffin of kidnapping and murdering another young girl, Brooke Wilberger, in

6 Corvallis, Oregon, and attempting to ask him about Freeman's murder.

7      87.    Defendants knew at the time of the accusation that McGuffin was

8 represented by an attorney, and that they were not permitted to question him about

9 Freeman's murder, but did so anyway.

10 **E.    The Faulty and Reckless Investigation into the Cold Case**

11      88.    At the same time that the Original Investigating Officers were

12 pursuing their campaign of harassment and intimidation, public pressure to solve

13 the cold case with a conviction was intensifying, due in part to the seriousness of

14 the crimes at issue, but also in large part to the fact that the Original Investigating

15 Officers were very publicly targeting McGuffin and repeatedly reported to the media

16 that McGuffin was implicated in Freeman's abduction and murder despite his

17 innocence.

18      89.    Defendant Reaves resigned from his position as CPD Police Chief in

19 2008.

20      90.    Defendant City of Coquille coordinated with the District Attorney on

21 the selection of a new chief, and the City and the District Attorney required the new

22 Chief to commit to "closing" the Freeman case by obtaining a conviction.

23      91.    Defendant Dannels made such a commitment and was hired as the

24 new Chief of Police for Defendant City of Coquille in 2008.

25 ///

26 ///

MALONEY | LAUERSDORF | REINER, PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

92.     As the Chief of Police, Defendant Dannels re-opened the Freeman investigation and assembled a team of police officers to try to obtain a conviction for the Freeman murder (the "Cold Case Investigation").

93.     Officers involved in the Cold Case Investigation included Defendants Dannels, McNeely, Sanborn, and Webley of the City of Coquille Police Department; Defendants Karcher and Zanni of Coos County; Defendant Schwenninger of the City of Coos Bay Police Department; and Defendants Hormann and Wilcox of the OSP Lab (the "Cold Case Investigators").

94.     The Cold Case Investigation focused almost exclusively on McGuffin from its inception, employed similar tactics and built upon the efforts of the Original Investigating Officers to implicate McGuffin, including through the suppression and/or destruction, and the fabrication of, evidence.

95.     Intense public pressure and increased media attention, much of which was at the invitation of the Cold Case Investigators, exacerbated the sense of urgency among the Defendants to obtain a conviction for Freeman's abduction and murder.

96.     As Defendant McNeely explained to a national news outlet in 2010, the Freeman case was the "black sheep of Coquille" and most people thought it "could have got solved back in 2000," a reference to the Original Investigating Officers' targeting of McGuffin.

97.     The Cold Case Investigators knew that the Original Investigating Officers crafted a false narrative of McGuffin's guilt based on junk science, including a "statement analysis," fabricated polygraph results, and other fabricated evidence as alleged above.

///

///

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

98.     The Cold Case Investigators also knew about exculpatory evidence establishing McGuffin's innocence, including McGuffin's alibi, which they attempted to undermine by fabricating additional evidence, and the exculpatory DNA evidence, which they suppressed through McGuffin's trial and for years thereafter.

99.     Despite their knowledge of the Original Investigating Officers' misconduct, lack of credibility, unreliable and unconstitutional methods, and violations of McGuffin's rights, the Cold Case Investigators relied upon the Original Investigating Officers' prior investigation and built-upon that investigation using unconstitutional tactics of their own in furtherance of the same goal:  arresting and prosecuting McGuffin for a crime that he did not commit.

F.     **The Cold Case Investigators' Fabrication and Suppression of Evidence**

100.     By 2010, the Cold Case Investigators were focused exclusively on arresting and convicting McGuffin, and were not conducting any meaningful investigation into other leads or suspects.

101.     The Cold Case Investigators faced several hurdles in their quest to convict McGuffin, however, including McGuffin's obvious innocence.

102.      In order to overcome these hurdles and reach their ultimate goal, the Cold Case Investigators fabricated additional evidence falsely implicating McGuffin in Freeman's abduction and murder, and suppressed other evidence, including DNA evidence and evidence of the misconduct of the Original Investigating Officers and themselves.

103.     The Cold Case Investigators' efforts to fabricate evidence implicating McGuffin included the City of Coquille hiring Defendant Vidocq Society, an unlicensed private "investigation" firm, and Defendant Walter, a "profiler" and employee of Defendant Vidocq Society.

///

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1    104.    Defendants Vidocq Society and Walter acted as agents of Defendant

2    City of Coquille during their participation in the Freeman investigation.

3    105.    The Cold Case Investigators provided Defendant Walter with access to

4    the Freeman case file, including the previously fabricated reports, and agreed to

5    have Defendant Walter generate a false "profile" that would purportedly implicate

6    McGuffin in the abduction and murder of Freeman.

7    106.    Defendant City of Coquille and the Cold Case Investigators agreed to

8    utilize Vidocq Society and Defendant Walter because they knew they would be

9    willing to claim they developed a "profile" that would falsely purport to link

10    McGuffin to the crime, even though he was innocent.

11    107.    The Cold Case Investigators and Defendant Walter also deliberately

12    fabricated evidence for the purpose of crafting a theory of how Freeman was

13    murdered by falsely reporting that blood had been found on Freeman's right Nike

14    tennis shoe when it had not.

15    108.    Defendant CPD Police Chief Dannels falsely reported, and repeated on

16    the nationally televised ABC network news program "20/20," while standing near

17    the cemetery, that Freeman's shoe was found on the road right there with blood on

18    it.

19    109.    The Cold Case Investigators and Defendant Walter all knew that

20    Freeman's right Nike tennis shoe had been carefully examined and no blood

21    whatsoever was found on the shoe.  Nonetheless, they falsely reported that blood

22    was found on Freeman's right Nike tennis shoe in an effort to explain how her

23    abduction and murder occurred, and to implicate McGuffin in those crimes, despite

24    his innocence.

25    ///

26    ///

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

110.   The Cold Case Investigators and Defendant Walter also deliberately fabricated evidence of potential motives by falsely reporting that Freeman may have been pregnant at the time of her murder, and that McGuffin may have been afraid that he would be charged with statutory rape if the pregnancy was discovered.

111.   Defendant McNeely falsely repeated this fabricated evidence of an alleged motive on the nationally televised ABC network news program "20/20."

112.   At the time that the Cold Case Investigators fabricated this evidence, and Defendant McNeely repeated it on national television, they all knew Freeman was not pregnant when she was abducted and killed.

113.   At the time that the Cold Case Investigators fabricated this evidence, and Defendant McNeely repeated it on national television, they knew that consensual sex between McGuffin and Freeman was not "statutory rape" as a matter of Oregon law.

114.   Defendant Walter bolstered this fabricated motive with his own false "profile" of Freeman's murderer by reporting, and repeating on "20/20," that based upon his understanding of how the murder happened, he concluded that Freeman's murderer wanted to get Freeman out of the way.

115.   At the time that Defendant Walter conjured up his false "profile" and reported his conclusions regarding the murderer's motives, Defendant Walter had no knowledge of how the murder actually happened and simply fabricated a false "profile" and motive based upon the agreement he had made with the Cold Case Investigators and City of Coquille to attempt to effect the arrest, indictment, and conviction of McGuffin for a crime he did not commit.

///

///

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

116.    The Cold Case Investigators also fabricated evidence for the purpose of undermining McGuffin's alibi, including fabricating false testimony placing McGuffin and Freeman together at Cherie Mitchell's house after 9:00 p.m. on the night Freeman was abducted

117.    This fabricated evidence included the false testimony of witnesses Scott Hamilton, Richard Bryant, and John Lindegren, which was used against McGuffin to secure his indictment and conviction.

118.    Lindegren had seen Cherie Mitchell and her boyfriend outside of her home the night Freeman was abducted, but the Cold Case Investigators, in fabricating evidence, convinced Lindegren to say that the people were Freeman and McGuffin, even though they knew that this was false.  The Cold Case Investigators further documented this false "identification" in police reports, despite knowing that the claim Lindegren had seen McGuffin and Freeman, rather than Mitchell and her boyfriend, was both false and fabricated.

119.    Defendants also suppressed evidence related to Lindegren's purported identification, including their own actions and the fact that the Original Investigating Officers knew and had determined Lindegren had seen Mitchell and her boyfriend, not McGuffin and Freeman.

120.    The Cold Case Investigators further falsely reported, and Defendant Dannels repeated on the nationally televised ABC network news program "20/20," that several witnesses actually placed McGuffin with Freeman after 9:00, despite knowing this statement was untrue.

121.    The Cold Case Investigators similarly and deliberately fabricated evidence by coercing witness Scott Hamilton to claim falsely that McGuffin had admitted picking Freeman up after 9:00 p.m. on June 28, 2000, and dropping her off by the McKay's Market on North Central Boulevard.

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

122.   The Cold Case Investigators knew that Hamilton's fabricated testimony was false, and deliberately suppressed this fact.

123.   The Cold Case Investigators also knew that they had fabricated Hamilton's false testimony by using investigative techniques with Hamilton that were so coercive and abusive that they knew or should have known the use of the techniques would lead to false evidence.  These techniques included threatening Hamilton, falsely telling Hamilton that McGuffin had implicated Hamilton in Freeman's abduction and murder, falsely suggesting or promising Hamilton that he could save himself from criminal prosecution by implicating McGuffin, and by coaching Hamilton or expressly telling Hamilton what they wanted him to say.

124.   Defendant Hall also similarly and deliberately fabricated evidence by coercing his stepson, Richard Bryant, into falsely testifying that McGuffin had made a statement amounting to a "jailhouse confession" about Freeman's death.

125.   McGuffin never made any confession whatsoever, and the Cold Case Investigators knew that Bryant's connection to Defendant Hall, who had previously fabricated evidence in an attempt to secure McGuffin's arrest and conviction, was the reason that Bryant made the statement.

126.   The Cold Case Investigators suppressed the corrupt origins of Bryant's claims in order to use them as evidence to indict and convict McGuffin for the abduction and murder of Freeman.

127.   The Cold Case Investigators similarly and deliberately fabricated evidence by coercing witness Steinhoff to testify falsely that McGuffin threatened Steinhoff not to speak to the police.

128.   The Cold Case Investigators deliberately fabricated this false evidence by using investigative techniques with Steinhoff that were so coercive and abusive that the Cold Case Investigators knew or should have known that use of the

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1  techniques would lead to false evidence.

2      129.    The techniques that Cold Case Investigators used to coerce Steinhoff

3  into providing false testimony included repeatedly subjecting her to intense

4  interrogation; scaring her children; telling Steinhoff that she had failed a polygraph

5  examination and they knew she was withholding information about Freeman's

6  abduction and murder; telling Steinhoff that other witnesses had reported that

7  Steinhoff took part in Freeman's abduction and murder; suggesting that Steinhoff

8  would be arrested if she did not implicate McGuffin in Freeman's abduction and

9  murder, and that she should think about what would happen to her four children if

10  she was arrested; threatening Steinhoff to the point of her breaking down in tears;

11  and not allowing Steinhoff to leave or end the interrogation despite her requests

12  and repeated pleas that she did not have any information to provide.

13      130.    The Cold Case Investigators ultimately succeeded in fabricating false

14  evidence from Steinhoff—that McGuffin had threatened her when, in fact, he had

15  not—through their tactics.

16      131.    Beaten down and frightened, Steinhoff adopted Defendants'

17  misrepresentations as her own and repeated them back to Defendants Dannels and

18  Riddle, even though Steinhoff and the Cold Case Investigators knew that McGuffin

19  had never said any such thing or otherwise threatened Steinhoff.

20      132.    The Cold Case Investigators, along with the Original Investigating

21  Officers, also fabricated evidence for the purpose of creating the false inference that

22  McGuffin had used his Ford Mustang to transport Freeman's body after she was

23  abducted and murdered, including falsely reporting, and repeating on "20/20," that

24  the Ford Mustang had been "wiped clean" shortly after Freeman's abduction and

25  murder, when that claim was untrue and Defendants knew there was nothing to

26  suggest McGuffin's car had been cleaned or "wiped" in any way at all.

MALONEY | LAUERSDORF | REINER, PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1    133.    The Cold Case Investigators also deliberately suppressed, tampered

2    with, and/or destroyed relevant and material impeachment evidence that

3    undermined the credibility of key prosecution witnesses, including evidence of their

4    own misconduct and violations of McGuffin's rights described herein.

5    **G.    The Arrest and Defamation of McGuffin for a Crime He Did Not Commit**

6    134.    On August 23, 2010, based upon evidence fabricated by Defendants

7    and without any probable cause, McGuffin was arrested and charged with

8    Freeman's murder.

9    135.    To add further insult, the Cold Case Investigators invited producers

10    from the nationally televised ABC network program "20/20" to have what the show

11    called "exclusive access" to the investigation.

12    136.    The Cold Case Investigators fed the "20/20" producers false

13    information to claim McGuffin had murdered Freeman, despite McGuffin's

14    innocence.

15    137.    The "20/20" cameras were invited to film the arrest, and the Cold Case

16    Investigators made a dramatic, unlawful arrest for the cameras by stopping

17    McGuffin along the side of the road and accosting him as he was driving home from

18    work.

19    138.    Along the way, Cold Case Investigators made false and inflammatory

20    statements about McGuffin, including that everyone should assume that McGuffin

21    was carrying a gun.

22    139.    Cold Case Investigators even attempted to use the media to question

23    McGuffin on-camera about the Freeman case, despite the fact that they knew

24    McGuffin was represented by counsel and they were not permitted to speak with

25    him.

26    ///

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

140.    In the show, Cold Case Investigators and Defendant Walter made knowingly false statements on the air concerning McGuffin, including false statements that: (1) there was blood on the shoe found Freeman's right shoe; (2) McGuffin could have wanted to kill freeman either because Freeman was pregnant or McGuffin was afraid of getting in trouble for statutory rape; (3) McGuffin's car had been "wiped," when they searched it; and (4) several witnesses placed McGuffin with Freeman after 9:00 p.m. the night she was abducted.

141.    At the time of these statements, the defendants knew or should have known that they were false.

142.    The "20/20" television show was broadcast to the public, including the jury pool in Coos County, before McGuffin's criminal trial.

143.    The "20/20" television show was also published on the internet for the public, including the jury pool in Coos County, before McGuffin's criminal trial.

144.    The "20/20" television show was broadcast to the public in 2010, before jury selection in McGuffin's criminal trial, and included information that would have been inadmissible at trial. This inadmissible evidence was deliberately provided to "20/20" by Defendants.

## H.    McGuffin's Wrongful Conviction

145.    Between the date of his arrest and trial, McGuffin was continuously confined and deprived of his liberty.

146.    In July 2011, McGuffin was tried for Murder in the First Degree.

147.    McGuffin was acquitted of murder and convicted of the lesser-included offense of manslaughter by a non-unanimous jury.

148.    McGuffin was sentenced to 120 months in prison, plus three years of post-prison supervision.

///

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

149.    The basis for McGuffin's arrest, indictment, and conviction was evidence that was fabricated by the Defendants, including, for example, as described above.

150.    At grand jury and trial, Defendants continued to suppress exculpatory evidence, including the DNA results, their own misconduct, and other exculpatory and material evidence, including, but not limited to, the evidence described above.

151.    Without the Defendants' fabrication and suppression of evidence, McGuffin would not have been convicted.

152.    No direct, tangible, or objective evidence linked McGuffin to the abduction and murder of Leah Freeman, and no reasonable jury could have convicted McGuffin in the absence of the evidence fabricated by Defendants, or if presented with the evidence suppressed by Defendants.

153.    McGuffin appealed his conviction to the Oregon Court of Appeals, and the judgment of conviction was affirmed without opinion in December 2013.

154.    McGuffin's petition for review was denied by the Oregon Supreme Court in 2014.

## I.    McGuffin's Exoneration

155.    McGuffin filed a petition for post-conviction relief.

156.    The post-conviction court found that McGuffin's constitutional rights were violated by, among other reasons, the suppression of the exculpatory DNA evidence.

157.    The post-conviction court vacated McGuffin's conviction.

158.    In December 2019 the charges against McGuffin were dismissed and McGuffin was released from custody.

159.    By the time McGuffin was released from custody he had served over nine years in jail and prison for a crime that he did not commit.

Page 24– COMPLAINT FOR DAMAGES

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

**J.    McGuffin's Damages**

160.    Even before his wrongful arrest, prosecution, and conviction, McGuffin spent years being intimidated, harassed, and tormented by police officers at the hands of the Defendants.  Defendants even enlisted the help of other police officers and law enforcement agencies to follow McGuffin around and harass him.  The police even went on "20/20" and told the media they wanted McGuffin to know he was being watched.

161.    The Defendants also provided photographs of McGuffin's mother, father, and brother—none of whom had been implicated in a crime—to various news media and those photographs were published and disseminated publicly before trial.

162.    Defendants' open and very public targeting of McGuffin and his family, and Defendants' deliberate dissemination of fabricated and false information to the news media, resulted in McGuffin and his family members, including his young daughter, S.M., being subjected to public humiliation, harassment, and even death threats.

163.    McGuffin spent over nine years incarcerated in jail and then prison for a crime that he did not commit.

164.    McGuffin was wrongfully convicted when his daughter, S.M., was only three years old, and incarcerated hundreds of miles from his family, including S.M., causing him to miss out on birthdays, holidays, first days of school, and every other highlight of parenting a young child, such as teaching her how to swim and ride a bike.

165.    During his incarceration, McGuffin's only option for maintaining a relationship with his daughter was to have his parents bring her to the prison to visit him.  S.M. spent her formative years missing her dad, and being exposed to

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1  prison life in order to have any kind of relationship with him.

2      166.    During his incarceration, McGuffin was further deprived of the ability

3  to interact freely with his loved ones; to be present for holidays, births, deaths, and

4  other life events; to pursue his passions and interests; to engage in meaningful

5  labor and pursue his chosen career in the culinary field; and to live freely as an

6  autonomous being.

7      167.    As a result of his wrongful incarceration, McGuffin was forced to leave

8  his lucrative position as an Executive Banquet Chef at one of the most highly

9  regarded restaurants in Coos County and abandon the training and skills he had

10  developed through culinary school and his time as a chef.

11      168.    In addition to causing the severe trauma of McGuffin's wrongful

12  imprisonment and loss of liberty, Defendants' misconduct caused and continues to

13  cause McGuffin extreme physical and psychological pain and suffering, humiliation,

14  constant fear, anxiety, deep depression, despair, rage, and other physical and

15  psychological effects.

16      169.    The Defendants' misconduct further caused and continues to cause

17  McGuffin's loss of reputation in his community and loss of employment options in

18  his chosen vocation.

19      170.    The Defendants' misconduct further caused and continues to cause

20  S.M. the loss of care, comfort, consortium, love, and emotional and financial support

21  from her father.

22  ///

23  ///

24  ///

25  ///

26  ///

Page 26– COMPLAINT FOR DAMAGES

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

## V. POLICIES AND PRACTICES THAT WERE THE MOVING FORCE BEHIND THE CONSTITUTIONAL VIOLATIONS

171.    The violation of McGuffin's constitutional rights and resulting wrongful conviction were not mere accidents or anomalies but, instead, were caused by the policies, practices, and/or customs of the City of Coquille, Oregon State Police, the OSP Lab, Coos County, and the City of Coos Bay (the "Municipal Defendants").

172.    The constitutional violations that were the proximate cause of McGuffin's wrongful conviction further arose out of the Municipal Defendants' failure to train and supervise the Defendants in a manner that amounts to deliberate indifference.

173.    In addition, the Municipal Defendants failed to adopt adequate procedural safeguards concerning the suppression of material evidence; the fabrication of evidence; the prosecution of individuals in the absence of probable cause; the interview, interrogation, and coercion of witnesses; and other law enforcement functions that violated McGuffin's constitutional rights.

174.    The Municipal Defendants withheld material exculpatory and/or impeachment evidence as alleged above, and did so pursuant to the municipalities' policies, practices, and/or customs that permit the suppression of such evidence, even where it would obviously be exculpatory and/or impeaching, as it was here.

175.    The violations of McGuffin's constitutional rights by the Original Investigating Officers, the OSP Lab Defendants, and the Cold Case Investigators were approved of and ratified by the Municipal Defendants and/or by the final policymaker for the respective Municipal Defendant such that the actions of the individual Defendants constitute the official policy, practices, and/or customs of the respective Municipal Defendant.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

176.   In addition, the Cold Case Investigators knowingly gave false statements and provided false information to the media in order to influence potential fact finders in the small community of Coos County as alleged above.

177.   These acts were committed, or ratified, by officials whose acts fairly represent official policy such that the challenged action constituted official policy.

178.   These unlawful acts were, furthermore, the result of longstanding policies, practices, or customs that constitute the standard operating procedure of the Municipal Defendants.

179.   The unlawful acts of the Original Investigating Officers before the involvement of the Cold Case Investigators were known to, accepted by, and built upon by the Cold Case Investigators, including Defendant Dannels, who was the official policymaker at the time he approved of, accepted, and ratified these acts.

180.   The Municipal Defendants recognized the need for adequate training of their employees and were deliberately indifferent to the necessity of training regarding *Brady* obligations and evidence collection, handling, and preservation.

181.   The Municipal Defendants knew very well that their training, supervision, procedures, practices, and customs to prevent due process violations related to the suppression and/or fabrication of evidence were inadequate, but refused to implement adequate training and supervision or other programs to prevent violations of due process, exhibiting deliberate indifference to such violations.

## VI.  FIRST CLAIM FOR RELIEF: 42 U.S.C. §1983

### (Count 1 – Violation of Fourteenth Amendment)

182.   McGuffin incorporates by reference herein the allegations set forth above in paragraphs 1 through 181 in their entirety.

///

MALONEY | LAUERSDORF | REINER, PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

183.    As alleged above, Defendants, while acting individually, jointly, and/or in conspiracy with each other, as well as under color of law and within the scope of their employment, deprived McGuffin of his constitutional right to due process and his right to a fair trial.

184.    In the manner described more fully above, Defendants deliberately withheld exculpatory and impeachment evidence from McGuffin, his attorneys, and prosecutors, among others, thereby misleading and misdirecting McGuffin's criminal prosecution.

185.    In addition, as described more fully above, Defendants fabricated and solicited false evidence, including statements and testimony they knew to be false, fabricated police reports and other evidence falsely implicating McGuffin, obtained charges against McGuffin, obtained his conviction using that false evidence, and failed to correct fabricated evidence they knew to be false when it was used against McGuffin in grand jury proceedings and during his criminal trial.

186.    In addition, Defendants extracted and/or concocted fabricated statements from witnesses by using coercive means and/or despite knowledge of McGuffin's innocence, which Defendants used to incriminate McGuffin before and during his criminal proceedings and to secure his conviction.

187.    In addition, based on information and belief, Defendants concealed and fabricated additional evidence that is not yet known to McGuffin.

188.    Defendants' misconduct described in this count resulted in McGuffin's unjust and wrongful criminal prosecution and conviction, deprived him of his liberty, caused witnesses to provide false and involuntary statements that were used to incriminate him, and denied him his constitutional right to a fair trial guaranteed by the Fourteenth Amendment.  Absent this misconduct, McGuffin's prosecution could not, and would not, have been pursued.



MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

189.   The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and with total disregard for the truth and McGuffin's clear innocence.

190.   As a result of Defendants' misconduct described in this count, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

191.   Defendants' misconduct described in this count was undertaken pursuant to the policies, practices, and customs of the City of Coquille, Oregon State Police, the OSP Lab, Coos County, and the City of Coos Bay as more fully described below.

### (Count 2 – Illegal Detention and Prosecution)

192.   McGuffin incorporates by reference herein the allegations set forth above in paragraphs 1 through 191 in their entirety.

193.   In the manner described more fully above, Defendants, individually, jointly, and in conspiracy with each other, as well as under color of law and within the scope of their employment, accused McGuffin of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against McGuffin without any probable cause for doing so and in spite of the fact that they knew McGuffin was innocent, in violation of his rights secured by the Fourth and Fourteenth Amendments.

194.   In so doing, Defendants caused McGuffin to be deprived of his liberty, detained without probable cause, and improperly subjected to judicial proceedings for which there was no probable cause.

///

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

195.   The misconduct described in this count was objectively unreasonable and was undertaken intentionally and with malice.

196.   As a result of Defendants' misconduct described in this count, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

197.   Defendants' misconduct described in this count was undertaken pursuant to the policies, practices, and customs of the City of Coquille, Oregon State Police, the OSP Lab, Coos County, and the City of Coos Bay as more fully described below.

### (Count 3 – Failure to Disclose Exculpatory Information)

198.   McGuffin incorporates by reference herein the allegations set forth above in paragraphs 1 through 197 in their entirety.

199.   Defendants failed to disclose exculpatory evidence leading to McGuffin's detention in violation of his right to due process.

200.   As alleged above, Defendants failed to disclose, among other things, material evidence, including, but not limited to: evidence of their own misconduct and other credibility/impeachment evidence; exculpatory DNA evidence; evidence of the victim's whereabouts and actions (*e.g.*, the Backman documents, US Bank videos); and the fact that they had fabricated police reports and witness statements.

201.   Defendants knew there was no credible evidence tying McGuffin to Freeman's abduction and murder.  Had they disclosed this exculpatory evidence, the evidence would have proved McGuffin's innocence, cast doubt on the entire police investigation and prosecution, and led to the end of McGuffin's detention and prosecution.

///

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

202.    Defendants performed the above-described acts under color of state law, deliberately, intentionally, with malice or reckless disregard for the truth and McGuffin's rights, and with deliberate indifference to McGuffin's clearly established constitutional rights.

203.    As a result of Defendants' misconduct described in this count, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

204.    Defendants' misconduct described in this count was undertaken pursuant to the policies, practices, and customs of the City of Coquille, Oregon State Police, the OSP Lab, Coos County, and the City of Coos Bay as more fully described below.

### (Count 4 – Failure to Intervene)

205.    McGuffin incorporates by reference herein the allegations set forth above in paragraphs 1 through 204 in their entirety.

206.    In the manner described above, and during the constitutional violations described above, one or more Defendants stood by without intervening to prevent the violation of McGuffin's constitutional rights, even though they had the duty and the opportunity to do so.

207.    These Defendants had a duty and reasonable opportunity to prevent this harm to McGuffin, but they failed to do so.

208.    The misconduct described in this count was objectively unreasonable and was undertaken intentionally with willful indifference to McGuffin's constitutional rights.

///

///

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

209.    As a result of Defendants' failure to intervene to prevent the violation of McGuffin's constitutional rights, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

210.    Defendants' misconduct described in this count was undertaken pursuant to the policies, practices, and customs of the City of Coquille, Oregon State Police, the OSP Lab, Coos County, and the City of Coos Bay as more fully described below.

### (Count 5 – Conspiracy)

211.    McGuffin incorporates by reference herein the allegations set forth above in paragraphs 1 through 210 in their entirety.

212.    Defendants reached an agreement among themselves to frame McGuffin for Freeman's abduction and murder, and thereby to deprive McGuffin of his constitutional rights, as alleged above.  This agreement was first reached when the Original Investigating Officers began implicating McGuffin, continued throughout the actions of the OSP Lab Defendants and Cold Case Investigators all prior to the arrest of McGuffin, and remained in place throughout all periods of his detention, prosecution, and incarceration.

213.    In addition, Defendants conspired before McGuffin's conviction, and continued to conspire after his conviction, to deprive McGuffin of exculpatory material to which he is entitled and that would have led to his earlier exoneration.

214.    In this manner, Defendants, acting in concert with each other and with other co-conspirators, known and unknown, conspired by concerted action to accomplish an unlawful purpose and/or a lawful purpose by unlawful means.

215.    In furtherance of the conspiracy, each co-conspirator committed overt acts and was an otherwise willful participant in joint activity.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

216.   As a result of this illicit prior agreement, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

217.   The misconduct described in this count was objectively unreasonable and was undertaken intentionally and with willful indifference to McGuffin's constitutional rights.

218.   Defendants' misconduct described in this count was undertaken pursuant to the policies, practices, and customs of the City of Coquille, Oregon State Police, the OSP Lab, Coos County, and the City of Coos Bay as more fully described below.

## (Count 6 – Destruction of Exculpatory Evidence)

219.   McGuffin incorporates by reference herein the allegations set forth above in paragraphs 1 through 218 in their entirety.

220.   The Original Investigating Officers and the Cold Case Investigators suppressed, destroyed, and/or caused to be destroyed exculpatory and materially-favorable evidence, including, but not limited to, police reports, audio/visual recordings, alibi evidence, crime scene evidence, and evidence bearing upon the credibility of the Freeman homicide investigation and its investigators.  This evidence was destroyed in bad faith, and in furtherance of their conspiracy with the OSP Lab Defendants.

221.   As a result of these violations, McGuffin was deprived of his right to a fair trial and was wrongly convicted of a crime of which he is innocent.

222.   These Defendants were acting under color of law and within the scope of employment when they took these acts.

///

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

223.    Defendants' misconduct described in this count was undertaken pursuant to the policies, practices, and customs of the City of Coquille, Oregon State Police, Coos County, and the City of Coos Bay as more fully described below.

**(Count 7 – Unconstitutional Policies, Practices, and Customs of the City of Coquille, Oregon State Police, the OSP Lab, Coos County, and the City of Coos Bay)**

224.    McGuffin incorporates by reference herein the allegations set forth above in paragraphs 1 through 223 in their entirety.

225.    McGuffin's injuries were caused by the policies, practices, and customs of the City of Coquille, Oregon State Police, the OSP Lab, Coos County, and the City of Coos Bay, as well as by the actions of policy-making officials for the City of Coquille, Oregon State Police, the OSP Lab, Coos County, and the City of Coos Bay.

226.    At all times relevant and material to this action, and for a period of time before and after, the City of Coquille, Oregon State Police, the OSP Lab, Coos County, and the City of Coos Bay failed to promulgate proper or adequate rules, regulations, policies, and procedures governing the conduct of interviews, interrogations, and questioning of criminal suspects and witnesses by officers and agents of the City of Coquille and/or the City of Coquille Police Department, the Oregon State Police and/or OSP Lab, Coos County and/or the Coos County Sheriff's Office and/or the Coos County Medical Examiner, and the City of Coos Bay and/or the City of Coos Bay Police Department.

227.    At all times relevant and material to this action, and for a period of time before and after, the City of Coquille, Oregon State Police, the OSP Lab, Coos County, and the City of Coos Bay failed to promulgate proper or adequate rules, regulations, policies, and procedures governing the collection, documentation, preservation, testing, and disclosure of evidence, including physical evidence; writing of police reports and taking of investigative notes; obtaining statements and

Page 35– COMPLAINT FOR DAMAGES

MALONEY | LAUERSDORF | REINER, PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1  testimony from witnesses; and the maintenance of investigative files and disclosure

2  of those files in criminal proceedings by officers and agents of the City of Coquille

3  and/or the City of Coquille Police Department, the Oregon State Police and/or OSP

4  Lab, Coos County and/or the Coos County Sheriff's Office and/or the Coos County

5  Medical Examiner, and the City of Coos Bay and/or the City of Coos Bay Police

6  Department.

7  228.   In addition or alternatively, the City of Coquille, Oregon State Police,

8  the OSP Lab, Coos County, and the City of Coos Bay failed to promulgate proper

9  and adequate rules, regulations, policies, and procedures for the training and

10  supervision of officers and agents of the City of Coquille and/or the City of Coquille

11  Police Department, the Oregon State Police and/or OSP Lab, Coos County and/or

12  the Coos County Sheriff's Office and/or the Coos County Medical Examiner, and the

13  City of Coos Bay and/or the City of Coos Bay Police Department with respect to the

14  conduct of interviews and interrogations and techniques to be used when

15  questioning criminal suspects and witnesses.

16  229.   In addition or alternatively, the City of Coquille, Oregon State Police,

17  the OSP Lab, Coos County, and the City of Coos Bay failed to promulgate proper

18  and adequate rules, regulations, policies, and procedures for the training and

19  supervision of officers and agents of the City of Coquille and/or the City of Coquille

20  Police Department, the Oregon State Police and/or OSP Lab, Coos County and/or

21  the Coos County Sheriff's Office and/or the Coos County Medical Examiner, and the

22  City of Coos Bay and/or the City of Coos Bay Police Department with respect to the

23  collection, documentation, preservation, testing, and disclosure of evidence,

24  including physical evidence; writing of police reports and taking of investigative

25  notes; obtaining statements and testimony from witnesses; and the maintenance of

26  investigative files and disclosure of those files in criminal proceedings

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

230.    Officers and agents of the City of Coquille and/or the City of Coquille Police Department, the Oregon State Police and/or OSP Lab, Coos County and/or the Coos County Sheriff's Office and/or the Coos County Medical Examiner, and the City of Coos Bay and/or the City of Coos Bay Police Department committed these failures to promulgate proper or adequate rules, regulations, policies, and procedures.

231.    Had officers and agents of the City of Coquille and/or the City of Coquille Police Department, the Oregon State Police and/or OSP Lab, Coos County and/or the Coos County Sheriff's Office and/or the Coos County Medical Examiner, and the City of Coos Bay and/or the City of Coos Bay Police Department promulgated appropriate rules, regulations, policies, and procedures, then the violation of McGuffin's constitutional rights would have been prevented.

232.    In addition, at all times relevant and material to this action, and for a period of time before, the City of Coquille, Oregon State Police, the OSP Lab, Coos County, and the City of Coos Bay had notice of practices and customs by their respective officers and agents pursuant to which individuals suspected of criminal activity, like McGuffin, were routinely deprived of exculpatory evidence, falsely charged, defamed and insulted in the media, subjected to the fabrication of evidence, and prosecuted with false evidence.

233.    In addition, at all times relevant and material to this action, and for a period of time before, the City of Coquille, Oregon State Police, the OSP Lab, Coos County, and the City of Coos Bay had notice of practices and customs of their officers and agents that included one or more of the following: (1) officers did not record investigative information in police reports, did not maintain proper investigative files, and/or did not disclose investigative materials to criminal defendants; (2) officers falsified statements and testimony of witnesses; (3) officers

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1  fabricated false evidence implicating criminal defendants in criminal conduct; (4)

2  officers failed to maintain and/or preserve evidence and/or destroyed evidence,

3  including physical evidence; and/or (5) officers pursued wrongful convictions

4  through profoundly flawed investigations.

5       234.  These practices and customs, individually and/or together, were

6  allowed to flourish because the leaders, supervisors, and policymakers of City of

7  Coquille, Oregon State Police, the OSP Lab, Coos County, and the City of Coos Bay

8  directly encouraged and were thereby the moving force behind the very type of

9  misconduct at issue by failing to adequately train, supervise, and control their

10  officers, agents, and employees on proper techniques and by failing to adequately

11  punish and discipline prior instances of similar misconduct, thus directly

12  encouraging future abuses like those affecting McGuffin.

13       235.  The above practices and customs, so well settled as to constitute *de

14  facto* policies of the City of Coquille, Oregon State Police, the OSP Lab, Coos

15  County, and the City of Coos Bay were able to exist and thrive, individually and/or

16  together, because policymakers with authority over the same exhibited deliberate

17  indifference to the problem, thereby effectively ratifying it.

18       236.  In addition, the misconduct described in this count was undertaken

19  pursuant to the City of Coquille, Oregon State Police, the OSP Lab, Coos County,

20  and the City of Coos Bay policies and practices in that the constitutional violations

21  committed against McGuffin were committed with the knowledge or approval of

22  persons with final policymaking authority for the City of Coquille, Oregon State

23  Police, the OSP Lab, Coos County, and the City of Coos Bay,  or were actually

24  committed by persons with such final policymaking authority.

25  ///

26  ///

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

237.   McGuffin's injuries were directly and proximately caused by officers, agents, and employees of the City of Coquille, Oregon State Police, the OSP Lab, Coos County, and the City of Coos Bay, including but not limited to Defendants, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this count.

## VII.  SECOND CLAIM FOR RELIEF
### (State Law – False Imprisonment)

238.   Plaintiffs incorporate by reference herein the allegations set forth above in paragraphs 1 through 237 in their entirety.

239.   By letters dated May 8, 12, and 27, 2020, Plaintiffs provided notice to the Defendants of their state law claims as required by ORS 30.275.

240.   McGuffin was incarcerated beginning on August 23, 2010.

241.   The incarceration was not lawful.  The indictment against McGuffin was made without probable cause because it was based on fabricated evidence as alleged above, and was made without regard to exculpatory evidence that had been deliberately suppressed as alleged above.

242.   The Defendants violated McGuffin's rights by incarcerating him without probable cause.

243.   Defendants City of Coquille, Oregon State Police, OSP Lab, Coos County, and the City of Coos Bay are responsible for the misconduct of their respective agents and employees who acted as alleged above under a theory of vicarious liability and/or respondeat superior.

244.   As a result of the misconduct of the Defendants, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1  forth above.

2      245.    As a result of the misconduct of the Defendants, S.M. suffered a loss of

3  consortium as set forth above.

4                    ## VIII.  THIRD CLAIM FOR RELIEF

5                    ### (State Law – Malicious Prosecution)

6      246.    Plaintiffs incorporate by reference herein the allegations set forth

7  above in paragraphs 1 through 245 in their entirety.

8      247.    Based on the misconduct alleged above, the Defendants caused

9  McGuffin to be unreasonably seized and further caused McGuffin to be improperly

10  subjected to judicial proceedings for which there was no legitimate probable cause.

11  These judicial proceedings were instituted and continued maliciously, resulting in

12  injury, and all such proceedings were ultimately terminated in McGuffin's favor in a

13  manner indicative of his innocence.

14      248.    As alleged above, the Defendants accused McGuffin of criminal activity

15  knowing those accusations to be without genuine probable cause, and they made

16  statements to prosecutors and grand jurors with the intent of exerting influence to

17  institute and continue judicial proceedings against McGuffin.

18      249.    The proceedings lacked probable cause because they were based on

19  fabricated evidence as alleged above, and were made without regard to exculpatory

20  evidence that had been deliberately withheld and suppressed as alleged above.

21      250.    The Defendants' statements about McGuffin's alleged culpability were

22  made with knowledge that the statements were false and perjured.

23      251.    The misconduct alleged above was undertaken with malice,

24  willfulness, and/or reckless indifference.

25  ///

26  ///

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

252.    The Municipal Defendants, and Defendant Vidocq Society, are responsible for the misconduct of their respective agents and employees who acted as alleged above under a theory of vicarious liability and/or respondeat superior.

253.    As a result of the misconduct of the Defendants, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

254.    As a result of the misconduct of the Defendants, S.M. suffered a loss of consortium as set forth above.

## IX.  FOURTH CLAIM FOR RELIEF

### (State Law – Invasion of Privacy – False Light)

255.    Plaintiffs incorporate by reference herein the allegations set forth above in paragraphs 1 through 254 in their entirety.

256.    The Defendants placed McGuffin in a false light by falsely reporting to the media and the public that McGuffin had committed statutory rape and had struck Freeman in the face and killed her as alleged above.

257.    As alleged above, the Defendants knew or were recklessly indifferent to the fact that the publicized matters were false when they publicized them.

258.    The false light in which each of the Defendants placed McGuffin would be highly offensive to a reasonable person.

259.    The Municipal Defendants, and Defendant Vidocq Society, are responsible for the misconduct of their respective agents and employees who acted as alleged above under a theory of vicarious liability and/or respondeat superior.

260.    As a result of the misconduct of the Defendants, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1  forth above.

2      261.   As a result of the misconduct of the Defendants listed in the Counts

3  below, S.M. suffered a loss of consortium as set forth above.

## X.  FIFTH CLAIM FOR RELIEF

### (State Law – Defamation *Per Se*)

6      262.   Plaintiffs incorporate by reference herein the allegations set forth

7  above in paragraphs 1 through 261 in their entirety.

8      263.   The Defendants made defamatory statements about McGuffin by

9  falsely reporting to the media and the public that McGuffin had committed

10  statutory rape and had struck Freeman in the face and killed her as alleged above.

11      264.   The defamatory statements imputed to McGuffin the commission of a

12  crime involving moral turpitude.

13      265.   As alleged above, the Defendants knew or were recklessly indifferent

14  to the fact that the publicized matters were false when they publicized them.

15      266.   The Municipal Defendants, and Defendant Vidocq Society, are

16  responsible for the misconduct of their respective agents and employees who acted

17  as alleged above under a theory of vicarious liability and/or respondeat superior.

18      267.   As a result of the misconduct of the Defendants, McGuffin suffered loss

19  of liberty, great mental anguish, humiliation, degradation, physical and emotional

20  pain and suffering, and other grievous and continuing injuries and damages as set

21  forth above.

22      268.   As a result of the misconduct of the Defendants, S.M. suffered a loss of

23  consortium as set forth above.

24  ///

25  ///

26  ///

Page 42– COMPLAINT FOR DAMAGES

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

# XI.  SIXTH CLAIM FOR RELIEF

## (State Law – Civil Conspiracy)

269.    Plaintiffs incorporate by reference herein the allegations set forth above in paragraphs 1 through 268 in their entirety.

270.    The Defendants and other co-conspirators, known and not yet known to Plaintiffs, reached an agreement amongst themselves to "close" the Freeman case by arresting and indicting McGuffin with the intent that he would be convicted.

271.    The Defendants had a meeting of the minds as alleged above.

272.    The Defendants took one or more unlawful overt steps in furtherance of the conspiracy by fabricating evidence as alleged above; suppressing, tampering with, or destroying material exculpatory and impeachment evidence as alleged above; manipulating witnesses as alleged above; and concealing their misconduct, all in violation of McGuffin's constitutional rights, including, for example, as alleged above.

273.    The misconduct alleged above was objectively unreasonable and was undertaken intentionally with willful indifference to McGuffin's constitutional rights.

274.    As a result of the misconduct alleged above, McGuffin was indicted and ultimately wrongly convicted.

275.    The Municipal Defendants, and Defendant Vidocq Society, are responsible for the misconduct of their respective agents and employees who acted as alleged above under a theory of vicarious liability and/or respondeat superior.

276.    As a result of the misconduct of the Defendants, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

277.    As a result of the misconduct of the Defendants, S.M. suffered a loss of consortium as set forth above.

## XII.  SEVENTH CLAIM FOR RELIEF

### (State Law – Negligent Training and Supervision)

278.    Plaintiffs incorporate by reference herein the allegations set forth above in paragraphs 1 through 277 in their entirety.

### Count 1 (Against the Municipal Defendants)

279.    The Municipal Defendants had a duty to properly train and supervise their respective agents and employees.

280.    The Municipal Defendants breached their duty to train and supervise their respective agents and employees by creating policies, practices, and customs to prohibit the misconduct alleged above.

281.    The Municipal Defendants also breached their duty to train and supervise their respective agents and employees by failing to institute policies, practices, and customs that would prohibit the misconduct alleged above.

282.    As a result of the Municipal Defendants' negligence, the individual Defendants violated McGuffin's constitutional rights by committing the misconduct alleged above.

283.    As a result of the negligent training and supervision by the Municipal Defendants, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

284.    As a result of the negligent training and supervision by the Municipal Defendants, S.M. suffered a loss of consortium as set forth above.

///

///

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

**(Count 2 – Against Defendant Vidocq Society)**

285.    Defendant Vidocq Society had a duty to properly train and supervise Defendant Walter.

286.    Defendant Vidocq Society breached its duty to train and supervise Defendant Walter by failing to institute policies, practices, and customs that would prohibit the misconduct alleged above.

287.    As a result of Defendant Vidocq Society's negligence, Defendant Walter violated McGuffin's constitutional rights by committing the misconduct alleged above.

288.    As a result of the negligent training and supervision by Defendant Vidocq Society, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

289.    As a result of the negligent training and supervision by Defendant Vidocq Society, S.M. suffered a loss of consortium as set forth above.

## XIII.  EIGHTH CLAIM FOR RELIEF

### (State Law – Intentional Infliction of Emotional Distress)

290.    Plaintiffs incorporate by reference herein the allegations set forth above in paragraphs 1 through 289 in their entirety.

291.    The acts and misconduct of the Defendants as alleged above were extreme and outrageous.  The actions were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability that their actions would cause, severe emotional distress to McGuffin and S.M. as alleged above.

///

///

Page 45– COMPLAINT FOR DAMAGES

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

292.   As a direct and proximate result of the actions by the Defendants, McGuffin has suffered and continues to suffer physical sickness and severe emotional distress.

293.   As a result of the misconduct by the Defendants, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

294.   As a result of the misconduct by the Defendants, S.M. suffered a loss of consortium as set forth above.

## XIV.  EIGHTH CLAIM FOR RELIEF

### (State Law – Negligent and/or Intentional Spoliation of Evidence)

295.   Plaintiffs incorporate by reference herein the allegations set forth above in paragraphs 1 through 294 in their entirety.

296.   The Defendants had a duty to preserve evidence.

297.   The Defendants breached their duty to preserve evidence by negligently and/or intentionally suppressing, tampering with, and/or destroying evidence that was exculpatory and materially favorable to McGuffin.

298.   Defendants knew or should have known that the information, physical items, and records that were suppressed, tampered with, and/or destroyed would be required as evidence.

299.   As a direct and proximate result of the actions by the Defendants, the value of Plaintiffs' claims in this lawsuit were diminished.

300.   As a result of the misconduct by Defendants, Plaintiffs are entitled to any diminished value of their claims.

///

///

MALONEY | LAUERSDORF | REINER, PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

## XV.  NINTH CLAIM FOR RELIEF

### (State Law – Indemnification)

301.    Plaintiffs incorporate by reference herein the allegations set forth above in paragraphs 1 through 300 in their entirety.

302.    Oregon law provides that the State of Oregon and the Municipal Defendants are directed to pay any tort judgment for compensatory damages for which their employees and agents are liable within the scope of their employment activities.

303.    The individual Defendants were employees or agents of the State and the Municipal Defendants, and were acting within the scope of their employment or agency at all times relevant in committing the acts and omissions described in this complaint.

## XVI.  TENTH CLAIM FOR RELIEF

### (Attorney Fees Pursuant to 42 U.S.C. § 1988(b) and (c))

304.    Plaintiffs incorporate by reference herein the allegations set forth above in paragraphs 1 through 303 in their entirety.

305.    Pursuant to 42 U.S.C. § 1988(b) and (c), Plaintiffs are entitled to their attorney fees incurred in this action.

## XVII.  JURY DEMAND

Plaintiffs request a trial by jury of twelve.

## XVIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

1.    Judgment against Defendants and in favor of Plaintiffs on all claims for relief stated herein;

2.    An award of Plaintiffs' economic and non-economic damages;

3.    An award of punitive damages;

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1    4.    An award of Plaintiffs' costs and attorney fees in this action pursuant

2  to 42 U.S.C. § 1988(b) and (c); and

3    5.    Such other relief as the Court finds just and equitable.

4

5    DATED:  July 20, 2020

| MALONEY LAUERSDORF REINER PC | LOEVY & LOEVY |
|---|---|
| By /s/Janis C. Puracal<br>Janis C. Puracal, OSB #132288<br>E-Mail:  jcp@mlrlegalteam.com<br>Andrew C. Lauersdorf, OSB #980739<br>E-Mail:  acl@mlrlegalteam.com<br>Christine A. Webb, OSB #184744<br>E-Mail:  caw@mlrlegalteam.com | By /s/David B. Owens<br>David B. Owens, WSBA #53856<br>E-Mail:  david@loevy.com<br>*Pro hac vice pending* |

Page 48– COMPLAINT FOR DAMAGES