ELLEN F. ROSENBLUM
Attorney General
JESSE B. DAVIS  #052290
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Jesse.b.davis@doj.state.or.us

TODD MARSHALL  #112685
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email:  Todd.Marshall@doj.state.or.us

Attorneys for Defendants Hormann, Krings, Riddle and Wilcox

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NICHOLAS JAMES MCGUFFIN, as an individual and as guardian *ad litem*, on behalf of S.M., a minor, | Case No.  6:20-cv-1163-MK |
| Plaintiffs, | STATE DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT |
| v. | |
| MARK DANNELS, PAT DOWNING, SUSAN HORMANN, MARY KRINGS, KRIS KARCHER, SHELLY MCINNES, RAYMOND MCNEELY, KIP OSWALD, MICHAEL REAVES, JOHN RIDDLE, SEAN SANBORN, ERIC SCHWENNINGER, RICHARD WALTER, CHRIS WEBLEY, ANTHONY WETMORE, KATHY WILCOX, CRAIG ZANNI, DAVID ZAVALA, JOEL D. SHAPIRO AS ADMINSTRATOR OF THE ESTATE OF DAVE HALL, VIDOCQ SOCIETY, CITY OF COQUILLE, CITY OF COOS BAY, and COOS COUNTY, | |
| Defendants. | |

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1, undersigned counsel certifies that he conferred with counsel for plaintiffs in a good faith effort to resolve the issues disputed in this motion prior to seeking a decision from the Court, but the parties were unable to do so.

## PARTIAL MOTION TO DISMISS

Plaintiffs have a filed a First Amended Complaint for Damages.  ECF 100 ("First Amended Complaint," cited as "FAC").  Defendants Susan Hormann, Mary Krings, Kathy Wilcox, and John Riddle (collectively, "State Defendants"), appearing without prejudice to their immunity conferred by the Eleventh Amendment to the United States Constitution, hereby move the Court for an order dismissing the following claims and counts:

A.    First Claim, Count 3, entitled "Illegal Pretrial Detention Following the Issuance of Legal Process," because that claim is time-barred;

B.    First Claim, Count 6, and Fourth Claim, for conspiracy, because neither claim alleges a plausible conspiracy;

C.    First Claim, Count 7, and Seventh Claim, for destruction and spoliation of exculpatory evidence, because plaintiffs do not identify any evidence destroyed by the State Defendants; and

D.    First Claim, Count 2, and Third Claim, for malicious prosecution, because plaintiffs do not allege facts sufficient to establish favorable termination of criminal proceedings.

This motion is supported by Fed. R. Civ. P. 12(b)(6), the previously filed Declaration of Jesse B. Davis in Support of State Defendants' Motion to Dismiss (ECF 58), and the Court's files and records in this matter.

## I.    Introduction

Plaintiff Nicholas McGuffin was convicted on July 19, 2011, by a jury in Coos County Circuit Court for manslaughter for the death of his girlfriend, Leah Freeman.  Freeman

Page 2 -    STATE DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED
           COMPLAINT
           131679271
                                    Department of Justice
                                    100 SW Market Street
                                    Portland, OR 97201
                                    (971) 673-1880 / Fax: (971) 673-5000

disappeared from Coquille, Oregon, on June 28, 2000. Her body was found on August 3, 2000, in a rural area adjacent to the North Fork of the Coquille River, approximately 9 miles from where she was last seen alive. She was 15 years old. McGuffin was 18 years old.

After McGuffin's direct appeals were denied, he sought post-conviction relief. In November 2019, the Malheur County Circuit Court vacated McGuffin's conviction. The Coos County District Attorney noted that he agreed with the post-conviction court's statements that the record contained evidence of McGuffin's guilt, but nonetheless moved to dismiss the case. Davis Decl. ¶ 2, Ex. A.[1] The District Attorney noted, among other things, that at least two of the witnesses at the 2011 trial were deceased. Further, even if McGuffin were convicted on retrial, he could not receive a sentence longer than his original 10-year sentence, and by the time he could have been realistically retried, he would likely have already served his entire original sentence, thus leaving little practical value to a retrial. *Id*. Ex. A at 2-3.

Plaintiffs then instituted this action. Plaintiffs' original complaint contained a total of sixteen claims and counts for relief against the State Defendants, a group of defendants that, at that time, included the Oregon State Police. Those claims and counts included seven counts for relief under 42 U.S.C. § 1983 and nine tort claims arising under state law.

All defendants moved to dismiss. The Court issued a Findings and Recommendation granting the motions in part and denying them in part. ECF 83. That Findings and Recommendation was adopted by the Court. ECF 99. The Court dismissed four claims with prejudice, the "Illegal Detention and Prosecution" claim (First Claim, Count 2), the defamation claim (Fourth Claim), the invasion of privacy claim (Fifth Claim), and the indemnification claim (Ninth Claim). ECF 83 at 38. The Court dismissed three claims without prejudice, the § 1983

---

[1] The Court may take notice of "Plaintiff's Motion to Dismiss" filed in Coos County Circuit Court Case No. 10CR0782, attached as Exhibit A to the previously filed Declaration of Jesse B. Davis in Support of State Defendants' Motion to Dismiss (ECF 58, cited herein as "Davis Decl."), either under the doctrine of judicial notice or the grounds that it is incorporated into the First Amended Complaint by reference. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Note that Plaintiff's Motion to Dismiss the criminal case included, as an exhibit, a copy of the General Judgment from the post-conviction relief case.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

conspiracy claim (First Claim, Count 5), the state civil conspiracy claim (Sixth Claim), and spoliation of evidence claim (Eighth Claim).  *Id.*  In addition, all claims against State Defendant Riddle were dismissed without prejudice.  *Id.*

Plaintiffs then filed their First Amended Complaint.  ECF 100.  Plaintiffs again assert 16 claims and counts, including 10 counts of violations of 42 U.S.C. § 1983, as follows: (1) violation of the Fourteenth Amendment, generally stated; (2) malicious prosecution; (3) "Illegal Pretrial Detention Following the Issuance of Legal Process;" (4) failure to disclose exculpatory information; (5) failure to intervene; (6) conspiracy; (7) destruction of exculpatory evidence; (8) Unconstitutional Policies, Practices, and Customs of the Municipal Defendants (a group of defendants that does not include the Oregon State Police or any of its officials); (9) violation of S.M.'s Fourteenth Amendment liberty interest in the companionship of her father; and (10) vicarious liability against the Vidocq Society.  In addition, plaintiffs assert state law tort claims as follows: (11) false imprisonment; (12) malicious prosecution; (13) civil conspiracy; (14) negligent training and supervision against the Municipal Defendants; (15) intentional infliction of emotional distress; and (16) negligent and/or intentional spoliation of evidence.

The State Defendants now respectfully move the Court to dismiss the claims and counts identified above.

## II.    Legal Standards

A complaint must contain sufficient allegations of fact to give fair notice and to enable the opposing party to defend itself effectively, and the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The complaint must allege enough facts to state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Id*. at 556-

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

57.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id*.  Facts that are merely consistent with a defendant's liability are insufficient.  *Id*.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  *Id.*  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.  *Id*.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id*.  Such legal conclusions couched as factual allegations are not accepted as true.  *Id*.

In evaluating a complaint under Rule 12(b)(6), particularly as to a complaint that names multiple individual defendants, a court must determine whether the pleadings contain enough factual content to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Personal liability under §1983 demands that a plaintiff plead "that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution."  *Id*. at 676; *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).  A person deprives another of a constitutional right, within the meaning of section 1983, if he or she does an affirmative act, participates in another's affirmative acts, or omits an act which he or she is legally required to perform that causes the deprivation of which the plaintiff complains.  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the deprivation.  Pleadings that lack an affirmative link between the injury and the conduct of the defendant do not state a cause of action under §1983.  *Rizzo v. Goode*, 423 U.S. 362, 370–71, 375–77 (1976).

A Rule 12(b)(6) motions to dismiss may be based on either: 1) the lack of a cognizable legal theory; or 2) the absence of "sufficient facts" alleged under a cognizable legal theory.  *Balistreri v. Pacifica Pol. Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

Page 5 -    STATE DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED
COMPLAINT
131679271

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

III.    **Plaintiffs' "Illegal Pretrial Detention Following the Issuance of Legal Process" claim merely renames their time-barred "Illegal Detention and Prosecution" claim from the original complaint, and the Court should again dismiss it.**

The Court dismissed plaintiffs "Illegal Detention and Prosecution" claim from the original complaint. Because that claim was time-barred, the Court dismissed it with prejudice. ECF 83 at 19-20, 38.

In their First Amended Complaint, plaintiffs essentially try it again, essentially by breaking that same claim into two § 1983 claims, one for malicious prosecution and one for "Illegal Pretrial Detention Following the Issuance of Legal Process." FAC ¶¶ 206-217 (First Claim, Counts 2 and 3). A review of the Complaint and the First Amended Complaint, as well as the arguments made by plaintiffs in their prior briefing, reveals that their "Illegal Detention and Prosecution" claim from the original Complaint challenged the lawfulness of McGuffin's pretrial detention. *See* Pls.' Opp'n to State Defs.' Mot. to Dismiss (ECF 62) at 19-23; Pls.' Objections to Findings and Recommendations (ECF 87 at 5-8). And that is exactly what plaintiffs again challenge in their "Illegal Pretrial Detention Following the Issuance of Legal Process" claim. In fact, paragraph 194 of the Complaint and paragraph 214 of the First Amended Complaint both state precisely as follows: "In so doing, Defendants caused McGuffin to be deprived of his liberty, detained without probable cause, and improperly subjected to judicial proceedings for which there was no probable cause." Plaintiffs even used this same description of this claim in their previous arguments, arguments that the Court considered and found unpersuasive. *See* Pls.' Objections to Findings and Recommendation (ECF 87) at 5 (arguing that "Fourth Amendment seizures arising from false arrest and illegal pretrial detention after legal process (when the arrest is over) constitute different legal claims.") (bold omitted).

State Defendants hereby incorporate the arguments they made against this claim previously. *See* State Defs.' Mot. to Dismiss (ECF 57) at 10-11; State Defs.' Reply in Supp. of Mot. to Dismiss (ECF 71) at 8-9; State Defs.' Resp. to Pls.' Objections to Findings and Recommendations (ECF 95) at 2-3. This claim, though renamed, is functionally unchanged. It

Page 6 -    STATE DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT
131679271
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

is still untimely because it could have been filed immediately upon McGuffin's pretrial

detention, as the Court correctly concluded. ECF 83 at 20. State Defendants respectfully request

that the Court again dismiss this claim with prejudice.

**IV.    Plaintiffs' conspiracy claims still do not contain sufficient factual content to support a plausible inference that any State Defendant participated in an unlawful conspiracy.**

The Court dismissed the conspiracy claims under § 1983 and under state law, concluding

that plaintiffs failed to allege facts sufficient to support a plausible inference of unlawful

conspiracy. ECF 83 at 13-14. Plaintiffs have attempted to replead their § 1983 conspiracy claim

(First Claim, Count 6) and their state law civil conspiracy claim (Fourth Claim). The Court

should again dismiss these claims.

Plaintiffs allege that all the defendants conspired "within their own subgroups and

between each of those subgroups" to convict McGuffin. FAC ¶ 180. They assert that each

"subgroup worked as a team, sharing information and collaborating on next steps." *Id.* ¶ 181.

But plaintiffs do not allege how the OSP Lab Defendants subgroup worked as a team, shared

information, or collaborated on next steps. More importantly, they do not suggest how the OSP

Lab Defendants performance of those actions would plausibly suggest a conspiracy. It is routine

investigative procedure for a criminalist such as Wilcox to work a crime scene, examine items,

send items for further analysis by specialists in a variety of disciplines, including DNA analysis

(Hormann and Krings were DNA analysts), and share relevant information.

Plaintiffs state that the acts described previously in the complaint, including fabricating

reports, withholding exculpatory evidence, and coercing witnesses, are "unlikely to have been

undertaken without an agreement." *Id.* ¶ 182. But that is not a factual allegation; it is just

argument, argument that the Court has already rejected. *See* Pls.' Opp'n to State Defs.' Mot. to

Dismiss at 9 (arguing that plaintiffs "allege that these individuals [referring to Hormann, Wilcox,

Riddle, and Dannels] "worked together to fabricate additional evidence, including false witness

statements like the one from Ms. Steinhoff, and suppress exculpatory evidence, including the exculpatory DNA evidence, as well as evidence of the Defendants' own misconduct.").

Plaintiffs note that "at least five of the individual Defendants overlapped between the original investigation and the cold case investigation, and each of the overlapping individuals knew about exculpatory evidence that had been suppressed and evidence that had been fabricated to falsely suggest McGuffin's guilt."  FAC ¶ 182.  Of course, the number of individuals overlapping between those two investigative phases—which were separated by at least six years—was evident from plaintiffs' original complaint; it was not persuasive to the Court then and it should not be persuasive now.

Plaintiffs continue by providing six examples of how those overlaps allegedly suggest a conspiracy.  Only three of those examples pertain to the State Defendants.  First, plaintiffs assert that Defendant Hormann "participated in the DNA testing that produced exculpatory DNA evidence in the original investigation, and Hormann then participated in the cold case investigation, wherein that evidence was suppressed."  *Id*. ¶ 182(a).  That allegation does not support the connection plaintiffs ask the Court to draw.  Hormann's DNA analysis DNA in 2000-2002, followed by her participation in an investigation several years later in which exculpatory evidence was allegedly suppressed, does not suggest any meeting of the minds.  It does not even suggest the involvement of any other person.  She just participated at two different times.

The second illustrative example plaintiffs offer is that "Defendants Wilcox, Hormann, and Karcher participated in examining Freeman's shoes during the original investigation, and these individuals then participated in the cold case investigation, wherein the Defendants fabricated blood evidence on Freeman's right shoe that did not exist."  *Id*. ¶ 182(c).  Karcher is not a State Defendant.  As to this "fabricated blood evidence," plaintiffs say only that the Cold Case Investigators and Defendant Walter also deliberately fabricated evidence by "falsely reporting that blood had been found on Freeman's right Nike tennis shoe when it had not."  *Id*. ¶ 112.  Plaintiffs go on to state that Defendants Dannels and Walter both repeated on the

Page 8 -    STATE DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED
            COMPLAINT
            131679271

television program "20/20" the false claim that blood had been found on the right shoe. *Id*. ¶¶

113, 115, 146.  These allegations—first that the shoes were examined in 2000 by certain

defendants (defendants whose jobs routinely included analysis of those shoes), and second that

different defendants made false statements on television in 2010 about that analysis—are classic

examples of parallel conduct, conduct that may be consistent with a conspiracy but not plausibly

suggestive of one. *Twombly*, 550 U.S. at 556-57.  The only thing connecting these parallel

actions is plaintiffs' construction of the groups that include the parallel actors.

     The final example pertaining to the State Defendants is that "Wilcox and Karcher

participated in examining McGuffin's car during the original investigation, and these individuals

then participated in the cold case investigation and at trial, wherein the Defendants fabricated

evidence that the car had been wiped clean when it had not."  FAC ¶ 182(d).  This relates to

plaintiffs' allegations that "Cold Case Investigators, along with the Original Investigating

Officers, also fabricated evidence for the purpose of creating the false inference that McGuffin

had used his Ford Mustang to transport Freeman's body after she was abducted and murdered,

including falsely reporting, and repeating on '20/20,' that the Ford Mustang had been 'wiped

clean' shortly after Freeman's abduction and murder, when that claim was untrue . . . ." *Id*.

¶ 138.  Again, plaintiffs identify no facts suggesting coordinated conduct.  In essence, they assert

that Wilcox and Karcher examined the car in 2000, and then in 2010, the "Defendants,"

generally and broadly stated, falsely stated that the car had been wiped clean.  Nothing about

those events, separated by a span of 10 years, plausibly suggests coordinated action.

     Just as in their first Complaint, plaintiffs do not plead any facts about the formation of the

conspiracy.  They allege only that it existed and that its purpose was to convict McGuffin, a

purpose proven by little more than the fact of the conviction itself.  But that is not enough.  As

the Court has recognized, that law enforcement officers ultimately focused on a particular

suspect, who was later convicted, does not plausibly suggest an unlawful conspiracy.  Lawful

investigations also frequently narrow to particular suspects, who are later convicted.  ECF 83

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

at 6.  Plaintiffs simply do not point to specific facts sufficient to support either conspiracy claim. Both should be dismissed.

**V.  Plaintiffs' destruction and spoliation of evidence claims still do not contain sufficient factual content to support a plausible inference that any State Defendant unlawfully destroyed evidence.**

The Court declined to dismiss the § 1983 destruction of exculpatory evidence claim, but dismissed the state law claim for negligent and/or intentional spoliation of evidence with leave to replead.  Those claims now appear as plaintiffs' First Claim, Count 7, and their Seventh Claim. Plaintiffs fails to support these claims with sufficient factual allegations.

Although the Court decline to dismiss the destruction of exculpatory evidence claim, the Court correctly noted, the "State Defendants are not alleged to have participated in the destruction of videotapes or any other evidence."  ECF 83 at 27.  The allegations by which plaintiffs describe the destruction of evidence are materially unchanged as to the State Defendants.  Plaintiffs allege that the destroyed evidence included a videotape from a US Bank, but plaintiffs still do not allege that any State Defendant destroyed it.  FAC ¶¶ 66-67.  Plaintiffs allege that a videotape of the original crime scene was destroyed, but not by any State Defendant. *Id*. ¶ 68.  Plaintiffs continue, "The Cold Case Investigators also deliberately suppressed, tampered with, and/or destroyed relevant and material impeachment evidence that undermined the credibility of key prosecution witnesses, including evidence of their own misconduct and violations of McGuffin's rights described herein."  *Id*. ¶ 139.  But that exact sentence appeared as paragraph 133 of the original Complaint.  That general, conclusory allegation of destruction of evidence was not sufficient then and should not be sufficient now.

The exact nature of this claim is important.  Plaintiffs have alleged a claim for "Failure to Disclose Exculpatory Information."  FAC at 33 (First Claim, Count 4).  This is a § 1983 claim arising from *Brady v. Maryland,* 373 U.S. 83 (1963), which involves unlawfully failing to disclose—meaning, in context, suppressing—material evidence of an exculpatory or impeaching nature.  *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999) (identifying suppression of evidence as

Page 10 -   STATE DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED
             COMPLAINT

one of three key components of a *Brady* violation).  The Court concluded that plaintiffs properly stated "a claim that Defendants failed to disclose exculpatory evidence."  ECF 83 at 11.  State Defendants do not again move to dismiss plaintiffs' *Brady* claim (First Claim, Count 4).

But plaintiffs have also asserted a separate § 1983 claim for "Destruction of Exculpatory Evidence."  FAC at 36 (First Claim, Count 7).  For those two claims to be meaningfully distinct, there must be a meaningful distinction between "destruction" and "suppression" of evidence.  In contrast to their allegations regarding *suppression* of evidence, plaintiffs do not allege that the State Defendants destroyed any evidence.  Accordingly, the First Claim, Count 7, and the Eighth Claim, should be dismissed.

## VI.  The court should dismiss plaintiffs' malicious prosecution claims because plaintiffs cannot allege that the prosecution was terminated in a manner indicative of McGuffin's innocence.

The Court initially dismissed plaintiffs' state law malicious prosecution claim because the dismissal of the criminal charges against McGuffin did not reflect adversely on the merits of those charges.  ECF 83 at 30.  Thus, plaintiffs were unable to establish the "favorable termination" of criminal charges element of the malicious prosecution claim, as state law requires.  *Id.* (citing *Perry v. Rein*, 215 Or. App. 113, 130 (2007)).  The Court based that conclusion on the Malheur County Circuit Court judgment granting post-conviction relief to McGuffin and the District Attorney's subsequent Motion to Dismiss the criminal charges.  The Court dismissed with leave to replead.  *Id.*

Whereas plaintiffs' original Complaint asserted only a state law claim for malicious prosecution, the First Amended Complaint now asserts claims for malicious prosecution under 42 U.S.C. § 1983 (First Claim, Count 2) and under state law (Third Claim).  These claims fail because they do not meet the element, common to both claims, that the criminal proceedings terminated sufficiently in McGuffin's favor.

Federal courts incorporate the elements of state common law claims for malicious prosecution into their analysis of malicious prosecution claims under § 1983.  *Awabdy v. City of*

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).  Under Oregon law, a malicious prosecution

plaintiff must demonstrate (1) the institution or continuation of criminal proceedings; (2) by or at

the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor;

(4) malice in instituting the proceedings; (5) lack of probable cause for the proceedings; and

(6) injury or damage as a result.  *Miller v. Columbia Cnty.*, 282 Or. App. 348, 360 (2016).  Under

California law, which also requires that the criminal proceedings terminate in the plaintiff's

favor, a dismissal of the criminal proceedings in the interest of justice constitutes termination in

the plaintiff's favor only if it "reflects the opinion of the prosecuting party or the court that the

action lacked merit or would result in a decision in favor of the defendant."  *Awabdy*, 368 F.3d at

1068; *Mills v. City of Covina*, 921 F.3d 1161, 1171 (9th Cir. 2019) (affirming dismissal of

malicious prosecution action where underlying criminal conviction was vacated by reason of the

exclusionary rule, and thus did not sufficiently suggest plaintiff's innocence).  Similarly, under

Oregon law, dismissal of the claims must "reflect adversely on the merits of the action."  *Perry*,

215 Or. App. at 130.  Where a criminal proceeding is dismissed because of the prosecutor's

opinion that the resulting sentence did not justify continuing the prosecution, that dismissal does

not reflect adversely on the merits of the action.  *See Lloyd v. Gerhard*, 2019 WL 1450531, *3-4

(D. Or. Jan. 2, 2019), *aff'd*, 802 F. App'x. 302, 303 (9th Cir. 2020).

The parties litigated the favorable termination element in the initial round of motions to

dismiss.  State Defendants initially asserted that because plaintiffs could not establish that the

criminal proceedings had terminated in plaintiffs' favor, all the claims that required favorable

termination had to be dismissed.  *See* State Defs.' Mot. to Dismiss (ECF 57) at 7-8.  Plaintiffs

countered that, for purposes of determining when a former criminal defendant can bring a

malicious prosecution claim, the "favorable termination requirement occurs 'once the criminal

proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated

within the meaning of *Heck* [*v. Humphrey*, 512 U.S. 477 (2019)].'"  Pls.' Opp'n to State Defs.'

Mot. to Dismiss (ECF 62) at 10-11 (citing *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019)).

Page 12 -  STATE DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED
COMPLAINT
131679271

The State Defendants conceded that "what 'favorable termination means under section 1983 for statute of limitation purposes under the rules of *McDonough* and *Heck* is different than what that term means as an element of a common law claim for malicious prosecution." State Defs.' Reply in Supp. of Mot. to Dismiss (ECF 71) at 3. Thus, the State Defendants withdrew their argument that plaintiffs had not established favorable termination for purposes of the *Heck* bar— that is, for purposes of *when* the cause of action accrued and the statute of limitations began to run—with respect to § 1983 claims that faced the *Heck* bar. *Id.*

But the State Defendants retained their argument that plaintiffs had failed to establish favorable termination as a *substantive element* of their state law claim for malicious prosecution. *Id.* Ultimately, the Court agreed. The original Complaint did not assert a § 1983 claim for malicious prosecution, so the State Defendants have never conceded that plaintiffs had established favorable termination as an element of a § 1983 claim for malicious prosecution.

Both state and § 1983 claims for malicious prosecution are now at issue. Plaintiffs again fail to establish favorable termination as a substantive element of both claims.[2] As the post-conviction judgment and the District Attorney's Motion to Dismiss make clear, the dismissal was not indicative of McGuffin's innocence. To the contrary, the post-conviction relief judgment noted that the record contained evidence of guilt. Davis Decl. Ex. A at 8 (denying claim of actual innocence and noting that the District Attorney's testimony is a "concise summary of evidence from which a jury could find the defendant guilty"). Further, the District Attorney noted in the motion that there was evidence of guilt, but also observed potential difficulties at retrial. At least two of the original trial witnesses had died. Two others had medical or mental health issues that diminished their ability to testify. The availability of other witnesses was unknown but doubtful. And the passage of over 19 years since Freeman's death obviously

---

[2] To reiterate, State Defendants do not assert in this motion that plaintiffs have not established favorable termination as that term has come to be understood under *Heck* and its progeny for purposes of triggering the statute of limitations. State Defendants simply maintain, consistent with their previous position, that "favorable termination" means something different under the substantive state law that defines the elements of both of plaintiffs' malicious prosecution claims.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

would diminish the reliability of any available witness' memory.  Further, even if McGuffin were convicted on retrial, he could not receive a sentence longer than his original 10-year sentence, of which he had already served over 9 years.  Thus, considering the effort and cost of a new trial, combined with the associated trauma that would be visited upon Freeman's family, a retrial would serve little practical purpose.  *See* Davis Decl. Ex. A at 2-3.

To support their malicious prosecution claims, plaintiffs add their paragraphs 165 and 166, which provide as follows:

> 165.    The dismissal was not the product of any agreement between the parties. Indeed, the District Attorney pursued an *ex parte* order of dismissal within hours after filing his motion to dismiss, without waiting for any response to the motion. He earlier told a reporter that "There is unknown male DNA on those shoes. Does it exonerate McGuffin? Maybe, but I don't know."

> 166.    Based upon information and belief, the District Attorney recognized that, if pursued, the action would result in a decision in favor of McGuffin due to the lack of inculpatory evidence, as well as the exculpatory evidence and government misconduct discovered during the post-conviction case.

FAC ¶¶ 165-166.  The allegation that the District Attorney pursued an *ex parte* order of dismissal shortly after filing the motion to dismiss adds nothing of substance.  The District Attorney himself had moved to dismiss the chargers and "to order the Oregon Department of Corrections to release the defendant forthwith."  Davis Decl. Ex. A at 2-3.  The District Attorney would have no reason to expect Mr. McGuffin to oppose the motion.  The routine submission of an order in support of an unopposed motion does not suggest innocence.  And given the decision to drop the charges, it makes sense that the District Attorney would proceed promptly to release him from custody.  Plaintiffs' allegation about the District Attorney's comments regarding foreign DNA on Freeman's shoes likewise does not suggest McGuffin's innocence.  The District Attorney had already recognized potential difficulties on retrial in the Motion to Dismiss.  But that does not suggest that criminal proceedings terminated in a manner suggestive of McGuffin's innocence, particularly considering all the other practical and social considerations identified by the District Attorney and the evidence of guilt identified by the post-conviction court.  Accordingly,

Page 14 -   STATE DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT

131679271
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Plaintiffs cannot establish that the proceedings terminated in their favor as an element of both state law and § 1983 malicious claims, and both claims should be dismissed.

**VII.    Conclusion.**

For all the reasons stated herein, Counts 2, 3, 6, and 7 of the First Claim for Relief, as well as the Third, Fourth, and Seventh Claims for relief, should be dismissed.

DATED December  1 , 2021.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


       *s/ Jesse B. Davis*
JESSE B. DAVIS  #052290
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Jesse.b.davis@doj.state.or.us

TODD MARSHALL  #112685
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email: Todd.Marshall@doj.state.or.us
      Of Attorneys for Defendants Hormann,
      Krings, Riddle, and Wilcox

Page 15 -  STATE DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED
            COMPLAINT
         131679271
                        Department of Justice
                        100 SW Market Street
                        Portland, OR 97201
                    (971) 673-1880 / Fax: (971) 673-5000