Janis C. Puracal, OSB #132288
E-mail: jcp@mlrlegalteam.com
Andrew C. Lauersdorf, OSB #980739
E-mail: acl@mlrlegalteam.com
MALONEY LAUERSDORF REINER, PC
1111 E. Burnside Street, Ste. 300
Portland, OR  97214
Telephone: (503) 245-1518
Facsimile: (503) 245-1417

David B. Owens, WSBA #53856, *pro hac vice*
E-mail: david@loevy.com
LOEVY & LOEVY
100 S. King Street, Ste. 100
Seattle, WA  98104-2885
Telephone: (312) 590-5449

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| NICHOLAS JAMES MCGUFFIN, as an individual and as guardian *ad litem*, on behalf of S.M., a minor,<br>                    Plaintiffs,<br><br>        v.<br><br>MARK DANNELS, PAT DOWNING, SUSAN HORMANN, MARY KRINGS, KRIS KARCHER, SHELLY MCINNES, RAYMOND MCNEELY, KIP OSWALD, MICHAEL REAVES, JOHN RIDDLE, SEAN SANBORN, ERIC SCHWENNINGER, RICHARD WALTER, CHRIS WEBLEY, ANTHONY WETMORE, KATHY WILCOX, CRAIG ZANNI, DAVID ZAVALA, JOEL D. SHAPIRO AS ADMINISTRATOR OF THE ESTATE OF DAVID E. HALL, VIDOCQ SOCIETY, CITY OF COQUILLE, CITY OF COOS BAY, and COOS COUNTY,<br>                    Defendants. | Civil No. 6:20-cv-01163-MK<br>(Lead Case)<br><br><br>PLAINTIFFS' OPPOSITION TO MOTION TO QUASH BY DEFENDANTS VIDOCQ SOCIETY AND RICHARD WALTER |

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

NICHOLAS JAMES MCGUFFIN, as an individual and as guardian *ad litem*, on behalf of S.M., a minor,

Plaintiffs,

v.

OREGON STATE POLICE,

Defendant.

Civil Case No. 3:21-cv-01719-MK
(Trailing Case)

## I. RELIEF REQUESTED / INTRODUCTION

Plaintiffs request that the court deny the motion to quash filed by Defendants Vidocq Society and Richard Walter (the "Vidocq Defendants"). Plaintiffs issued a valid and lawful subpoena to a third party entity, the American Academy of Forensic Sciences ("AAFS")—which has not objected to the subpoena—for information and documents to which Mr. Walter referred during his deposition in this case. The Vidocq Defendants have relied on Mr. Walter's affiliation with AAFS to suggest that Plaintiffs' claims lack merit. Information from AAFS is relevant and proportional to the needs of the case.

## II. STATEMENT OF FACTS

Mr. McGuffin spent nine years in prison for a crime that he did not commit.[1] Those nine years came after the Defendants relentlessly pursued him for eleven years, fabricating evidence and creating a false narrative that ultimately resulted in an indictment and wrongful conviction.[2] Following vacatur of the conviction and dismissal of the charges, Mr. McGuffin and his daughter brought this lawsuit to redress nearly two decades of harassment, humiliation, and torment caused by the Defendants, including the Vidocq Defendants.[3]

---

[1] First Amended Complaint ¶ 1 [Dkt. No. 100].

[2] *Id.* ¶¶ 2–3.

[3] *Id.* ¶ 4.

Page 2– PLAINTIFFS' OPPOSITION TO MOTION TO QUASH

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

The Vidocq Defendants represent themselves to be experts with superior investigation skills who can solve cold cases when law enforcement cannot.[4]  Mr. Walter—one of the founders of the Vidocq Society—claims to be "the expert to the expert."[5]  The Vidocq Society model is set up such that law enforcement officers and prosecutors are invited to attend a monthly lunch at the Vidocq Society in Pennsylvania and, after the lunch, Mr. Walter purports to offer his deep insights based on his alleged expertise.[6]  If they like what they hear, prosecutors or law enforcement officers (such as the other Defendants in this case) will agree to engage Mr. Walter in the investigation, paying for things like travel expenses and consulting fees.[7]

Mr. Walter then uses his purported skills to sleuth and "identify" the perpetrator.[8]  Mr. Walter's online biography for the "Sherry Black Foundation"—another company that Mr. Walter created to market his talents to law enforcement—characterizes him as "an international expert on crime assessment, profiling, and risk evaluation."[9]

Mr. Walter, and the Vidocq Society, specifically rely on Mr. Walter's affiliation with the American Academy of Forensic Sciences ("AAFS"), generally, to bolster their credibility and, in this case, to suggest that the "profile" that Mr. Walter created, pointing to Mr. McGuffin as the

---

[4] *See* Vidocq Society Website (Exhibit 1 to the Declaration of Janis C. Puracal in Support of Plaintiffs' Opposition to Motion to Quash ("Puracal Decl.")).  *See also* Rob Wallace, *et al.*, *Cold Case Squad: Modern-Day 'Sherlock Holmes' Team Takes on Oregon Slaying*, ABC News (August 11, 2010) (Exhibit 2 to Puracal Decl.); Doug Johnson, *The Murder Room*, Who Murdered Robert Wone (December 13, 2010) (Exhibit 3 to Puracal Decl.).

[5] Jillian Putnam, *Q&A with Richard Walter, Criminal Profiler and Psychologist*, The Albion Pleiad at p.4 (April 10, 2013) (Exhibit 4 to Puracal Decl.).

[6] *See*, *e.g.*, Graham Kates, *Murder on the Menu*, The Crime Report (November 19, 2011) (Exhibit 5 to Puracal Decl.).  *See also* Deposition of Richard Walter 242:25–244:13, 245:18–250:13, 255:3–260:12 (Exhibit 6 to Puracal Decl.).

[7] Deposition of Richard Walter 242:25–244:13, 245:18–250:13, 255:3–260:12 (Exhibit 6 to Puracal Decl.).

[8] *Id.* at 267:16–22.

[9] Sherry Black Foundation Website at p.3 (Exhibit 7 to Puracal Decl.).

Page 3– PLAINTIFFS' OPPOSITION TO MOTION TO QUASH



MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

killer, is legitimate rather than a fabrication as Plaintiffs allege.[10]

AAFS is a trade organization that is "comprised of pathologists, attorneys, dentists, toxicologists, anthropologists, document examiners, digital evidence experts, psychiatrists, engineers, physicists, chemists, criminalists, educators, researchers, and others."[11] AAFS serves its members by organizing an annual conference, publishing articles in the *Journal of Forensic Sciences*, and publishing position statements.[12] According to its policies and procedures manual, AAFS also conducts investigations into ethics violations by its members and can issue sanctions.[13]

Mr. Walter has specifically used his affiliation with AAFS to create a supposed connection between his own work and the FBI, Scotland Yard, and high-profile cases.[14] It is these types of proclamations that drew law enforcement in the criminal case against Mr. McGuffin to rely on the Vidocq Defendants, flying four representatives from Oregon all the way to Pennsylvania to present the case and get the Vidocq Defendants involved.[15]

It is also these types of proclamations—which Plaintiffs allege are fanciful—that led the ABC News television program "20/20" and the public to believe Mr. Walter and the other Defendants when they claimed on national television to have identified Mr. McGuffin as the perpetrator.[16] The Defendants announced on national television that Mr. Walter and the Vidocq

---

[10] *See, e.g.*, Deposition of Richard Walter 58:9–59:1, 69:13–72:1, 114:1–115:12, 161:3–162:19, 216:21–25 (Exhibit 6 to Puracal Decl.). *See also* Sherry Black Foundation Website at p.3 (Exhibit 7 to Puracal Decl.); Richard Walter Wikipedia at p.1 (Exhibit 8 to Puracal Decl.).

[11] AAFS Website, About the AAFS, https://www.aafs.org/about-us.

[12] *Id.*

[13] AAFS Policy and Procedure Manual § 6.5, https://www.aafs.org/sites/default/files/media/documents/AAFS_PPM_December22.pdf.

[14] *See, e.g.*, Deposition of Richard Walter 58:9–59:1, 161:3–162:19 (Exhibit 6 to Puracal Decl.); Letter from Frasier to Reim, dated August 10, 2016, at 6 [Dkt. No. 136–3].

[15] Letter from Frasier to Reim, dated August 10, 2016, at 4 [Dkt. No. 136–3]; Wallace, *supra*, n.4.

[16] Wallace, *supra*, n.4.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Society are experts who could use the "science" of profiling to identify Leah Freeman's killer.[17]

Before the misconduct alleged in the Freeman investigation, Mr. Walter's misconduct was exposed in a published decision by the Second Circuit Court of Appeals in another criminal case, *Drake v. Portuondo*.[18]  The court in *Drake* recounted how Mr. Walter had learned background facts about the case from law enforcement and then simply created a "profile" to fit the suspect already under investigation.[19]  The appellate court found that Mr. Walter had "weav[ed] the complicated facts of the case into a seemingly coherent narrative" and even adapted his profile "to remedy any potential weaknesses in the prosecution's theory of [the defendant's] motive."[20]

The prosecutor in the criminal case against Mr. McGuffin discovered that Mr. Walter had done the same thing that he had done in *Drake*.[21]  Using background information from law enforcement, Mr. Walter fabricated evidence of motive and a profile of the killer to fit the suspect already under investigation—a profile that, in the prosecutor's own words, "just happened to fit Mr. McGuffin perfectly."[22]

The prosecutor admitted to the Vidocq Defendants' misconduct in a letter to the Oregon Department of Justice during Mr. McGuffin's post-conviction case.[23]  That admission came six years *after* Mr. McGuffin was convicted and while he was still sitting in prison for a crime that he did not commit.[24]  It took another three years before Mr. McGuffin was exonerated.[25]

---

[17] First Amended Complaint ¶¶ 120–21 [Dkt. No. 100].

[18] 553 F.3d 230 (2nd Cir. 2009).

[19] *Id.* at 244.

[20] *Id.*

[21] Letter from Frasier to Reim, dated August 10, 2016, at 6 [Dkt. No. 136–3].

[22] *Id.* at 5.

[23] *Id.* at 5–6.

[24] *Id.*

[25] *Compare id.* (dated August 10, 2016) [Dkt. No. 136–3] *with* General Judgment (Post-

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Mr. McGuffin and his daughter have continued to learn new information about the Vidocq Defendants' actions through this lawsuit. As a result of discovery thus far, Plaintiffs seek further information about the relationship between the Vidocq Defendants and AAFS, the organization upon which the Vidocq Defendants continue to rely to purportedly vouch for Mr. Walter's credibility and to imply that Plaintiffs' claims lack merit.[26] Plaintiffs address the relevance and proportionality of their subpoena to AAFS below.

Plaintiffs also write here to correct the Vidocq Defendants' misstatement of the record. In the motion, the Defendants represent that the court "dismissed all ten Section 1983 Claims (Counts 1–10) contained within [Plaintiffs'] First Claim for Relief," citing Judge Kasubhai's findings and recommendations on the second motions to dismiss.[27]

The court did not dismiss all ten counts under 42 U.S.C. § 1983. Judge Kasubhai recommended granting Plaintiffs leave to amend Counts 1–9 to distinguish between Vidocq Society and the Municipal Defendants.[28] Judge Kasubhai further recommended dismissing Count 10 for *respondeat superior* liability,[29] and Plaintiffs' objection to that ruling is pending before the court.[30] If the court accepts the remaining findings and recommendations, Plaintiffs will still have the right to amend Counts 1–9 against Vidocq Society.[31]

///

///

///

---

Conviction) (dated November 29, 2019) [Dkt. No. 136–2].

[26] Subpoena to AAFS [Dkt. No. 136–1].

[27] Motion at 3.

[28] Findings and Recommendations at 16 [Dkt. No. 128].

[29] *Id.*

[30] Plaintiffs' Objections to Findings and Recommendations [Dkt. No. 130].

[31] Findings and Recommendations at 16 [Dkt. No. 128].

Page 6– PLAINTIFFS' OPPOSITION TO MOTION TO QUASH



MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

### III.  AUTHORITY

As discussed below, the Vidocq Defendants lack standing to quash a subpoena directed to non-party, AAFS.  AAFS does not object to the subpoena and has already indicated its willingness to comply with the subpoena within two weeks.  Even if the Vidocq Defendants hypothetically had standing to object, the subpoena requests information that is relevant and proportional to the needs of the case.

**A.      The Vidocq Defendants lack standing to quash a subpoena directed to a non-party.**

The Vidocq Defendants lack standing to quash a subpoena directed to a non-party under FRCP 45.  In the absence of a claim of privilege, proprietary interest, or personal interest, a party "has no standing to quash a subpoena served upon a third party[.]"[32]  The Vidocq Defendants do not claim a privilege, proprietary interest, or personal interest in the documents requested from AAFS.[33]  The motion should be denied on this basis alone.

Rather than asserting a basis to quash that is recognized by the rules, the Vidocq Defendants assert that the documents are irrelevant and would impose an undue burden on AAFS.  Generally, "[a] party's objection that a subpoena to a non-party seeks irrelevant information or would impose an undue burden are not grounds on which a party has standing to move to quash a subpoena when the non-party has not objected."[34]

---

[32] *Harbord v. Home Depot U.S.A., Inc.*, No. 3:16-cv-2179-SI, 2017 U.S. Dist. LEXIS 43782, at *4 (D. Or. Mar. 24, 2017) (citing *California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 643 (E.D. Cal. 2014) and *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997)).  *See also*, *e.g.*, *Webster v. Northwest Cancer Specialists, P.C.*, No. 3:11-cv-01543-MO, 2012 U.S. Dist. LEXIS 95846, at *3–4 (D. Or. July 7, 2012) (citing 9A CHARLES A. WRIGHT & ARTHUR MILLER, FED. PRACTICE AND PROC. § 2463.1).

[33] Indeed, Mr. Walter has already waived any personal interest in AAFS's alleged investigation into Mr. Walter's misconduct in *Drake* by specifically testifying to that alleged investigation and outcome.  *See* Deposition of Richard Walter at 114:1–115:12, 216:21–25 (Exhibit 6 to Puracal Decl.).

[34] *Wells Fargo & Co. v. ABD Ins.*, No. C 12-03856 PJH (DMR), 2012 U.S. Dist. LEXIS 173365, at *6 (N.D. Cal. 2012) (citing *Finley v. Pulcrano*, No. C08-0248 PVT, 2008 U.S. Dist. LEXIS

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

AAFS, here, has not objected.[35]  Indeed, AAFS has not suggested in any way that responding would be burdensome.[36]  Instead, the day after the Vidocq Defendants filed their motion to quash, AAFS contacted Plaintiffs' counsel to request a short two-week extension to respond to the subpoena in light of the holidays.[37]  The response not only suggests that AAFS intends to fulfill the requests of the subpoena, it further suggests that AAFS can do so in short order.[38]

Although the motion should be denied due to lack of standing, Plaintiffs will address the substance of the Vidocq Defendants' arguments to the extent that the motion could have been filed as a motion for protective order under FRCP 26(c).[39]

**B.      Plaintiffs' subpoena to AAFS requests information that is relevant and proportional to the needs of the case under FRCP 26(b).**

Federal Rule of Civil Procedure 26(b) allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."

---

83821, at *1 (N.D. Cal. Oct. 6, 2008)).

[35] *See* Email from Counsel for AAFS to Counsel for Plaintiffs, dated December 23, 2022 (Exhibit 9 to Puracal Decl.).

[36] *Id.*

[37] *Id.*  After AAFS was notified of the Vidocq Defendants' motion to quash, AAFS notified Plaintiffs that it would take no further action on the subpoena until the court issues a ruling on the Vidocq Defendants' motion.  *Id.* at 3.

[38] *Cf. Perry v. Bloomberg*, No. 1:15-cv-00408-CL, 2015 U.S. Dist. LEXIS 72141, at *10 (D. Or. June 4, 2015) ("Further, one of the subpoenaed parties has already responded to the Plaintiff by acknowledging receipt of the motion to quash and informing Plaintiff of their decision to delay responding until further instructions are provided.  This suggests that the nonparty has the capacity to fulfill the requests of the subpoena.  For these reasons, Defendants' motion to quash is denied."),

[39] *Wells Fargo & Co.*, 2012 U.S. Dist. LEXIS 173365, at *6 ("[A] party may seek a protective order pursuant to Rule 26(c) regarding a subpoena issued to a non-party if it believes its own interest is jeopardized by the discovery sought from the non-party.") (citing *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.RD. 426, 429 (M.D. Fla. 2005)).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Despite the plain language of the rule, the Vidocq Defendants assert that the subpoenaed information is "not reasonably calculated to lead to the discovery of evidence relevant to this matter."[40] The Vidocq Defendants conflate the standard for relevance and the now-obsolete requirement that information be "reasonably calculated to lead to the discovery of admissible evidence."[41] The Federal Rules were amended in 2015 to remove the "reasonably calculated" requirement and make clear that the court must analyze the requested discovery to determine whether it seeks information that is "relevant" and "proportional to the needs of the case."[42] As discussed below, Plaintiffs seek information from AAFS that is both relevant and proportional to the needs of the case, and AAFS does not object.

### 1.    Plaintiffs' subpoena requests information that is relevant to the case.

The standard for relevance is broad and encompasses materials related to "any party's claim or defense."[43] The Vidocq Defendants misinterpret the standard by narrowly construing relevance to relate only to Plaintiffs' claims, ignoring the right to relevant evidence that would undermine their defense.

///

///

---

[40] Motion at 6.

[41] *See* FED. R. CIV. P. 26, Advisory Committee Notes (2015 Amendment) ("The former provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' is also deleted. The phrase has been used by some, incorrectly, to define the scope of discovery. As the Committee Note to the 2000 amendments observed, use of the 'reasonably calculated' phrase to define the scope of discovery 'might swallow any other limitation on the scope of discovery.' The 2000 amendments sought to prevent such misuse by adding the word 'Relevant' at the beginning of the sentence, making clear that ''relevant' means within the scope of discovery as defined in this subdivision . . . .' The 'reasonably calculated' phrase has continued to create problems, however, and is removed by these amendments.").

[42] *Id.*

[43] FED. R. CIV. P. 26(b)(1).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

The documents requested from AAFS relate to Plaintiffs' claims as well as the Vidocq Defendants' anticipated defense.[44]  In the First Amended Complaint, Plaintiffs allege that the Vidocq Society (and Defendants City of Coquille and the Cold Case Investigators) had actual knowledge of Mr. Walter's misconduct because he committed the same misconduct in the *Drake* case.[45]  Plaintiffs allege that the scheme—of conjuring up a "profile" of the alleged murderer by learning facts about the case from law enforcement and then simply creating a "profile" to fit the suspect under investigation—was the very reason that the Vidocq Society offered Mr. Walter to law enforcement officers on the case, and the very reason that those law enforcement officers sought out those services.[46]

Based on Mr. Walter's deposition, it is evident that the Vidocq Defendants will attempt to rely on Mr. Walter's affiliation with AAFS—a recognized organization of professionals—to suggest that Mr. Walter is actually a respected expert in his field and that his colleagues at AAFS (and the Vidocq Society) have cleared him of any wrongdoing in the *Drake* case.[47]

Mr. Walter testified in his deposition in this case that he has been a member of AAFS since the early 1970s and has, since then, submitted research papers to AAFS to earn his way toward a more prominent membership status as a "fellow."[48]  Mr. Walter repeatedly testified to his AAFS-connection, relying on that connection to suggest that he is a sought-after expert who has solved criminal cases around the world.[49]  For example, Mr. Walter testified that he gave a

---

[44] The Vidocq Defendants have filed serial motions that refuse to accept, as they must, the factual allegations in the complaint as true.  Because of those motions, the universe of the Vidocq Defendants' anticipated defense remains unknown to Plaintiffs.  Nonetheless, discovery and motions to date strongly suggest that the Vidocq Defendants will deny fabricating any evidence, including the "profile" that was used to wrongly indict, prosecute, and convict Mr. McGuffin.

[45] First Amended Complaint ¶¶ 109–11 [Dkt. No. 100].

[46] *Id.*

[47] Deposition of Richard Walter 114:1–115:12, 216:21–25 (Exhibit 6 to Puracal Decl.).

[48] *Id.* at 70:9–71:4.

[49] *Id.* at 58:9–59:1, 69:13–72:1, 114:1–115:12, 161:3–162:19, 216:21–25.

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

presentation at an AAFS conference in Orlando where "FBI, CIA, everybody else was there[.]"[50] He testified that, within 15 minutes of his presentation to AAFS, "the FBI had me aside and had invited me then to Quantico," where he would "periodically go and give lectures," which increased his "visibility" such that "other people around the world would reach out" for help with their cases.[51] Mr. Walter could not recall the name of the program or the date of the presentation at AAFS that supposedly led to working with the FBI at Quantico.[52]

Mr. Walter also testified in his deposition that AAFS had investigated him after the allegations of misconduct in the *Drake* case and that AAFS issued a report clearing him of any wrongdoing.[53] Mr. Walter testified that "the Vidocq Society and the American Academy got involved and they both were vigorous in their investigation," which, according to Mr. Walter resulted in AAFS and Vidocq concluding that "I was truthful and that I had not committed any violation."[54] Mr. Walter claims to have "a letter from AAFS that exonerates me three times for what they claim and deducted [*sic*] for claims for what they considered to be a wrongful accusation" in the *Drake* case.[55]

Plaintiffs are entitled to such a report or letter, if such documentation actually exists. But, despite multiple requests,[56] the Vidocq Defendants have yet to produce any such letter from AAFS or evidence of an investigation (by AAFS or the Vidocq Society) that "exonerates" Mr. Walter of what the *Drake* court found to be perjury based on "significant falsehoods."[57]

///

---

[50] *Id.* at 58:9–59:1.

[51] *Id.*

[52] *Id.*

[53] *Id.* at 114:1–115:12, 216:21–25.

[54] *Id.*

[55] *Id.*

[56] *See* Email from Puracal to Rockett, dated December 7, 2022 [Dkt. No. 136-6].

[57] *Drake*, 553 F.3d at 238.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Mr. Walter's efforts to rely on AAFS to bolster his credibility go all the way back to the early 1970s before he became a member.[58] Mr. Walter testified in his deposition in this case that he first gave a lecture at AAFS in the early 1970s while he was working for the Los Angeles County Medical Examiner's Office.[59] The Second Circuit Court of Appeals in the *Drake* case, however, revealed that while at the Los Angeles County Medical Examiner's Office, Mr. Walter was a "student employee whose job in the lab was 'grunt work'" such as "cleaning and maintaining the forensic lab."[60] Despite direct evidence developed in the *Drake* case that Mr. Walter "was no more than an avid student volunteer" at the Los Angeles Medical Examiner's Office,[61] Mr. Walter testified in his deposition in this case that his work at the medical examiner's office led to him giving a lecture to the AAFS community and prompted his 40+ year membership in the organization.[62]

Mr. Walter has specifically used his affiliation with AAFS to create the impression that he is a world-renowned expert and international investigator. Evidence from AAFS is directly relevant to Mr. Walter's claims that AAFS will vouch for his expertise, that he was invited to present at AAFS going all the way back to the 1970s, and that AAFS cleared him of any wrongdoing in the *Drake* case.

Plaintiffs are entitled to pursue discovery of evidence that bears directly on Mr. Walter's efforts to bolster his credibility in this civil case, as well as in the underlying criminal case in which he held himself out as an expert upon whom law enforcement and the media could rely to identify Mr. McGuffin as the perpetrator.

///

---

[58] Deposition of Richard Walter 70:9–22 (Exhibit 6 to Puracal Decl.).

[59] *Id.*

[60] *Drake*, 553 F.3d at 238.

[61] *Id.*

[62] Deposition of Richard Walter 70:9–22 (Exhibit 6 to Puracal Decl.).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

The evidence upon which the Vidocq Defendants attempt to rely in their motion confirms the reason why the discovery sought is not only relevant, but also necessary to ensure that Plaintiffs have a fair opportunity to rebut the Vidocq Defendants' denials. The Vidocq Defendants attach to their motion a letter from a prosecutor in the criminal case to the Oregon Department of Justice that was written after Mr. McGuffin was convicted and during post-conviction litigation, prior to exoneration.[63] In that letter, the prosecutor recounts how the Vidocq Defendants became involved in the investigation, and the prosecutor's eventual realization "that the profile built by Mr. Walter was simply not reliable" because "he had done the same thing he had done in the second circuit case in that once he knew the facts of our case, in that it appeared he had created a profile that fit Nick McGuffin."[64]

The prosecutor's letter is, in fact, one of several in which the prosecutor disclosed that his theory of the case was based on evidence that was fabricated by the Defendants, including the Vidocq Defendants.[65] Plaintiffs have identified that fabricated evidence as grounds for their claims in this lawsuit.[66]

///

---

[63] Letter from Frasier to Reim, dated August 10, 2016, at 4–6 [Dkt. No. 136–3].

[64] *Id.* at 5.

[65] *See, e.g.,* Letter from Frasier to Reim, dated May 31, 2016, at 8 (Exhibit 10 to Puracal Decl.) ("My ultimate theory of the case was that I did not believe this was a premeditated crime. I did not think that Nick McGuffin woke up the morning Leah disappeared with the idea he was going to kill Leah that day. I think what happened was that their relationship was volatile to begin with; that Leah decided to breakup; that she told Nick that night they were done; Nick became very angry at her decision; that he grabbed her by the neck; in the process she lost one shoe; that in the process he slapped or hit her in the face resulting in the blood spatter on the bottom of the shoe; and that he eventually strangled her to death."). *See also id.* at 3, 4 (discussing blood evidence on the bottom of Ms. Freeman's shoe and evidence that Mr. McGuffin's car was cleaned).

[66] First Amended Complaint ¶¶ 112–21, 138, 146 [Dkt. No. 100] (discussing the fabricated blood evidence on the bottom of the shoe, the fabricated hit to the face, the fabricated profile of someone close to Ms. Freeman who was asserting power over her through physical force, and the fabricated evidence that Mr. McGuffin's care was wiped clean).

Page 13– PLAINTIFFS' OPPOSITION TO MOTION TO QUASH

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Mr. Walter denies misconduct in *Drake*, as he does here. Plaintiffs are entitled to pursue evidence about that case—including evidence purportedly generated by AAFS—to corroborate Plaintiffs' claims and to show a common plan, scheme, or intent, or absence of mistake or lack of accident, with respect to the Vidocq Defendants' conduct in the Freeman investigation.[67] Moreover, if the Vidocq Defendants made prior statements to AAFS about the allegations of prior misconduct, Plaintiffs here are entitled to those statements as possible impeachment evidence and to illustrate—as Plaintiffs allege—that Mr. Walter's alleged "profiling" skills actually amount to framing people to solve cold cases when law enforcement have no honest leads. Federal courts recognize that information concerning other instances of misconduct may "lead to evidence of a continuing course of conduct reflecting malicious intent."[68]

By attaching the prosecutor's letter to their motion, the Vidocq Defendants seem to suggest that, because the prosecutor already discovered Mr. Walter's misconduct, Plaintiffs are not entitled to evidence of that misconduct. The suggestion—that everyone already knew that Mr. Walter was a fraud so the information is superfluous—is untenable. Mr. McGuffin had a due process right not to be convicted on the basis of fabricated evidence, regardless of whether a portion of the misconduct was known to one prosecutor at some point in time.[69] The prosecutor's letter to the Department of Justice describing his revelation about Mr. Walter came six years ***after*** Mr. McGuffin was convicted and while he was still sitting in prison for a crime that he did not commit.

The Vidocq Defendants cannot use AAFS as a sword and a shield—relying on AAFS to bolster Mr. Walter's credibility while simultaneously trying to avoid any discovery from AAFS

///

---

[67] *See* FED. R. EVID. 404(b).

[68] *Hampton v. City of San Diego*, 147 F.R.D. 227, 229 (S.D. Cal. 1993).

[69] *Cf. Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc). "[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government.").

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

that could undermine him.  The information is directly relevant to the claims and defenses at issue.

### C.    Plaintiffs' request is proportional to the needs of the case.

To determine whether discovery is "proportional to the needs of the case," the court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[70]

As discussed above, the Vidocq Defendants have relied on Mr. Walter's 40+ year history with AAFS to create the narrative that a renowned group of specialists from around the country can vouch for his superior expertise.[71]  Plaintiffs' request to AAFS for records related to Mr. Walter's membership, presentations, and history with the organization is directly proportional to the needs of this case.  It was, after all, Mr. Walter who first relied (in this case and in the underlying criminal case) on that 40+ year history with AAFS as evidence of his internationally renowned career.[72]

Plaintiffs' request for AAFS documents related to "any business owned or affiliated" with Mr. Walter, including the Vidocq Society, is also proportional to the needs of the case.  Mr. Walter testified that the Vidocq Society, along with AAFS, cleared him of wrongdoing in *Drake*.[73]  Mr. Walter further testified that he has operated at least three businesses, in addition to the Vidocq Society, for the purpose of offering his expertise to prosecutors and law enforcement

---

[70] FED. R. CIV. P. 26(b)(1).

[71] Deposition of Richard Walter 58:9–59:1, 69:13–72:1, 114:1–115:12, 161:3–162:19, 216:21–25 (Exhibit 6 to Puracal Decl.).

[72] *Id.*

[73] *Id.* at 114:1–115:12, 216:21–25.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

agencies.[74]  Information that bears on Mr. Walter's credibility is relevant regardless of which company he acted through.

Plaintiffs' request to AAFS is not unduly burdensome.  To prove that a discovery request would result in undue burden, "the responding party must provide sufficient detail regarding the time, money, and procedures required to produce the requested documents."[75]  The Vidocq Defendants sole assertion is that a response "*could* require many dozens of hours" of time by AAFS.[76]

AAFS, however, makes no such assertion and, instead, has expressed its willingness to comply with the subpoena.[77]  The email from AAFS to Plaintiffs requesting a short two-week extension to respond to the subpoena by January 6, 2023, suggests that the Vidocq Defendants made no effort to communicate with AAFS about the time, expense, or procedures involved in responding to the subpoena before the Vidocq Defendants summarily represented to the court that the response would cause undue burden.[78]

Unsupported, conclusory statements such as those in the Vidocq Defendants' motion, "are not sufficient to illustrate why requested discovery is not proportional."[79]  The court should deny the motion.

---

[74] *Id.* at 192:8–194:11, 201:1–207:16.

[75] *Shaw v. Experian Info. Solutions, Inc.*, 306 F.R.D. 293, 301 (S.D. Cal. 2015) (citing *Pham v. Wal-Mart Stores, Inc.*, No. 2:11-cv-01148-KJD-GWF, 2011 U.S. Dist. LEXIS 130038, at *3 (D. Nev. Nov. 9, 2011)).

[76] Motion at 7 (emphasis added).

[77] *See* Email from Counsel for AAFS to Counsel for Plaintiffs, dated December 23, 2022 (Exhibit 9 to Puracal Decl.).

[78] *Id.*

[79] *Yphantides v. Cnty. of San Diego*, No. 21cv1575-GPC(BLM), 2022 U.S. Dist. LEXIS 145819, at *18 (S.D. Cal. Aug. 15, 2022) (citations omitted).  *See also Shaw*, 306 F.R.D. at 301 ("The fact that production of documents will be time consuming and expensive is not ordinarily a sufficient reason to refuse to produce material if the requested material is relevant and necessary to the discovery of admissible evidence.") (citations omitted).

Page 16– PLAINTIFFS' OPPOSITION TO MOTION TO QUASH

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

## IV.  CONCLUSION

Based upon the foregoing, Plaintiffs ask that the court deny the motion to quash.

DATED:  December 27, 2022

| MALONEY LAUERSDORF REINER PC | LOEVY & LOEVY |
|---|---|
| By /s/Janis C. Puracal<br>    Janis C. Puracal, OSB #132288<br>    E-Mail:  jcp@mlrlegalteam.com<br>    Andrew C. Lauersdorf, OSB #980739<br>    E-Mail:  acl@mlrlegalteam.com | By /s/David B. Owens<br>    David B. Owens, WSBA #53856<br>    E-Mail:  david@loevy.com<br>    *Pro hac vice* |

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

# CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2022, the foregoing PLAINTIFFS' OPPOSITION TO MOTION TO QUASH was served on the following parties at the following address by sending to them a true copy thereof via the method indicated below:

| | |
|---|---|
| Robert E. Franz, Jr.<br>Sarah R. Henderson<br>Law Office of Robert E. Franz, Jr.<br>PO Box 62<br>Springfield, OR 97477<br>rfranz@franzlaw.comcastbiz.net<br>shenderson@franzlaw.comcastbiz.net<br>　*Attorneys for Defendants*<br>　*City of Coquille, City of Coos Bay, Coos*<br>　*County, Craig Zanni, Chris Webley, Eric*<br>　*Schwenninger, Sean Sanborn, Ray McNeely,*<br>　*Kris Karcher, Pat Downing, Mark Dannels,*<br>　*Kip Oswald, Michael Reaves, David Zavala,*<br>　*Anthony Wetmore, Shelly McInnes* | Jesse B. Davis<br>Todd Marshall<br>Oregon Department of Justice<br>100 SW Market Street<br>Portland, OR 97201<br>todd.marshall@doj.state.or.us<br>jesse.b.davis@doj.state.or.us<br>　*Attorneys for Defendants Oregon State*<br>　*Police, John Riddle, Susan Hormann,*<br>　*Mary Krings, Kathy Wilcox* |
| Graham B. Miller<br>Karin L. Schaffer<br>Amanda J. Rockett<br>Wood Smith Henning & Berman LLP<br>12755 SW 69th Ave., Ste. 100<br>Portland, OR 97223<br>gmiller@wshblaw.com<br>kschaffer@wshblaw.com<br>arockett@wshblaw.com<br>　*Attorneys for Defendants Vidocq Society and*<br>　*Richard Walter* | |

☒ by electronic means through the Court's ECF System on the date set forth above.

☐ by mailing a full, true and correct copy thereof in a sealed, first-class postage paid envelope, addressed to the attorneys as shown above, and deposited with the United States Postal Office at Portland, Oregon on the date set forth above.

☐ by emailing to each of the foregoing a copy thereof to the email address above.

MALONEY LAUERSDORF REINER PC

By  /s/Janis C. Puracal
　　Janis C. Puracal, OSB #132288
　　E-Mail:  jcp@mlrlegalteam.com

Attorneys for Plaintiffs

Page 1– CERTIFICATE OF SERVICE

MALONEY | LAUERSDORF | REINER PC<br>ATTORNEYS AT LAW<br>1111 E. Burnside Street, Ste. 300<br>Portland, Oregon 97214<br>Telephone: 503.245.1518<br>Facsimile: 503.245.1417