Janis C. Puracal, OSB #132288
E-mail: jcp@mlrlegalteam.com
Andrew C. Lauersdorf, OSB #980739
E-mail: acl@mlrlegalteam.com
MALONEY LAUERSDORF REINER, PC
1111 E. Burnside Street, Ste. 300
Portland, OR  97214
Telephone: (503) 245-1518
Facsimile: (503) 245-1417

David B. Owens, WSBA #53856, *pro hac vice*
E-mail: david@loevy.com
LOEVY & LOEVY
100 S. King Street, Ste. 100
Seattle, WA  98104-2885
Telephone: (312) 590-5449

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| NICHOLAS JAMES MCGUFFIN, as an individual and as guardian *ad litem*, on behalf of S.M., a minor,<br><br>        Plaintiffs,<br><br>    v.<br><br>MARK DANNELS, PAT DOWNING, SUSAN HORMANN, MARY KRINGS, KRIS KARCHER, SHELLY MCINNES, RAYMOND MCNEELY, KIP OSWALD, MICHAEL REAVES, JOHN RIDDLE, SEAN SANBORN, ERIC SCHWENNINGER, RICHARD WALTER, CHRIS WEBLEY, ANTHONY WETMORE, KATHY WILCOX, CRAIG ZANNI, DAVID ZAVALA, JOEL D. SHAPIRO AS ADMINISTRATOR OF THE ESTATE OF DAVID E. HALL, VIDOCQ SOCIETY, CITY OF COQUILLE, CITY OF COOS BAY, and COOS COUNTY,<br><br>        Defendants. | Civil No. 6:20-cv-01163-MK<br>(Lead Case)<br><br><br>FIRST AMENDED COMPLAINT FOR DAMAGES<br><br><br>***DEMAND FOR JURY TRIAL*** |

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

NICHOLAS JAMES MCGUFFIN, as an
individual and as guardian *ad litem*, on behalf
of S.M., a minor,

               Plaintiffs,

    v.

OREGON STATE POLICE,

               Defendant.

Civil Case No. 3:21-cv-01719-MK
(Trailing Case)

COMES NOW Plaintiffs Nicholas James McGuffin and S.M., by and through their

attorneys, Maloney Lauersdorf Reiner PC and Loevy & Loevy, and allege and claim as follows:

## I. INTRODUCTION

1.     Nicholas McGuffin spent nine years in prison for a crime that he did not

commit—the murder of Leah Freeman.

2.     McGuffin was wrongfully convicted because employees and agents of Defendant

Oregon State Police ("OSP") fabricated and suppressed evidence and otherwise violated

McGuffin's rights under the United States constitution, the Oregon constitution, and the law.

3.     After fighting for his innocence for nearly two decades, McGuffin was exonerated

when his conviction was vacated, and the Coos County District Attorney's Office unilaterally

dismissed all charges against him.

4.     Though nothing can bring back that time, McGuffin and his daughter, S.M., now

bring this action to redress the devastating injuries that OSP caused them.

## II. PARTIES

5.     Plaintiff Nicholas James McGuffin is, and was at all times material and relevant

to this action, an individual and resident of the state of Oregon.

6.     Plaintiff S.M. is, and was at all times material and relevant to this action, a minor

individual and resident of the state of Oregon.  S.M. appears in this lawsuit through her father,

Nicholas McGuffin, as her guardian *ad litem*.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

7.      Defendant Oregon State Police, which includes the Forensic Services Division, and officers, employees, and agents of OSP, is a state agency and is, or was at times material and relevant to this action, the employer of Susan Hormann, Mary Krings, and Kathy Wilcox.  In addition, Defendant Oregon State Police is responsible for the policies, practices, and customs of Defendant Oregon State Police, including the Forensic Services Division.

### III.  JURISDICTION AND VENUE

8.      Subject matter jurisdiction in this court is proper.

9.      Venue in this court is proper under ORS 14.080.

### IV.  FACTUAL ALLEGATIONS

**A.      Background**

10.      McGuffin grew up in Coquille, Oregon and attended Coquille High School, where he and Freeman met and began dating in 1999.

11.      On the night of June 28, 2000, while walking alone after leaving her friend Cherie Mitchell's house, Freeman was abducted and murdered.

12.      In August of 2010, after nearly ten years of being intimidated and harassed by law enforcement officers, McGuffin was arrested without probable cause and then prosecuted for Freeman's murder.

13.      McGuffin was convicted by 10-2 verdict of manslaughter, and sentenced to 10 years in prison, plus three years of post-prison supervision.

14.      In December of 2019, all charges against McGuffin were dismissed, and McGuffin was released, free and fully exonerated, from South Fork Forest Prison Camp, in Tillamook, Oregon.

15.      McGuffin was continuously confined in either jail or prison from the time of his arrest until his exoneration in December of 2019.

16.      McGuffin had absolutely nothing to do with the abduction or murder of Leah Freeman.

MALONEY | LAUERSDORF | REINER ᴘᴄ
ᴀᴛᴛᴏʀɴᴇʏꜱ ᴀᴛ ʟᴀᴡ
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

**B.    Freeman's Abduction and Murder**

17.    On the evening of June 28, 2000, McGuffin drove Freeman in his blue Ford Mustang to the home of Freeman's friend, Cherie Mitchell.

18.    McGuffin dropped Freeman off at the Mitchell residence at approximately 7:00 p.m. on June 28, 2000.  McGuffin did not see, speak with, or otherwise interact with Freeman ever again after dropping her off at the Mitchell residence.

19.    McGuffin was scheduled to return to the Mitchell residence to pick up Freeman around 9:00 p.m. for a double date with McGuffin and their friends, Brent Bartley, and Bartley's girlfriend, Nicole Price.

20.    Sometime before 9:00 p.m., Freeman and Mitchell argued, Freeman grew angry with Mitchell, and Freeman left the Mitchell residence alone on foot.

21.    Mitchell followed Freeman out of the house and watched Freeman walk by herself in the direction of North Central Boulevard.

22.    Multiple other witnesses saw Freeman walking alone on North Central Boulevard in the direction of Coquille High School.

23.    Witnesses also saw Freeman standing outside the high school, and then across the street from the high school on the corner of West Central Boulevard and North Elm Street.

24.    The last witness known to have seen Freeman alive reported seeing her standing on the corner of West Central Boulevard and North Elm Street, in between the cemetery and the gas station, between 9:15 p.m. and 9:30 p.m. on June 28, 2000.

25.    Freeman's right Nike tennis shoe was reportedly found around 11:30 p.m. that evening on North Elm Street, near the cemetery and the gas station.

26.    On July 5, 2000, Coos County Sheriff's Deputy Kip Oswald presented Freeman's left Nike tennis shoe to the Coquille Police Department and reported that he had found the shoe on Hudson Ridge, a remote forested area approximately ten miles from the location where Freeman was last seen alive.

MALONEY | LAUERSDORF | REINER rc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

27.     Deputy Oswald knew the shoe was connected to Freeman's abduction, but did not photograph it, its condition, position, or location, and did not conduct any other steps to preserve evidence from the area around where he purportedly found the left shoe.

28.     On August 3, 2000, Freeman's body was found deep in the woods on an embankment of the Coquille River, approximately eight miles from the location where she had last been seen alive.

**C.      Evidence of McGuffin's Innocence and Search for Freeman**

29.     Shortly after 9:00 p.m. on the night that Freeman was abducted, McGuffin arrived at the Mitchell residence in his Ford Mustang to pick up Freeman.

30.     There, McGuffin learned from Mitchell that Freeman had left and started walking toward town.

31.     McGuffin began to search for Freeman.

32.     McGuffin spent more than five hours searching for Freeman, and more than 20 witnesses saw and interacted with McGuffin during that time, including Freeman's mother, sister, and friends, McGuffin's family and friends, and at least two City of Coquille Police Department police officers, including Officer Danny Lee and Officer David Zavala, each of whom pulled McGuffin over at different times while he was driving his Ford Mustang.

33.     Other records available to law enforcement also confirmed McGuffin's whereabouts and activities while searching for Freeman, including telephone records and card-lock gas station records.

34.     The next morning, McGuffin continued his search for Freeman with Freeman's sister, Denise.  McGuffin, Denise, and Freeman's mother together reported Freeman missing to the City of Coquille Police Department (CPD).

35.     The CPD, with knowledge and direction of the then-Chief of Police Michael Reaves, refused to investigate or even search for Freeman.

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

36.     Unable to get assistance from local police, McGuffin enlisted Freeman's sister and his own family and friends, and they continued to search for Freeman throughout Coquille, the surrounding counties, and all the way into California.

**D.     The Faulty and Reckless Initial Investigation into Freeman's Murder**

37.     Acting pursuant to the policies, practices, and customs of the City of Coquille, then-Chief of Police Reaves and City of Coquille police officers and investigators initially refused to investigate Freeman's abduction.

38.     In a departure from established practices and procedures, the City of Coquille even rejected assistance from other investigating law enforcement agencies.

39.     Eventually, the CPD and the City of Coquille decided to actually conduct an investigation.  The City of Coquille, by and through Chief Reaves, appointed two inexperienced police officers to lead the investigation into Freeman's abduction.

40.     There was no physical evidence or evidence of motive connecting McGuffin to Freeman's abduction or murder.

41.     In fact, evidence available to law enforcement at the time—including witness statements, physical evidence, and CPDs own contact with McGuffin——made it obvious that McGuffin was innocent.

42.      Despite his innocence, the investigating officers decided to pursue McGuffin as a suspect, agreed to violate his constitutional rights in order to implicate him in Freeman's abduction and murder, and began to deliberately fabricate evidence against McGuffin.

43.     The investigating officers worked in concert with Hormann, Krings, and Wilcox of the Oregon State Police Forensic Services Division (the "OSP Lab Analysts") in their efforts to falsely implicate McGuffin in the abduction and murder of Freeman despite his innocence.

44.     Pursuant to their agreement and collaboration with other investigators, the OSP Lab Analysts suppressed, tampered with, and/or destroyed evidence to falsely implicate McGuffin.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

45.     For example, in July 2000, the OSP Lab Analysts examined Freeman's right Nike tennis shoe that was reportedly found on North Elm Street next to the cemetery on the night that Freeman was abducted.

46.     No blood was found on the right Nike tennis shoe.

47.     The OSP Lab Analysts also tested the right Nike tennis shoe for DNA, and found the DNA of Freeman and an unidentified male on the right Nike tennis shoe.

48.     The male DNA on the right Nike tennis shoe did not belong to McGuffin.

49.     The presence of DNA of an unidentified male on the right Nike tennis shoe was obviously of value, both for purposes of solving the crimes, and as exculpatory evidence of McGuffin's innocence.

50.     Despite the nature and obvious importance of the DNA evidence found on the right Nike tennis shoe, this exculpatory evidence was suppressed by the investigating officers and OSP Lab Analysts.

51.     The OSP Lab Analysts also fabricated evidence by issuing a report indicating that only Freeman's DNA was found on the right Nike tennis shoe to support the false narrative that all other suspects besides McGuffin had been eliminated.

52.     The OSP Lab Analysts knew that the report was false and deliberately suppressed this fact to use the report as evidence to indict and convict McGuffin for the abduction and murder of Freeman.

53.     The OSP Lab Analysts examined the left Nike tennis shoe that was reportedly found on Hudson Ridge approximately one week after Freeman disappeared.

54.     Blood was found on the left Nike tennis shoe.

55.     The OSP Lab Analysts also tested the left Nike tennis shoe for DNA and found the DNA of Freeman and a male on the left Nike tennis shoe.

56.     Though they knew the male DNA from the left shoe did not belong to Deputy Oswald, the OSP Analysts falsely suggested in a report that this DNA was Oswald's in order to

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

support the false narrative that all other suspects besides McGuffin had been eliminated.

57.    The OSP Lab Analysts knew that the report was false and deliberately suppressed this fact to use the report as evidence to indict and convict McGuffin for the abduction and murder of Freeman.

58.    The investigating officers and the OSP Lab Analysts also suppressed evidence that would have shown the male DNA on the left shoe did not belong to Deputy Oswald and, instead, would have confirmed the DNA of an unidentified male on the victim's bloodstained left shoe.

59.    Despite extensive evidence of McGuffin's innocence, and the lack of evidence implicating McGuffin in the abduction and murder of Freeman, the investigating officers continued to target and harass McGuffin for years for the purpose of intimidating and provoking him in an effort to fabricate additional evidence that might be used against McGuffin.

**E.    The Faulty and Reckless Investigation into the Cold Case**

60.    At the same time that the investigating officers were pursuing their campaign of harassment and intimidation, public pressure to solve the case with a conviction was intensifying, due in part to the seriousness of the crimes at issue, but also in large part to the fact that the investigating officers were very publicly targeting McGuffin and repeatedly reported to the media that McGuffin was implicated in Freeman's abduction and murder despite his innocence.

61.    In 2008, local authorities assembled a team of individuals to try to obtain a conviction for the Freeman murder, suggesting that it was a "cold" case even though officers had never stopped pursuing McGuffin (the "Cold Case Investigators"). The individuals referred to the Freeman investigation as a "cold case," so, for pleading purposes, Plaintiffs will refer to the team collectively as the "Cold Case Investigators," and their investigation as the "Cold Case Investigation."

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

62.    The Cold Case Investigators included officers and agents from the original investigation, such as OSP Lab Analysts Hormann and Wilcox, which allowed the Cold Case Investigators to pick up and follow through with the original investigation and incorporate the evidence that had been previously fabricated and/or suppressed.

63.    The Cold Case Investigators also included the CPD Chief of Police Mark Dannels, individual officers from local agencies, the Vidocq Society (an unlicensed private "investigation" firm), and Richard Walter (a "profiler" and agent of Vidocq Society).

64.    The Cold Case Investigators picked up and proceeded with the original investigation, employing similar tactics and building upon the efforts of the original investigating officers and the OSP Lab Analysts, and focusing their efforts exclusively on implicating McGuffin in Freeman's murder through the fabrication, suppression, and/or destruction, of evidence.

65.    Intense public pressure and increased media attention, much of which was at the invitation of the Cold Case Investigators, exacerbated the sense of urgency among the Cold Case Investigators and OSP Lab Analysts to obtain a conviction for Freeman's abduction and murder.

66.    As one of the Cold Case Investigators explained to a national news outlet in 2010, the Freeman case was the "black sheep of Coquille" and most people thought it "could have got solved back in 2000," a reference to the targeting of McGuffin by the original investigating officers and the OSP Lab Analysts.

67.    The Cold Case Investigators knew that the original investigating officers and the OSP Lab Analysts crafted a false narrative of McGuffin's guilt based on junk science, including the fabricated evidence as alleged above.

68.    The Cold Case Investigators further knew about exculpatory evidence establishing McGuffin's innocence, including the exculpatory DNA evidence, which they suppressed through McGuffin's trial and for years thereafter.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

69.     Despite their knowledge of the misconduct, lack of credibility, unreliable and unconstitutional methods, and violations of McGuffin's rights by the original investigating officers and the OSP Lab Analysts, the Cold Case Investigators involved many of the original investigating officers and the OSP Lab Analysts in their own investigation, relied upon the prior investigation, and built-upon that investigation using unconstitutional tactics of their own in furtherance of the same goal: arresting and prosecuting McGuffin for a crime that he did not commit.

**F.     The Cold Case Investigators' Fabrication and Suppression of Additional Evidence**

70.     By 2010, the Cold Case Investigators were focused exclusively on arresting and convicting McGuffin and were not conducting any meaningful investigation into other leads or suspects.

71.     The Cold Case Investigators faced several hurdles in their quest to convict McGuffin, however, including McGuffin's obvious innocence.

72.      In order to overcome these hurdles and reach their ultimate goal, the Cold Case Investigators fabricated additional evidence falsely implicating McGuffin in Freeman's abduction and murder, and suppressed other evidence, including DNA evidence and evidence of the misconduct of the original investigating officers, the OSP Lab Analysts, and themselves.

73.     The Cold Case Investigators deliberately fabricated evidence for the purpose of concocting a theory of how Freeman was murdered by falsely reporting that blood had been found on Freeman's right Nike tennis shoe when it had not.

74.     The Cold Case Investigators falsely reported and repeated on the nationally televised ABC network news program "20/20," while standing near the cemetery, that Freeman's right tennis shoe was found on the road right there with blood on it.

75.     The Cold Case Investigators all knew that Freeman's right Nike tennis shoe had been carefully examined and no blood whatsoever was found on the shoe.  Nonetheless, they falsely reported that blood was found on Freeman's right Nike tennis shoe in an effort to explain

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

how her abduction and murder occurred, and to implicate McGuffin in those crimes, despite his innocence.

76.    The Cold Case Investigators fabricated additional evidence by falsely reporting, and repeating on "20/20," that evidence of blood on the right tennis shoe indicated that Freeman was "smashed in the face" and forcibly taken from the location where the right shoe was reportedly found, falsely suggesting that they had evidence to prove how the crime occurred.

77.    The Cold Case Investigators also deliberately fabricated evidence of potential motives by falsely reporting that Freeman may have been pregnant at the time of her murder, and that McGuffin may have been afraid that he would be charged with statutory rape due to the age difference between them if the pregnancy was discovered.

78.    The Cold Case Investigators falsely repeated this fabricated evidence of an alleged motive on the nationally televised ABC network news program "20/20."

79.    At the time that the Cold Case Investigators fabricated this evidence, and repeated it on national television, they all knew Freeman was not pregnant when she was abducted and killed.

80.    At the time that the Cold Case Investigators fabricated this evidence, and repeated it on national television, they knew that consensual sex between McGuffin and Freeman was not "statutory rape" as a matter of Oregon law.

81.    Walter bolstered this fabricated motive with his own false "profile" of Freeman's murderer by reporting, and repeating on "20/20," that based upon his determination of how the murder happened, he concluded that Freeman's murderer wanted to get Freeman out of the way, suggesting that the killer was not a stranger, but someone very close to Freeman, or to whom Freeman's continued existence posed a substantial threat.

82.    At the time that Walter conjured up his false "profile" and reported his conclusions regarding the murderer's motives, Walter had no knowledge of how the murder actually happened and simply fabricated a false "profile" and motive based upon the agreement

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

he had made with the Cold Case Investigators and City of Coquille in an effort to effect the arrest, indictment, and conviction of McGuffin for a crime he did not commit.

83.     The Cold Case Investigators also fabricated evidence for the purpose of creating the false inference that McGuffin had used his Ford Mustang to transport Freeman's body after she was abducted and murdered, including falsely reporting, and repeating on "20/20," that the Ford Mustang had been "wiped clean" shortly after Freeman's abduction and murder, when that claim was untrue and the Cold Case Investigators knew there was nothing to suggest McGuffin's car had been cleaned or "wiped" in any way at all.

84.     The Cold Case Investigators also deliberately suppressed, tampered with, and/or destroyed relevant and material impeachment evidence that undermined the credibility of key prosecution witnesses, including evidence of their own misconduct and violations of McGuffin's rights described herein.

## G.    The Arrest and Defamation of McGuffin for a Crime He Did Not Commit

85.      On August 23, 2010, based upon evidence fabricated by the Cold Case Investigators, including the original investigating officers and the OSP Lab Analysts, and without any probable cause, McGuffin was arrested and charged with Freeman's murder.

86.     To add further insult, the Cold Case Investigators invited producers from the nationally televised ABC network program "20/20" to have what the show called "exclusive access" to the investigation.

87.     The Cold Case Investigators fed the "20/20" producers false information to claim McGuffin had murdered Freeman, despite McGuffin's innocence.

88.     The "20/20" cameras were invited to film the arrest, and the Cold Case Investigators made a dramatic, unlawful arrest for the cameras by stopping McGuffin along the side of the road and accosting him as he was driving home from work.

89.     Along the way, Cold Case Investigators made false and inflammatory statements about McGuffin, including that everyone should assume that McGuffin was carrying a gun.

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

90.     Cold Case Investigators even attempted to use the media to question McGuffin on-camera about the Freeman case, despite the fact that they knew McGuffin was represented by counsel and they were not permitted to speak with him.

91.     The "20/20" television show was broadcast to the public, including the jury pool in Coos County, before McGuffin's criminal trial.

92.     The "20/20" television show was also published on the internet for the public, including the jury pool in Coos County, before McGuffin's criminal trial.

93.     The "20/20" television show was broadcast to the public in 2010, before jury selection in McGuffin's criminal trial, and included information that would have been inadmissible at trial.  This inadmissible evidence was deliberately provided to "20/20" by the Cold Case Investigators to sway public opinion before the trial and ensure the conviction.

**H.     McGuffin's Wrongful Conviction**

94.     Between the date of his arrest and trial, McGuffin was continuously confined and deprived of his liberty.

95.     In July 2011, McGuffin was tried for Murder in the First Degree.

96.     McGuffin was acquitted of murder and convicted of the lesser-included offense of manslaughter by a non-unanimous jury.

97.     McGuffin was sentenced to 10 years in prison, plus three years of post-prison supervision.

98.     The basis for McGuffin's arrest, indictment, and conviction was evidence that was fabricated and/or suppressed by the OSP Lab Analysts and the investigating officers and agents (including the original investigating officers and the cold case investigators), including, for example, as described above.

99.     At grand jury and trial, the OSP Lab Analysts and the investigating officers and agents continued to suppress exculpatory evidence, including the DNA results, their own misconduct, and other exculpatory and material evidence, including, but not limited to, the

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

evidence described above.

100.    Without the fabrication and suppression of evidence, McGuffin would not have been convicted.

101.    No direct, tangible, or objective evidence linked McGuffin to the abduction and murder of Leah Freeman, and no reasonable jury could have convicted McGuffin in the absence of the fabricated evidence, or if presented with the suppressed evidence.

102.    McGuffin appealed his conviction to the Oregon Court of Appeals, and the judgment of conviction was affirmed without opinion in December 2013.

103.    McGuffin's petition for review was denied by the Oregon Supreme Court in 2014.

I.    **McGuffin's Exoneration**

104.    McGuffin filed a petition for post-conviction relief.

105.    The post-conviction court found that McGuffin's constitutional rights were violated by, among other reasons, the suppression of the exculpatory DNA evidence.

106.    The post-conviction court vacated McGuffin's conviction.

107.    In December 2019, the District Attorney unilaterally moved the court to dismiss all charges against McGuffin.

108.    The dismissal was not the product of any agreement between the parties.  Indeed, the District Attorney pursued an *ex parte* order of dismissal within hours after filing his motion to dismiss, without waiting for any response to the motion.  He earlier told a reporter that "There is unknown male DNA on those shoes.  Does it exonerate McGuffin?  Maybe, but I don't know."

109.    Based upon information and belief, the District Attorney recognized that, if pursued, the action would result in a decision in favor of McGuffin due to the lack of inculpatory evidence, as well as the exculpatory evidence and government misconduct discovered during the post-conviction case.

110.    On December 17, 2019, the court dismissed the criminal case and McGuffin was released from custody.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

111.    By the time McGuffin was released from custody he had served over nine years in jail and prison for a crime that he did not commit.

**J.    Plaintiffs' Damages**

112.    Even before his wrongful arrest, prosecution, and conviction, McGuffin spent years being intimidated, harassed, and tormented by police officers at the hands of the law enforcement.  The police admitted their campaign of harassment to the public and producers of "20/20".

113.    The Cold Case Investigators' open and very public targeting of McGuffin and his family, and deliberate dissemination of fabricated and false information to the news media, resulted in McGuffin and his family members, including his young daughter, S.M., being subjected to public humiliation, harassment, and even death threats.

114.    McGuffin spent over nine years incarcerated in jail and then prison for a crime that he did not commit.

115.    McGuffin was wrongfully convicted when his daughter, S.M., was only three years old, and incarcerated hundreds of miles from his family, including S.M., causing him to miss out on birthdays, holidays, first days of school, and every other highlight of parenting a young child, such as teaching her how to swim and ride a bike.

116.    During his incarceration, McGuffin's only option for maintaining a relationship with his daughter was to have his parents bring her to the prison to visit him.  S.M. spent her formative years missing her dad and being exposed to prison life in order to have any kind of relationship with him.

117.    During his incarceration, McGuffin was further deprived of the ability to interact freely with his loved ones; to be present for holidays, births, deaths, and other life events; to pursue his passions and interests; to engage in meaningful labor and pursue his chosen career in the culinary field; and to live freely as an autonomous being.

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

118.    As a result of his wrongful incarceration, McGuffin was forced to leave his lucrative position as an Executive Banquet Chef at one of the most highly regarded restaurants in Coos County and abandon the training and skills he had developed through culinary school and his time as a chef.

119.    In addition to causing the severe trauma of McGuffin's wrongful imprisonment and loss of liberty, the government misconduct caused and continues to cause McGuffin extreme physical and psychological pain and suffering, humiliation, constant fear, anxiety, deep depression, despair, rage, and other physical and psychological effects.

120.    The government misconduct further caused and continues to cause McGuffin's loss of reputation in his community and loss of employment options in his chosen vocation.

121.    The government misconduct further caused and continues to cause S.M. the loss of care, comfort, consortium, love, and emotional and financial support from her father.

## V.  CONSPIRACY AMONG AND BETWEEN THE DEFENDANTS

122.    Defendant Oregon State Police and its agents and employees conspired with the other investigating officers and agents to convict McGuffin of a crime that he did not commit.

123.    The circumstances suggest that there was a meeting of the minds between the OSP Lab Analysts and the other investigating officers and agents.  These individuals worked as a team, sharing information and collaborating on next steps.  The acts described above, including fabricating reports, withholding exculpatory evidence, and coercing witnesses, are unlikely to have been undertaken without an agreement because multiple individuals on the team were involved in those acts of misconduct.

124.    The acts described above are further unlikely to have been undertaken without an agreement because at least five of the investigating officers and agents, including OSP Lab Analysts Hormann and Wilcox, overlapped between the original investigation and the cold case investigation, and each of the overlapping individuals knew about exculpatory evidence that had

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

been suppressed and evidence that had been fabricated to falsely suggest McGuffin's guilt.  For
example:

      a.   OSP Lab Analyst Hormann participated in the DNA testing that produced
           exculpatory DNA evidence in the original investigation, and Hormann then
           participated in the cold case investigation, wherein that evidence was suppressed.

      b.   OSP Lab Analysts Hormann and Wilcox participated in examining Freeman's
           shoes during the original investigation, and these individuals then participated in
           the cold case investigation, wherein the Cold Case Investigators fabricated blood
           evidence on Freeman's right shoe that did not exist.

      c.   OSP Lab Analyst Wilcox participated in examining McGuffin's car during the
           original investigation, and Wilcox then participated in the cold case investigation
           and at trial, wherein the Cold Case Investigators fabricated evidence that the car
           had been wiped clean when it had not.

125.    The OSP Lab Analysts, and the original investigating officers, fabricated
evidence, and suppressed exculpatory evidence, for the purpose of exerting influence to initiate,
continue, and perpetuate judicial proceedings against McGuffin.  These individuals handed those
efforts over to the Cold Case Investigators to continue the same campaign.

126.    The Cold Case Investigators fabricated additional evidence and suppressed
additional exculpatory evidence, suggesting that the meeting of the minds began during the
original investigation, carried over to the cold case investigation through the overlapping
individuals, and continued throughout that cold case investigation.

## VI.  POLICIES AND PRACTICES THAT WERE THE MOVING FORCE BEHIND THE CONSTITUTIONAL VIOLATIONS

127.    The violation of McGuffin's constitutional rights and resulting wrongful
conviction were not mere accidents or anomalies but, instead, were caused by the policies,
practices, and/or customs of Defendant Oregon State Police, among other municipalities.

MALONEY | LAUERSDORF | REINER rc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

128.    The constitutional violations that were the proximate cause of McGuffin's wrongful conviction further arose out of the failure to train and supervise in a manner that amounts to deliberate indifference by Defendant Oregon State Police.

129.    In addition, Defendant Oregon State Police failed to adopt adequate procedural safeguards concerning the suppression of material evidence; the fabrication of evidence; the prosecution of individuals in the absence of probable cause; and other law enforcement functions that violated McGuffin's constitutional rights.

130.    Agents and employees of Defendant Oregon State Police withheld material exculpatory and/or impeachment evidence as alleged above, and did so pursuant to Defendant Oregon State Police's policies, practices, and/or customs that permit the suppression of such evidence, even where it would obviously be exculpatory and/or impeaching, as it was here.

131.    The violations of McGuffin's constitutional rights were approved of and ratified by Defendant Oregon State Police and/or by the final policymaker for Defendant Oregon State Police such that the actions of the individual agents and employees constitute the official policy, practices, and/or customs of Defendant Oregon State Police.

132.    In addition, the agents and employees of Defendant Oregon State Police knowingly gave false statements and provided false information to the media in order to influence potential fact finders in the small community of Coos County as alleged above.

133.    These acts were committed, or ratified, by officials whose acts fairly represent official policy such that the challenged action constituted official policy.

134.    These unlawful acts were, furthermore, the result of longstanding policies, practices, or customs that constitute the standard operating procedure of Defendant Oregon State Police.

135.    Defendant Oregon State Police recognized the need for adequate training of its employees and was deliberately indifferent to the necessity of training regarding *Brady* obligations and evidence collection, handling, and preservation.

MALONEY | LAUERSDORF | REINER ₚc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

136.    Defendant Oregon State Police knew very well that its training, supervision, procedures, practices, and customs to prevent due process violations related to the suppression and/or fabrication of evidence were inadequate, but refused to implement adequate training and supervision or other programs to prevent violations of due process, exhibiting deliberate indifference to such violations.

## VII.  FIRST CLAIM FOR RELIEF

### (State Law – False Imprisonment)

137.    Plaintiffs incorporate by reference herein the allegations set forth above in paragraphs 1 through 136 in their entirety.

138.    By letters dated May 8, 2020, Plaintiffs provided notice to the Defendant Oregon State Police of their state law claims as required by ORS 30.275.

139.    McGuffin was incarcerated beginning on August 23, 2010.

140.    The incarceration was not lawful.  The indictment against McGuffin was made without probable cause because it was based on fabricated evidence as alleged above, and was made without regard to exculpatory evidence that had been deliberately suppressed as alleged above.

141.    Defendant Oregon State Police violated McGuffin's rights by incarcerating him without probable cause.

142.    Defendant Oregon State Police is responsible for the misconduct of its agents and employees who acted as alleged above under a theory of vicarious liability and/or respondeat superior.

143.    As a result of the misconduct of Defendant Oregon State Police, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

144.    As a result of the misconduct of Defendant Oregon State Police, S.M. suffered a loss of consortium as set forth above.

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

## VIII.  SECONDCLAIM FOR RELIEF

### (State Law – Malicious Prosecution)

145.    Plaintiffs incorporate by reference herein the allegations set forth above in paragraphs 1 through 144 in their entirety.

146.    Based on the misconduct alleged above, agents and employees of Defendant Oregon State Police caused McGuffin to be unreasonably seized and further caused McGuffin to be improperly subjected to judicial proceedings for which there was no legitimate probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in McGuffin's favor in a manner indicative of his innocence.

147.    As alleged above, agents and employees of Defendant Oregon State Police accused McGuffin of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors and grand jurors with the intent of exerting influence to institute and continue judicial proceedings against McGuffin.

148.    The proceedings lacked probable cause because they were based on fabricated evidence as alleged above, and were made without regard to exculpatory evidence that had been deliberately withheld and suppressed as alleged above.

149.    The statements by agents and employees of Defendant Oregon State Police about McGuffin's alleged culpability were made with knowledge that the statements were false and perjured.

150.    The misconduct alleged above was undertaken with malice, willfulness, and/or reckless indifference.

151.    Defendant Oregon State Police is responsible for the misconduct of its agents and employees who acted as alleged above under a theory of vicarious liability and/or respondeat superior.

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

152.    As a result of the misconduct of Defendant Oregon State Police, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

153.    As a result of the misconduct of Defendant Oregon State Police, S.M. suffered a loss of consortium as set forth above.

## IX.  THIRD CLAIM FOR RELIEF

### (State Law – Civil Conspiracy)

154.    Plaintiffs incorporate by reference herein the allegations set forth above in paragraphs 1 through 153 in their entirety.

155.    Defendant Oregon State Police and other co-conspirators, known and not yet known to Plaintiffs, reached an agreement amongst themselves to "close" the Freeman case by arresting and indicting McGuffin with the intent that he would be convicted.

156.    Agents and employees of Defendant Oregon State Police and the other co-conspirators had a meeting of the minds as alleged above.

157.    Agents and employees of Defendant Oregon State Police and the other co-conspirators took one or more unlawful overt steps in furtherance of the conspiracy by fabricating evidence as alleged above; suppressing, tampering with, or destroying material exculpatory and impeachment evidence as alleged above; and concealing their misconduct, all in violation of McGuffin's constitutional rights, including, for example, as alleged above.

158.    The misconduct alleged above was objectively unreasonable and was undertaken intentionally with willful indifference to McGuffin's constitutional rights.

159.    As a result of the misconduct alleged above, McGuffin was indicted and ultimately wrongly convicted.

160.    Defendant Oregon State Police is responsible for the misconduct of its respective agents and employees who acted as alleged above under a theory of vicarious liability and/or respondeat superior.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

161.    As a result of the misconduct of Defendant Oregon State Police, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

162.    As a result of the misconduct of Defendant Oregon State Police, S.M. suffered a loss of consortium as set forth above.

## X.  FOURTH CLAIM FOR RELIEF

### (State Law – Negligent Training and Supervision)

163.    Plaintiffs incorporate by reference herein the allegations set forth above in paragraphs 1 through 162 in their entirety.

164.    Defendant Oregon State Police had a duty to properly train and supervise its agents and employees.

165.    Defendant Oregon State Police breached its duty to train and supervise its agents and employees by creating policies, practices, and customs as alleged above.

166.    Defendant Oregon State Police also breached its duty to train and supervise its agents and employees by failing to institute policies, practices, and customs that would prohibit the misconduct alleged above.

167.    As a result of Defendant Oregon State Police's negligence, its agents and employees violated McGuffin's constitutional rights by committing the misconduct alleged above.

168.    As a result of the negligent training and supervision by Defendant Oregon State Police, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

169.    As a result of the negligent training and supervision by Defendant Oregon State Police, S.M. suffered a loss of consortium as set forth above.

MALONEY | LAUERSDORF | REINER rc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

## XI.  FIFTH CLAIM FOR RELIEF

### (State Law – Intentional Infliction of Emotional Distress)

170.    Plaintiffs incorporate by reference herein the allegations set forth above in paragraphs 1 through 169 in their entirety.

171.    The acts and misconduct of Defendant Oregon State Police as alleged above were extreme and outrageous.  The actions were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability that their actions would cause, severe emotional distress to McGuffin and S.M. as alleged above.

172.    As a direct and proximate result of the actions by Defendant Oregon State Police, McGuffin has suffered and continues to suffer physical sickness and severe emotional distress.

173.    As a result of the misconduct by Defendant Oregon State Police, McGuffin suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

174.    As a result of the misconduct by Defendant Oregon State Police, S.M. suffered a loss of consortium as set forth above.

## XII.  SIXTH CLAIM FOR RELIEF

### (State Law – Negligent and/or Intentional Spoliation of Evidence)

175.    Plaintiffs incorporate by reference herein the allegations set forth above in paragraphs 1 through 174 in their entirety.

176.    Defendant Oregon State Police had a duty to preserve evidence.

177.    Defendant Oregon State Police breached its duty to preserve evidence by negligently and/or intentionally suppressing, tampering with, and/or destroying evidence that was exculpatory and materially favorable to McGuffin.

178.    Agents and employees of Defendant Oregon State Police destroyed evidence in their possession, including their communications about exculpatory evidentiary examinations, evidence of any file review in 2010, and evidence of their own misconduct.

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

179.    Defendant Oregon State Police knew or should have known that the information, physical items, and records that were suppressed, tampered with, and/or destroyed would be required as evidence.

180.    As a direct and proximate result of the actions by Defendant Oregon State Police, the value of Plaintiffs' claims in this lawsuit were diminished.

181.    As a result of the misconduct by Defendant Oregon State Police, Plaintiffs are entitled to any diminished value of their claims.

## XIII.  SEVENTH CLAIM FOR RELIEF

### (State Law – Vicarious Liability)

182.    Plaintiffs incorporate by reference herein the allegations set forth above in paragraphs 1 through 181 in their entirety.

183.    Defendant Oregon State Police is directly liable for its own conduct, as well as vicariously liable for the acts of its individual agents (Susan Hormann, Mary Krings, John Riddle, and Kathy Wilcox) working under the direction and supervision of Defendant Oregon State Police, under a theory of respondeat superior or vicarious liability.

## XIV.  EIGHTH CLAIM FOR RELIEF

### (Attorney Fees Pursuant to 42 U.S.C. § 1988(b))

184.    Plaintiffs incorporate by reference herein the allegations set forth above in paragraphs 1 through 183 in their entirety.

185.    Pursuant to 42 U.S.C. § 1988(b), Plaintiffs are entitled to their attorney fees incurred in this action.

## XV.  JURY DEMAND

Plaintiffs request a trial by jury of twelve.

///

///

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

## XVI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

1.      Judgment against Defendant and in favor of Plaintiffs on all claims for relief stated herein;

2.      An award of Plaintiffs' economic and non-economic damages;

3.      An award of Plaintiffs' costs and attorney fees in this action pursuant to 42 U.S.C. § 1988(b); and

4.      Such other relief as the Court finds just and equitable.

Plaintiffs reserve the right to amend to add a claim for punitive damages.

DATED:  January 27, 2023

| MALONEY LAUERSDORF REINER PC | LOEVY & LOEVY |
|---|---|
| By /s/Janis C. Puracal<br>  Janis C. Puracal, OSB #132288<br>  E-Mail:  jcp@mlrlegalteam.com<br>  Andrew C. Lauersdorf, OSB #980739<br>  E-Mail:  acl@mlrlegalteam.com | By /s/David B. Owens<br>  David B. Owens, WSBA #53856<br>  E-Mail:  david@loevy.com<br>  *Pro hac vice* |

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2023, the foregoing FIRST AMENDED

COMPLAINT was served on the following parties at the following address by sending to them a

true copy thereof via the method indicated below:

| | |
|---|---|
| Robert E. Franz, Jr.<br>Sarah R. Henderson<br>Law Office of Robert E. Franz, Jr.<br>PO Box 62<br>Springfield, OR 97477<br>rfranz@franzlaw.comcastbiz.net<br>shenderson@franzlaw.comcastbiz.net<br>　　*Attorneys for Defendants*<br>　　*City of Coquille, City of Coos Bay, Coos*<br>　　*County, Craig Zanni, Chris Webley, Eric*<br>　　*Schwenninger, Sean Sanborn, Ray McNeely,*<br>　　*Kris Karcher, Pat Downing, Mark Dannels,*<br>　　*Kip Oswald, Michael Reaves, David Zavala,*<br>　　*Anthony Wetmore, Shelly McInnes* | Jesse B. Davis<br>Todd Marshall<br>Oregon Department of Justice<br>100 SW Market Street<br>Portland, OR 97201<br>todd.marshall@doj.state.or.us<br>jesse.b.davis@doj.state.or.us<br>　　*Attorneys for Defendants Oregon State*<br>　　*Police, John Riddle, Susan Hormann,*<br>　　*Mary Krings, Kathy Wilcox* |
| Graham B. Miller<br>Karin L. Schaffer<br>Amanda J. Rockett<br>Wood Smith Henning & Berman LLP<br>12755 SW 69th Ave., Ste. 100<br>Portland, OR 97223<br>gmiller@wshblaw.com<br>kschaffer@wshblaw.com<br>arockett@wshblaw.com<br>　　*Attorneys for Defendants Vidocq Society and*<br>　　*Richard Walter* | |

☒ by electronic means through the Court's ECF System on the date set forth above.
☐ by mailing a full, true and correct copy thereof in a sealed, first-class postage paid
envelope, addressed to the attorneys as shown above, and deposited with the United
States Postal Office at Portland, Oregon on the date set forth above.
☐ by emailing to each of the foregoing a copy thereof to the email address above.

MALONEY LAUERSDORF REINER PC


By  /s/Janis C. Puracal
　　Janis C. Puracal, OSB #132288
　　E-Mail:  jcp@mlrlegalteam.com

Attorneys for Plaintiffs



MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417