Anthony R. Scisciani III, OSB No. 070013
Kelsey L. Shewbert, OSB No. 221063
HWS LAW GROUP
101 SW Main Street, Suite 1605
Portland, OR 97204
Phone: (503) 542-1200
Fax: (503) 542-5248
ascisciani@hwslawgroup.com
kshewbert@hwslawgroup.com
*Attorney for Defendant Vidocq Society*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| NICHOLAS JAMES MCGUFFIN, as an individual and as guardian *ad litem,* on behalf of S.M., a minor,<br><br>          Plaintiffs,<br><br>  v.<br><br>MARK DANNELS, PAT DOWNING, SUSAN HORMANN, MARY KRINGS, KRIS KARCHER, SHELLY MCINNES, RAYMOND MCNEELY, KIP OSWALD, MICHAEL REAVES, JOHN RIDDLE, SEAN SANBORN, ERIC SCHWENNINGER, RICHARD WALTER, CHRIS WEBLEY, ANTHONY WETMORE, KATHY WILCOX, CRAIG ZANNI, DAVID ZAVALA, JOEL D. SHAPIRO AS ADMINISTRATOR OF THE ESTATE OF DAVID E. HALL, VIDOCQ SOCIETY, CITY OF COQUILLE, CITY OF COOS BAY, and COOS COUNTY,<br><br>          Defendants. | NO. 6:20-CV-01163-MK<br><br>MOTION FOR PROTECTIVE ORDER |

MOTION FOR PROTECTIVE ORDER
(CASE NO. 6:20-CV-01163-MK) – Page 1

# I.    RELIEF REQUESTED

Defendant Vidocq Society ("Vidocq"), by and through its attorneys of record, HWS Law Group, LLP, requests a Protective Order to limit the scope of discovery requested by Plaintiffs.  The scope of Plaintiffs' FRCP 30(b)(6) and FRCP 34 Deposition Notice extends far beyond what is relevant to this case.  Further, Plaintiffs seek to compel the production of confidential documents which span 33 years, rendering the requested documents irrelevant as well.

Both the FRCP 30(b)(6) deposition topics and Plaintiffs' discovery requests to Vidocq are protected by the Federal Rules of Civil Procedure and subject to confidentiality, and therefore should not be permitted.  In the alternative, where this Court determines that some information held by Vidocq could be discoverable, Defendant seeks an Order to limit the discovery to the timeframe where Vidocq was involved with the Leah Freeman investigation.

# II.    STATEMENT OF FACTS

This case arises out of the homicide of 15-year-old Leah Freeman in Coquille, Oregon in the summer of 2000.[1]  After many years of investigation, the case went cold, and no suspects were arrested.[2]  In 2008, the case was reopened by newly elected police chief, Mark Dannels, who had his sights on solving the case.[3] One of the many avenues Chief Dannels explored in solving this cold case in hopes of administering justice and bringing closure to the grieving parents and community, was a single lunch meeting with the Vidocq Society.[4]

Vidocq Society is a volunteer-based membership, founded in 1990, made up of forensic experts and investigators who serve as confidential consultants to assist law enforcement in

---

[1] *See* Plaintiffs' 2nd Amended Complaint, ¶ 39, Docket No. 143.
[2] *Id.* at ¶ 90-92.
[3] *Id.* at ¶ 93.
[4] *Id.* at ¶ 106.

MOTION FOR PROTECTIVE ORDER
(CASE NO. 6:20-CV-01163-MK) – Page 2

solving cold cases.[5]  Once a case is accepted by Vidocq, the lead investigators are invited to come present their case to the members at one of Vidocq's monthly luncheon meetings.[6]  The Vidocq members then pose questions and brainstorm about how best to move the case forward.[7]  Given the volunteer-based membership and the fact that members are often late in their career or already retired, the Vidocq Society membership list has changed and updated many times since its inception in 1990.[8]  The investigators involved with Leah Freeman's disappearance presented their case at Vidocq's luncheon on January 21, 2010.[9]  Unfortunately, it appears that Vidocq was not helpful in this case.[10]

District Attorney Paul Fraiser, Police Chief Mark Dannels, Sheriff Craig Zanni and DOJ Analyst Lisa McOwen attended the luncheon, and Mr. Fraiser presented the facts of the Leah Freeman case to members of Vidocq.[11] The meeting lasted less than 15 or 20 minutes, and DA Frasier ultimately concluded that Vidocq did not give Oregon law enforcement any useful advice.[12] Frasier testified in his recent deposition that all Vidocq members could provide were words of encouragement, suggesting that law enforcement was "going down the right track".[13] Vidocq did not provide any tangible suggestions to follow through with.[14] In fact, Frasier stated that he did not learn anything at the Vidocq Society luncheon that affected or influenced, or had any bearing upon, the investigation or eventual prosecution of the case against Mr. McGuffin, aside from words of encouragement.[15] In Frasier's letter to the DOJ in

---

[5]  *See* Vidocq Society's Website, https://www.vidocq.org/about/ (information authenticated by Declaration of Barbara Cohan).
[6] *Id.*
[7] *Id.*
[8] *See* Declaration of Barbara Cohan.
[9]  *See* Synopsis of Leah Freeman Case, attached as Exhibit A to the Declaration of Anthony R. Scisciani's III ("ARS Declaration").
[10] *See generally* Paul Frasier's Deposition, excerpts attached as Exhibit B to ARS Declaration.
[11] *See* Synopsis of Leah Freeman Case.
[12] *See* Paul Frasier's Deposition, p. 85:15; p. 88:23-24.
[13] *Id.* at p. 226:14-23.
[14] *Id.*
[15] *Id.* at p. 231:14-20; p. 235:15-25.

MOTION FOR PROTECTIVE ORDER
(CASE NO. 6:20-CV-01163-MK) – Page 3

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

response to Mr. McGuffin's Petition for Post Conviction Relief, he explicitly states, "Long story short: I did not use anything we learned from Mr. Walter or the Vidocq Society and certainly did not use it at trial.  It had no effect on the verdict in this case. . ."[16] Of course, no members of Vidocq testified at Mr. McGuffin's trial.[17]

The January 2010 luncheon was the first time Vidocq Society members had any actual knowledge of the Leah Freeman investigation, as they were not given a copy of DA Frasier's presentation before that day.[18]  However, Chief Dannels had been in contact with Vidocq before then to set up the presentation.  The first time Chief Dannels, or anyone involved in the Leah Freeman investigation contacted Vidocq was in July 2009, when Chief Dannels first discussed the case with Fred Bornhofen, a member of Vidocq.[19]  The last time Vidocq had any involvement in the Freeman case was at the end of the luncheon presentation on January 21, 2010.[20]

In 2010, District Attorney Fraiser held a grand jury proceeding to determine whether to go forward with an indictment.[21] After reviewing the numerous facts presented, the grand jury decided to indict Nicholas McGuffin ("Mr. McGuffin") and later that year he was arrested. In 2011, Mr. McGuffin was convicted by a jury of first-degree manslaughter and sentenced to 10 years in prison for the homicide of Leah Freeman.[22]  Mr. McGuffin was Leah's 18-year-old boyfriend at the time of her disappearance and was a suspect from the very beginning.[23]  By the time of his arrest, Nicholas was 28 years old and had a young daughter, S.M.[24] After his

---

[16] Frasier's Letter, p. 6, attached as Exhibit C to ARS Declaration.
[17] *See* Paul Frasier's Deposition, p. 240:20-22.
[18] *Id*. at p. 225-226.
[19] *See generally* Dannels Letter to Vidocq, attached as Exhibit D to ARS Declaration.
[20] *See* Synopsis of Leah Freeman Case.
[21] *See* Paul Frasier 2019 Deposition Transcript, attached as Exhibit E to ARS Declaration, at 160.
[22] *See* Plaintiffs' 2nd Amended Complaint, ¶ 140, 154, Docket No. 143.
[23] *Id. See generally.*
[24] *Id.* at ¶ 173.

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

conviction, Mr. McGuffin appealed to the Oregon Court of Appeals and then the Oregon Supreme Court, however the conviction was affirmed both times.[25]

In 2015, Mr. McGuffin filed a Petition for Post-Conviction Relief to set aside the 2011 manslaughter conviction.[26]  On November 26, 2019, after serving 9 ½ years of his 10-year sentence, the Malheur County Circuit Court found that three of his thirteen claims had merit, so his conviction was set aside, and he was granted a new trial. [27]  This decision was based on two findings of ineffective assistance of counsel, and a Brady discovery violation related to DNA evidence.[28]  The Court expressly denied Mr. McGuffin's petition on every other ground. The DA ultimately chose not to retry the case.[29]  In a daring effort to clear his name, Mr. McGuffin and his minor daughter S.M. now claim that his arrest, conviction and incarceration were unlawful and the result of a consolidated scheme and conspiracy by law enforcement, Richard Walter, and – incredibly – the Vidocq Society.[30]

On July 20, 2020, Plaintiffs filed their original Complaint, which included the Oregon State Police as a named defendant.[31]  The Complaint has been amended twice, following Motions for Partial Dismissal pursuant to FRCP 12(b)(6), filed independently by the various defendants.[32]  Notably, Plaintiffs' claims against OSP based on a violation of 42 USC §1983 were barred as the state was not a "person" within the meaning of §1986.[33]  The crux of Plaintiffs' lawsuit is that the city and county entities and law enforcement officers participated in a scheme to fabricate, suppress, and destroy evidence which resulted in Mr. McGuffin's

---

[25] *See* <u>State v. McGuffin, Nicholas James</u> (A149839), REV DEN, 354 Or 840 (2014).
[26] *See* Plaintiffs' 2nd Amended Complaint, ¶ 161, Docket No. 143.
[27] *Id.* at ¶ 162-163.
[28] *Id.* at ¶ 162.
[29] *Id.* at ¶ 164.
[30] *Id. See generally.*
[31] *See generally* Plaintiffs' Original Complaint.
[32] *See generally* Motions for Partial Dismissal by Defendants', Docket No. 104-106.
[33] *See* Judge Kasubhai's Order, Docket No. 139.

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

conviction and incarceration.[34]  Plaintiffs claim that Vidocq and Richard Walter were hired by the City of Coquille to participate in this scheme and were therefore agents of the City of Coquille.[35]

    As part of the initial disclosures required under FRCP 26(a)(1)(e), all parties exchanged various witnesses, documents, damages computations, and insurance agreements.[36]  Vidocq produced 24 pages of documents related to their incorporation paperwork, tax status, code of ethics, sample invitation letter, and a synopsis of the Leah Freeman investigation ("Leah Freeman Synopsis").[37]  On May 31, 2023, Plaintiffs sent a 30(b)(6) and 34 Deposition Notice to Defendant Vidocq.[38]  On July 14, 2023, Vidocq sent its Objections and Responses.[39] At issue in this motion is the scope of discovery propounded by Plaintiffs.

    In Plaintiffs' FRCP 30(b)(6) Deposition Notice to Vidocq, the proposed topics span 13.5 pages.[40]  Vidocq timely objected on grounds that the topics are overbroad, burdensome, not relevant, not reasonably calculated to lead to the discovery of admissible evidence and are disproportional with respect to the needs of the case.[41]  Vidocq's objections were particularly directed at the time period referenced in each topic, with some reaching back 33 years.[42]  Further, many of the topics listed are not relevant to the case, specifically topics related to other cases "Vidocq agreed to assist a law enforcement agency with."[43]  The cumulation of these topics is unduly burdensome, irrelevant, prejudicial, and confidential.  Therefore, Vidocq is

---

[34] *See generally* Plaintiffs' 2nd Amended Complaint, Docket No. 143.
[35] *Id.* at ¶ 9.
[36] *See generally* Parties' Initial Disclosures.
[37] *See generally* Vidocq's Initial Disclosures, attached as Exhibit F to ARS Declaration.
[38] Plaintiffs' 30(b)(6) and 34 Deposition Notice to Defendant Vidocq, attached as Exhibit G to ARS Declaration.
[39] Vidocq Objections and Responses to Plaintiffs' 30(b)(6) and 34 Deposition Notice, attached as Exhibit H to ARS Declaration.
[40] Plaintiffs' 30(b)(6) and 34 Deposition Notice to Defendant Vidocq.
[41] Vidocq Objections and Responses to Plaintiffs' 30(b)(6) and 34 Deposition Notice.
[42] *Id.*
[43] Plaintiffs' 30(b)(6) and 34 Deposition Notice to Defendant Vidocq, p. 15, ¶ 10.

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

respectfully requesting that this Court issue a protective order limiting the scope of discovery to topics relevant to this case.

In Plaintiff's FRCP Rule 34 Request for Production of Documents, Plaintiffs request the "complete Synopsis of Vidocq Society Cases" ("Case Synopsis List") which is a propriety, confidential document that summarizes every case Vidocq has worked on with law enforcement from the years 1990-2013.[44]  It was listed on Vidocq's privilege log as VIDOCQ BATES NO. 000083-000150, noting the existence of the document.[45]  Plaintiffs pushed back on Vidocq's objections and sought to compel production.  Empirically, the forced production of this document is burdensome, irrelevant, prejudicial, and confidential.  Therefore, Vidocq respectfully requests this Court to issue a protective order to preclude Plaintiffs from compelling the production of the Synopsis List.

### III.    ISSUES PRESENTED

1.  Whether good cause exists for the Court to issue a protective order precluding the Plaintiffs from compelling Vidocq's 30(b)(6) representative to testify about topics outside the scope of the Leah Freeman investigation.  Yes.

2.  Whether good cause exists for the Court to issue a protective order precluding Plaintiff's motion to compel the production of Vidocq's Case Synopsis List?  Yes.

### IV.    EVIDENCE RELIED UPON

This motion is based upon the legal authority cited herein, the Declaration of Barbara Cohan, the Declaration of Anthony R. Scisciani III with attached exhibits, and all pleadings and documents filed with the Court.

//

//

---

[44] *Id.* at p. 17, ¶ 8.
[45] *See generally* Vidocq Society's Response to Plaintiffs' First Request for Production of Documents.

MOTION FOR PROTECTIVE ORDER
(CASE NO. 6:20-CV-01163-MK) – Page 7

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

## V.    AUTHORITY AND ARGUMENT

### A.    <u>Good Cause Exists for Granting a Protective Order</u>

A protective order is necessary to preclude Plaintiffs from pursuing impermissible lines of questioning to Barbara Cohan, and to preclude Plaintiffs from compelling the production of Vidocq's Case Synopsis List.  The Court has broad authority to limit discovery to protect a party from undue burden or expense.[46] The Court is authorized to issue a protective order pursuant to FRCP 26(c), which provides in pertinent part:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; . . . (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. . .[47]

To this end, a trial court is afforded broad discretion to implement controls over the discovery process to regulate the conduct of discovery.[48] The power afforded to the court include limiting the scope of discovery, and whichever other steps "justice requires to protect the party" from annoyance, embarrassment, or oppression.[49] A party may properly resist or seek limitations on the (1) deposition of a witness, or (2) the compulsion of certain document production, which seeks protected information. To establish good cause, the party should show particularized harm or prejudice that will result from the disclosure if no protective order is issued.[50] After a showing of good cause, the court may issue a protective order, including "any order prohibiting the requested discovery altogether. . . or limiting the scope of the

---

[46] *See* <u>Cocina Cultura LLC v. State</u>, No. 3:20-CV-01866-IM, 2021 WL 3836840, at 11 (D. Or.  Aug. 27, 2021).
[47] FRCP 26(c).
[48] *See* <u>Century 21 Real Est. Corp. v. Sandlin</u>, 846 F.2d 1175, 1181 (9th Cir. 1988).
[49] <u>United States v. Meyer</u>, 398 F.2d 66, 75 (9th Cir. 1968).
[50] *See* <u>Phillips ex rel. Estates of Byrd v. General Motors Corp</u>., 307 F.3d 1206, 1210–11 (9th Cir.2002).

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

discovery."[51] In exercising its discretion to issue a protective order, the court must weigh the respective interests of the parties.[52]

There is good cause for this Court to issue a protective order (discussed in further detail below) which: 1) precludes Plaintiffs from deposing Barbara Cohan about any topics unrelated to the Leah Freeman investigation, and 2) precludes Plaintiffs from compelling Vidocq to produce its Case Synopsis List.

### B.     The Proposed Discovery Is Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence

The Federal Rules of Civil Procedure specifically exclude irrelevant information from discovery.  Specifically, the discovery of matter not "reasonably calculated to lead to the discovery of admissible evidence" is not within the scope of FRCP 26(b)(1).[53] Therefore, a party seeking to compel discovery must show that its request satisfies the relevancy requirement, and the party opposing discovery must show that discovery should not be allowed.[54] Courts have the discretion to overrule discovery requests if they are "not limited to investigations relevant to plaintiff's claims" because that alone shows that the requests are "overly broad and not proportional".[55]

#### 1.     FRCP 30(b)(6) Deposition Notice Topics

As stated, on May 31, Plaintiffs issued an FRCP 30(b)(6) Deposition Notice to Vidocq with a list of topics that spanned over 13.5 pages.  The proposed topics are not only burdensome, but they are overbroad and irrelevant.

---

[51] Rivera v. NIBCO, Inc., 364 F.3d 1057, 1063 (9th Cir. 2004).
[52] Seattle Times Co. v. Rhinehart, 467 U.S. 1230, 1233 (1984).
[53] Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351–52, 98 S. Ct. 2380, 2390, 57 L. Ed. 2d 253 (1978).
[54] See Sarnowski v. Peters, No. 2:16-CV-00176-SU, 2017 WL 4467542, at 2 (D. Or. Oct. 6, 2017) (citing Frontier Recovery, LLC v. Lane County, No. 09–6017–TC, 2009 WL 2253726, at 2 (D. Or. July 24, 2009); Yufa v. Hach Ultra Analytics, No. 1:09–cv–3022–PA, 2014 WL 11395243, at 1 (D. Or. Mar. 4, 2014)).
[55] See Sarnowski v. Peters, No. 2:16-CV-00176-SU, 2017 WL 4467542, at 9 (D. Or. Oct. 6, 2017).

MOTION FOR PROTECTIVE ORDER
(CASE NO. 6:20-CV-01163-MK) – Page 9

Plaintiffs' proposed deposition topics must be reasonably calculated to lead to the discovery of admissible evidence, meaning Plaintiffs have the burden to show that the topics are relevant.  The only topics relevant are ones pertinent to Plaintiffs' claims, which would be limited to the date Vidocq became involved with the Leah Freeman investigation in July 2009, until the time that involvement ended in January 2010.  Not relevant are (1) any topics which fall outside of that timeframe, (2) any questions regarding Vidocq's Case Synopsis List, or (3) any other questions pertaining to other cold cases that Vidocq has been involved with.  Any topics that fall within one or more of these categories are irrelevant to Vidocq's involvement with this case, and therefore irrelevant to Plaintiffs' claims.

**2.      FRCP 34 Request for Production of Documents**

On May 31, Plaintiffs issued to Vidocq a Request for Production of Documents pursuant to FRCP 34.  One of the requests, which Vidocq objected to, is for the production of Vidocq's Case Synopsis List.  The Case Synopsis List is a propriety, confidential document that summarizes every case Vidocq has worked on with law enforcement from the years 1990-2013.  Plaintiffs' requests for production must be reasonably calculated to lead to the discovery of admissible evidence, meaning Plaintiffs have the burden to show that the discovery request is relevant.  Any information not pertinent to Plaintiffs' claims does not meet the scope of FRCP 26(b)(1).  The Case Synopsis List that Plaintiffs are compelling Vidocq to produce is not relevant to Vidocq's involvement with the Leah Freeman investigation, and therefore is not relevant to Plaintiffs' claims against Vidocq.

**C.      The Discovery Sought by Plaintiff is Confidential and Private.**

**1.      Overview**

Under FRCP 26(b), the scope of discovery is limited to any "nonprivileged matter". The proposed discovery is privileged because it seeks to compel information protected by the

MOTION FOR PROTECTIVE ORDER
(CASE NO. 6:20-CV-01163-MK) – Page 10

First Amendment.[56]  The U.S. Supreme Court has recognized the "vital relationship between freedom to associate and privacy in one's associations."[57] This right to privacy is essential in ensuring that current or potential members of an organization are not dissuaded from associating due to a fear of disclosure.[58]  On top of the right to privacy, the Court has interpreted this right of assembly and association to extend to documents as inconspicuous as member lists, due to a concern that the forced disclosure would dissuade present members and potential recruits from associating with an otherwise lawful organization.[59]

    The goal of Vidocq Society is to "assist law enforcement in solving difficult cold cases."[60]  This process necessarily requires investigators to disclose details of the cases that need solving, in order for Vidocq to properly assess the investigation.  These law enforcement agencies have a vested interest in keeping certain information confidential in order to maintain the integrity of their investigations.  Likewise, Vidocq Society, made up of many members who have had a career in law enforcement, fully understand and appreciate the importance of this concealment.  When investigators agree to let an uninterested party like the Vidocq Society in on proprietary information, there is an implied assumption and trust that the information given will remain confidential.  In fact, this sort of trust is essential to any third-party consultant that law enforcement agencies utilize.  Vidocq's understanding of this confidentiality is clearly expressed on their website, https://www.vidocq.org/#confidentiality, and Mr. Fraiser's presentation at Vidocq explicitly states, "Information to be discussed is law enforcement sensitive.  It is not to be shared with anyone not directly working on this case".[61] If this privacy between Vidocq and law enforcement agencies did not exist, investigators would not trust

---

[56] See Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson, 357 U.S. 449, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958).
[57] *Id.* at 1171-1172.
[58] *Id.*
[59] *Id*. at 463.
[60] *See* Vidocq's Website: https://www.vidocq.org/.
[61] See Freeman Presentation, attached as Exhibit I to ARS Declaration.

MOTION FOR PROTECTIVE ORDER
(CASE NO. 6:20-CV-01163-MK) – Page 11

Vidocq, and society would lose a free resource available to law enforcement in difficult or cold case investigations.

### 2.  Proposed Discovery

The proposed deposition topics requests the disclosure of information from 1990-present, far beyond anything related to Mr. McGuffin or his conviction.  This breadth of information is not specific enough in scope to be relevant to Vidocq's involvement in the Leah Freeman case which ranged from July 2009-January 21, 2010.

The proposed document production of Vidocq's Case Synopsis List similarly involves cases unrelated to the Leah Freeman investigation and includes reference to confidential conversations between Vidocq and other law enforcement agencies.  The forced production information pertaining to conversations between Vidocq and other law enforcement agencies would harm Vidocq's First Amendment right to association, assembly and privacy.

### D.  The Prejudice of the Proposed Discovery Outweighs its Likely Benefit

On motion or on its own, the Court must limit the frequency or extent of discovery otherwise allowed by the rules if it determines that the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.[62] Here, the burden of the proposed discovery outweighs its likely benefit given the needs of the case, the parties' sources and the importance of the discovery in resolving the issues.

By compelling the production of this discovery, Plaintiffs presumably believe that the information requested is beneficial to the case.  However, as demonstrated above, the information sought is not relevant to the current case or likely to lead to the discovery of admissible evidence.  The requests do not meet the simple requirement which states that "the

---

[62] FRCP 26(b)(2)(C)(iii).

MOTION FOR PROTECTIVE ORDER
(CASE NO. 6:20-CV-01163-MK) – Page 12

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

discovery must be reasonably calculated to lead to the discovery of admissible evidence, and therefore is not probative to Plaintiffs' causes of action.[63] If compelled to produce the requested discovery however, the burden on Vidocq is substantial and outweighs the potential benefit plenty.

###     1.      Actual Burden on Members

Given the volunteer-based membership model and the fact that Vidocq volunteers are often late in their career or already retired, the individual members that make up Vidocq often changes.  This puts someone like Barbra Cohan, Vidocq's 30(b)(6) designee, in an impossible position.  Not only is she required to testify about information that occurred before she was a part of Vidocq, but if compelled, she must testify regarding cases that not she, nor any current member of Vidocq Society, had a hand in solving.  Further, as shown, information surrounding other, unrelated cold cases is irrelevant and confidential.  Therefore, the burden on Vidocq to testify about unrelated cases spanning 33 years is substantial.

In addition to the burden on individual members, compelling the proposed discovery would frustrate the entire purpose of the Vidocq Society.  As stated, Vidocq exists because law enforcement agencies trust that information revealed about open cases will remain confidential, so as not to impair the investigatory process.  If forced to produce the Case Synopsis List, or to testify regarding unrelated confidential cases, the trust built between Vidocq and law enforcement would crumble.

Lastly, if the reputation of Vidocq becomes damaged due to confidential information getting revealed, law enforcement agencies are not likely to trust Vidocq.  And, as a result, if Vidocq is not afforded the right to privacy central to its mission, it is very likely that Vidocq and any other similar organizations will cease to exist.

###     2.      First Amendment-Related Burdens

---

[63] FRCP 26(b)(1).

MOTION FOR PROTECTIVE ORDER
(CASE NO. 6:20-CV-01163-MK) – Page 13

Under the First Amendment, Vidocq's freedom of association and freedom of assembly restrict Plaintiffs' request.  Using this framework, the 9th Circuit has developed a two-part test for determining whether the First Amendment privilege withstands a request for production.[64] First, the "the party asserting the privilege must demonstrate a prima facie showing of arguable first amendment infringement" by showing that enforcement of the requests will result in "(1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights."[65] If that can be shown, then the party seeking discovery has the burden of demonstrating an "interest in obtaining the disclosures it seeks ... which is sufficient to justify the deterrent effect ... on the free exercise ... of [the] constitutionally protected right of association."[66] The court then balances "the burdens imposed on individuals and associations against the significance of the ... interest in disclosure,"[67]

The disclosure of the Case Synopsis List would result in the discouragement of new members, and other consequences that would have a chilling effect on the members' associational rights.  First, as mentioned, law enforcement would be hesitant to use Vidocq in their investigation if they knew that confidential information would be leaked.  This has a negative policy effect of more cold cases remaining unsolved.  This would frustrate the entire purpose of organizations like Vidocq and would absolutely burden the right of association.

Further, Plaintiffs must show that they have an interest in obtaining the Case Synopsis List sufficient to justify the deterrent effect.  The synopsis of other, unrelated Vidocq cases is not relevant to any of the claims against Vidocq and therefore attenuated from the issue, while

---

[64] <u>Perry v. Schwarzenegger</u>, 591 F.3d 1147, 1152 (9th Cir. 2010).
[65] *Id.*
[66] <u>NAACP, 357 U.S.</u> at 463, 78 S. Ct. 1163.
[67] <u>AFL–CIO v. FEC,</u> 333 F.3d at 176.

MOTION FOR PROTECTIVE ORDER
(CASE NO. 6:20-CV-01163-MK) – Page 14

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

the intrusion on our First Amendment privilege is substantial.  Thus, the burden on Vidocq members outweighs the significance of the interest in disclosure.

## VI.    CONCLUSION

For the reasons set forth above, Vidocq Society respectfully requests this Court to issue a protective order precluding the discovery request for Vidocq's Case Synopsis List and limiting the scope of Plaintiffs' proposed 30(b)(6) deposition topics to only topics relevant to Vidocq's involvement with the Leah Freeman case.

DATED this 15th day of September 2023.

HWS LAW GROUP

BY */s/ Anthony R. Scisciani*
BY */s/ Kelsey L. Shewbert*
Anthony R. Scisciani III, OSB No. 070013
ascisciani@hwslawgroup.com
Kelsey L. Shewbert, OSB No. 221063
kshewbert@hwslawgroup.com
Attorneys for Defendant Vidocq Society

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

<u>CERTIFICATE OF SERVICE</u>

I certify under penalty of perjury under the laws of the State of Oregon, that the following is true and correct:

I am employed by the law firm of HWS Law Group.

At all times hereinafter mentioned, I was and am a citizen of the United States of America, a resident of the State of Washington, over the age of eighteen (18) years, not a party to the above-entitled action, and competent to be a witness herein.

On the date set forth below I served the document(s) to which this is attached, in the manner noted on the following person(s):

| PARTY/COUNSEL | DELIVERY INSTRUCTIONS | |
|---|---|---|
| **CO / Plaintiffs**<br>Janis C. Puracal<br>Andrew C. Lauersdorf<br>Maloney Lauersdorf Reiner PC<br>1111 E. Burnside Street, Suite 300<br>Portland, OR 97214 | ☐ **Via U.S. Mail**<br>☐ **Via E-Mail**<br>☐ **Via Overnight Mail**<br>☒ **Via Court E-Service, if applicable**<br>jcp@mlrlegalteam.com<br>acl@mlrleagllteam.com | |
| **CO / Plaintiffs**<br>David B. Owens, *Pro Hac Vice*<br>Loevy & Loevy<br>100 S. King Street, Suite 100<br>Seattle, WA 98104-2885 | ☐ **Via U.S. Mail**<br>☐ **Via E-Mail**<br>☐ **Via Overnight Mail**<br>☒ **Via Court E-Service, if applicable**<br>david@loevy.com | |
| **CO / Defendants City of Coquille, City of Coos Bay, Coos County, Craig Zanni, Chris Webley, Eric Schwenninger, Sean Sanborn, Ray McNeely, Kris Karcher, Pat Downing, Mark Dannels, Kip Oswald, Michael Reaves, David Zavala, Anthony Wetmore and Shelly McInnes**<br>Robert E. Franz, Jr.<br>Sarah R. Henderson<br>Law Office of Robert E. Franz, Jr.<br>PO Box 62<br>Springfield, OR 97477 | ☐ **Via U.S. Mail**<br>☐ **Via E-Mail**<br>☐ **Via Overnight Mail**<br>☒ **Via Court E-Service, if applicable**<br>rfranz@franzlaw.comcastbiz.net<br>shenderson@franzlaw.comcastbiz.net | |
| **CO / Defendants John Riddle, Susan Hormann, Mary Krings and Kathy Wilcox**<br>Jesse B. Davis<br>Todd Marshall<br>Oregon Department of Justice<br>100 SW Market Street<br>Portland, OR 97201 | ☐ **Via U.S. Mail**<br>☐ **Via E-Mail**<br>☐ **Via Overnight Mail**<br>☒ **Via Court E-Service, if applicable**<br>Todd.marshall@doj.state.or.us<br>Jesse.b.davis@doj.state.or.us | |

DATED this 15th day of September 2023.

*s/ Abby Jenkins*
_____
Abby Jenkins, Legal Assistant

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248