Huma Nasir

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NICHOLAS JAMES MCGUFFIN, as      ) No. 6:20-cv-1163-MK

an individual and as guardian ) (Lead Case)

ad litem, on behalf of S.M.,     ) No. 3:21-cv-1719-MK

a minor,                         ) (Trailing Case)

          Plaintiffs,        )

    v.                           )

MARK DANNELS, PAT DOWNING,       ) Deposition of:

SUSAN HORMANN, MARY KRINGS,      ) Huma Nasir

KRIS KARCHER, SHELLY MCINNES, ) December 10, 2024

RAYMOND MCNEELY, KIP OSWALD,    )

MICHAEL REAVES, JOHN RIDDLE,    )

SEAN SANBORN, ERIC              )

SCHWENNINGER, RICHARD WALTER, )

CHRIS WEBLEY, ANTHONY WETMORE,)

KATHY WILCOX, CRAIG ZANNI,      )

DAVID ZAVALA, ESTATE OF         )

DAVID E. HALL, VIDOCQ SOCIETY,)

CITY OF COQUILLE, CITY OF       )

COOS BAY, and COOS COUNTY,      )

                     )

         Defendants.        )

-----------------------------)

Exhibit 158 Page 1 of 17 to
State Defendants' Motion for Summary Judgment

Huma Nasir

2

VIDOCQ SOCIETY,                    )

      Cross-Claimant.            )

RICHARD WALTER,                    )

      Cross-Claimant.            )

_____)

NICHOLAS JAMES MCGUFFIN, as    )

an individual and as guardian )

ad litem, on behalf of S.M.,   )

a minor,                       )

      Plaintiff,                 )

   v.                          )

OREGON STATE POLICE,            )

      Defendant.                 )

DEPOSITION OF HUMA NASIR

Tuesday, December 10, 2024

10:35 A.M. PST

THE DEPOSITION OF HUMA NASIR was taken from Oklahoma City, Oklahoma, before Deana R. Mead, CSR, Certified Shorthand Reporter in and for the State of Oregon, via remote videoconferencing.

Exhibit 158 Page 2 of 17 to
State Defendants' Motion for Summary Judgment

Huma Nasir

43

findings that were -- that was used in the initial trial, and then I also submitted the same one again for this additional case now.

Q.    So when you say the original trial, you're referring there to the post-conviction relief trial?

A.    That's correct, yes.

Q.    In 2019?

A.    Yes.

Q.    Okay.  And then you say you submitted it again here.  Am I understanding you that that PowerPoint is what follows Attachment 2 in your current report?

A.    Yes.

        MR. DAVIS:  I'm going to show what has been marked -- or what will be marked as Exhibit 3.

        (Deposition Exhibit 3 introduced for identification.)

BY MR. DAVIS:

Q.    Are you able to see that?

A.    Yes.

Q.    And this appears to be a declaration of Huma Nasir.  Right?

A.    Yes.

Q.    And what follows is two items.  One is an item dated June 6, 2017, on Bode Cellmark Forensics

Exhibit 158 Page 3 of 17 to
State Defendants' Motion for Summary Judgment

Huma Nasir

44

letterhead.  Do you see that?

A.    Yes.

Q.    Does this look to be a copy of the report that you wrote in 2017 in the PCR case?

A.    Yes.

Q.    And here, starting on Page 6, dated May 20, 2019, on a letterhead from HN Forensic Consulting LLC, a supplemental report.  Does this look to be your supplemental report that you prepared in the PCR case in 2019?

A.    Yes.

Q.    So, Ms. Nasir, when I compare these two reports that are part -- both part of Exhibit 3, that is, your 2017 and 2019 reports during the PCR case -- when I look at those and compare them against Exhibit 9, your report in this case, it looks like your Exhibit 9, your report, your current report, is kind of a combination of the two.  Is that accurate?

A.    Yes, you can say that.  Yes.

Q.    It's not a -- you know, I understand you didn't just take all the text from one and all the text to the other and lump them into one, but it appears to have been a considered combination of the two reports?

Exhibit 158 Page 4 of 17 to
State Defendants' Motion for Summary Judgment

Huma Nasir

144

A.    Okay.  So if they were presumptively tested, each item individually, if it was presumptively tested and was positive for the presence of blood and then it produced a profile that was consistent with Leah Freeman, then the profile likely came from Leah Freeman.

However, if it was not presumptively tested for the presence of blood, then I can't say that it came from blood.  I don't know.  It may have come from another biological source if it was still consistent with Leah Freeman.  But without presumptively testing it for blood, I can't say that it's her profile that's coming from her blood.

BY MR. DAVIS:

Q.    Right.  That's right.

And so if it did not actually come from her blood, then it would have had to have come from some other ambiently available source that came into contact with the sole of her shoe?

A.    Right, yes.

MS. PURACAL:  Objection.  Vague.

BY MR. DAVIS:

Q.    The question is:  If not blood, then something else?  Is that --

A.    Another biological material, yes.

Exhibit 158 Page 5 of 17 to
State Defendants' Motion for Summary Judgment

Huma Nasir

145

Q.    Shoes are -- they're dirty objects, right, from a DNA perspective?

A.    Yes.

Q.    They have -- they come into contact with many sources on a somewhat frequent basis.  Right?

A.    Yes.

Q.    Do you draw any probative relevance from the, you know, proximity of DNA found, for instance, at this -- I'm, again, referring to Exhibit 9, Page 9.  Do you draw any relevance between the -- from the proximity of these circled areas where the swabs were taken and Item Number -- or Swab Number 3 from these two traction squares where there was that Y indel found?

MS. PURACAL:  Objection.  Vague and beyond the scope of this witness' opinions.

A.    No, I don't know what that relevance would be.  I'm not sure.

BY MR. DAVIS:

Q.    So in terms of Item 1.3, in your opinion the lab should have reported in 2000 that the DNA profile on Item 1.3 was a mixture assumed to have come from two contributors.  Right?

A.    Yes.

Q.    And Mr. McGuffin should have been excluded

Huma Nasir

162

State of Oregon     )
                    )           ss.
County of Douglas   )


    I, Deana R. Mead, CSR, Certified Shorthand Reporter for the State of Oregon, certify that the witness was sworn and the transcript is a true record of the testimony given by the witness; that at said time and place I reported by stenotype all testimony and other oral proceedings had in the foregoing matter; that the foregoing transcript consisting of 160 pages contains a full, true and correct transcript of said proceedings reported by me to the best of my ability on said date.

    If any of the parties or the witness requested review of the transcript at the time of the proceedings, correction pages are included.

    IN WITNESS WHEREOF, I have set my hand this 23rd day of December 2024, in the City of Roseburg, County of Douglas, State of Oregon.


Deana R. Mead, CSR

CSR No. 98-0350

Expiration Date:  June 30, 2026

ccreporting.com

6/28/2019 6:34 PM
15CV1030

CC REPORTING
EXHIBIT

**03**

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MALHEUR

NICHOLAS MCGUFFIN,

        Petitioner,

   v.

MARK NOOTH, Superintendent, SRCI,

        Defendant.

No.: 15CV1030

DECLARATION OF HUMA NASIR

I, Huma Nasir, declare as follows:

1.    I am over the age of 18 and have personal knowledge of the following facts.

2.    Attached as Exhibit 1 is a true and correct copy of my report in this case.

3.    Attached as Exhibit 2 is a true and correct copy of my supplemental report in this case.

4.    If called as a witness at the post-conviction trial, I will testify to the information contained in my reports.

I declare under penalty of perjury under the laws of the state of Oregon that the foregoing is true and correct to the best of my knowledge, information, and belief.

EXECUTED this __21st__ day of _____June_____, 2019.


_____
Huma Nasir

Page 1–   DECLARATION OF HUMA NASIR



**Bode Cellmark**
**FORENSICS**
LabCorp Specialty Testing Group

10430 Furnace Road, Suite 107
Lorton, VA 22079
Phone: 703-646-9740

June 6, 2017


Janis C. Puracal
Oregon Innocence Project
Attorney and Co-Founder
P.O. Box 5248
Portland, Oregon 97208


RE: Nicholas McGuffin
    OSP Lab No.: 00N-000481
    Agency Case No.: 00-1905


Dear Ms. Puracal,

My name is Huma Nasir and I am Senior Forensic DNA Analyst at Bode Cellmark Forensics, a private DNA lab located in Virginia. I previously served as a Forensic Analyst/Supervisor and the Technical Leader of a private DNA lab, Cellmark Forensics in Dallas, TX until this lab merged with the lab in Virginia and became Bode Cellmark Forensics. I have a Master of Science degree in Pharmaceutical Sciences with a concentration in Forensic Serology and DNA from the University of Florida, and over fifteen years of experience in Forensic DNA analysis. I have personally performed DNA testing and/or analysis for thousands of forensic cases.

I was asked by your firm to perform a document review of the DNA testing performed by the Oregon State Police Forensic Laboratory (OSP Lab) in the above referenced case. Among other materials, I have reviewed the following OSP lab casework protocols and laboratory reports related to the DNA analysis performed in this case:

- OSP bench notes and case file including electropherograms for samples tested
- OSP lab report dated August 27, 2000 signed by Mary Krings
- OSP lab report dated January 21, 2002 signed by Mary Krings
- OSP lab report dated May 24, 2010 signed by Susan Hormann
- OSP lab report dated November 10, 2010 signed by Susan Hormann
- OSP lab report dated May 9, 2017 signed by Marla Kaplan
- Amended OSP lab report dated May 17, 2017 signed by Marla Kaplan
- Short Tandem Repeats (STR) Analysis Casework Protocol dated August 1, 2000
- Short Tandem Repeats (STR) Analysis Casework Protocol dated October 11, 2000

**Declaration of Huma Nasir**
**Exhibit 1, Page 1 of 4**

As a result of this review, I have made the following observations and formed the following opinions:

1. Three cuttings, 1.1, 1.2 and 1.3, were tested from the right Nike tennis shoe (Exhibit 1). The results from this sample are reported as follows in the report dated August 27, 2000:

   *"The DNA profile from Exhibit 1 (right Nike shoe)...matches the DNA profile from Leah Freeman...".*

   The lab does not report the results obtained from each cutting taken from the right Nike tennis shoe; rather, only one general conclusion is reported for Exhibit 1 – that as matching Leah Freeman.

   Although, it is correct that the DNA obtained from the right Nike tennis shoe matches Leah Freeman, that is not the complete or only conclusion that can be made from the testing performed on this exhibit. The results from each of the cuttings taken from the right Nike tennis shoe should have been reported separately since they were 3 separate samples, albeit all from the same exhibit.

2. By reporting one general conclusion from the right Nike tennis shoe, the lab failed to report that the DNA profile obtained from cutting 1.3 is in fact consistent with a mixture of two individuals, including one minor male contributor. The major profile in this sample matches Leah Freeman and the minor profile is consistent with an unknown male. Nicholas McGuffin and several other individuals tested are excluded as possible contributors to this mixture profile.

3. According to the laboratory's analysis protocols for casework, there were clear guidelines provided to recognize a mixture profile. In addition, the protocol stated "Peaks between 50 and 150 RFU will be considered for purposes of exclusion". However, it appears that the protocol was not followed in this case. The minor alleles in cutting 1.3 are in fact between 50 and 150 RFU and they clearly exclude Nicholas McGuffin; however, this exclusion was never reported. In fact, the lab did not even report that a mixture including a male was obtained from this sample. Ignoring the mixture profile including a male and simply reporting that the profile is consistent with the victim was not the "best" result or the most "conservative" result to report in my opinion. Even if the minor alleles were below the 150 RFU threshold, the lab should have at least reported this sample as a mixture profile including at least one male. If their protocols did not allow statistical calculations on these peaks below 150 RFU, the lab could have at least stated that this data was unsuitable for comparison.

4. Omitting the fact that cutting 1.3 produced a mixture profile including a minor male and that Nicholas McGuffin is excluded from this mixture profile was an egregious error by the OSP lab. Simply omitting these results from the report would mislead anyone reviewing the OSP report in believing that only a single source profile consistent with Leah Freeman was obtained from this sample. Failure to report these results was not the conservative approach; it was simply incorrect and misleading.

5. The lab issued an updated report after the profiles obtained in this case were re-examined and the mixture profiles were re-interpreted. I agree with the conclusions reported in lab report dated May 9, 2017 regarding cutting 1.3 from the right Nike shoe.

6. In this updated report, the lab states that the minor profile obtained from cutting 1.3 is

*Declaration of Huma Nasir*
*Exhibit 1, Page 2 of 4*

Exhibit 158 Page 10 of 17 to
State Defendants' Motion for Summary Judgment

unsuitable for CODIS entry.  In my opinion, this sample should be retested using the improved extraction methods and new STR kits available today that were not available in 2000.  This sample was previously tested using the Profile Plus kit that tested for 10 genetic markers.  Today there are more sensitive and more discriminatory kits available for testing including kits such as PowerPlex Fusion 5/6C and GlobalFiler that can test for over 20 genetic markers providing much higher discrimination than previously possible.  In addition, these kits are more sensitive than the previously available kits which means that they have the potential to fully detect the minor contributor present in this sample.  The minor contributor profile obtained by retesting this sample with the newer kits could be eligible for CODIS entry as well as eligible for comparison to other reference samples.

7. Since a minor male profile was previously obtained from this sample, I believe it is imperative to retest this sample with the newer kits in order to obtain a more complete minor profile that may be CODIS eligible.

8. The OSP lab also tested the left Nike tennis shoe (Exhibit 2). For cutting 2.3 taken from the left Nike tennis shoe, the lab's conclusions are reported as follows in the report dated August 27, 2000:

> *"The DNA profiles from Exhibit 2.3 (left Nike shoe) indicate the presence of DNA from more than one person.  The major profile is consistent from Leah Freeman.  The minor profile is from a male"*.

The report dated January 21, 2002 further states:

> *"The DNA profile of Kip Oswald is consistent with the minor profile in the previously analyzed Exhibit 2.3 (left Nike shoe)"*.

I do not agree with this conclusion.  If the mixture profile is consistent with Leah Freeman and Kip Oswald, there are two additional alleles at D3 and D13 loci that are foreign to both Leah Freeman and Kip Oswald indicating a possible third contributor but the lab does not mention the possibility of an additional contributor.

In my opinion the DNA profile obtained from Exhibit 2.3 (left tennis shoe) is a mixture of two individuals including a male contributor.  The major profile in this mixture matches Leah Freeman.  The minor profile is consistent from an unknown male. Kip Oswald, Nicholas McGuffin and several other individuals are excluded as possible contributors to this mixture profile.

9. I agree with the conclusions reported in lab report dated May 9, 2017 regarding cutting 2.3 from the left Nike shoe.

10. In this updated report, the lab states that the minor profile obtained from cutting 2.3 is unsuitable for CODIS entry.  In my opinion, this sample should be retested using the improved extraction methods and new STR kits available today that were not available in 2000.  For the reasons mentioned above, the minor contributor profile obtained by retesting this sample with the newer kits could be eligible for CODIS entry as well as eligible for comparison to other reference samples.

11. The OSP lab performed testing on additional items in 2010 and issued additional reports in this case.   It appears that at this time the analysis protocol was changed such that the

3

stochastic threshold was now 100 RFU instead of 150 RFU. This was the opportunity for the lab to re-interpret the previously reported profiles and issue correct conclusions prior to the trial in 2011. However, the lab did not re-interpret or correct any of the previously reported conclusions. Therefore, although the lab had knowledge of data they generated where male DNA inconsistent with Nicholas McGuffin was detected on the right and left shoe, the fact that Nicholas McGuffin was excluded from these shoe samples was not revealed at the time of the trial.

12. Additional items in this case such as victim's clothing, hairs collected from the clothing/scene, the cellophane from under the victim's head and other items should be tested in order to possibly obtain probative, CODIS eligible profiles. With the new methods available now such as Y-STR testing and Mitochondrial DNA testing, it may be possible to obtain probative profiles for comparison from additional testing.

Y-STR testing is a specialized form of STR testing that targets male DNA on the Y chromosome which is exclusive to males. Y-STR testing is very successful in obtaining male DNA from samples that contain large quantities of female DNA and limited amount of male DNA. Y-STR testing is more sensitive than autosomal STR testing in detecting male DNA from old, degraded or compromised samples. Y-STR testing does not uniquely identify an individual since the Y-Chromosome is shared by all males of the paternal lineage. However, it is extremely helpful in obtaining male profiles from samples with limited quantities of male DNA.

Mitochondrial DNA analysis tests the circular genome located in the mitochondria of cells. Mitochondria are passed down from the maternal lineage and mitochondrial DNA is shared by persons of the same matrilineal line. This type of testing can be successfully performed on hair shafts even where it otherwise does not contain the nucleated cells necessary for autosomal testing. This testing can be very beneficial for testing hairs without root material.

13. Bode Cellmark Forensics (BCF) is a private, accredited forensic laboratory located in Lorton, VA. BCF is accredited by the American Society of Crime Laboratory Directors/ Laboratory Accreditation Board. BCF has the capability to perform autosomal STR testing using the new kits such as PowerPlex Fusion 5/6C and GlobalFiler kits. BCF also routinely performs Y-STR testing and mitochondrial DNA testing on post-conviction and/or cold cases. In addition, Bode Cellmark Forensics has agreements with certain state laboratories to take ownership of the data generated by BCF (on cases by case basis) and review it for possible CODIS upload.

14. I reserve the right to change my opinions if new information becomes available.

If I can be of further assistance in this matter, please do not hesitate to contact me.

Sincerely,

*Huma Nasir*

Huma Nasir, MS, F-ABC
Senior Forensic DNA Analyst
Bode Cellmark Forensics

4

# *HN Forensic Consulting LLC*
## *Supplemental Report*

May 20, 2019

Janis C. Puracal
Executive Director
Forensic Justice Project
333 S.W. Taylor St., Suite 403
Portland, Oregon 97204

RE: Nicholas McGuffin
    OSP Lab No.: 00N-000481
    Agency Case No.: 00-1905

Dear Ms. Puracal,

My name is Huma Nasir and I am an independent Forensic DNA Consultant. I previously served as a Forensic Analyst/Supervisor and the Technical Leader of a private DNA lab, Cellmark Forensics in Dallas, TX until this lab merged with a forensic lab in Virginia and became Bode Cellmark Forensics. I have a Master of Science degree in Pharmaceutical Sciences with a concentration in Forensic Serology and DNA from the University of Florida. I have over eighteen years of experience in Forensic DNA analysis and I have personally performed DNA testing and/or analysis for thousands of forensic cases.

I was asked by your firm to perform a document review of the DNA testing performed by the Oregon State Police Forensic Laboratory (OSP Lab) in the above referenced case. I am providing this report to supplement my previous report dated June 6, 2017. Among other materials, I have reviewed the following OSP lab casework protocols and laboratory reports related to the DNA analysis performed in this case:

- OSP bench notes and case file including electropherograms/allele charts for samples tested
- OSP lab report dated October 10, 2017 signed by Janelle Moore
- Cybergenetics report for this case dated August 9, 2018

After reviewing the data and report generated by retesting samples in this case in 2017, I conclude the following:

1. In my opinion, there is a strong possibility that an unknown individual contributed DNA to both the right and left Nike shoes of Leah Freeman.

**Declaration of Huma Nasir**
**Exhibit 2, Page 1 of 5**

Exhibit 158 Page 13 of 17 to
State Defendants' Motion for Summary Judgment

2. This opinion is based on comparison of possible foreign alleles in the samples tested from right and left Nike shoes. The possible foreign alleles considered are listed in Table 1 below. As seen in Table 1, there are identical alleles present at numerous loci/markers in samples from the right Nike shoe (Exhibits 1.2 and 1.3) and the left Nike shoe (Exhibits 2.6, 2.4.1 and 2.5). The presence of identical alleles in samples from right and left Nike shoes indicates the possible presence of the same individual in both shoes. This further leads to the possibility that the same person may have touched or handled both the right and left shoes of Leah Freeman.

3. Foreign alleles are those deduced by subtracting a known profile from a mixture profile obtained. For example, if a mixture profile at a given locus/marker is "12,13,14,15" and an individual known to have contributed DNA to this profile has alleles 12,13, then the deduced foreign alleles would be 14 and 15. Foreign alleles are the alleles remaining in a mixture profile after the known individual's DNA profile is taken out. In this case, I deduced the possible foreign alleles from the right and left shoe profiles by subtracting the known profiles of Leah Freeman and Kip Oswald.

4. For exhibit 2.6, the shoe tongue swab from the left Nike shoe, the lab reported that due to the mixture complexity and low levels of DNA, the results are insufficient for comparison. This sample contains DNA from at least four individuals. I have made limited comparisons to this sample and in my opinion Leah Freeman and Kip Oswald cannot be excluded as possible contributors from the mixture profile obtained from this exhibit. Furthermore, Nicholas McGuffin is excluded as a possible contributor to this sample. I agree that a mixture of at least 4 individuals is considered a complex mixture and a probabilistic genotyping software should be used to interpret such a mixture. However, I believe the limited comparison to Leah Freeman, Kip Oswald and Nicholas McGuffin can be made. These conclusions are supported by Cybergenetics report for this case dated August 9, 2018. This analysis was conducted using TrueAllele probabilistic genotyping software.

5. There are two loci with identical alleles of note from samples taken from the right and left Nike shoes. At locus D1S1656, alleles 12 and 16.3 are obtained from Exhibit 1.2, cutting from heel of Right Nike Shoe. Identical alleles are present at this locus in exhibits 2.6 (tongue swab of left Nike shoe), 2.4.1 (ankle of left Nike shoe) and 2.5 (tongue cutting of left Nike shoe). In my opinion, these alleles likely were contributed to the right and left Nike shoes by the same unknown individual.

   I calculated the frequency estimate of obtaining alleles 12 and 16.3 at this locus and this allele combination is expected to be found approximately 1 in 61 Caucasian individuals.

   Similarly, allele 18.3 is observed in exhibit 1.2 and 1.3 (heel and ankle areas of Right Nike shoe) as well as in exhibit 2.6 (tongue swab of left Nike shoe) at the D12S391 locus. The frequency estimate of obtaining this allele is approximately 1 in 22 Caucasian individuals.

   Random Match Probability (RMP) is a calculation to measure the probability of a random, unrelated person matching the genotype derived from the evidence.

   A genotype obtained at any given locus/marker has a number of alleles, and each allele has a frequency in a certain race. This frequency is the RMP of that allele.

2

Using the random match probability calculation, the frequency estimate of obtaining alleles (12, 16.3) at locus D1S1656 **and** alleles (18.3, any allele) at locus D12S391 is approximately 1 in 1,462 Caucasian individuals. Therefore, this combination of alleles at these two loci is expected to be found 1 in 1,462 Caucasian individuals.
See Table 2 below for similar frequencies in African American and Hispanic populations.

The random match probability at these two loci provides further support for the same individual being present in both the right and left Nike shoes of Leah Freeman.

6. Based on the information provided above, it is my opinion that a strong possibility exists that the same unknown individual is present in DNA profiles obtained from both the right and left shoes of Leah Freeman.

7. I reserve the right to change my opinions if new information becomes available.

If I can be of further assistance in this matter, please do not hesitate to contact me.

Sincerely,

Huma Nasir, MS, F-ABC

**Declaration of Huma Nasir**
**Exhibit 2, Page 3 of 5**

Table 1: Possible Foreign Alleles Obtained from Right and Left Nike Shoes of Leah Freeman

| Exhibit # | 1.2 | 1.3 | 2.6 | 2.4.1ul | 2.5 |
|---|---|---|---|---|---|
| Sample Description | heel | ankle | tongue swab | ankle | tongue cutting |
| | **Right Nike Shoe** | | **Left Nike Shoe** | | |
| Locus | | | | | |
| D3S1358 | 15, 16, 18 | 15 | 15, 18 | ND | 15 |
| vWA | 16, 19 | 16, 20 | 16 | 15 | ND |
| D16S539 | 12 | 12 | 12, 13 | ND | ND |
| CSF1PO | ND | ND | ND | ND | ND |
| TPOX | 12 | 11 | ND | ND | ND |
| D8S1179 | 14, 15 | 11, 15 | 11, 14, 15 | 12 | ND |
| D21S11 | 29, 30 | 29, 30, 31 | 31 | ND | ND |
| D18S51 | ND | 14, 21 | 17 | ND | ND |
| D2S441 | 14 | 14, 16 | 11.3, 14, 16 | 14 | ND |
| D19S433 | ND | ND | ND | ND | ND |
| TH01 | 6, 9, 9.3 | 6, 8, 9 | 8 | 8 | ND |
| FGA | 20, 21 | 19 | 21 | 20 | ND |
| D22S1045 | 14, 16 | 17 | 11, 17 | 13.2, 17 | ND |
| D5S818 | 12 | 12 | ND | ND | ND |
| D13S317 | ND | 8, 12 | 8 | ND | ND |
| D7S820 | ND | 8, 13 | ND | ND | ND |
| SE33 | ND | 18 | 19 | ND | ND |
| D10S1248 | 13, 16 | 13 | 16 | ND | ND |
| D1S1656 | 12, 16.3 | 12 | 12, 16.3 | 12, 16.3 | 12, 16.3 |
| D12S391 | 18.3, 19 | 18.3, 22 | 18.3, 21, 22 | ND | ND |
| D2S1338 | ND | 17, 20 | 17 | 20 | ND |

ND = possible allele(s) not determined

Notes:
1. Exhibits 1.2 & 1.3: Possible foreign alleles determined by subtracting the DNA profile of Leah Freeman from the mixture profiles obtained.

2. Exhibits 2.6 and 2.5: Possible foreign alleles determined by subtracting the DNA profiles of Leah Freeman and Kip Oswald from the mixture profiles obtained.

3. Exhibit 2.4.1ul: Possible foreign alleles provided by OSP lab labeled as Contributor 3 in STRMix analysis sheet on p. 798 of OSP case file. These alleles were obtained by subtracting the DNA profiles of Leah Freeman and Kip Oswald.

**Declaration of Huma Nasir**
**Exhibit 2, Page 4 of 5**

Exhibit 158 Page 16 of 17 to
State Defendants' Motion for Summary Judgment

Table 2: Frequency Estimates and Random Match Probability (RMP) for D12S391 and D1S1656

| Locus | Allele Combination | African American | Caucasian | Hispanic |
|---|---|---|---|---|
| D12S391 | 18.3, any allele | 1 in 41 | 1 in 22 | 1 in 23 |
| D1S1656 | 12, 16.3 | 1 in 81 | 1 in 64 | 1 in 103 |
| | | | | |
| RMP for D12S391 & D1S1656 | | 1 in 3351 | 1 in 1462 | 1 in 2380 |

Notes:

1. Frequency estimates calculated using Allele frequencies provided in the GlobalFiler™ PCR Amplification Kit User Guide (2013).

5