Barbara Cohan-Saavedra
February 14, 2024

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION
\*   \*   \*

NICHOLAS JAMES MCGUFFIN, as and   :
individual and as guardian        :
ad litem, on behalf of S.M., a    :
minor,                            :
        Plaintiffs,        : NO. 6:20-cv-01163-MK
    - vs -                       :    (Lead Case)
MARK DANNELS, PAT DOWNING, SUSAN  :
HORMANN, MARY KRINGS, KRIS        :
KARCHER, SHELLY MCINNES, RAYMOND  :
MCNEELY, KIP OSWALD, MICHAEL      :
REAVES, JOHN RIDDLE, SEAN         :
SANBORN, ERIC SCHWENNINGER,       :
RICHARD WALTER, CHRIS WEBLEY,     :
ANTHONY WETMORE, KATHY WILCOX,    :
CRAIG ZANNI, DAVID ZAVALA, JOEL   :
D. SHAPIRO AS ADMINISTRATOR OF    :
THE ESTATE OF DAVE E. HALL,       :
VIDOCQ SOCIETY, CITY OF COQUILLE, :
CITY OF COOS BAY, COOS COUNTY,    :
and OREGON STATE POLICE,          :
        Defendants.       :

\*   \*   \*

Oral deposition of BARBARA

COHAN-SAAVEDRA, taken at the law offices of STEVENS &

LEE, 1500 Market Street, 18th Floor, Philadelphia,

Pennsylvania, 19102, on Wednesday, February 14, 2024,

beginning at approximately 12:08 p.m. EST, before Lisa

M. Cooper, Court Reporter.

\*   \*   \*
U.S. LEGAL SUPPORT
Northeast Processing Center
1818 Market Street, Suite 1400
Philadelphia, Pennsylvania  19103
(877)  479-2484

Puracal Declaration, Exhibit 1, Page 1 of 22

Barbara Cohan-Saavedra
February 14, 2024

```
 1              (It is hereby stipulated by and

 2    among counsel for the respective parties

 3    that signing, sealing, certification, and

 4    filing are waived, and that all objections,

 5    except as to the form of the question, are

 6    reserved until the time of trial.)

 7                   *    *    *

 8              BARBARA COHAN-SAAVEDRA:

 9    after having been first duly sworn, was

10    examined and testified as follows:

11                   *    *    *

12       MR. LAUERSDORF:  For the record, Andrew

13    Lauersdorf, from Maloney, Lauersdorf and

14    Reiner, on behalf of the plaintiffs in this

15    matter.

16       MR. SCISCIANI:  Anthony Scisciani, HWS

17    Law Group, counsel for defendant, Vidocq

18    Society.

19       MR. DEFREEST:  Eric DeFreest of Luvaas

20    Cobb, for defendant, Richard Walter.

21       MR. DAVIS:  Jesse Davis, on behalf of

22    the State defendants.

23       SARAH HENDERSON, Law Office of Robert E.

24    Franz, Jr., for the Municipal defendants.

25       MS. SAWYER:  Meredith Sawyer, HWS Law
```

Puracal Declaration, Exhibit 1, Page 2 of 22

Barbara Cohan-Saavedra
February 14, 2024

1  Q.        Okay.  Do you recall what month in 1994?

2  A.        I applied for membership in April of 1994 and

3  was admitted either that month or the following month.

4  Q.        What -- what inspired you to apply for

5  membership to the Vidocq Society?

6  A.        I had started going to meetings the year

7  prior to that, in 1993.  And I was very impressed by

8  the organization and excited to be a part of it.

9  Q.        Okay.  Is that while you were still employed

10  as an AUSA?

11  A.        Yes.

12  Q.        Okay.  And that -- what District were you in

13  when you --

14  A.        Eastern District of Pennsylvania.

15  Q.        Okay.  What positions have you held with the

16  Vidocq Society?

17  A.        I've been on the Board, I don't know the

18  exact date, but it's approximately 20 years.  I served,

19  for a time, as membership chair.  And I am presently

20  the public information officer.

21  Q.        Do you remember what year you joined the

22  Board?

23  A.        I really don't.  I'm guessing that it's about

24  20 years.

25  Q.        Okay.  And is that multiple terms?  Or is

Puracal Declaration, Exhibit 1, Page 3 of 22

Barbara Cohan-Saavedra
February 14, 2024

```
1    affect your memory or comprehension?

2    A.        No.

3    Q.        Are you currently taking any prescription

4    medications that a medical professional has told you

5    might affect your memory or comprehension?

6    A.        No, sir.

7    Q.        Are you aware of any other reason why you may

8    have trouble participating today?

9    A.        No.

10   Q.        Okay.  Did you read any documents to prepare

11   for your deposition?

12   A.        Yes.

13   Q.        What did you review?

14   A.        I reviewed the deposition notice in detail.

15   I went through my personal retained copies of minutes

16   of the Board of Directors.  I went through the Vidocq

17   Society's Constitution and Bylaws, in its present form,

18   as well as in its prior iterations.

19   Q.        Okay.

20   A.        I went through all of the digital files that

21   I have regarding my work with the Vidocq Society.  And

22   in addition to that, I sent a blast e-mail to anyone

23   who was a Vidocq Society member between 2009 and 2015,

24   posing to them some of the questions that are in your

25   deposition notice.  And I reviewed their responses.
```

Puracal Declaration, Exhibit 1, Page 4 of 22

Barbara Cohan-Saavedra
February 14, 2024

1   Q.       Okay.  And then did you bring any of those

2   documents with you today?

3   A.       I did not.

4   Q.       Are you prepared to produce any of the

5   documents you reviewed?

6            MR. SCISCIANI:  We'll deal with that

7            separately, Counsel.

8            MR. LAUERSDORF:  Okay.

9   BY MR. LAUERSDORF:

10  Q.       When -- that's quite a bit of review.  When

11  did you --is that something you did just recently?  Or

12  have you been doing it over time?

13  A.       It's taken quite a bit of time.  I started

14  pretty much as soon as they designated me as the

15  witness.  I knew I was going to have to prepare,

16  because a lot of the things you look for in the

17  deposition notice are things I was not involved with

18  personally.

19  Q.       Okay.  How much time would you say you spent

20  preparing overall?

21  A.       A lot.  Do you want it in days?  Or hours?

22  Q.       Days.

23  A.       I mean, I did it a few hours at a time over

24  many, many days and nights.

25  Q.       Okay.  That's good enough.  And where --

Barbara Cohan-Saavedra
February 14, 2024

1   where are the documents that you reviewed now?  Where

2   are they --

3   A.        They are all over the place.

4   Q.        -- physically located?

5   A.        Well.  A lot of them are in my computer.

6   Q.        Okay.

7   A.        The -- some of them are in hard copy.  Which

8   I have in my office at work.

9   Q.        At the Lithographing?

10  A.        Yes.

11  Q.        Okay.

12  A.        I did a lot of this work after hours.

13  Q.        Does Vidocq supply you with a computer, a

14  cell phone, or anything like that, that you store data

15  on?

16  A.        They absolutely do not.

17  Q.        Okay.  Does Vidocq supply anyone with

18  computers, or any kind of data processing or data

19  storage equipment?

20  A.        Not that I'm aware of.  There is one -- to my

21  knowledge, there is one Vidocq Society laptop that is

22  not used to store documents.  It is brought to the

23  meetings to -- for the presenters to use as an audio

24  visual thing.  It connects to the screen.

25  Q.        Like a PowerPoint?

Barbara Cohan-Saavedra
February 14, 2024

```
1    A.        Like a PowerPoint, yeah.

2    Q.        Okay.  Was anyone else present during any of

3    your review?

4    A.        No.

5    Q.        Other than your attorneys?

6    A.        No.

7    Q.        Did you take any notes during your review?

8    A.        Yes.

9    Q.        Where are the notes now?

10   A.        In my computer.  And in some cases, written

11   in the margins of two of the documents.  One being your

12   deposition notice.

13   Q.        Okay.  Two of the -- the hard copy documents?

14   A.        I think I wrote on the hard copy.  I'm not

15   certain.

16   Q.        Okay.

17   A.        But I also scanned it and I created a digital

18   copy, and I did a lot of note taking on the computer on

19   that document.

20   Q.        Okay.

21   A.        Because I wanted to make sure I hit every

22   point that you had covered.

23   Q.        Okay.  But the documents you have in front of

24   you now in your portfolio are not the documents --

25   A.        No, and --
```

Puracal Declaration, Exhibit 1, Page 7 of 22

Barbara Cohan-Saavedra
February 14, 2024

1    Q.         -- you took notes on?

2    A.         -- they have no notations on them at all.

3    Q.         Okay.  Have you spoken to anyone, other than

4    your attorneys, about Exhibit-1?

5    A.         Exhibit-1, can the deposition notice?

6    Q.         Yeah.

7    A.         Yes.

8    Q.         Who have you spoken to?

9    A.         I -- I contacted, by telephone, a number of

10   people from the Vidocq Society to assist me in

11   gathering the information required to respond.  I spoke

12   to at least a dozen people.

13   Q.         Okay.  What are the names of the people you

14   spoke to?

15   A.         I doubt that I can recall all of them, just

16   sitting here.  But Ben Redmond, R-E-D-M-O-N-D.  Howard

17   Lobovsky, L-O-B-O-V-S-K-Y.  Carol Sweeney,

18   S-W-E-E-N-E-Y.  Ed Gaughan, G-A-U-G-H-A-N.  I could

19   look in my phone and get you the others.  But pretty

20   much most of the people on the Board of Directors, as

21   well as some former members.

22   Q.         Okay.  Do you remember which specific former

23   members you spoke with?

24   A.         I -- I couldn't tell you offhand.  I can look

25   in my phone and tell you, but.

Puracal Declaration, Exhibit 1, Page 8 of 22

Barbara Cohan-Saavedra
February 14, 2024

1  Q.        Is there more than one Gaughan in the

2  organization?

3  A.        No.  Just one.

4  Q.        Okay.  Does he sometimes go by E.J?

5  A.        Yes.

6  Q.        His initials?

7  A.        Edward J. Gaughan.

8  Q.        Okay.  So Mr. Redmond, Mr. Lobovsky, Ms.

9  Sweeney, Mr. Gaughan?

10  A.        Bill Gill, G-I-L-L, was another.

11  Q.        Okay.  And Mr. Gill.  Are all of those folks

12  that are still with the Society?

13  A.        Oh, yes.  Um-hum.

14  Q.        Okay.  If any other names pop into your mind

15  while we're going through the process, feel free to

16  interrupt me.

17  A.        Okay.  And I'm sure they will.

18  Q.        Okay.  We'll try to complete the record that

19  way.

20  A.        I'm 73.  I don't remember quite as well as I

21  did before.

22  Q.        You seem to be tracking fairly well.  And

23  over what period of time did you speak to these folks?

24  A.        I spoke to them intermittently as I went

25  through the documents.  But I started out, before I did

Barbara Cohan-Saavedra
February 14, 2024

1   anything else, after I got the deposition notice and

2   was designated as the Society's representative.  I did

3   a flurry of phone calls initially to find out who else

4   I should talk to, who's handling what aspects, and so

5   forth.

6   Q.       Okay.

7   A.       And then as I did the document review, that

8   raised additional questions and I went back to people.

9   Some of them repeatedly.

10  Q.       Okay.  And did you take notes throughout that

11  process?

12  A.       As needed.  I didn't always take notes.

13  Q.       Okay.  Do you have notes of any of your

14  conversation with any of the folks you spoke to about

15  Exhibit-1?

16  A.       They wouldn't be identified as such.  I would

17  have taken the information that I got from them,

18  perhaps added it to my copy of the deposition notice.

19  But I didn't take notes of each conversation.

20  Q.       Okay.  So it wouldn't say so and on -- this

21  date so and so said this about --

22  A.       Yeah, no.

23  Q.       -- X?

24  A.       It would not -- it would not be that.

25  Q.       Okay.

Puracal Declaration, Exhibit 1, Page 10 of 22

Barbara Cohan-Saavedra
February 14, 2024

1   A.        I was just educating myself.

2   Q.        Okay.  And where were you when you were

3   having these conversations?  Were any of them in

4   person?

5   A.        No.  They were all by telephone.  Sometimes

6   from my home.  Sometimes from my office.

7   Q.        Did you speak to anyone, other than your

8   attorneys and the folks we've already spoken about, to

9   prepare for this deposition?

10  A.        Possibly some other Vidocq Society members.

11  And when I think of the names I'll tell you.

12  Q.        Okay.

13  A.        But outside the Society and my attorneys, no,

14  I've spoken to -- to my husband, but.

15  Q.        Okay.  Has this litigation been -- has the

16  issue of this litigation, or any of the issues

17  involved, been raised at any of the Vidocq Society

18  meetings?

19  A.        Just minimally.  And usually not by me.

20  Frank Mayer, who is our Vidocq Society counsel, has, on

21  occasion, brought the Board up, just aware of what's

22  going on in the litigation.

23  Q.        Okay.  And that would be in Board meetings,

24  is that right?

25  A.        Yes.

Puracal Declaration, Exhibit 1, Page 11 of 22

Barbara Cohan-Saavedra
February 14, 2024

1   once we started using Event Bright.  And prior to that

2   I would send e-mails to alert people that there were

3   meetings coming up.  So I would have, in my personal

4   records, the ones that I was involved in scheduling.

5   Whether the Society retained financial documents

6   reflecting payments to the Union League and the

7   Downtown Club, and wherever they met before that, I'm

8   not certain.

9   Q.        Okay.  If they did exist where would they be?

10  A.        Probably with our treasurer.  But I'm

11  speculating.

12  Q.        And who is the current treasurer?

13  A.        The current treasurer is Jonathan Cohen,

14  C-O-H-E-N.  And there were several treasurers who

15  preceded him.

16  Q.        And so if those records still existed, is

17  there a possibility that they would be with one of the

18  preceding treasurers?

19  A.        Possibly.

20  Q.        Does the Vidocq Society have a -- any kind of

21  written document retention policy?

22  A.        No.

23  Q.        Do they have any type of unwritten, or

24  understood, document retention policy or protocol?

25  A.        As far as I know, no.  The Society -- we're a

Puracal Declaration, Exhibit 1, Page 12 of 22

Barbara Cohan-Saavedra
February 14, 2024

1   volunteer organization.  To best of my knowledge, and

2   going back as far as I do, we've never had centralized

3   records.  Each person maintained whatever documents

4   they needed to fulfill their duties.  So when I was

5   membership chair, anything related to membership stayed

6   with me.

7   Q.       Got it.

8   A.       The case manager kept the case manager's

9   information.  The treasurer kept the treasurer's

10  information.  I have never known the Society to have

11  centralized records.

12  Q.       Okay.  Is there -- what was the -- the

13  protocol for insuring continuity?  So what was -- what

14  was the protocol, whether it was written or unwritten,

15  for making sure that one case manager got his file to

16  his successor?  Or her successor.

17  A.       I don't know that there was a standard

18  protocol.  Fred Bornhofen, B-O-R-N-H-O-F-E-N, was the

19  case manager for many, many years.  When he became ill,

20  and incapacitated, and could no longer attend meetings,

21  his successor, who was Bill Gill, went to Fred's house

22  to retrieve records.

23  Q.       Okay.

24  A.       According to Bill Gill, those records were

25  not in any organized form at all.

Puracal Declaration, Exhibit 1, Page 13 of 22

Barbara Cohan-Saavedra
February 14, 2024

1    Q.        Okay.

2    A.        He described it as a room full of papers.

3    Q.        So hard copy?

4    A.        Hard copy only.

5    Q.        Okay.

6    A.        And not even in files.  Not even -- it was

7    pieces of paper in stacks.

8    Q.        Okay.

9    A.        So he took what he felt he needed to fulfill

10   his duties and he left the rest.

11   Q.        Okay.  When did Bill take over -- Mr. Gill

12   take over for Mr. Bornhofen?

13   A.        I am not certain of the date.  It would have

14   been -- no.  I'd be guessing if I gave you a date.

15   Q.        How about a year?

16   A.        I'm -- I'm -- that's what I'm grasping for.

17   I would have it in my notes, but I don't have it here.

18   Q.        Okay.  So Mr. Gill took what he felt he

19   needed to take over the role of case manager and left

20   the rest.  What happened with the documents that he

21   left behind?

22   A.        I would be speculating, but I'm certain that

23   they were destroyed or discarded.

24   Q.        Okay.  And what happened with the records

25   that he -- that Mr. Gill took with him?

Puracal Declaration, Exhibit 1, Page 14 of 22

Barbara Cohan-Saavedra
February 14, 2024

1   A.          He used those to begin fulfilling his duties

2   to the Society.

3   Q.          Okay.  Did he -- has the Society done

4   anything to digitize those records or preserve them

5   electronically?

6   A.          Not to my knowledge.

7   Q.          So those would just be hard copy records that

8   are -- do they still exist?

9   A.          I don't know.

10  Q.          Okay.  Have you asked Mr. Gill about that at

11  all?

12  A.          I know I spoke to Mr. Gill at length.  But we

13  were speaking, not in general -- in terms of general.

14  We were talking about whether he had anything related

15  to this case that has not already been turned over to

16  counsel.  And he had nothing else.

17  Q.          Okay.  And then you said that each -- each

18  member, and I want to make sure I'm not misstating

19  this, or putting words in your mouth, but it sounds

20  like if, I understood you correctly, what you're saying

21  is that each officer, or Board member, keeps records,

22  whatever records they need, to fulfill their

23  function --

24  A.          Correct.

25  Q.          -- within the Society.

Puracal Declaration, Exhibit 1, Page 15 of 22

Barbara Cohan-Saavedra
February 14, 2024

1              C E R T I F I C A T I O N

2

3          I, Lisa M. Cooper, a Court Reporter and

4    Notary Public, do hereby certify the foregoing to

5    be a true and accurate transcript of my original

6    stenographic notes taken at the time and place

7    hereinbefore set forth.

8              Witness my hand and official seal this

9    14th day of February A.D. 2024.

10

11

12

13

14

15    ---------------------------------

              Lisa M. Cooper
16            Court Reporter and Notary Public

17

18

19

20          (The foregoing certification of this

21    transcript does not apply to any reproduction of

22    the same by any names, unless under the direct

23    control and/or supervision of the certifying

24    reporter.)

25

Puracal Declaration, Exhibit 1, Page 16 of 22

Barbara J. Cohan
June 27, 2024

```
          IN THE UNITED STATES DISTRICT COURT

            FOR THE DISTRICT OF OREGON

                 EUGENE DIVISION


NICHOLAS JAMES MCGUFFIN, as an    )
individual and as guardian ad     )
litem, on behalf of S.M., a       ) Civil No.
minor,                            ) 6:20-cv-01163-MK
               Plaintiffs,        ) (Lead Case)
                                  )
       v.                         ) VIDEOCONFERENCE
                                  ) DEPOSITION
MARK DANNELS, PAT DOWNING,        )
SUSAN HORMANN, MARY KRINGS,       )
KRIS KARCHER, SHELLY MCINNES,     )
RAYMOND MCNEELY, KIP OSWALD,      )
MICHAEL REAVES, JOHN RIDDLE,      )
SEAN SANBORN, ERIC                )
SCHWENNINGER, RICHARD WALTER,     )
CHRIS WEBLEY, ANTHONY WETMORE,    )
KATHY WILCOX, CRAIG ZANNI,        )
DAVID ZAVALA, JOEL D. SHAPIRO     )
AS ADMINISTRATOR OF THE ESTATE    )
OF DAVID E. HALL, VIDOCQ          )
SOCIETY, CITY OF COQUILLE, CITY   )
OF COOS BAY, and COOS COUNTY,     )
               Defendants.        )
                                  )
VIDOCQ SOCIETY,                   )
               Cross-Claimant,    )
                                  )
       v.                         )
                                  )
MARK DANNELS, PAT DOWNING,        )
SUSAN HORMANN, MARY KRINGS,       )
KRIS KARCHER, SHELLY MCINNES,     )
RAYMOND MCNEELY, KIP OSWALD,      )
MICHAEL REAVES, JOHN RIDDLE,      )
SEAN SANBORN, ERIC                )
SCHWENNINGER, RICHARD WALTER,     )
CHRIS WEBLEY, ANTHONY WETMORE,    )
KATHY WILCOX, CRAIG ZANNI,        )
DAVID ZAVALA, JOEL D. SHAPIRO     )
AS ADMINISTRATOR OF THE ESTATE    )
OF DAVID E. HALL, VIDOCQ          )
SOCIETY, CITY OF COQUILLE, CITY   )
```

Puracal Declaration, Exhibit 1, Page 17 of 22

Barbara J. Cohan
June 27, 2024

1                    BARBARA J. COHAN,

2  called as a witness on behalf of the Plaintiffs, having been

3  first duly sworn to tell the truth, the whole truth, and

4  nothing but the truth, was examined and testified as follows:

5              THE WITNESS:  I do.

6                    EXAMINATION

7  BY MR. LAUERSDORF:

8      Q.   Okay.  Ms. Cohan, my name is Andy Lauersdorf.  You

9  remember we met in February of this year.  Right?

10     A.   That's correct.

11     Q.   And you understand that I am an attorney

12  representing the plaintiffs in this lawsuit?

13     A.   I do.

14     Q.   And this is a lawsuit in which the plaintiffs are

15  suing the Vidocq Society and one of its former members, Richard

16  Walter.  Do you understand that?

17     A.   I do.

18     Q.   Can you please state your full name as given at

19  birth.

20     A.   My name is Barbara J. Cohan.

21     Q.   Okay.  What's your current position or title with

22  Vidocq Society?

23     A.   I'm a member of the board of directors.  I was the

24  public information officer, but because of the time constraints

25  of this deposition, I stepped aside and yielded to someone else

Puracal Declaration, Exhibit 1, Page 18 of 22

Barbara J. Cohan
June 27, 2024

1  BY MR. LAUERSDORF:

2       Q.   Do you have other digital files that you reviewed

3  in preparation for the February 14th deposition in your care,

4  custody, and control in relation to your service on the board

5  or as a member of Vidocq?

6            MR. SCISCIANI:   Same objections.

7       A.   Yes.  Most of them were board minutes, which I

8  understand have been turned over to you.

9  BY MR. LAUERSDORF:

10      Q.   Okay.  Were there anything other than board minutes

11 or the press release?

12      A.   And the constitution.  But I can't -- I can't think

13 of any off the top of my head.  I would have to sit and go

14 through my directory to see what documents there are.

15      Q.   Okay.  Then you mentioned in your testimony -- I'll

16 take you back to your deposition -- this blast email at line

17 23.

18      A.   Yes.

19      Q.   We requested a copy of the blast email and the

20 responses that you received, but we didn't receive anything

21 back in response to that request.  Do you have those documents?

22      A.   I do have the blast email.  And I beli- -- I did

23 retain the responses.

24      Q.   Will you please produce those to your counsel so

25 they can be produced to us?

Puracal Declaration, Exhibit 1, Page 19 of 22

Barbara J. Cohan
June 27, 2024

1          MR. SCISCIANI:  Counsel, we'll deal with that

2  request offline.  We object to the request for production.  We

3  also object to your characterization of your request.

4  BY MR. LAUERSDORF:

5          Q.   Okay.  At page 18 and 19 of your deposition there

6  at line 1, I asked you "Where are the documents that you

7  reviewed now?  Where are they?"

8               You said "They're all over the place."

9               And I asked -- I was kind of interrupted there --

10 where they're physically located.  And you mentioned at line 7

11 that some of them are in hard copy which you have in your

12 office at work.  Have those hard copy documents that you

13 reviewed in preparation for the February 14th deposition been

14 produced?

15         A.   My -- I did not understand them to have been

16 requested.

17         Q.   Okay.  I'll show you back in what's been marked as

18 Exhibit 15, Request for Production Number 55.  "To the extent

19 not produced in response to Requests 46 through 50 above,

20 produce all documents mentioned or referred to in pages 17

21 through 20."  Do you see where I'm at?

22         A.   I see it.

23         Q.   And then in your deposition, this is on page 19,

24 "the hard documents."  Do you understand that we're requesting

25 those documents now?

Puracal Declaration, Exhibit 1, Page 20 of 22

Barbara J. Cohan
June 27, 2024

1        A.   I understand that now, yes.

2        Q.   Will you please produce those documents to your

3   counsel so they can produce them to us?

4             MR. SCISCIANI:   Again, Counsel, we'll deal with

5   those requests for production and our corresponding objections

6   offline.   We do object to the scope of your request and your

7   characterization of the request here in the deposition,

8   including pursuant to the case that you and I have emailed

9   about, the Adidas/TRB case.   I'm again happy to have this

10  dialogue with you offline so you're not eating up time at your

11  deposition.

12            (Document marked for identification as Deposition

13            Exhibit 17.)

14  BY MR. LAUERSDORF:

15       Q.   Okay.   I'm going to show you now what's been marked

16  as Exhibit 17.   Can you tell me if you recognize this document?

17       A.   Uh, I believe I do, yes.

18       Q.   Okay.   And I'll represent to you that this is a

19  203-page document, Bates labeled in the lower right-hand corner

20  VIDOCQ 001759 through VIDOCQ 001961.   Is this what you're

21  referring -- this document what you're referring to as the

22  minutes of board meetings?

23       A.   Well, you're showing me one page of the document,

24  so I don't know what else is in there, but --

25       Q.   Do you -- go ahead.

Puracal Declaration, Exhibit 1, Page 21 of 22

Barbara J. Cohan
June 27, 2024

```
 1  STATE OF OREGON        )
                           )         ss.  C E R T I F I C A T E
 2  County of Douglas      )

 3

 4       I, JEAN M. KOSTNER, Certified Shorthand Reporter for the

 5  state of Oregon, do hereby certify that:

 6       Pursuant to Notice, BARBARA J. COHAN appeared remotely

 7  before me via Zoom videoconference at the time and place set

 8  forth in the caption hereof;

 9       That, at said time and place, I reported in stenotype

10  all testimony adduced and oral proceedings had in the foregoing

11  matter, to the best of my ability;

12       That, thereafter, my notes were reduced to typewriting,

13  and that the foregoing transcript, pages 1 through 75, both

14  inclusive, constitutes a full, true, and correct transcript of

15  all such testimony adduced and oral proceedings had and of the

16  whole thereof.

17       IN WITNESS WHEREOF, I have hereunto set my hand and CSR

18  stamp this 8th day of July, 2024, in the City of Roseburg,

19  County of Douglas, State of Oregon.

20

21

22                         _____
                           JEAN M. KOSTNER
23                         Certified Court Reporter
                           CSR No. 90-0051

24

25
```

Puracal Declaration, Exhibit 1, Page 22 of 22