**Robert E. Franz, Jr.**     OSB #730915
E-Mail:  rfranz@franzlaw.comcastbiz.net
**Sarah R. Henderson**     OSB #153474
E-Mail:  shenderson@franzlaw.comcastbiz.net
Franz & Henderson
P.O. Box 62
Springfield, OR 97477
Telephone:  (541) 741-8220
Attorneys for Mark Dannels, Pat Downing, Kris Karcher, Shelly McInnes,
Raymond McNeely, Kip Oswald, Michael Reeves, Sean Sanborn,
Eric Schwenninger, Chris Webley, Anthony Wetmore, Craig Zanni,
David Zavala, Estate of David E. Hall, City of Coquille, City of Coos Bay,
and Coos County, Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| Nicholas James McGuffin, as an individual and as guardian *ad litem*, on behalf of S.M., a minor, | Case No. 6:20-cv-01163-MK (Lead Case) |
| Plaintiffs, | |
| v. | |
| Mark Dannels, Pat Downing, Susan Hormann, Mary Krings, Kris Karcher, Shelly McInnes, Raymond McNeely, Kip Oswald, Michael Reeves, John Riddle, Sean Sanborn, Eric Schwenninger, Richard Walter, Chris Webley, Anthony Wetmore, Kathy Wilcox, Craig Zanni, David Zavala, Estate of Dave Hall, Vidocq Society, City of Coquille, City of Coos Bay, Coos County, and Oregon State Police, | **Declaration of David Zavala** |
| Defendants. | |

I, David Zavala, hereby declare under penalty of perjury as follows:

I make this declaration based on my personal knowledge of the facts contained herein.

I am 53 years old, and I am one of the named Defendants in the above-entitled matter. I am currently employed by the City of Keizer as a police officer. Attached hereto as Exhibit 5064 is a transcript of my history and training as a police officer. I also served in the National Guard and the United States Army for about nine years and received an honorable discharge.

Beginning in June of 1999 and ending in October 2000, I was a police officer employed by the City of Coquille. Since October of 2000 to this date, I have been employed by the City of Keizer as a police officer.

On July 12, 2011, I testified at the criminal trial of Nicholas McGuffin. At that time, I related the fact that on June 28, 2000, I made a traffic stop of Nicholas McGuffin because his car only had one operating headlight. I had been driving westbound on Highway 42. Mr. McGuffin was driving his blue Mustang eastbound on Highway 42, and he passed me going in the opposite direction. So, I turned my patrol vehicle around and stopped his Mustang prior to the entrance to the parking lot of Sturdevant Park. Sturdevant Park was located between the Coquille River and Highway 42.

At the time, I told Mr. McGuffin that I stopped his car because he only had one front headlight on. He told me he was looking for his girlfriend and he asked me if I had seen her. I told him no, but I would keep an eye out for her. I told him that my shift was ending in about twenty minutes and that he should probably get home because the graveyard shift was coming on and he should not be driving around with one headlight out. I did not issue him a ticket. He then left and drove over the bridge heading away from the City of Coquille.

Page 2 of 9 – Declaration of David Zavala

Also, at the jury trial I identified the photos of the area of the stop, State's Exhibit 232 to 235. These Exhibits are located in Exhibit 5060 attached to Defendants' Motion for Summary Judgment. McGuffin stopped his car just past the speed limit sign on the right as shown on State's Exhibit 233.

In my report, which I used while testifying, I used the time of "at about 10:30 pm" as the time of the stop. On cross examination Ms. McCrea pointed out that she had a copy of my notebook for that evening which she said had been provided to her by the prosecution. She also pointed out that my report was written on July 12, 2000. She pointed out that in my notebook, I worked until 11 p.m.

Ms. McCrea then pointed out that there was nothing in my notebook about the traffic stop. I agreed. The following question and answer then followed:

> Q. So, what you put in your report, written on July 12, 2000, was what you reconstructed from your memory after the fact?
> A. Yes.

There was nothing untruthful in my testimony. Mr. McGuffin agrees that I stopped his vehicle for having one headlight out on June 28, 2000; and he puts the time at 10:50 p.m. (Exhibit 5039 at 2) My notebook does not show that I stopped McGuffin at any time that evening between 10 and 11 p.m. It shows I was at 5th Street Park at 10 p.m. and that I made a traffic stop at 10:55 p.m. of Lori Roark at 5th and Elliott at 10:55 p.m. So, the stop of Mr. McGuffin took place sometime between 10 p.m. and 10:55 p.m. I believe the stop took place around 10:30 p.m.

After I left the City of Coquille, I had no further involvement with Mr. McGuffin or the investigation of the death of Leah Freeman except for the fact that I testified before the Grand Jury on July 14, 2010, I testified at the Omnibus Hearing on April 14, 2011, and I testified at the jury trial on July 12, 2011.

There never was a prosecution of anyone related to the murder of Leah Freeman while I worked for the City of Coquille. No one was ever arrested for

Page 3 of 9 – Declaration of David Zavala

anything dealing with Leah Freeman while I worked for the City of Coquille. At no time did I ever request the matter be referred to any grand jury, including the first grand jury; nor did I request the matter be referred to a second grand jury. And at no time, before or after I left the City of Coquille, did I ask that the case be presented to the District Attorney's office for the prosecution of anyone.

I have never arrested Mr. McGuffin for any crime, violation, or matter relating to Leah Freeman; and I never made any decisions related to the arrest of Nick McGuffin relating to Leah Freeman. Mr. McGuffin was never arrested for any matter dealing with Leah Freeman when I worked for the City of Coquille.

I have never prosecuted Mr. McGuffin for any crime, violation, or matter relating to Leah Freeman; I have never initiated any prosecution of Mr. McGuffin for any crime, violation, or matter relating to Leah Freeman; I have never continued any prosecution of Mr. McGuffin for any crime, violation, or matter relating to Leah Freeman; I have never insisted on the institution or continuation of any criminal proceedings relating to Leah Freeman against Nick McGuffin; and, I have never made any decisions relating to the prosecution, initiation, or continuation of the prosecution of Mr. McGuffin for any crime, violation, or matter relating to Leah Freeman. I played absolutely no role in the criminal prosecution of Mr. McGuffin. I was not even employed as a police officer for the City of Coquille at the time of the commencement of the prosecution against Mr. McGuffin. And, while I was working for the City of Coquille, Mr. McGuffin was never prosecuted for any crime, violation, or matter relating to Leah Freeman.

I have never given any false testimony or false information in any matter relating to Leah Freeman or Mr. McGuffin. I have never tried to have any person give false testimony or false information in any matter relating to Leah Freeman or Mr. McGuffin.

I have never fabricated any evidence in any proceeding, investigation, or prosecution involving Mr. McGuffin and/or Leah Freeman. I have never tried to get any person to fabricate any evidence in any proceeding, investigation, or prosecution involving Mr. McGuffin and/or Leah Freeman.

I have never destroyed any evidence in any proceeding, investigation, or prosecution involving Mr. McGuffin and/or Leah Freeman. I have never tried to get any person to destroy any evidence in any proceeding, investigation, or prosecution involving Mr. McGuffin and/or Leah Freeman.

I never made any attempts to coerce a false confession from anyone, including Mr. McGuffin; I never falsely reported that McGuffin failed a polygraph to anyone; nor did I fabricate the results of polygraph examination provided to Mr. McGuffin. At no time did I pressure anyone to participate in any polygraph examinations for any purpose, including Brent Bartley and Mr. McGuffin.

At no time did I fabricate police reports of my interactions or the interactions of anyone else with McGuffin; nor did I suppress, tamper with, or destroy any evidence relating to the murder of Leah Freeman; nor did I suppress evidence of any misconduct by any law enforcement officers on any topic; nor did I destroy a videotape from the US Bank on North Central; nor did I suppress DNA evidence found on Freeman's shoes.

I never fabricated any evidence relating to the criminal case and proceedings involving Nick McGuffin, and I never attempted to fabricate any evidence relating to the criminal case and proceedings involving Nick McGuffin. I never destroyed any evidence relating to the criminal case and proceedings involving Nick McGuffin, and I never attempted to destroy any evidence relating to the criminal case and proceedings involving Nick McGuffin. I never tampered with any evidence relating to the criminal case and proceedings involving Nick McGuffin, and I never attempted to tamper with any evidence relating to the criminal case and

Page 5 of 9 – Declaration of David Zavala

proceedings involving Nick McGuffin. I never coerced any witnesses into giving false testimony for or against Nick McGuffin relating to the criminal case and proceedings involving Nick McGuffin; and I never attempted to coerce any witnesses into giving false testimony for or against Nick McGuffin relating to the criminal case and proceedings involving Nick McGuffin. I never suppressed any evidence relating to the criminal case and proceedings involving Nick McGuffin, and I never attempted to suppress any evidence relating to the criminal case and proceedings involving Nick McGuffin.

At no time did I ever fail to disclose any exculpatory information related to the investigation and/or prosecution of Nick McGuffin. I did not hide, conceal, destroy, withhold, or fail to disclose any exculpatory information or evidence to anyone, nor did I suppress any exculpatory evidence or information at any time. All my superiors had full access to all the documents, information, reports, notes, and evidence in the custody of the Coquille Police Department to read or copy at any time.

Nor did I ever destroy any exculpatory information or evidence related to the investigation and prosecution of Nick McGuffin. At no time did I ever see any violations of the constitutional rights of Nick McGuffin; thus, there was never a need for me to intervene in order to prevent any constitutional violations of the rights of Nick McGuffin. And, at no time have I ever participated in any type of a conspiracy against Nick McGuffin for any purpose on any matter.

I was not employed as a police officer for the City of Coquille when Mr. McGuffin was indicted by the Grand Jury of the County of Coos, State of Oregon. I had no involvement in any decision to submit this matter to the Grand Jury and I had no involvement in making the decision of the Grand Jury to return a true bill.

I never arrested Mr. McGuffin at any time with regards to the warrant issued for his arrest relating to the murder of Leah Freeman; and I have never served any

arrest warrants on Mr. McGuffin at any time. I was not involved in the decision to issue the arrest warrant for Nicholas McGuffin; and I never appeared before that judge for the purpose of obtaining a warrant for the arrest of Nicholas McGuffin.

At no time have I ever confined or imprisoned Mr. McGuffin, nor have I ever participated in any confinement or imprisonment of Mr. McGuffin with regards to the Leah Freeman matter. My only confinement of Mr. McGuffin was the traffic stop of him as set forth above. At no time have I ever seized Mr. McGuffin, nor have I ever participated in any seizure of Mr. McGuffin with regards to the Leah Freeman matter. My only seizure of Mr. McGuffin was the traffic stop of him as set forth above. I was not employed by the City of Coquille when Mr. McGuffin was arrested pursuant to the arrest warrant, and I did not serve the arrest warrant on Mr. McGuffin; nor did I participate in the service of the arrest warrant on Mr. McGuffin.  Mr. McGuffin was commanded to be arrested by a Coos County Circuit Court judge, not by me.

As to Plaintiff S.M., I have never talked to S.M., and I have never done anything to interfere in the relationship between S.M. and Mr. McGuffin. I have never taken custody of S.M. In fact, during the period of time that I was employed by the City of Coquille, it was my understanding that Mr. McGuffin did not have any children. I have never talked to any child of Mr. McGuffin; nor have I ever had any type of contact with any child of Mr. McGuffin. Further, I have never done anything to interfere with any relationship that Mr. McGuffin had or has with any of his children.

As a regular patrol officer for the City of Coquille, I had no policy-making authority to make policies for the Police Department relating to police activities.

When I was a police officer for the City of Coquille there was never a policy, practice or custom of the Coquille Police Department for its police officers and employees performing their duties to exercise a deliberate indifference and/or

Page 7 of 9 – Declaration of David Zavala

callous disregard for the rights, safety, and welfare of anyone. It was always the policy, practice, and custom of the Coquille Police Department for its officers and employees to follow the requirements of the laws of the State of Oregon and the requirements of the Constitution of the United States when they are performing their duties for the City of Coquille, and when they were carrying out their responsibilities as police officers.

When I was a police officer for the City of Coquille, there was never a policy, practice or custom of the Coquille Police Department of failing to follow the statutes of the State of Oregon, which prescribe a certain amount of training for police officers employed by police departments in the State of Oregon. In fact, it was the policy, practice, and custom of the Coquille Police Department that all its police officers complete the amount of training required by the statutes and administrative rules of the State of Oregon, and the requirements of the Department of Public Safety Standards and Training of the State of Oregon. There also was never a policy of inadequate training when I was working for the City of Coquille.

When I was a police officer for the City of Coquille, there was never a policy, practice or custom of the Coquille Police Department of fabricating evidence of any kind for any purpose, or to suppress, tamper with, and/or destroy evidence of any kind for any purpose. In fact, it was the policy, practice, and custom of the Coquille Police Department that all of its police officers were never to fabricate evidence and/or suppress, tamper with, and/or destroy evidence of any kind for any purpose.

I never encouraged, condoned, or acquiesced in any unconstitutional conduct of the police officers employed by the City, and it was the policy and practice of the City that unconstitutional conduct of its police officers was prohibited and

Page 8 of 9 – Declaration of David Zavala

would result in discipline up to and including termination. I have never encouraged or acquiesced to unlawful behavior by any police officer.

During my time as a Police Officer for the City of Coquille, I had received excellent training and none of this training was inadequate.

At no time did I ever agree with anyone to violate the constitutional rights of Nick McGuffin for any reason, much less in order to implicate him in the murder of Leah Freeman; and I do not know of any police officer that agreed to violate the constitutional rights of Nick McGuffin.

The allegations made in this lawsuit in the complaints filed in this Court against me are false and not true.

The allegations made in this lawsuit in the complaints filed in this Court against me that I somehow persuaded witnesses to testify falsely or that there was an attempt to falsely implicate McGuffin can be heard to be untrue just by listening to the recordings of the various witnesses who were interviewed by the City of Coquille Police Officers; and, by listening and viewing the video recording of the witnesses who testified at all of the Grand Jury proceedings; and by listening to the trial testimony of the witnesses that testified.

PURSUANT TO 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

| | |
|---|---|
| /s/ David Zavala | January 7, 2025 |
| David Zavala | Date |

Page 9 of 9 – Declaration of David Zavala