**Robert E. Franz, Jr.**     OSB #730915
E-Mail:  rfranz@franzlaw.comcastbiz.net
**Sarah R. Henderson**     OSB #153474
E-Mail:  shenderson@franzlaw.comcastbiz.net
FRANZ & HENDERSON
P.O. Box 62
Springfield, OR 97477
Telephone:  (541) 741-8220
Attorneys for Mark Dannels, Pat Downing, Kris Karcher, Shelly McInnes,
Raymond McNeely, Kip Oswald, Michael Reeves, Sean Sanborn, Eric
Schwenninger, Chris Webley, Anthony Wetmore, Craig Zanni, David Zavala, City
of Coquille, City of Coos Bay, and Coos County, Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

Nicholas James McGuffin,
as an individual and as guardian
*ad litem*, on behalf of S.M., a minor,

        Plaintiffs,

        v.

Mark Dannels, Pat Downing, Susan
Hormann, Mary Krings, Kris Karcher,
Shelly Mcinnes, Raymond Mcneely,
Kip Oswald, Michael Reaves, John
Riddle, Sean Sanborn, Eric
Schwenninger, Richard Walter,
Chris Webley, Anthony Wetmore,
Kathy Wilcox, Craig Zanni, David
Zavala, Estate of Dave Hall,
Vidocq Society, City of Coquille,
City of Coos Bay, Coos County,
and Oregon State Police,

        Defendants.

Case No. 6:20-cv-01163-MK

**Exhibit 5023 –**
Affidavit for Search Warrent
by Dave Hall

STATE'S
EXHIBIT

C

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR COOS COUNTY

STATE OF OREGON,                    )
                                    )
        Plaintiff,                  )
                                    )    AFFIDAVIT FOR SEARCH WARRANT
    vs.                             )
                                    )    00NB 1593
                                    )
NICHOLAS JAMES MCGUFFIN,            )
DOB 04/25/82                        )
                                    )
        Defendant.                  )
                                    )
_____    )

STATE OF OREGON     )
                    ) ss
County of Coos      )

I, Dave Hall, after being duly sworn, depose and say that:

I am a police officer with the City of Coquille, and have been so employed for the previous 7 years. I have been assigned the investigation involving the disappearance of Leah Freeman, DOB ███████4, that occurred on or about Wednesday, June 28, 2000.

The following information came from interviews performed by police officers that have in return passed this information on to me either in person or by means of their report.

On June 29, 2000, Cory Courtwright, the mother of Leah Freeman, contacted the Coquille Police Department and indicated that her daughter, Leah Freeman, had not returned home the previous evening. Ms. Courtwright

DistrictAttorney_000409
Exhibit 5023 at 1

000025                              000025                              000025

indicated: that Leah and her boyfriend, Nicholas McGuffin, had been at the Courtwright home at 1173 Knott Street in Coquille during the afternoon hours of Wednesday June 28; that they had been cleaning a car belonging to McGuffin; that everything appeared to be fine between McGuffin and Freeman; and that after a period of time, McGuffin and Freeman left together. Ms. Courtwirght further indicated that she believed Leah to be a "good kid" who had never run away before and that she was unaware of any reason why Leah would not have come home.

Nicholas McGuffin was interviewed and he indicated: that on June 28, 2000, in the afternoon, that he had been with Leah at her house on Knott Street; that they did leave together; that they first went and picked up Brent Bartley; that they then went to McGuffin's home and picked up some videos; that they went to the house of Bartley's grandparents by the last name of Haga to watch movies; that McGuffin and Bartley left for a period of time to get food; that they returned with the food; that after he and Leah had eaten, that around 7 PM, McGuffin took Leah to the home Sherrie Mitchell, located at 444 ½ Elm Street in Coquille, Oregon; that he left Leah at the home and has not seen or spoken with her since that time.

Sherrie Mitchell and her mother, Peggy Mitchell, were subsequently interviewed. They indicated: that Leah arrived at their home around 7 PM; that near 9 PM, Leah asked Sherrie if she wanted to go jogging; Sherrie indicated she did want to jog, but that she needed permission from her mother to do so; that

DistrictAttorney_000410
Exhibit 5023 at 2

000026                          000026                          000026

Sherrie went to her mother and asked permission; that Leah was in another part of the house, but within hearing distance of the conversation; that Sherrie's mother denied Sherrie permission to go jogging with Leah; that Sherrie and her mother got into a loud shouting match over Sherrie not being able to go jogging; and that Leah left shortly thereafter, at approximately 9 PM, and that she left the Mitchell residence on foot. Neither Sherrie nor her mother have seen or heard from Leah since.

It should be noted that I know based upon my own personal observations that Knott Street is located north of Elm Street in Coquille and that a way to get there on foot would be to walk north on Central Avenue in Coquille. I also have seen the vehicle driven by McGuffin and I know it to be a 1967 Ford Mustang, blue in color, Oregon license #PEA 840.

The Coquille Police have interviewed additional witnesses. Ashley Hutchinson indicated: that she knows Leah Freeman; that on Wednesday June 28, she saw Leah walking northbound on Central Avenue in front of the McKay's Market near the phone booth located in the parking lot; and that Lea appeared to be angry or upset as she was walking with her head down and her arms folded across her chest. (I know based upon my own personal observations that McKay's Market would be east of Elm Street and would be on the way to Knott Street if one was walking north on Central.) Mark Kirn and Mike McAdams were interviewed and they indicated that on Wednesday June 28, at approximately 9:05 PM, they were having something to eat at Hunter's Restaurant, which is

DistrictAttorney_000411
Exhibit 5023 at 3

located on Central Avenue and is a short distance north of the McKay's Market. They both indicated that they know Leah Freeman and that they saw her walk northbound by the restaurant at about 9:05 PM. Mr. Ray Lewis was also interviewed and he indicated that he knows Leah Freeman. He further indicated that on Wednesday June 28, he was driving on Central Avenue and that at approximately 9:15 PM he saw Leah Freeman walking north on Central Avenue and that she was near the Oregon Federal Credit Union office, which I know is located north of Hunter's Restaurant. Both Hunter's Restaurant and Oregon Federal Credit Union would be on the way to Knott Street if one were walking north on Central.

Given these statements from the above witnesses, it appears that Leah was walking from the Mitchell residence on Elm Street to Leah's home on Knott Street and never made it home.

Chief Mike Reeves of the Coquille Police Department interviewed Nicholas McGuffin. I know Chief Reeves to be a truthful and reliable police officer. Chief Reeves has informed me that McGuffin indicated: that after dropping Leah off at the Mitchell residence, that he drove around Coquille for awhile in his car; that he then went back up to the Haga residence where he had been previously; that he then went to the Fast Mart, (which I know based upon my own personal observations is located on Central Avenue between McKay's Market and Hunter's Restaurant); and that at approximately 9 PM he returned to the Mitchell residence to pick up Leah. McGuffin indicated that he learned that Leah had all

DistrictAttorney_000412
Exhibit 5023 at 4

000028                    000028                    000028

ready left on foot. He then indicated that he drove north on Central and drove to Knott Street. McGuffin indicated that he did not see Leah and that he then turned around and drove south on Central looking for Leah. McGuffin indicated that he did not find her.

McGuffin further told Chief Reeves: that he continued to drive around Coquille looking for Leah; that at approximately 10:15 PM he went back to the Mitchell residence and learned Leah was not there; that the Mitchells convinced him to call Leah's home and see if she was there; that he did call Leah's home and learned that Leah was not home; that he drove around for awhile and that around 11 PM, he picked up his friend, Brent Bartley; that he and Bartley then drove around Coquille until approximately 2:30 AM of Thursday morning looking for Leah; that they did not find Leah; that he dropped Bartley off; that he then drove to Leah's home on Knott Street; that he saw a light on Leah's room; that he approached the window to her room and attempted to contact Leah; that he got no response; that he eventually went home; that in the morning he was contacted by Leah's mother and told she had not come home the night before; and that he then looked again for Leah along Central with Leah's mother.

Chief Reeves indicated to me that there were two things about McGuffin's account that caused him some concern. The first was McGuffin's claim that he drove up and down Central looking for Leah and his claim that he did not see her, when in fact several persons saw her walking on Central at the same time he claimed to be looking for her. The second was the fact that in all the time that

000028                    000028                    000028

DistrictAttorney_000413
Exhibit 5023 at 5

000029                            000029                            000029

McGuffin claimed he was looking for Leah, (except for the time at 2:30 AM) that he never physically went to Leah's house to see if she was home, even though he had to have been close by on several occasions.

Sherrie and Peggy Mitchell confirmed that McGuffin was at their home at approximately 9:05 PM and again at 10:15 PM and that he did make the phone call to Leah's residence. Brent Bartley confirmed that he rode with McGuffin between 11 PM and 2:30 AM looking for Leah and that they did not find her.

The Coquille Police also interviewed Denise Freeman, who is Leah's sister. Denise Freeman indicated: that she works at Denny's Pizza, (which I know based upon my own personal observation is located several blocks south and one block to the east of the McKay's Market and would not be on the route one would follow if one was walking on Central north to Knott Street from McKay's Market); that on the evening of June 28 she was working at Denny's; that sometime between 9:15 and 9:30 PM, McGuffin came into Denny's and asked Denise Freeman if she had seen Leah; that Denise told McGuffin that she had not seen Leah; that McGuffin left shortly after he came in; returned between 11:00 and 11:30 PM; that just before he left, McGuffin told Denise Freeman something to the effect of "I've got to go. I've got someone in the car."

Chief Reeves has informed me that McGuffin did not tell him about being at Denny's Pizza nor that he had anyone in the car with him during the time he was driving up and down Central looking for Leah. Indeed, the only person

C-6

6

000029                            000029                            000029

DistrictAttorney_000414
Exhibit 5023 at 6

000030    000030    000030 30

McGuffin ever mentioned to Chief Reeves being in his car while he was engaged in searching for Leah was Brent Bartley.

Sharon Nelson was also interviewed. Ms. Nelson was a teacher at Coquille High School and has recently been appointed the dean of students at Coquille Valley Middle School. Ms. Nelson indicated: that both Leah and McGuffin were students at Coquille High School during the last school year; that she observed that Leah and McGuffin appeared to be boyfriend and girlfriend; that there appeared to be physical abuse in the relationship; that she had observed that Leah on occasion would hit McGuffin and that he would respond in defense; and that McGuffin did have a flash temper.

Cory Courtwright further indicated that her daughter had an appointment with the Coos County Health Department for Friday, June 30. The Health Department has confirmed that an appointment was scheduled but that Leah did not keep the appointment.

Due to the inconsistencies in McGuffin's statements, on July 5, 2000, it was decided to interview McGuffin again and to also offer him the opportunity to take a polygraph examination. Detective Mark Ranger of the Oregon State Police has informed me that McGuffin consented to take the test and that Ranger actually performed the test. I know Ranger to be a truthful and reliable police officer and that he is a qualified and certified polygraph examiner with several years of experience and who has performed numerous polygraph examinations.

C-7

30

000030    000030    000030 7

DistrictAttorney_000415
Exhibit 5023 at 7

000031    000031    000031

Ranger informed me that the test he performed had three pertinent questions. Those questions were:

1.      Did you physically do something that resulted in Leah's death?

2.      Did you have any direct involvement in Leah's disappearance?

3.      Have you talked to Leah since last Wednesday night after 9 PM?

Detective Ranger has informed me that McGuffin answered no to all three questions. Detective Ranger has also informed me that based upon his training and experience and the reactions by McGuffin which was monitored by the polygraph, that Ranger is of the opinion that McGuffin was not being truthful to any of the three questions listed above.

It should be noted that in all contacts with the police, including the contact of July 5, 2000, that McGuffin was cooperative and non-confrontational. Detective Ranger has told me that before and during the test that McGuffin was cooperative and non-confrontational. However, Detective Ranger indicated that after the test, he informed McGuffin of his failure on the three questions. At that point, McGuffin's attitude changed dramatically. According to Ranger, amongst other things, McGuffin stated angrily something to the effect of "The polygraph is not evidence. You don't have shit!" McGuffin then left the interview.

C-8

DistrictAttorney_000416
Exhibit 5023 at 8

Before the polygraph test, McGuffin consented to a search of his vehicle. He consented to the search and he allowed it to be taken into custody of the Coquille Police. The vehicle has been moved to the Oregon State Police Crime Lab in Coos Bay, Coos County, Oregon for the purpose of examining it for any evidence indicating the current location and/or condition of Leah Freeman. I have seen the vehicle and it is described as 1967 Ford Mustang, blue in color, Oregon license #PEA 840.

Based upon the above information, I believe it likely that Leah Freeman has been the victim of some sort of violence at the hand of Nicholas James McGuffin and that he then transported Leah Freeman in his vehicle to an unknown location.

I know based upon my training and experience that a person being transported in a car can leave behind in the vehicle trace evidence, such as hair, skin particles, and clothing fibers that can then be used to identify a person. I also know that a person being transported in a car can also pick up on its person trace evidence, such as dirt and dust particles and fabric fibers that can be used to show if that person had actually been in that car. I also know that a car can be examined, both from the inside and from the exterior, for dirt and soil samples that can be compared with samples from a particular location to determine if in fact the car was at the location in question. I also know that impressions of the tread of tires on cars can be compared with tire tracks found

DistrictAttorney_000417
Exhibit 5023 at 9

at a scene to determine if the vehicle is the on which made the tracks in question.

I also know that if a person has been subjected to violence that bodily fluids such as blood, saliva, urine and fecal material may be released from the victim and that those bodily fluids may be found in a car used to transport such a victim. If sexual violence occurred, vaginal fluids and semen may also be present and can be recovered from such a vehicle. I also know that items sometimes used in assaults, such as tire irons and other car related equipment can be used as bludgeoning devices and that such evidence as hair, fibers and bodily fluids may be present on them. I also know that if a firearm was used, that when the weapon is fired, that the weapon will expel gunpowder residue which can found on the person that has been shot and that can also be transferred from the person who was shot to a vehicle used to transport such a victim.

I also know based upon my training and experience that persons who transport other persons to discreet hiding locations in a vehicle will sometimes keep in the vehicle documentary evidence of the hiding place. These would include, but are not limited to, maps, notes with directions, addresses or locations written thereon, letters and journal or diary entries.

Based upon the above information, I have probable cause to believe and do believe that evidence of the crimes Criminal Homicide, as defined in ORS 163.005 and Assault, as defined in ORS 163.160 through 163.185, including

C-10

33       10

DistrictAttorney_000418
Exhibit 5023 at 10

000034                                    000034                                    000034

34

but not limited to, trace evidence, hair, skin particles, clothing fibers, dirt and dust particles and fabric fibers, dirt and soil samples from the interior and exterior, tire track impressions, blood, saliva, urine, fecal material, vaginal fluids, semen, gunpowder residue and documentary evidence of a hiding place for Leah Freeman, including but not limited to maps, notes with directions, addresses or locations written thereon, letters and journal or diary entries is currently located on or in a 1967 Ford Mustang automobile, blue in color, Oregon License #PEA 840 which is currently located at the Oregon State Police Crime Lab located in Coos Bay, Coos County, Oregon.

Wherefore, I pray that this Court issue a warrant to search the above described vehicle and for an order seizing the above described evidence.

_____
AFFIANT

Subscribed and sworn to before me this 6 day of July, 2000.

_____
Judge

C-11

34                    11

000034                                    000034                                    000034

DistrictAttorney_000419
Exhibit 5023 at 11