**Robert E. Franz, Jr.**     OSB #730915
E-Mail:  rfranz@franzlaw.comcastbiz.net
**Sarah R. Henderson**     OSB #153474
E-Mail:  shenderson@franzlaw.comcastbiz.net
FRANZ & HENDERSON
P.O. Box 62
Springfield, OR 97477
Telephone:  (541) 741-8220
Attorneys for Mark Dannels, Pat Downing, Kris Karcher, Shelly McInnes,
Raymond McNeely, Kip Oswald, Michael Reeves, Sean Sanborn, Eric
Schwenninger, Chris Webley, Anthony Wetmore, Craig Zanni, David Zavala, City
of Coquille, City of Coos Bay, and Coos County, Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

Nicholas James McGuffin,
as an individual and as guardian
*ad litem*, on behalf of S.M., a minor,

        Plaintiffs,

          v.

Mark Dannels, Pat Downing, Susan
Hormann, Mary Krings, Kris Karcher,
Shelly Mcinnes, Raymond Mcneely,
Kip Oswald, Michael Reaves, John
Riddle, Sean Sanborn, Eric
Schwenninger, Richard Walter,
Chris Webley, Anthony Wetmore,
Kathy Wilcox, Craig Zanni, David
Zavala, Estate of Dave Hall,
Vidocq Society, City of Coquille,
City of Coos Bay, Coos County,
and Oregon State Police,

        Defendants.

Case No. 6:20-cv-01163-MK

**Exhibit 5028 –**
**State Motion to Dismiss**
Criminal Case Against McGuffin

ELLEN F. ROSENBLUM
Attorney General
JESSE B. DAVIS  #052290
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  jesse.b.davis@doj.state.or.us

TODD MARSHALL  #112685
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email:  Todd.Marshall@doj.state.or.us

Attorneys for State Defendants Oregon State Police, Hormann, Krings, Riddle and Wilcox

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NICHOLAS JAMES MCGUFFIN, as an individual and as guardian *ad litem*, on behalf of S.M., a minor, <br><br> Plaintiffs, <br><br> v. <br><br> MARK DANNELS, PAT DOWNING, SUSAN HORMANN, MARY KRINGS, KRIS KARCHER, SHELLY MCINNES, RAYMOND MCNEELY, KIP OSWALD, MICHAEL REAVES, JOHN RIDDLE, SEAN SANBORN, ERIC SCHWENNINGER, RICHARD WALTER, CHRIS WEBLEY, ANTHONY WETMORE, KATHY WILCOX, CRAIG ZANNI, DAVID ZAVALA, ESTATE OF DAVE HALL, VIDOCQ SOCIETY, CITY OF COQUILLE, CITY OF COOS BAY, COOS COUNTY, and OREGON STATE POLICE, <br><br> Defendants. | Case No.  6:20-cv-1163-MK <br><br> DECLARATION OF JESSE B. DAVIS IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS |

Page 1 -   DECLARATION OF JESSE B. DAVIS IN SUPPORT OF STATE DEFENDANTS'
            MOTION TO DISMISS
34020931

Exhibit 5028 at 1

I, Jesse B. Davis, declare:

1.    I am a Senior Assistant Attorney General with the Oregon Department of Justice, and am one of the attorneys assigned to represent defendants Oregon State Police, Susan Hormann, Mary Krings, John Riddle and Kathy Wilcox ("State Defendants") in the above-entitled matter. I make this declaration in support of State Defendants' Motion to Dismiss.

3.    Attached hereto and labeled as Exhibit A is a true copy of "Plaintiff's Motion to Dismiss," which was filed by the State of Oregon in plaintiff Nicholas McGuffin's criminal case, Coos County Circuit Court Case No. 10CR0782.

**I declare under penalty of perjury that the foregoing is true and correct.**

EXECUTED on December  7 , 2020.

                                             *s/ Jesse B. Davis*
                                             JESSE B. DAVIS
                                             Senior Assistant Attorney General

Page 2 -    DECLARATION OF JESSE B. DAVIS IN SUPPORT OF STATE DEFENDANTS'
            MOTION TO DISMISS
            34020931

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 5028 at 2

Signed: 12/17/2019 02:08 PM

R. Paul Frasier, OSB #842235
Coos County District Attorney
Coos County District Attorneys Office
Coos County Courthouse
Coquille, Oregon 97423
Telephone: (541) 396-7555
FAX: (541) 396-1015

# IN THE CIRCUIT COURT OF THE STATE OF OREGON

## FOR THE COUNTY OF COOS

STATE OF OREGON, )
)
    PLAINTIFF, )   No. 10-CR-0782
)
    vs. )
)
NICHOLAS JAMES MCGUFFIN, )
)
    DEFENDANT. )
_____)

## PLAINTIFF'S MOTION TO DISMISS

Comes now R. Paul Frasier, District Attorney for Coos County, Oregon and respectfully moves the Court for an order dismissing this action and for an order directing the Oregon Department of Corrections to release the defendant forthwith. The State moves for dismissal for the flowing reasons:

1. A post conviction relief petition challenging this conviction was filed by this defendant entitled McGuffin v. Nooth, Malheur County Circuit Court Case #15CV1030. The post conviction relief court entered a general judgment signed by Senior Judge Patricia Sullivan on November 29, 2019. A copy of that general judgment is attached to

Page 1 – Plaintiff's Motion to Dismiss

Declaration of Jesse B. Davis
Exhibit 5028 at 3
Exhibit A, Page 1 of 22

this motion, marked Exhibit #1 and by this reference is incorporated herein. Judge Sullivan has ordered that the defendant receive a new trial. This office has been informed that the Oregon Department of Justice has decided to not appeal this decision. Consequently, the decision to seek a new trial now falls to this office.

Judge Sullivan denied many of the defendant's claims for post conviction relief. In particular, Judge Sullivan denied the defendant's claim of actual innocence. Judge Sullivan indicated in her judgment/opinion that there is evidence in the record from which a jury could find this defendant guilty. This office agrees with Judge Sullivan on this point, but even though there is evidence to show the defendant's guilt, the State must acknowledge that there are several issues that need to be considered in deciding whether a new trial should be pursued. These include considerations such as:

A. It has been over nineteen (19) years since the death of Leah Freeman and if a new trial is pursued it will likely be over twenty (20) years since Leah Freeman died. Due to the passage of time it is likely that memories of the witnesses will be affected;

B. At least two people who testified at the 2011 trial have died. We are aware of two other witnesses whose medical/mental health have been adversely affected by the passage of time and whether they will be able to testify is questionable; and

C. Given the passage of time, it is not known if we can locate and subpoena

R. Paul Frasier, OSB #842235
District Attorney for Coos County, Oregon
Coos County Courthouse
Coquille, Oregon 97423
(541) 396-7555

**Declaration of Jesse B. Davis**
Exhibit 5028 at 4
**Exhibit A, Page 2 of 22**

those witnesses that appeared at trial in 2011;

2. The defendant's current release date from the Department of Corrections is August 22, 2020. If a new trial is sought, it is our estimation that given the complexities of this case and the huge amount of discovery in this matter, that it will not be possible for a new trial to occur prior to August 22, 2020. On August 22, 2020, even if a new trial is sought, the defendant would be entitled to be released from custody as his sentence would have been completed. If a new trial were to occur and if the defendant were to be found guilty, as the defendant could not be ordered to serve any additional prison time, the State must consider if it is worth spending the time and taxpayer money to pursue a new trial; and

3. This prosecutor has discussed this matter at length with Cory Courtright, the mother of Leah Freeman. She has indicated to us that while she believes the defendant caused the death of her daughter, she does not want to go through the pain and stress a new trial would bring. She has indicated she does not want the State to pursue a new trial so she can avoid these personal issues.

For the above reasons, we ask the court to dismiss this case and to order the Oregon Department of Corrections to release the defendant forthwith.

Dated this 17th day of December, 2019.

R. Paul Frasier OSB #842235
District Attorney

Page 3 – Plaintiff's Motion to Dismiss

*************************************************************************************************

I certify that I served a true copy of this document on Janice Puracal, attorney for the defendant herein, in compliance with the applicable rules of the Oregon Rules of Civil Procedure on the ___ day of December, 2019.

R. Paul Frasier OSB # 842235
District Attorney

Page 4 – Plaintiff's Motion to Dismiss

R. Paul Frasier, OSB #842235
District Attorney for Coos County, Oregon
Coos County Courthouse
Coquille, Oregon 97423
(541) 396-7555



STATE'S EXHIBIT

1

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MALHEUR

NICHOLAS MCGUFFIN , SID # 14504778, )
               )
      Petitioner,   ) Case No. 15CV1030
               )
    vs.       )
               ) GENERAL JUDGMENT
MARK NOOTH, Superintendent, SRCI, ) (Post-Conviction)
               )
      Defendant.  )

The above-entitled matter came before the court on August 12, 2019 for a Trial on a Petition for Post -Conviction Relief.

NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED:

PRELIMINARY MATTERS

At Trial, the Defendant objected to various exhibits by the Petitioner. The Petitioner filed additional argument and requested clarification on the Courts ruling. Defendant replied. The Court, having considered the additional argument, makes the following ruling regarding the Exhibits as listed:

 a. Exhibits 61 (Backman report) and 64 (Microtrace notes) are admitted for the purpose of showing its effect on trial counsel. During trial Exhibit 61 was admitted in Defense Exhibits 103 and 104 and 64 was admitted in Exhibit 103, as attachments to depositions. This does not constitute an admission of those documents for any and all purposes.

 b. The Exhibits22, 24, 26, 27, 28, 31, 32, 36, 40, 58, 61, 64, 68, 29, and Exhibit 1 to the Declaration of Amanda Szarkowski were admitted for their effect on Trial Counsel and the Court's ruling remains unchanged.

Page 1 – GENERAL JUDGMENT (Post-Conviction)

c. The Court reserved ruling on Exhibit 60. This Exhibit was not properly admitted at trial as a business record and is excluded.

## FINDINGS OF FACT (ALL CLAIMS)

Findings of Facts specific to each claim are included in the legal finding below. The court makes the following Findings of Facts:

1. Petitioner was charged with Murder of Leah Freeman, and found guilty of Manslaughter I, the lessor included offense, after a jury trial in Coos County Circuit Court case 10CR782. He has exhausted his appeals and brings this action for Post-Conviction Relief.

2. Leah Freeman was Petitioner's fifteen-year old girlfriend. Both she and Petitioner lived in Coquille, Oregon. She disappeared on June 28, 2000. Petitioner was eighteen years old at the time Leah Freeman disappeared. On the night of June 28, after spending most of the day with Ms. Freeman, Petitioner dropped her off at the home of her friend, Cherie Mitchell, at about 7:00 p.m. Petitioner was supposed to pick Ms. Freeman up later. Ms. Freeman had an argument with Ms. Mitchell and left the Mitchell home at about 9:00 p.m., on foot. Ms. Freeman was seen at various places in Coquille after leaving the Mitchell residence from around 9 to 9:30 p.m. At about 11:30 p.m., Tony Messerle found Ms. Freeman's right shoe on North Elm Street in Coquille. Messerle turned the shoe over to police on July 4. On July 5, a Coos County Deputy Sheriff, Kim Oswald, found Ms. Freeman's left shoe on a remote dirt road approximately ten miles from where the left shoe was found.

3. Leah Freeman's body was found on August 2, 2000 on an embankment about eight miles outside of Coquille. The body was in an advanced state of decomposition. The body was found approximately three miles from where the left shoe was found.

4. Petitioner arrived at the Mitchell residence shortly after 9 a.m. to pick Ms. Freeman up. She had already left. At trial, various persons testified they encountered Petitioner driving around looking for Ms. Freeman and that they had seen Ms. Freeman walking alone.

Page 2 – GENERAL JUDGMENT (Post-Conviction)

**Declaration of Jesse B. Davis**
Exhibit 5028 at 8
**Exhibit A, Page 6 of 22**

5. The initial investigation into Ms. Freeman's disappearance was hampered by failure of local law enforcement to view her disappearance as a criminal matter. Materials were not provided to the District Attorney in 2001 which were later discovered in 2009 and 2010. (Testimony of DA Frasier)

6. A grand jury was convened in July 2000 to investigate the disappearance of Leah Freeman. No charges were brought at that time. In 2008, the case was re-opened and a second grand jury convened in 2010. Petitioner was arrested and charged with Murder on August 24, 2010.

7. Petitioner was represented at trial by Robert and Shaun McCrea. Shaun McCrea was lead counsel at trial. Robert Frasier, who was a deputy district attorney in 2001 and the elected District Attorney in 2011, was lead counsel or the State. Deputy DA Erica Soule was co-counsel for the State. The trial began in July, 2011, and lasted 10 days. Petitioner was acquitted of Murder but found guilty of the lesser included offense of Manslaughter 1 by a 10-2 verdict.

8. Trial Counsel's theory was that the victim was murdered, but not by defendant. She was able to suggest that some other unknown person was responsible, but lacked evidence that specifically pointed to another suspect. Trial Counsel presented a well defended case, resulting in Petitioner receiving a much less onerous sentence that he faced for a Murder conviction. This is not a case where Trial Counsel was obviously and grossly incompetent, particularly at trial, but rather a failure to investigate which would have uncovered exculpatory information which in had a probability of effecting the outcome of the trial.

9. This Court's decision is based on its conclusion the Jury did not have all the information it should have had to make its decision in this case. Whether the outcome would have been different is always a matter of speculation, but it is this Courts conclusion that the Trial Counsel failed to exercise reasonable professional and judgement in two respects, and that

Page 3 – GENERAL JUDGMENT (Post-Conviction)

**Declaration of Jesse B. Davis**
Exhibit 5028 at 9
**Exhibit A, Page 7 of 22**

Petitioner suffered prejudice as a result of this failure. *Ogle v. Nooth*, 355 Or 570 (2014) and *Strickland v. Washington*, 104 S. Ct. 2052 (1984).

10. All the witnesses who testified at the PCR trial were credible, and generally consistent in key issues pertinent to the case.

FINDINGS OF FACT AND LEGAL CONCLUSIONS (SPECIFIC CLAIMS)

1. Claim: Actual Innocence (Paragraph 7) is denied based on petitioner's failure to establish the merits of the claim. The legal basis for denial of relief is failure to establish the factual and legal merits of the claim.

   a. Without deciding whether "actual innocence is cognizable at Oregon law in a PCR proceeding, in this case, Petitioner has not shown, based on newly discovered and reliable evidence it is more likely than not that no reasonable juror could have found petitioner guilty beyond a reasonable doubt as articulate in *Reeves v. Nooth*, 294 Or. App. 711 (2018). He can show that had certain evidence been presented at trial, the is a reasonable possibility that the outcome would have been difference, as is therefore entitled to relief on other grounds, as stated below. *Stevens v. State* 322 Or. 101(1995) as quoted in *Ogle* at 355.

   b. The testimony of DA Frasier which summarized his theory of the case, summarizes the evidence from which a jury could find defendant committed the crime. This is a concise summary of evidence from which a jury could find the defendant guilty.

2. Claim: Ineffective Assistance of Trial Counsel, failure to challenge State's Conclusions regarding cause and manner of Death (Paragraph 8 A) is denied based on petitioner's failure to establish the merits of the claim. The legal basis for denial of relief is that Trial Counsel's handling of the medical examiner testimony was a reasonable trial strategy and Petitioner has failed to show prejudice from counsel's handling of the medical examiner evidence.

   a. The medical examiner, Dr. Olson, was not able to determine an exact cause of death in this case due to the advanced state of decomposition of the body. He did determine that the

Page 4 – GENERAL JUDGMENT (Post-Conviction)

cause of death was homicidal violence of some undetermined type. This is a conclusion the jury would have made from the evidence and that the defense advanced in their case, as the defense expert was of the opinion this was likely a homicide.

    b. A motion in limine to exclude Dr. Olson's opinion would not have been successful. *State v. Simmons*, 279 OR App 756 (2016) and *State v. Rogers* 313 OR 356 (1992).

3. Claim Ineffective Assistance of Trial Counsel, failure to effectively challenge the State's conclusions on bloodstain evidence (Paragraph 8 B) denied. The legal basis for denial of relief is failure to show a factual and legal basis for the claim.

    a. Trial counsel had a reasonable strategy, developed in consultation with its forensic expert, trial counsel brought out, through cross examination of prosecution witness Kathy Wilcox, that blood found on the victim's left show was "high velocity" splatter. This allowed Trial Counsel to argue the absence of blood droplet on petitioner and, most significantly, in his car.

    b. Petitioner has not shown that a motion in limine would have successful. Analysis of blood evidence at the crime scene is not applicable in this case, as the crime scene has never been located and there was no blood stain evidence at the location where the body was found that could be recovered and tested.

    c. Petitioner called Kenn Meneely as a defense expert on blood spatter evidence. Petitioner has failed to prove how calling another expert would have provided evidence that another person killed Leah Freeman, or how Mr. Meneely's expertise and testimony was deficient.

4. Claim Ineffective Assistance of Trial Counsel, failure to provide photos of Petitioner showing no defensive wounds (Paragraph 8 C) is denied based on petitioner's failure to establish the merits of the claim. The legal basis for denial of relief is that Trial Counsel had strategic reason for not questioning law enforcement witnesses regarding Petitioner's lack of defensive wounds or

Page 5 – GENERAL JUDGMENT (Post-Conviction)

introducing photographs of Petitioner taken by law enforcement through law enforcement witnesses.

    a. Trial Counsel intended to introduce the photos through Petitioner and obtain testimony regarding his physical condition at the time of Ms. Freeman's disappearance when Petitioner testified. Petitioner changed his mind about testifying, so she was unable to do this. Her decision not to question the police officer about this is articulated in Exhibit 104 at 36 and is reasonable.

    b. The photographs were taken on July 28, a month after Ms. Freeman disappeared, diminishing their evidentiary value. The jury heard that a victim of strangulation might leave scratches or bruises on her assailant. There was no evidence that Petitioner had any scratches or bruises presented to the jury. Trial Counsel was not inadequate for not arguing this point in closing.

5. Claim Ineffective Assistance of Trial Counsel, failure to effectively challenge the State's Timeline (Paragraph 8 D) denied based on petitioner's failure to establish the merits of the claim.

    a. Trial Counsel was not inadequate for failing to introduce the phone and gas records. (8 D 1 and 2) Trial Counsel intended to introduce the records through Petitioner, and was unable to do so when he elected not to testify. The records do not provide an alibi for Petitioner. It is unlikely the Trial Court would have allowed a continuance to bring in custodians of the records. Petitioner is unable to show prejudice because these records were not admitted.

    b. The email from Chief Daniels to DA Frasier would not have been admissible as hearsay. Counsel was not inadequate for failing to seek admission of this document. (8 D 3)

    c. Trial Counsel was not inadequate for failing to request "missing reports" in discovery. (8 D 4).

    d. Trial Counsel was not inadequate in her cross examination of Denise Bertrand and has failed to show prejudice as a result of any alleged inadequacy. (8 D 5)

Page 6 – GENERAL JUDGMENT (Post-Conviction)

**Declaration of Jesse B. Davis**
Exhibit 5028 at 12
**Exhibit A, Page 10 of 22**

e. Trial Counsel was not inadequate for failing to call Nicole Price as a witness. (8 D 6) There is no evidence that Price would have added anything that was not covered in the testimony of Brent Bartley. Price was vague about times, had been drinking, and had no additional information that would have affected the outcome of the trial. It was not unreasonable for trial counsel, as a matter of trial strategy, to elect not to call her as a witness.

f. Trial Counsel was not inadequate for not calling Kristy Christoferson and Amanda Landmark to testify at trial. (8 D 7) Other witnesses testified that they had seen Petitioner looking for the victim at various times and places in Coquille the night she disappeared. Christoferson could not be located at the time of trial. Ms. Landmark has no memory of what happened that night, where other witnesses who did testify were specific and detailed about seeing Petitioner. Petitioner is unable to show prejudice for failing to call these witnesses.

g. Trial Counsel was not inadequate for failing to produce a timeline of petitioner's movements on June 28. Counsel provided a timeline in the form of testimony and presented a coherent argument regarding events for the jury. Counsel did not make a chart or specific exhibit for the jury. This was a strategic decision, as any timeline in this case will have gaps due to the vague nature of the witness testimony as to specific times, and information from Petitioner could not be included as he chose not to testify. A timeline could emphasize the time gaps to Petitioner's detriment. Petitioner is unable to show prejudice.

6. Claim (8 E) Ineffective Assistance of Trial Counsel, failure to request, and offer into evidence DNA Evidence (Paragraph 8 E) is allowed; The legal basis for relief is that there is more than a mere possibility that counsel's acts or omissions effected the outcome of the case.

a. Trial Counsel retained the services of Kenn Meneely, as an expert. Mr. Meneely is not a DNA expert, and trial counsel did not retain one. This decision was based the conclusions

Page 7 – GENERAL JUDGMENT (Post-Conviction)

**Declaration of Jesse B. Davis**
Exhibit 5028 at 13
**Exhibit A, Page 11 of 22**

in the 2001 report from the Oregon State Crime lab of testing on the victim's shoes (Ex 18). That report stated that the victim's DNA was found on both shoes, and that male DNA was found on the left shoe that did not match Petitioner. In 2002, the analyst, Mary Krings, compared the DNA on the left shoe against Deputy Oswald, and reported it was a match to him.

b. In 2001, the shoes were sent to England for testing at Forensic Science Service (FFS). FSS reported traces of blood on the sole, inside heel and lace end of the left shoe. (Ex 9)

c. Trial Counsel had these reports, as well as Ms. Krings handwritten allele charts interpreting the electropherograms (the bench notes).

d. The bench notes show there was DNA of an unknown male in the samples. This was not noted in the report.

e. Trial Counsel did not retain a DNA expert to review the bench notes or actual laboratory analysis. She relied on the conclusion in the 2001 report without further investigation.

f. Relying on the conclusions in the report, Trial Counsel stipulated to the introduction of the DNA reports.

g. At trial, Kathy Wilcox, the prosecution expert on DNA, testified that Ms. Freeman's DNA was the only DNA found on the right shoe. She further testified that the only DNA found on the left shoe was from the victim and Deputy Oswald.

h. These conclusions were incorrect. Review of the results shoe that unknown male DNA was found on both shoes, not belonging to Petitioner, and those results were known in 2001 and 2002 when the reports were generated.

i. There is a factual dispute as to whether the OSP lab protocols in 2001 and 2002 required the trace DNA amounts found be reported. This case went to trial in 2011. Significant advances in the detection of trace amounts of DNA occurred in that ten-year period, and by 2011, there is no dispute the results would have been reported at that time, or, that had a defense expert asked, the results would have been disclosed.

Page 8 – GENERAL JUDGMENT (Post-Conviction)

**Declaration of Jesse B. Davis**
Exhibit 5028 at 14
**Exhibit A, Page 12 of 22**

j. At trial, the State argued that there was no unknown DA on the shoes. After the PCR case was filed, the Coos County District Attorney took the unusual step of hiring an independent expert, Thomas Fedor, to review the DNA results. Mr. Fedor is of the opinion that the OSP crime lab made errors and that the reliance on protocols or analyst discretion in 2001 is suspect. (Ex. 15 and 16).

k. In preparation of this case, the OSP lab reviewed the DNA evidence and prepared new reports (Ex 17 and 18). This report reports in detail the presence of unknown male DNA on both shoes, and that the DNA is not from at various males associated with the case.

l. Trial Counsel did not object to the testimony at the trial regarding the DNA. Without the information that other unknown male DNA was found, Trial Counsel made the reasonable strategic decision to downplay the DNA evidence and argue that Petitioner's DNA was not found on the shoes.

m. Trial Counsel's theory of the case was that the victim was murdered, and that some other unknown person was the perpetrator. However, without the DNA evidence, Trial Counsel was reduced to showing that Petitioner could not have committed the crime and was not able to produce any evidence of an alternative theory.

n. Had Counsel retained the services of an expert in DNA analysis, a review of the bench notes, protocols and the FFS reports would have resulted in Counsel learning the conclusion in the 2001 and 2002 reports were incomplete at best. Counsel would then have been able present evidence that could lead a jury to conclude another unknown male was responsible for the victim's death. Trial Counsel now acknowledges this. (Ex. 104)

o. The Court finds the testimony of Patrick Sweeny credible and persuasive on this issue. Sweeny testified of the necessity of consulting with at least one and probably two experts regarding the DNA evidence, in order to understand the science and confront the State's experts. It was his opinion that Trial Counsel performance fell below the standard of

Page 9 – GENERAL JUDGMENT (Post-Conviction)

competence in this type of case, a Murder where the defense theory was that someone else committed the offense.

 p. While understandable given the language of the reports, Counsel's failure to retain an expert and investigate further, and question the State's witness on the reports constitutes a failure to engage in a reasonable investigation, and a failure to exercise reasonable professional skill and judgment.

 q. Petitioner was prejudiced by Trial Counsel's failure to investigate, retain and offer and expert at trial and otherwise correct the DNA evidence offered at trial.

7. Claim Ineffective Assistance of Trial Counsel, failure to effectively challenge the State's "bad guy" evidence (Paragraph 8 F) is denied based on petitioner's failure to establish the merits of the claim. The legal basis for denial of relief failure to prove factual and legal basis of claim.

 a. An objection by Trial Counsel to the letters and diaries of the victim would have not been successful. The materials were admissible under OEC 801(3). Trial Counsel relied on letters and materials by the victim in its defense, and objection to the materials would have undermined its use of the victim's letters.

 b. Petitioner has failed to show prejudice as the evidence would and did have come in through other witnesses.

8. Claim: Ineffective Assistance of Trial Counsel, failure to effectively challenge the State's admission evidence (Paragraph 8 GI) is denied based on petitioner's failure to establish the merits of the claim. The legal basis for denial of relief is failure to prove factual or legal basis of claim

 a. Counsel's decision not to call Meagan Edgerton, Kathy McGuffin or herself as witness were a reasonable trial strategy. Counsel handled the statement on the Courthouse steps allegedly made by Petitioner by placing it in context to minimize its relation to this case. Trial Counsel filed a motion in limine regarding the testimony, and it was never argued that the witness to the statement Melissa Beebee, made the statement. It can only be concluded that this assert now is not correct.

Page 10 – GENERAL JUDGMENT (Post-Conviction)

**Declaration of Jesse B. Davis**
Exhibit 5028 at 16
**Exhibit A, Page 14 of 22**

b. Counsel was not inadequate for failing to call Wayne McGuffin to testify. Counsel made a reasonable strategic decision not to call Wayne McGuffin as his testimony could have been detrimental to Petitioner.

9. Claim: Ineffective Assistance of Trial Counsel, failure to effectively challenge the State's evidence regarding cleaning the Mustang (Paragraph 8 H) is denied based on petitioner's failure to establish the merits of the claim. The legal basis for denial of relief is failure to prove factual and legal basis for claim. Trial Counsel employed a reasonable strategy in her cross examination of Kathy Wilcox, and Petitioner is unable to show prejudice in any event.

10. Claim Ineffective Assistance of Trial Counsel, failure to effectively challenge the State's investigation (Paragraph 8 I) allowed regarding the Backman report (Ex 61). The remainder of the claim is denied, based on petitioner's failure to establish the merits of the claim. The legal basis for denial of relief is failure to show factual or legal basis for claim.

   a. The Backman report, for whatever reason, was not known to either the State or defense at the time of trial. The report has a Bates stamp on it, but does not appear in the discovery logs, and neither the District Attorney or Trial counsel recall seeing it prior to the PRC proceedings.

   b. The information provided by Mr. Backman was favorable to the defense, and directly contradicts the State's witness, John Lindegren, that he saw the defendant with the victim at around nine in the evening. Backman was using an ATM and had the withdrawal slip with a time of 9:04 p.m. He stated he saw the victim walk by while he was using the ATM.

   c. While other witnesses saw the victim in the vicinity of the bank that night, their testimony is vague as to time. While this testimony would have corroborated Backman's, it was not duplicative, as none of the other witnesses can provide an exact time.

   d. Backman's statement makes it more likely that Lindegren confused the victim and defendant with Ms. Mitchell and her boyfriend. Lindegren is the only witness who

Page 11 – GENERAL JUDGMENT (Post-Conviction)

Exhibit 5028 at 18

testified that the victim and defendant were together after he dropped her at the home of Ms. Mitchell and contradicts the defendant's claim that he did not see the victim again that evening. While trial counsel argued Lindegren was mistaken, she had no evidence he was wrong. Disclosure of the report could have led to admissible evidence in the form of Mr. Bachman's testimony and been used to impeach Mr. Lindegren. It would have provided a definite time and location of the victim. It would rebut the argument that the Petitioner was lying to the police when he told them he did not see Leah Freeman again after he dropped her off at the Mitchells earlier in the evening, making all his other statements about what he did that evening suspect.

e.   PCR counsel has not located Mr. Backman to determine what his actual testimony would have been. Whether he could have been located in 2011 for trial is not known as no one attempted to locate him then. Whether he can ever be found is not known. This is not a situation where Trial Counsel decided not to call him for strategic reasons, but rather a failure to investigate critical evidence that in all probability would have had a significant impact at trial, and Mr. Backman is distinctive from all the other witnesses now suggested by Petitioner as possible trial witnesses.

f.   There is a possibility, based on the report of the Backman interview not being in the discovery log, that it was in fact not disclosed. If that were the case, it would be a clear *Brady* violation. As indicated below, this Court does not find sufficient evidence it was not in the discovery. It is also possible, given the volume of discovery in the case, that Counsel missed it and if that is the case this error was critical.

g.   Deputy Oswald existed or that it contained anything admissible or exculpatory.

h.   The OSP log would not have been admissible at trial.

i.   The tip sheet and Microtrace notes were not admissible at trial. The Backman information is discussed above.

Page 12 – GENERAL JUDGMENT (Post-Conviction)

**Declaration of Jesse B. Davis**
**Exhibit A, Page 16 of 22**

j.  There is no evidence the original death certificate and affidavit, if admitted would have changed the outcome at trial.

k.  Petitioner's spoliation argument regarding a bank video failure for failure to show the video contained any exculpatory or relevant information

11. Claim Ineffective Assistance of Trial Counsel, failure to investigate and present evidence of third-party guilt (Paragraph 8 J) is denied based on petitioner's failure to establish the merits of the claim. The legal basis for denial of relief is that Trial Counsel's decision not to present evidence regarding suspicious males and grey cars in the Coquille at the time of Ms. Freeman's disappearance was a reasonable strategic decision, based on the information counsel had at the time regarding the DNA analysis.

a.  Her conclusion that this evidence was too attenuated and would make the defense look desperate (Ex 104 at 89-90) is reasonable, particularly considering the Trial Court pretrial ruling that it would not allow rumors and local gossip to be admitted.

b.  Petitioner is not able to show prejudice in that attempts to enter this evidence would not have been successful.

12. Claim Ineffective Assistance of Trial Counsel, failure to effectively investigate or call witnesses (Paragraph 8 K) is denied based on petitioner's failure to establish the merits of the claim. The legal basis for denial of relief is that counsel made a reasonable strategic decision not to call each of the witnesses now identified by the Petitioner.

a.  The testimony of Mona Hathaway regarding the El Camino would have required speculation or conjecture not likely to have been allowed by the Court, and in any event, Trial Counsel's conclusion that testimony about random grey cars in the area would have been seen as desperation by the jury and detracted from more specific evidence regarding other possible specific suspects.

b.  Trial Counsel's decision not to call Charity Kinsey and Shelley Kinsey was a reasonable strategic decision in the absence of any evidence connecting the two attacks.

Page 13 – GENERAL JUDGMENT (Post-Conviction)

c. Trial Counsel was not inadequate in her handling of the paint chip evidence. Trial Counsel argued the chip was not connected to Petitioner's car, that it was not compared to Scott Hamilton's car. Petitioner is not able to show the chip is actually connected to some other suspect, and is therefore unable to show prejudice.

d. Trial Counsel was not inadequate regarding failure to seek admission of the poem sent to the victim's funeral. This poem is vague and not a confession of someone else. It was reasonable for Trial Counsel to conclude this evidence was weak and to attenuated and its admission would again signal desperation to the jury.

e. Trial Counsel's decision not to call Kathy McGuffin as a witness was reasonable, based on her analysis of the witnesses based on her training and experience and a balance of the risk to reward.

f. Overall, counsel's selection of lay witnesses was a reasonable strategic decision based on her analysis of the case and the information she had at the time of trial. It is certainly possible that her decisions might have been different had she had the information regarding the unknown DNA but overall her handling of witnesses did not fall below the standard of permissible professional conduct.

13. Claim Ineffective Assistance of Trial Counsel, failure to object to State's closing (Paragraph 8 L) is denied based on petitioner's failure to establish the merits of the claim. The legal basis for denial of relief is that statements made by the prosecution in closing argument when viewed in context were not improper.

a. Specifically, the statements do not constitute improper vouching, an improper comment on Petitioner's right to remain silent or are made outside the scope of the evidence. Petitioner has failed to show prejudice.

b. Trial Counsel made a strategic decision not to continuously interrupt closing with objections was reasonable, particularly in light to the Trial Courts response when she did object. Petitioner has not shown that had Trial Counsel objected the objections would have

Page 14 – GENERAL JUDGMENT (Post-Conviction)

**Declaration of Jesse B. Davis**
Exhibit 5028 at 20
**Exhibit A, Page 18 of 22**

been sustained, or that the failure to object effected the outcome of trial. The Trial Court correctly instructed the jury regarding argument. Petitioner has failed to show a legal basis for relief.

14. Claim Ineffective Assistance of Trial Counsel, failure to object to non-unanimous verdict (Paragraph 8 M) is denied based on petitioner's failure to establish the merits of the claim. The legal basis for denial of relief is *State v. Broome*, 276 Or. App.595 (2016) and *Apodaca v. Oregon*, 406 US 404, 92 S. Ct 1628, 32 L Ed 2nd 183 (1972). At the time of Petitioner's trial, State and Federal courts allow a non-unanimous verdict in all crimes but Murder. Petitioner is unable to show prejudice as had Trial Counsel objected to a non-unanimous verdict in the Manslaughter charge, the motion would have been denied by the trial court and the appellate court would have sustained the denial on appeal.

15. Claim Ineffective Assistance of Appellate Counsel, failure to effectively challenge the State's "bad guy" evidence (Paragraph 9) is denied based on petitioner's failure to establish the merits of the claim. The legal basis for denial of relief is failure to show factual and legal basis for the claim. The materials, as noted above, were legally admissible and this issue could not have been raised by trial counsel as plain error.

16. Claim Violation of Discovery and *Brady v. Maryland, 373 US 83, 83 St. Ct 1194, 10 L ed 215 (1963)*, is allowed. The legal basis for relief is that had the withheld material been disclosed, there is a reasonable probability that the result at trial would have been different.

   1. Male DNA was detected on the victim's shoes during testing in 2000 that was not the defendants. This information was not disclosed at trial. DNA from another male is material and exculpatory. The basis for this conclusion, the actual forensic analysis (the "bench notes") was disclosed but not interpreted in the report.

   2. In 2000, when the original testing was conducted, it is contended that existing OSP lab protocols did not require disclosure of the DNA in the report, at the discretion of the examiner.

Page 15 – GENERAL JUDGMENT (Post-Conviction)

Exhibit 3028 at 22

3. By 2010, when the case was re-opened, significant advances had been made in DNA testing allowing for more detailed and thorough analysis of trace amounts of DNA. A report prepared at that time with the same information would have disclosed the trace DNA on both shoes from unknown males.

4. In 2010, the only DNA reported on the victim's shoes was that of the victim and Deputy Oswald, a police officer who had handled the shoe. While the allele charts and electropherograms were disclosed, the conclusion that there was unknown male DNA in the sample was not. The OSP report and trial testimony presented to the jury and not challenged by the defense, made it appear to the jury that there was no other DNA on the shoes, which was not true and was known to the State at the time of trial, although the District Attorney, also relying on the conclusions in the 2001 report, also did not know about the other DNA, resulting in his argument at trial that no other DNA was found on the shoes other than the victim and the deputy sheriff who had handled the shoe.

5. As a result of the investigation in the PCR case, the OSP lab re-assessed the data thoroughly and completely, and determined there was additional unknown male DNA in the tested materials. There is a possibility that the same unknown male contributed DNA to both the left and right shoes. The conclusions a reader is likely to draw from the 2000 and the 2017 reports are strikingly different and would have altered the trial strategy employed by Trial Counsel. These conclusions are supported by the conclusions of the expert called in the PCR case, Dr. Nasir

6. While the unknown DNA could have been deposited by innocent transfer, it is also possible it was not. This would be a factual question for the jury.

7. Trial counsel did not investigate this matter further as a matter of trial strategy, which was based on the information she had at the time. Had she been presented with the conclusion that other male DNA was found on the shoes, the trial strategy would have been different, particularly if the other material unlawfully withheld had been disclosed, as discussed below.

Page 16 – GENERAL JUDGMENT (Post-Conviction)

Trial counsel's failure to investigate the DNA evidence and hire a DNA expert, discussed above, was a result in large part due to the State's failure to disclose the conclusion that other male DNA was found on the shoes.

8. The District Attorney was laboring under the same lack of information. This is not a case where the District Attorney, who sincerely and passionately has sought to determine what happened to the victim, deliberately withheld exculpatory information. Rather, the material from the OSP lab provided information in its report and through the testimony of Kathy Wilcox that created a false impression that no other DNA was found on the shoes. This failure is a failure to disclosed exculpatory information.

9. The failure to disclose the Nick Backman interview has not been proven. The District Attorney does not recall the document, but it is Bate stamped and hole punched, so it is reasonable to conclude it was in the discovery matters.

10. If the report was in fact disclosed, but somehow not seen by either the District Attorney or Trial Counsel, it would be a clear failure of defense counsel to investigate and properly present evidence at trial, as the failure to present this information raises the possibility that the result at trial would have been different, as discussed above.

11. The other alleged Brady violations do not rise to the level that had the material been disclosed, it would have been likely to have changed the outcome of the trial or would not have been admissible or led to admissible evidence.

For the claims allowed above, the following relief is granted: Conviction for Manslaughter I is set aside and the case is remanded to the Trial Court for further proceedings consistent with this order.

This matter involves Federal; and/or State Constitutional issues.

The court adopts all oral findings made on the record and incorporates them into this judgment.

Page 17 – GENERAL JUDGMENT (Post-Conviction)

Declaration of Jesse B. Davis
Exhibit 5028 at 23
Exhibit A, Page 21 of 22

All questions presented were decided. This judgment shall constitute a final General Judgment for the purposes of appellate review and for purposes of res judicata.

DATED this 26th day of November , 2019.

Signed: 11/29/2019 04:51 PM

_____
Sr. Judge Patricia Sullivan, Circuit Judge
Circuit Court Sr. Judge Patricia A. Sullivan

Page 18 – GENERAL JUDGMENT (Post-Conviction)

**Declaration of Jesse B. Davis**
Exhibit 5028 at 24
**Exhibit A, Page 22 of 22**