**Robert E. Franz, Jr.**    OSB #730915
E-Mail:  rfranz@franzlaw.comcastbiz.net
**Sarah R. Henderson**    OSB #153474
E-Mail:  shenderson@franzlaw.comcastbiz.net
FRANZ & HENDERSON
P.O. Box 62
Springfield, OR 97477
Telephone:  (541) 741-8220
Attorneys for Mark Dannels, Pat Downing, Kris Karcher, Shelly McInnes, Raymond McNeely, Kip Oswald, Michael Reeves, Sean Sanborn, Eric Schwenninger, Chris Webley, Anthony Wetmore, Craig Zanni, David Zavala, City of Coquille, City of Coos Bay, and Coos County, Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

Nicholas James McGuffin,
as an individual and as guardian
*ad litem*, on behalf of S.M., a minor,

       Plaintiffs,

          v.

Mark Dannels, Pat Downing, Susan Hormann, Mary Krings, Kris Karcher, Shelly Mcinnes, Raymond Mcneely, Kip Oswald, Michael Reeves, John Riddle, Sean Sanborn, Eric Schwenninger, Richard Walter, Chris Webley, Anthony Wetmore, Kathy Wilcox, Craig Zanni, David Zavala, Estate of Dave Hall, Vidocq Society, City of Coquille, City of Coos Bay, Coos County, and Oregon State Police,

       Defendants.

Case No. 6:20-cv-01163-MK

**Exhibit 5062**
Reaves Supplemental Report

Page 1

# SUPPLEMENTAL REPORT

| | INCIDENT NO. |
|---|---|
| Agency: **Coquille Police Department** | **00001905** |

| Report Purpose | Reported On | Date | Time | Incident Classification | |
|---|---|---|---|---|---|
| *Follow-up information* | THU | *06/29/2000* | *10:25* | *Missing Person* | |

| Primary Charge | | UCR/NCIC Code |
|---|---|---|
| | | / |

| Additional Charges | Estimated Total Property Loss |
|---|---|
| | |

## Narrative

On 7/3/2000, from 0630 through 0930, Officers Hall, Grant and I reviewed and organized our case files and leads. We contacted the FBI and requested assistance. Officer Hall followed leads from the weekend and re-interviewed several witnesses developed in the case.

At 1230 hours, we met with Agents Mike Morrow, David McLean, John Ferreira and William Soule of the FBI in our office. We briefed them on our case information and leads to date. Agent Morrow said the FBI would assist us in the case and would help in any way possible.

Officer Hall and Agent Soules went to the Courtright residence to re-interview Corliss Courtright and Denise Freeman. Officer Grant and Agent Ferreira went to interview the Mitchells. Agents Morrow, Hall and I drove the area where Leah Freeman was last seen. Agents Morrow and McLean volunteered to make door to door interviews along the route.

We reconvened at approximately 1500 hours and debriefed on our afternoon activities. Chief in our discussion was discrepancies in Nick McGuffin's statements. We had discussed the possibility of re-interviewing McGuffin and asking him to take a polygraph examination. During the afternoon, we attempted to locate a polygrapher, but none were available until Wednesday, July 5, because of the holiday weekend. We decided to conduct interviews and polygraphs of McGuffin and Brent Bartley on 7/5/00. Officer Hall was assigned to locate a polygrapher.

From 2100 through 2230 hours, I walked and timed Freeman's route from W. 4th Street and Central to Knott Street and West Central. It took 25 minutes to walk the route. This was the fourth time I walked the route. On the return trip, I checked a trail near Grape and Central and the wooded areas between Knott Street and the High School.

On 7/4/2000, at 0900 hours, Officer Dave Hall and I resumed case investigation. We reorganized our leads and processed new leads from the previous evening. During that time, an anonymous call came into dispatch that Leah was seen in Coos Bay, near the Egyptian Theater. The caller just wanted to notify the mother that Leah was "alright". Police Dispatcher Barb Thurman traced the call to 1222 Minnesota Street in Coos Bay. Officer Hall and I went to the address to follow-up on the call (see officer Hall's report for detail). We followed the lead from there to Capt. John's Motel (Charleston) to 249 S. Broadway, Apt. 122, 355 S. 5th Street and 353 S. 5th Street. In the end, the lead was unverifiable.

We returned to Coquille and timed driving from 444 1/2 N. Elm Street to Knott Street. The trip took 3 minutes (driving the speed limit) to Knott Street and 5 minutes round trip.

We returned to the office and planned the Major Case Investigation Meeting for 7/5/2000. We reviewed case notes and time lines, then went to speak to Cory Courtright. Our contact with Courtright was to keep her abreast of the case investigation.

At 2030 hours, I went to N. Elm and W. Central and met with Officer Randy Ulmer and Officer Dave Hall. Officer Ulmer was given a Nike shoe, found on N. Elm, by Tony Messerle (see Officer Ulmer's

| I.D. No./Name of Reporting Officer | Prep Date/Time | Approval | Date/Time | Distribution |
|---|---|---|---|---|
| *601 Reaves, Michael W.* | *07/12/2000 07:32* | *Reaves, Michael W.* | *11/28/2000 10:54* | *File* |
| | | | Supervisor | |

RECORDS
003838    DISTRIBUTION DATE    BY    003838    003838

<span style="color:red">Exhibit 5062 at 1</span>

003839                                003839                                003839

SUPPLEMENTAL REPORT CONTINUED                                          Page   2

| AGENCY: Coquille Police Department | Incident Classification Missing Person | Incident No. 00001905 |
|---|---|---|

report ).  Officer Hall didn't think the shoe was connected to this case as Leah's Nike's were supposed to have a single purple stripe, but this shoe had double blue stripes.  Officer Ulmer showed us where the shoe was found and departed the area.

Officer Hall and I went to Fast Mart to speak to patrons of the establishment.  Cory Courtright was there and we spoke to her a few minutes, about the case.  We stayed at Fast Mart until 2200 hours, but it was quiet as most folks were away from the area for fireworks displays.

On 7/5/2000 from 0630 to 0800 hours, Officers Hall, Grant and I reviewed case notes and organized leads.  At 0800 hours, I had Barb Thurman arrange a meeting of the Major Case Investigation Team.  I also contacted CCSO Search and Rescue for assistance.

Between 0800 hours and 0900 hours I began to field press questions on the case and had numerous requests for interviews.  I scheduled a conference for 1100 hours.

Between 1000 and 1100 hours, I was involved in the MCIT/FBI briefing.  Area investigators were briefed on the case and assigned leads to follow.  Polygraph exams of Brent Bartley and Nick McGuffin.  Trooper Mark Ranger, OSP, was assigned to handle the polygraphs.  It was also decided to have McGuffin and Bartley make written statements on the events of 6/28/2000.

Sgt Dave McDaniel, CCSO, was assigned the task of searching the wooded areas between 10th St and Knott Street, off Central Blvd.  Sgt. McDaniel stated he would search the area with dogs.

I held a press conference from 1100 to 1120 hours , then returned to the Case task room to review lead assignments and case organization.  I worked in the task room for most of the day.

During the afternoon, I was briefed  by Trooper Ranger on the polygraph results.  Bartley showed no deception, except for a small reading when asked if he spoke to Leah after 2100 hours on 6/28/2000.  McGuffin showed extreme reaction to three questions(paraphrased):  Did you do anything to cause Leah's death?, Are you involved in Leah's disappearance? and Did you speak to Leah after 2100 hours on 6/28/2000?

The MCIT and FBI met again to debrief on the various leads.  Trooper Ranger briefed on the polygraph exams.  We discussed options for follow up with McGuffin on the exam.  I decided, based on information provided in our de-briefing, to have Trooper Ranger and Officer Hall interview McGuffin about the polygraph and discrepancies in his statement  See Officer Hall's and Trooper Ranger's reports on the interview.

During the interviews with McGuffin, Officer Hall obtained a consent to search on McGuffin's car.  Paul Fraizer, SCINT attorney, worked up a search warrant on the car, based on information to date.  Officer Hall decided to postpone the search until the warrant was obtained.

From 2230 to 2215 hours, MCIT members, agents of the FBI and Coquille Police Officers and I conducted road block interviews of all vehicle and pedestrian traffic on Central Blvd in the area of the Credit Union.  The purpose of the interviews was to gather information on traffic use and people who might have traveled on Central one week earlier (6/28/2000) and seen something.

From 2215 to 2300 we debriefed the roadblock information and organized leads gained from it.

On 7/6/00, I reviewed the case with Officer Hall, Lt. King and the FBI.  We reviewed assignments

Exhibit 5062 at 2

003840                                    003840                                    003840

## SUPPLEMENTAL REPORT CONTINUED

| | Page 3 |
| --- | --- |

| AGENCY: **Coquille Police Department** | Incident Classification<br>**Missing Person** | Incident No.<br>**00001905** |
| --- | --- | --- |

and planned the next phase of the investigation.

On 7/7/00, we held a Major Case Investigation team meeting.  The case was reviewed to date, lead assignments were made and the time line was discussed.

At 1730 hours, Officer Hall and I interviewed Brent Bartley.  Leslie Bartley, his mother was present. We brought Bartley and his mother into CPD dispatch to conduct the interview  I provided seats for the Bartleys and Officer Hall started the interview.

Before Officer Hall could finish asking his first question, Bartley began yelling, screaming and using foul language.  He claimed he was being harassed.  Officer Hall remained calm and tried to explain the need for the interview.  Bartley wouldn't let Officer Hall finish.  He said he didn't have to talk to us, he passed the polygraph. Officer Hall cut in and told Bartley the polygraph was one of the issues we needed to discuss.  He tried to explain the problem with the polygraph and time line issues, but Bartley became more agitated, jumped up and began walking around the office very fast. I tried to calm him, but his mood became uglier.  His mother had moved from the chair she was in, to get out of his way.  He kicked the chair, a heavy wooden one, across the room. I placed my hand on his chest, pushed him to the wall and told him to calm down.  He began screaming, "Police Brutality".

I told him we needed to clear up a few things and asked him to sit down so we could explain it.  He refused to sit, but stopped yelling.  I explained the problem with the polygraph and with his written time line.  I told him his written statement didn't match his girlfriend's statement and explained the difference.

He had no explanation, other than he was drinking and doing drugs.  During our conversation, he would vacillate between being calm and yelling.  He kept using foul language and calling us profane names.

He said he was going to get a lawyer because we were accusing him.  I pointed out that no accusations had been made.  He was told that all we wanted to do was clear up obvious discrepancies in his statement.

He called me a liar and reference some interview on TV.  He said the whole situations was the PD's fault.  He jumped up and said he was leaving, then said he wanted a cigarette.  I told him he was free to leave, and he left the building.

His mother remained and asked what she could do.  Officer Hall and I explained the situation to her and the discrepancies between his statement and his girlfriend's statement.

She didn't know if she could help and expressed concern as she didn't know about his use of drugs. She also said she had little influence on him.

Bartley returned, still in an agitated state.  He again said he wanted to leave.  We told him he was free to leave and pointed out that he had, in fact, left and returned.  He sat down and said again he was too drunk and drugged to remember anything specific and he didn't know anything about times.

He wanted to leave, we told him to go, but he said he was waiting for his mother.  Officer Hall and I thanked Mrs. Bartley for coming in and reiterated that that we were only looking for a missing girl.

**EXHIBIT**

**4**

CONTINUED NEXT PAGE

Exhibit 5062 at 3

SUPPLEMENTAL REPORT CONTINUED                                    Page  4

| AGENCY: *Coquille Police Department* | Incident Classification *Missing Person* | Incident No. 00001905 |
|---|---|---|

Bartley went off again, then ended his tirade with the statement, "Nick didn't do it." I asked him what he meant and what it was that Nick "didn't do." He just sat back in the chair. I asked again about his statement and what he thought happened.

He said he wanted to leave and got up. He refused to say anything else. We thanked him and his mother for coming in and they left.

Between 1800 and 1900, Officer Hall and I worked with Agent Bill Soules, FBI, on plans for the weekend and the cadaver dog search.

I also received a phone call from Agent Mike Morrow. He received a phone call from Bruce McGuffin regarding the Bartley interview. Bartley was upset and threatened to press harassment charges. Agent Morrow said he would meet with McGuffin the next day.

On 7/8/00, cadaver dog searches were done in several areas of the county. See Officer Hall's report for specifics. Officer Hall and I worked on the case time lines while the searches were done.

On 7/13/00, I received a phone call from Howard Leatherman. He offered an additional $5,000.00 reward for the return of Leah and the prosecution of anyone involved with her disappearance.

After this date, I worked several leads with other investigators as the second officer. The case coordination was turned over to Officer Hall and the Major Case Team. See individual reports for specific details.

**END OF SUPPLEMENTAL REPORT**

Exhibit 5062 at 4