**Robert E. Franz, Jr.**    OSB #730915
E-Mail:  rfranz@franzlaw.comcastbiz.net
**Sarah R. Henderson**    OSB #153474
E-Mail:  shenderson@franzlaw.comcastbiz.net
Franz & Henderson
P.O. Box 62
Springfield, OR 97477
Telephone:  (541) 741-8220
Attorneys for Mark Dannels, Pat Downing, Kris Karcher, Shelly McInnes,
Raymond McNeely, Kip Oswald, Michael Reeves, Sean Sanborn,
Eric Schwenninger, Chris Webley, Anthony Wetmore, Craig Zanni,
David Zavala, Estate of David E. Hall, City of Coquille, City of Coos Bay,
and Coos County, Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| Nicholas James McGuffin, as an individual and as guardian *ad litem*, on behalf of S.M., a minor, | Case No. 6:20-cv-01163-MTK |
| Plaintiffs, | |
| v. | |
| Mark Dannels, Pat Downing, Susan Hormann, Mary Krings, Kris Karcher, Shelly McInnes, Raymond McNeely, Kip Oswald, Michael Reaves, John Riddle, Sean Sanborn, Eric Schwenninger, Richard Walter, Chris Webley, Anthony Wetmore, Kathy Wilcox, Craig Zanni, David Zavala, Estate of Dave Hall, Vidocq Society, City of Coquille, City of Coos Bay, Coos County, and Oregon State Police, | **Declaration of Craig Zanni** |
| Defendants. | |

I, Craig Steven Zanni, hereby declare under penalty of perjury as follows:

I make this declaration based on my personal knowledge of the facts contained herein.

I am one of the named Defendants in the above-entitled matter. I am currently retired. I served in the California National Guard from 1970 to 1977, and I was hired as a deputy with the Coos County Sheriff's Office in 1977. I retired from the Coos County Sheriff's Office as a sergeant in 2004. I then went back to work as the director of the South Coast Interagency Narcotics Team. I retired from that position in April of 2007.

On October 8, 2008, I was appointed as an investigator for the Coos County District Attorney's Office. As such an investigator, I worked directly for Paul Frasier, the District Attorney for Coos County, and under his direction and control. See Exhibit 5069. When I was the investigator for Paul Frasier, I was not working for Coos County, nor was I working for the City of Coquille; nor was I an employee, agent, deputy, or police officer for Coos County or the City of Coquille when I was working for Paul Frasier as one of his investigators.

I was elected the Sheriff of Coos County and took office on January 1, 2011. I retired as the Sheriff at the end of 2022. Attached hereto as Exhibit 5068 is a copy of my law enforcement training transcript.

My participation in this matter is contained in Exhibit 5026, Binder 3: CPD013932 to CPD014128. I also testified at the criminal trial. My testimony was limited to identifying items of evidence.

At no time did I ever request the Leah Freeman matter be referred to any grand jury, including the first grand jury; nor did I request the matter be referred to a second grand jury. Those decisions were made by Paul Frasier. And, at no time, did I ask that the case be presented to Paul Frasier for the prosecution of anyone.

Page 2 of 9 – Declaration of Craig Zanni

In this case, when Paul Frasier requested copies of the reports that I had done on the Leah Freeman case, copies of those reports were provided to him, since he was the one leading the investigation and making the decisions on who to call to testify at the grand jury that was assembled and supervised by him in July and August of 2000.

At no time did I ever withhold any reports from Paul Frasier or fail to provide to him reports or copies of reports upon his request. Paul Frasier had full access to all of my reports and all evidence in my possession or the possession of the Sheriff's Department. And, of course, when I was working as his special investigator, he had direct access to all my reports. I do not know of any reports that he was denied access or copies.

I have never arrested Mr. McGuffin for any crime, violation, or matter relating to Leah Freeman; and I never made any decisions related to the arrest of Nick McGuffin relating to Leah Freeman.

I have never prosecuted Mr. McGuffin for any crime, violation, or matter relating to Leah Freeman; I have never initiated any prosecution of Mr. McGuffin for any crime, violation, or matter relating to Leah Freeman; I have never continued any prosecution of Mr. McGuffin for any crime, violation, or matter relating to Leah Freeman; I have never insisted on the institution or continuation of any criminal proceedings relating to Leah Freeman against Nick McGuffin; and I have never made any decisions relating to the prosecution, initiation, or continuation of the prosecution of Mr. McGuffin for any crime, violation, or matter relating to Leah Freeman.

I have never given any false testimony or false information in any matter relating to Leah Freeman or Mr. McGuffin. I have never tried to have any person give false testimony or false information in any matter relating to Leah Freeman or Mr. McGuffin.

Page 3 of 9 – Declaration of Craig Zanni

I have never fabricated any evidence in any proceeding, investigation, or prosecution involving Mr. McGuffin and/or Leah Freeman. I have never tried to get any person to fabricate any evidence in any proceeding, investigation, or prosecution involving Mr. McGuffin and/or Leah Freeman.

I have never destroyed any evidence in any proceeding, investigation, or prosecution involving Mr. McGuffin and/or Leah Freeman. I have never tried to get any person to destroy any evidence in any proceeding, investigation, or prosecution involving Mr. McGuffin and/or Leah Freeman.

I never made any attempts to coerce a false confession from anyone, including Mr. McGuffin; I never falsely reported that McGuffin failed a polygraph to anyone; nor did I fabricate the results of the polygraph examination provided to Mr. McGuffin. On July 5, 2000, a polygraph examination of Mr. McGuffin was conducted by Mark Ranger of the Oregon State Police. (Exhibit 5040 at 1) McGuffin agreed to submit to the polygraph examination. (Exhibit 5040 at 2) At no time did I pressure McGuffin to participate in a polygraph examination for any purpose. Mr. McGuffin did not pass the polygraph. (Exhibit 5040 at 4)

At no time did I pressure anyone else to participate in any polygraph examination for any purpose, including Brent Bartley. A polygraph examination of Bartley took place on July 5, 2000. From a reading of the report of Ranger it is clear that Bartley agreed to that polygraph examination and voluntarily showed up for the examination. See Exhibit 5057 at 2-4.

As to Bartley's second polygraph examination, which was conducted on July 27, 2000, I never pressured Bartley into taking this second polygraph. Looking at the report from Ranger, it is apparent that Brent Bartley had his attorney present throughout the entire polygraph procedure, so it is clear that both Mr. Bartley and his attorney had agreed to the second polygraph examination, and that Mr. Bartley voluntarily showed up for the examination. (Exhibit 5057 at 6) I

did nothing in the investigation of the murder of Leah Freeman to dissuade or prohibit Mr. Bartley from testifying and giving evidence about his knowledge of the facts relating to Mr. McGuffin and/or Leah Freeman. None of the information about the polygraph results of McGuffin and the two polygraphs of Bartley were fabricated or falsely reported to anyone for any purpose as is illustrated by Exhibits 5057 and 5040.

At no time did I fabricate police reports of my interactions or the interactions of anyone else with McGuffin; nor did I suppress, tamper with, or destroy any evidence relating to the murder of Leah Freeman; nor did I suppress evidence of any misconduct by any law enforcement officers on any topic; nor did I destroy a videotape from the US Bank on North Central; nor did I suppress DNA evidence found on Freeman's shoes.

I never fabricated any evidence relating to the criminal case and proceedings involving Nick McGuffin, and I never attempted to fabricate any evidence relating to the criminal case and proceedings involving Nick McGuffin. I never destroyed any evidence relating to the criminal case and proceedings involving Nick McGuffin, and I never attempted to destroy any evidence relating to the criminal case and proceedings involving Nick McGuffin. I never tampered with any evidence relating to the criminal case and proceedings involving Nick McGuffin, and I never attempted to tamper with any evidence relating to the criminal case and proceedings involving Nick McGuffin. I never coerced any witnesses into giving false testimony for or against Nick McGuffin relating to the criminal case and proceedings involving Nick McGuffin; and I never attempted to coerce any witnesses into giving false testimony for or against Nick McGuffin relating to the criminal case and proceedings involving Nick McGuffin. I never suppressed any evidence relating to the criminal case and proceedings involving Nick McGuffin,

and I never attempted to suppress any evidence relating to the criminal case and proceedings involving Nick McGuffin.

At no time did I ever fail to disclose any exculpatory information related to the investigation and/or prosecution of Nick McGuffin to Paul Frasier. I did not hide, conceal, destroy, withhold, or fail to disclose any exculpatory information or evidence to Paul Frasier, nor did I suppress any exculpatory evidence or information at any time. Paul Frasier had full access to all the documents, information, reports, notes, and evidence in my custody or the custody of the Sheriff's Office.

I have never destroyed any exculpatory information or evidence related to the investigation and prosecution of Nick McGuffin. At no time did I ever witness any violations of the constitutional rights of Nick McGuffin; thus, there was never a need or opportunity for me to intervene to prevent any constitutional violations of the rights of Nick McGuffin. And, at no time have I ever participated in any type of a conspiracy against Nick McGuffin for any purpose on any matter.

I had no involvement in any decision to submit this matter to the Grand Jury and I had no involvement in the Grand Jury making its decision of the to return a true bill. I never arrested Mr. McGuffin at any time with regards to the warrant issued for his arrest relating to the murder of Leah Freeman; and I have never served any arrest warrants on Mr. McGuffin at any time. I had no involvement in the decision to issue the arrest warrant for Nicholas McGuffin as set forth in Exhibit 5058 at 5. The warrant was issued by a circuit court judge for Coos County, and I never appeared before that Judge for the purpose of obtaining a warrant for the arrest of Nicholas McGuffin.

At no time have I ever confined or imprisoned Mr. McGuffin, nor have I ever participated in any confinement or imprisonment of Mr. McGuffin with regards to the Leah Freeman matter. A no time have I ever seized Mr. McGuffin,

Page 6 of 9 – Declaration of Craig Zanni

nor have I ever participated in any seizure of Mr. McGuffin with regards to the Leah Freeman matter. I did not serve the arrest warrant on Mr. McGuffin; nor did I participate in the service of the arrest warrant on Mr. McGuffin. Mr. McGuffin was commanded to be arrested by a Coos County Circuit Court Judge, not by me.

As to Plaintiff S.M., I have never talked to S.M., and I have never done anything to interfere in the relationship between S.M. and Mr. McGuffin. I have never taken custody of S.M. I have never talked to any child of Mr. McGuffin; nor have I ever had any type of contact with any child of Mr. McGuffin. Further, I have never done anything to interfere with any relationship that Mr. McGuffin had or has with any of his children.

During the time that I was a deputy for Coos County Sheriff and during the time I was the Sheriff of Coos County, I was fully aware of the policies of the Coos County Sheriff's Office. I had and have personal knowledge of the policies, practices, and customs governing the Coos County Sheriff's Office during my tenure with the Sheriff's Office. During that period, there was never a policy, practice or custom of the Coos County Sheriff's Department for its deputies and employees performing their duties to exercise deliberate indifference and/or callous disregard for the rights, safety, and welfare of anyone. It was always the policy, practice, and custom of the Coos County Sheriff's Department for its deputies and employees to follow the requirements of the laws of the State of Oregon and the requirements of the Constitution of the United States when they are performing their duties for the Coos County Sheriff's Department, and when they were carrying out their responsibilities as deputies.

Also, there was never a policy, practice or custom of the Coos County Sheriff's Department of failing to follow the statutes of the State of Oregon, which prescribe a certain amount of training for deputies and police officers employed by police departments in the State of Oregon.  In fact, it was the policy, practice, and

Page 7 of 9 – Declaration of Craig Zanni

custom of the Coos County Sheriff's Office that all of its deputies complete the amount of training required by the statutes and administrative rules of the State of Oregon, and the requirements of the Department of Public Safety Standards and Training of the State of Oregon. Each of the deputies involved in the investigation of the Leah Freeman matter were properly trained and their training complied with the proper standard of care for a police department in the State of Oregon. There was never a policy of inadequate training when I was with the Coos County Sheriff's Office.

When I was with the Coos County Sheriff's Office there was never a policy, practice or custom of the Coos County Sheriff's Office of fabricating evidence of any kind for any purpose, or to suppress, tamper with, and/or destroy evidence of any kind for any purpose. In fact, it was the policy, practice, and custom of the Coos County Sheriff's Office that all its deputies were never to fabricate evidence and/or suppress, tamper with, and/or destroy evidence of any kind for any purpose.

Neither the Coos County Sheriff's Office nor I ever encouraged, condoned, or acquiesced in any unconstitutional conduct of the police officers employed by the Sheriff, and it was the policy and practice of the Sheriff that unconstitutional conduct of its deputies was prohibited and would result in discipline up to and including termination.

Neither the Coos County Sheriff's Office nor I ever encouraged or acquiesced to unlawful behavior by its deputies. To the contrary, the Coos County Sheriff's Office had a policy of reviewing complaints of unlawful behavior made against its deputies through an internal affairs process, and to impose discipline on a deputy when the circumstances warrant the imposition of discipline under the Sheriff's policies.

Page 8 of 9 – Declaration of Craig Zanni

During my time as a deputy and as the Sheriff, I received excellent training and none of this training was inadequate. Each deputy was trained in accordance with the standards and practices of the State of Oregon.

At no time did I ever agree with anyone to violate the constitutional rights of Nick McGuffin for any reason, much less in order to implicate him in the murder of Leah Freeman; and I do not know of any police officer or deputy that agreed to violate the constitutional rights of Nick McGuffin.

The investigation done by me and other Coos County Sheriff's Office personnel was not negligent or reckless. It was very good. The allegations made in this lawsuit in the complaints filed in this Court against me, the Coos County Sheriff's Office and its deputies are false. The allegations made in this lawsuit in the complaints filed in this Court against the Coos County Sheriff's Office and its deputies that they somehow persuaded witnesses to testify falsely or that there was an attempt to falsely implicate McGuffin can be heard to be untrue just by listening to the recordings of the various witnesses who were interviewed by the investigating officers and deputies; and by listening and viewing the video recording of the witnesses who testified at all of the Grand Jury proceedings; and by listening to the trial testimony of the witnesses that testified. A review of all the proceedings and exhibits will illustrate what a good investigation was conducted by the Coos County Sheriff's Office and its deputies in this case. Further, Nick McGuffin could have testified at his own criminal trial to deny any of the statements made by any witness, including any statements made by any police officer or deputy, but he did not. See Exhibits 5059, 5001, 5002, 5003.

PURSUANT TO 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

/s/ Craig Zanni                                    January 9, 2025
Craig Zanni                                        Date

Page 9 of 9 – Declaration of Craig Zanni