Janis C. Puracal, OSB #132288
E-mail: jcp@mlrlegalteam.com
Andrew C. Lauersdorf, OSB #980739
E-mail: acl@mlrlegalteam.com
MALONEY LAUERSDORF REINER, PC
1111 E. Burnside Street, Ste. 300
Portland, OR 97214
Telephone: (503) 245-1518
Facsimile: (503) 245-1417

David B. Owens, WSBA #53856, *pro hac vice*
E-mail: david@loevy.com
LOEVY & LOEVY c/o
Civil Rights and Justice Clinic
University of Washington Law School
William H. Gates Hall, Suite 265
PO Box 85110
Seattle, WA 98145-1110
Telephone: (312) 590-5449

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| NICHOLAS JAMES MCGUFFIN, as an individual and as guardian *ad litem*, on behalf of S.M., a minor,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>MARK DANNELS, PAT DOWNING, SUSAN HORMANN, MARY KRINGS, KRIS KARCHER, SHELLY MCINNES, RAYMOND MCNEELY, KIP OSWALD, MICHAEL REAVES, JOHN RIDDLE, SEAN SANBORN, ERIC SCHWENNINGER, RICHARD WALTER, CHRIS WEBLEY, ANTHONY WETMORE, KATHY WILCOX, CRAIG ZANNI, DAVID ZAVALA, JOEL D. SHAPIRO AS ADMINISTRATOR OF THE ESTATE OF DAVID E. HALL, VIDOCQ SOCIETY, CITY OF COQUILLE, CITY OF COOS BAY, and COOS COUNTY, | Civil No. 6:20-cv-01163-MTK (Lead Case)<br><br><br>PLAINTIFFS' RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY JUDGMENT |

Page 1– PLAINTIFFS' RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY JUDGMENT

MALONEY | LAUERSDORF | REINER rc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Defendants.

VIDOCQ SOCIETY,

               Cross-Claimant,

    v.

MARK DANNELS, PAT DOWNING,
SUSAN HORMANN, MARY KRINGS,
KRIS KARCHER, SHELLY MCINNES,
RAYMOND MCNEELY, KIP OSWALD,
MICHAEL REAVES, JOHN RIDDLE, SEAN
SANBORN, ERIC SCHWENNINGER,
RICHARD WALTER, CHRIS WEBLEY,
ANTHONY WETMORE, KATHY WILCOX,
CRAIG ZANNI, DAVID ZAVALA, JOEL D.
SHAPIRO AS ADMINISTRATOR OF THE
ESTATE OF DAVID E. HALL, VIDOCQ
SOCIETY, CITY OF COQUILLE, CITY OF
COOS BAY, and COOS COUNTY

               Cross-Defendants.

NICHOLAS JAMES MCGUFFIN, as an
individual and as guardian *ad litem*, on behalf
of S.M., a minor,

               Plaintiffs,

    v.

OREGON STATE POLICE,

               Defendant.

Civil Case No. 3:21-cv-01719-MTK
(Trailing Case)

Page 2– PLAINTIFFS' RESPONSE TO VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

# **TABLE OF CONTENTS**

I. VIDOCQ HAS FAILED TO SATISFY ITS BURDEN ON SUMMARY JUDGMENT .......... 9

II. MATERIAL FACTS THAT PRECLUDE SUMMARY JUDGMENT ................................... 9

III. POINTS AND AUTHORITIES ON PLAINTIFFS' CLAIMS UNDER 42 U.S.C. § 1983.................................................................................................................................... 16

    A. A reasonable jury can find Vidocq engaged in "state action." .................................... 16

    B. A reasonable jury can find Walter acted pursuant to Vidocq's policies and practices, that Walter's actions constitute official policy, and that Vidocq ratified Walter's conduct.................................................................................................... 25

        1. There is evidence from which a jury could find a policy of inaction. ........... 26

        2. There is evidence from which a jury could find that Walter's decisions constitute the official policy of Vidocq. ........................................................ 31

        3. There is evidence from which a jury could find ratification. ........................ 32

        4. There is evidence from which a jury could find an expressly unconstitutional policy……………………………………………………………………………...33

    C. A reasonable jury can find Vidocq is liable to S.M. ................................................... 36

IV. POINTS AND AUTHORITIES ON PLAINTIFFS' CLAIMS UNDER STATE LAW ....... 37

    A. Plaintiffs' claim for false imprisonment must go to the jury. ..................................... 37

    B. A reasonable jury can find Vidocq instigated or encouraged the indictment and conviction. .......................................................................................................... 37

    C. A reasonable jury can find Vidocq joined the conspiracy. ......................................... 40

    D. There is evidence from which a jury could conclude that Vidocq is liable for the negligent training or supervision of Walter. ......................................................... 41

        1. A reasonable jury can find that Walter was Vidocq's agent. ........................ 41

        2. A reasonable jury can find Vidocq had a duty to train and supervise Walter……………………………………………………………………………...44

    E. A reasonable jury can find that Vidocq is liable for intentional infliction of emotional distress.................................................................................................... 45

    F. A reasonable jury can find that Vidocq destroyed evidence....................................... 46

V. POINTS AND AUTHORITIES ON REMAINING ISSUE.................................................... 49

VI. CONCLUSION...................................................................................................................... 56

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adbox, Inc.*,
   488 F.3d 836 (9th Cir. 2007) ...............................................................48

*Amadeo v. Principal Mut. Life Ins. Co.*,
   290 F.3d 1152 (9th Cir. 2002) .............................................................53

*Babick v. Or. Arena Corp.*,
   333 Or. 401, 40 P.3d 1059 (2002) .......................................................44

*Bank of N.Y. Mellon v. Davidson*,
   No. 1:17-cv-01335-DAD-EPG, 2019 U.S. Dist. LEXIS 138460 (E.D. Cal.
   Aug. 15, 2019) ....................................................................................54

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*,
   520 U.S. 397 (1997)........................................................................29, 30

*Bowen v. Maynard*,
   799 F.2d 593 (10th Cir. 1986) .............................................................30

*Clouthier v. County of Contra Costa*,
   591 F.3d 1232 (9th Cir. 2010) .............................................................25

*Columbia Cascade Co. v. City of Fernandina Beach*,
   286 Or. App. 729, 400 P.3d 1001 (2017).........................................41, 42

*Corona v. City of Fontana*,
   No. 5:22-cv-00034-JGB-SP, 2023 U.S. Dist. LEXIS 74550 (C.D. Cal. Apr.
   27, 2023) .............................................................................................27

*Cox v. Premo*,
   297 Or. App. 302, 440 P.3d 81 (2019)..................................................51

*Dennis v. Sparks*,
   449 U.S. 24 (1980)...............................................................................18

*District Attorney's Office for Third Judicial Dist. v. Osborne*,
   557 U.S. 52 (2009)...............................................................................34

*Drake v. Portuondo*,
   321 F.3d 338 (2nd Cir. 2003)...............................................................14

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

*Drake v. Portuondo*,
    553 F.3d 230 (2nd Cir. 2009)............................................................14, 28

*Eads v. Borman*,
    351 Or. 729, 277 P.3d 503 (2012) .......................................................40

*Fazzolari v. Portland School Dist.*,
    303 Or. 1, 734 P.2d 1326 (1987) .........................................................43

*Fearing v. Bucher*,
    328 Or. 367, 977 P.2d 1163 (1999) .....................................................39

*Gibson v. Cnty. of Washoe*,
    290 F.3d 1175 (9th Cir. 2002) ...................................................26, 29, 30

*Gonzalez v. Ahern*,
    No. 19-cv-07423-JSC, 2020 U.S. Dist. LEXIS 217163 (N.D. Cal. Nov. 19,
    2020) ...................................................................................................25

*In re Gygi*,
    273 Or. ................................................................................................53

*Halsey v. Airbus Helicopter S.A.S.*,
    No. 6:24-cv-00649-MC, 2025 U.S. Dist. LEXIS 14733 (D. Or. Jan. 28, 2025) ...................45

*Hayes Oyster Co. v. Dulcich*,
    199 Or. App. 43, 110 P.3d 615 (2005)...................................................50

*Henry v. Cnty. of Shasta*,
    132 F.3d 512 (9th Cir. 1997) ..........................................................26, 29

*Hernandez v. AFSCME Cal.*,
    424 F. Supp. 3d 912 (E.D. Cal. 2019)....................................................16

*Hernandez v. Los Angeles*,
    624 F.2d 935 (9th Cir. 1980) ................................................................49

*Hughes v. Patrolmen's Benevolent Ass'n*,
    850 F.2d 876 (2nd Cir. 1988) ...............................................................24

*Hunter v. S.D. Dep't of Soc. Servs.*,
    377 F. Supp. 3d 964 (D. S.D. Mar. 25, 2019)...................................18, 25

*J.P. v. Cnty. of Alameda*,
    No. 4:17-CV-5679-YGR, 2021 U.S. Dist. LEXIS 224316 (N.D. Cal. Nov. 19,
    2021) ...................................................................................................17

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

*Estate of Kong v. City of San Diego*,
   No. 22-cv-1858-BAS-DDL, 2023 U.S. Dist. LEXIS 134641 (S.D. Cal. Aug. 2,
   2023) .............................................................................................................35

*Kyles v. Whitley*,
   514 U.S. 419 (1995)......................................................................................33

*Lee v. Katz*,
   276 F.3d 550 (9th Cir. 2002) ................................................................18, 24

*Leslie v. Grupo ICA*,
   198 F.3d 1152 (9th Cir. 1999) .......................................................................8

*Lindsey v. King*,
   769 F.2d 1034 (5th Cir. 1985) .....................................................................30

*Lovato v. Delta Hospital Group*,
   No. 3:22-cv-00264-SB, 2023 U.S. Dist. LEXIS 21076 (D. Or. Feb. 8, 2023) .......................30

*Lucke v. Multnomah Cnty.*,
   2008 U.S. Dist. LEXIS 71861 (D. Or. Sept. 22, 2008)..................................51

*Lugar v. Edmondson Oil Co.*,
   457 U.S. 922 (1982)......................................................................................16

*McGanty v. Staudenraus*,
   321 Or. 532, 901 P.2d 841 (1995) ...............................................................44

*Monell v. New York City Dep't of Soc. Servs.*,
   436 U.S. 658 (1978)......................................................................................25

*N.L. v. Childrens Hospital Los Angeles*,
   711 Fed. Appx. 433 (9th Cir. 2018)..............................................................18

*Nelson v. Emerald People's Util. Dist.*,
   318 Or. 99, 862 P.2d 1293 (1993) ...........................................................49, 53

*O'Handley v. Weber*,
   62 F.4th 1145 (9th Cir. 2023) .......................................................................18

*Ordonez v. Red Hill Lava Prods., Inc.*,
   No. 2:22-cv-03072-SSS-SSCx, 2024 U.S. Dist. LEXIS 127797 (C.D. Cal.
   June 4, 2024)..................................................................................................8

*Osborne v. Fadden*,
   225 Or. App. 431 (2009)...............................................................................40

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

*Oviatt v. Pearce*,
    954 F.2d 1470 (9th Cir. 1992) .................................................................................30

*Panpat v. Owens-Brockway Glass Container, Inc.*,
    188 Or. App. 384, 71 P.3d 553 (2003).....................................................................44

*Pearson v. Galvin*,
    253 Or. 331, 454 P.2d 638 (1969) ...........................................................................36

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986)..................................................................................................30

*Perez-Morciglio v. Las Vegas Metro. Police Dep't*,
    820 F. Supp. 2d 1100 (D. Nev. 2011) ......................................................................16

*Rawson v. Recovery Innovations, Inc.*,
    975 F.3d 742 (9th Cir. 2020) .............................................................................17, 53

*Robertson v. Bruckert*,
    568 F. Supp. 3d 1044 (N.D. Cal. 2021) ...................................................................32

*Rose v. Whitbeck*,
    277 Or. 791, 562 P.2d 188 (1977) ...........................................................................37

*Rosenblit v. Zimmerman*,
    166 N.J. 391 (2001) ..................................................................................................46

*Roudybush v. Zabel*,
    813 F.2d 173 (8th Cir. 1987) ...................................................................................16

*Salazar v. City of Phoenix*,
    No. 2022 U.S. Dist. LEXIS 189353 (D. Ariz. Sept. 14, 2022)................................27

*Shapley v. Nevada Bd. of State Prison Comm'rs*,
    766 F.2d 404 (9th Cir. 1985) ...................................................................................51

*Shore v. Shore*,
    No. C09-848Z, 2011 U.S. Dist. LEXIS 25571 (W.D. Wash. Mar. 10, 2011) ........53

*State Farm Fire & Cas. Co. v. Century Home Components, Inc.*,
    275 Or. 97, 550 P.2d 1185 (1976) ...........................................................................49

*State v. Haynes*,
    1988 Ohio App. LEXIS 3811 (1988).......................................................................14

*State v. Roquemore*,
    620 N.E.2d 110 (Ct. App. Ohio 1993) .....................................................................14

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

*Stewart v. Coughlin*,
 No. 3:20-cv-00497-M, 2023 U.S. Dist. LEXIS 2364 (N.D. Tex. Jan. 6, 2023) ...............27, 34

*Stroud v. Denny's Restaurant, Inc.*,
 271 Or. 430, 532 P.2d 790 (1975) .......................................................................................39

*Sutton v. Providence St. Joseph Med. Ctr.*,
 192 F.3d 826 (9th Cir. 1999) ...............................................................................................17

*Tennison v. City & Cnty. of San Francisco*,
 570 F.3d 1078 (9th Cir. 2009) .............................................................................................33

*Thomas v. Nationwide Children's Hosp.*,
 882 F.3d 608 (6th Cir. 2018) ...............................................................................................18

*Tiner v. Premo*,
 284 Or. App. 59, 391 P.3d 816 (2017)..................................................................................51

*Tinn v. EMM Labs, Inc.*,
 No. 07-963-AC, 2009 U.S. Dist. LEXIS 15753 (D. Or. Feb. 27, 2009)................................48

*Towner v. Bernardo*,
 304 Or. App. 397, 467 P.3d 17 (2020)..................................................................................40

*Tsao v. Desert Palace, Inc.*,
 698 F.3d 1128 (9th Cir. 2012) ........................................................................................24, 26

*Vaughn v. First Transit, Inc.*,
 346 Or. 128, 206 P.3d 181 (2009) ........................................................................................40

*Vineyard v. Soto*,
 No. 10-CV-1481-SI, 2011 U.S. Dist. LEXIS 129274 (D. Or. Nov. 7, 2011).............16, 18, 23

*Washington v. Pellegrini*,
 2025 U.S. App. LEXIS 185 (4th Cir. Jan. 6, 2025) ..............................................................52

*Williams v. Alameda Cnty.*,
 642 F. Supp. 3d 1001 (N.D. Cal. 2022) ................................................................................54

*Woods by & through Wade v. City of Reno, Nevada*,
 No. 316CV00494MMDVPC, 2018 U.S. Dist. LEXIS 8596 (D. Nev. Jan. 18,
 2018) ...................................................................................................................................50

*Yarbrough v. Oregon Bank*,
 64 Or. App. 370, 668 P.2d 451 (1983)..................................................................................43

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Plaintiffs request the Court deny the motion for summary judgment filed by Defendant Vidocq Society.

## I. VIDOCQ HAS FAILED TO SATISFY ITS BURDEN ON SUMMARY JUDGMENT

Federal courts recognize that the moving party on summary judgment has "both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment."[1]  To carry its burden of persuasion, the moving party "must persuade the court that there is no genuine issue of material fact."[2]  Doing so, however, requires the moving party to draw all inferences in favor of the nonmoving party: "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."[3]

Vidocq fails to accept (or even acknowledge) Plaintiffs' version of the facts.  Vidocq omits from its motion any of the facts discussed below that must be accepted by the Court on summary judgment.  The motion must be denied.

## II. MATERIAL FACTS THAT PRECLUDE SUMMARY JUDGMENT

1.     Nicholas McGuffin was not in any way involved in the kidnapping and murder of Leah Freeman and is completely innocent of the crime.[4]  Nonetheless, McGuffin has been subjected to more than 20 years of hardships, including nearly a decade of incarceration, for a crime that he did not commit.

2.     McGuffin was wrongfully indicted, prosecuted, and convicted of a murder that he

---

[1] *Ordonez v. Red Hill Lava Prods.*, *Inc.*, No. 2:22-cv-03072-SSS-SSCx, 2024 U.S. Dist. LEXIS 127797, at *4 (C.D. Cal. June 4, 2024) (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).
[2] *Id.*
[3] *See*, *e.g.*, *Leslie v. Grupo ICA*, 198 F.3d 1152, 1157 (9th Cir. 1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).
[4] *See* Criminal Trial Transcript (Sentencing) at 1738:18–1742:11 [Dkt. No. 284-1 at 1799–1852] (McGuffin proclaiming his innocence at sentencing hearing).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

did not commit due to the misconduct of law enforcement agencies and actors that pursued him even though they knew that he was innocent.

3.      Nicholas McGuffin and Leah Freeman were high school sweethearts when Freeman was abducted from their small town of Coquille, Oregon, on June 28, 2000.[5]  The first tangible evidence of Freeman's murder, her right Nike athletic shoe, was found near a local cemetery on the night that she disappeared.[6]  Examination by a criminalist showed that the shoe did not have any blood on it.[7]  Her left shoe was found one week later on Hudson Ridge, a remote area approximately ten miles from the location where the right shoe was found.[8]  The left shoe had bloodstains on the shoelace, the interior heel and ankle area, and the exterior sole.[9]  Five weeks after Freeman disappeared, her body was found deep in the woods approximately eight miles from the location where she was last seen alive and three miles from her left shoe.[10]

4.      Freeman's disappearance and death in 2000 shocked the small community of Coquille, and law enforcement were under intense pressure to solve the crime.  There were no eyewitnesses to Freeman's disappearance or death, and there is not—and never has been—any blood, hair, fibers, fingerprints, DNA, or any other tangible evidence of any kind connecting McGuffin to the abduction and death of Freeman.  Nonetheless, despite a corroborated alibi and no physical evidence to connect him to the crime, McGuffin became Coquille PD's primary suspect within a week after Freeman's disappearance.

5.      Coquille PD Chief Reaves appointed Officer Dave Hall to lead the investigation.[11]

---

[5] Nicholas McGuffin Deposition at 28:14–29:1 (Exhibit 10 to the Declaration of Janis C. Puracal in Support of Plaintiffs' Responses to Summary Judgment ("Puracal Decl.")).
[6] Criminal Trial Transcript D5 127:16–132:17 (Messerle) [Dkt. No. 284-1 at 920–25].
[7] 2000-07-17 Wilcox Report at 1 [Dkt. No. 296 at 179].
[8] Criminal Trial Transcript D5 140:11–144:13 (Oswald) [Dkt. No. 284-1 at 934–38].
[9] 2000-07-17 Wilcox Report at 1 [Dkt. No. 296 at 179]); 2001-10-03 FSS Lab Report at 15 (Exhibit 63 to Puracal Decl.).
[10] Criminal Trial Transcript D6 218:21–220:7 (Karcher) [Dkt. No. 284-1 at 1293–95].
[11] Michael Reaves Deposition at 54:12–58:18 (Exhibit 54 to Puracal Decl.); 2010-01-23 Schwenninger Case Notes at 3 (Exhibit 48 to Puracal Decl., Attachment 4).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

By Hall's own admission, he had never investigated a homicide and was ill-equipped to carry out the task.[12] Hall's inexperience, combined with the pressure of a high-profile case, set in motion a bungled investigation.[13] Over the next ten years, personnel from Coquille PD, the Coos County Sheriff's Office ("CCSO"), City of Coos Bay PD ("CBPD"), and the Oregon State Police ("OSP"), under intense community pressure, worked as part of the local "HIT Team"—a multi-agency investigative team—to bury exculpatory DNA results, fabricate evidence, and coerce and manipulate witness testimony in a concerted effort to bring about the indictment and wrongful conviction of McGuffin.

6.    In 2008, Chief Reaves resigned from Coquille PD, and Defendant Mark Dannels replaced him. Dannels was hired based in part upon his pledge of re-opening the Freeman murder investigation.[14] Dannels knew that the community was outraged that Freeman's murder had not been solved, and was aware that a group called the "Concerned Citizens of Coquille" had formed to report regularly to the Coquille City Council about problems with the police.[15]

7.    After ten years of investigation, however, and given the known and objective evidence of McGuffin's innocence, Chief Dannels still lacked a coherent narrative that could possibly support seeking charges against McGuffin for the Freeman murder.[16] The Municipal Defendants turned to the Vidocq Society for assistance at that point. Vidocq is a group of active and retired individuals, currently or formerly associated with law enforcement, who partner with

---

[12] *Id.*

[13] R. Paul Frasier PCR Deposition at 21:12–25:1 (Exhibit 62 to Puracal Decl.).

[14] *Id.* at 36:16–37:19.

[15] Mark Dannels Deposition at 76:16–79:12 (Exhibit 51 to Puracal Decl.); Rule 30(b)(6) Deposition of City of Coquille at 40:10–41:19 (Exhibit 53 to Puracal Decl.).

[16] 2009-10-13 HIT Team Notes at 7 (Exhibit 46 to Puracal Decl.) ("[Larry] Leader thinks 2 people dumped body from car – Zanni believes he's right"); 2010-01-28 HIT Team Notes at 1–2 (Exhibit 42 to Puracal Decl.) ("??How did Nick contact Dad that night??"; "Need to know how Nick & Bruce [Dad] communicated that night – how do we get dad there to accomplish the vehicle switch?"); Dannels Operation Plan at 2 (Exhibit 66 to Puracal Decl.) (the team had "followed up on new leads," but "most of the leads have not yielded any results")

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

police in an effort to solve cold cases.[17]

8.      In January 2010, Defendants Dannels and Zanni traveled to Philadelphia to meet with Vidocq, including Walter, and discuss investigating McGuffin for the Freeman murder. Dannels wrote a "case summary" for Vidocq identifying McGuffin as the lead suspect.[18]  Vidocq told them they were "on the right track" in honing in on McGuffin, and Walter fabricated a profile of a "Power Assertive" perpetrator that Walter claimed "fits Mr. McGuffin."[19]  Walter fabricated evidence that Freeman's murder fell under the category of "Power-Assertive Rape-Murder," a crime that would be committed by an arrogant perpetrator who needs to "maintain[ ] control over a vulnerable victim by an exaggerated machismo overreaction" and the use of "an assertive image and dominating violence."[20]  In this type of killing, according to Walter, the body is "dumped," and the perpetrator "will demand credit for the killing."[21]  Thus, "due to his need for glory and recognition, he may betray his secret to a bar patron, fellow worker, admirer, cell-mate, and sometimes the police."[22]  This profile was entirely made-up to fit McGuffin.[23] Walter relayed his "profile" to the Municipal Defendants, and the theory was provided to the District Attorney.[24]

9.      After the meeting in Philadelphia, Walter became more involved in working with the Municipal Defendants, offering his fabricated profile, theory of motive, and a false narrative

---

[17] See, infra, section III(A).
[18] Dannels Case Summary for Vidocq at 5 (Exhibit 4 to Puracal Decl.).
[19] R. Paul Frasier Civil Suit Deposition at 226:10–23, 228:2–16, 231:14–20, 238:8–24 (Exhibit 3 to Puracal Decl.).
[20] Robert D. Keppel and Richard Walter, *Profiling Killers: A Revised Classification Model for Understanding Sexual Murder*, 43(4) INT'L J. OF OFFENDER THERAPY AND COMPARATIVE CRIMINOLOGY 417, 420 (1999) (Exhibit 76 to Puracal Decl.).  Walter provided a copy of this article to the District Attorney.  *See* R. Paul Frasier Civil Suit Deposition at 92:7–93:11 (Exhibit 3 to Puracal Decl.).
[21] Keppel and Walter, *supra*, n.20, at 421 and 422.
[22] *Id.*
[23] R. Paul Frasier Civil Suit Deposition at 226:10–23, 228:2–16, 231:14–20, 238:8–24 (Exhibit 3 to Puracal Decl.).
[24] *Id.*

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

about how the crime occurred, which Walter and the Municipal Defendants claimed fit only McGuffin.[25]

10.     For example, in late June 2010, Walter met with the Municipal Defendants in Coquille and filmed an episode of the ABC News program "20/20." Walter admits in his motion for summary judgment that he "only traveled to Oregon to provide commentary on the Freeman Investigation" because "Vidocq agreed to allow it."[26] The episode aired in 2010 (prior to the criminal trial in 2011) and features Walter working with the Municipal Defendants, explaining the false "profile" he created and the invented motive for Freeman's murder, and further explaining the false narrative that would ultimately indict, and then convict, McGuffin.[27]

11.     Walter and the Municipal Defendants created the false narrative that McGuffin caught up to Freeman on the night that she disappeared, they argued, and he hit her in the face causing her to bleed.[28] Walter and the Municipal Defendants even fabricated blood evidence on Freeman's right shoe—the bloodless shoe found next to the cemetery in the vicinity of where Freeman was last seen alive—as evidence that she was punched in the face and bleeding in that location. Chief Dannels announced on "20/20" that the shoe was found "with blood on it," and Walters reported that the blood indicated that Freeman "was forcibly taken from that point" where "[s]he got probably smashed in the face."[29]

12.     In an internal document that Vidocq suppressed during the criminal case, Vidocq documented Walter's involvement in simply making up evidence that would point at McGuffin:

> Richard [Walter] advises me that after discussion, they realized that the motive for the crime was the BF [boyfriend] wanted to get Leah pregnant, not the other way around, and they must have had a fight where her bloody shoe was found. It was a PA [Power Assertive] case and PAs hit for the face, therefore blood, and then

---

[25] *See* Vidocq's Synopsis at 1 [Dkt. No. 293-2 at 119].
[26] Walter's Motion for Summary Judgment at 15 [Dkt. No. 314].
[27] 2010-10-15 ABC News 20/20 Transcript (2010) (Exhibit 1 to Puracal Decl.).
[28] *See* Vidocq's Synopsis at 1 [Dkt. No. 293-2 at 119].
[29] 2010-10-15 Transcript of ABC News "20/20" Episode at 11 (Exhibit 1 to Puracal Decl.).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

> they surmised that the BF put her in the trunk of the car that he was
> driving and called his father who came over and switched cars,
> allowing the BF to drive around being noticed while the father
> dumped the body.  It explains the sanitation of the car trunk and
> the unauthorized burning and that the BF had an alibi of driving
> around looking for Leah.[30]

There was, in fact, no blood on the right (cemetery) shoe, no evidence of a fight where

the shoe was found, and no evidence that Freeman was hit in the face.[31]  Indeed, there was no

evidence of any traumatic injury to Freeman's face or skull.  There was also no evidence that the

car was sanitized or that McGuffin's father had even left the house that evening.[32]

13.    In that internal document that Vidocq suppressed during the criminal case, Vidocq

also wrote:  "Richard [Walter] says that the DA was very impressed and indicated that they now

saw the case in a new light and he may have enough to indict."[33]  Walter was correct—the

fabrications by Walter and the Municipal Defendants were sufficient to secure an indictment, and

the State even intended, at one point, on calling Walter as an expert witness in the criminal trial

against McGuffin.[34]

14.    Though it was 10 years after the crime, it was just one week after Walter came to

Coquille and collaborated with the Municipal Defendants that the State began issuing subpoenas

for grand jury witnesses.[35]  The first witness appeared at grand jury one week later on July 14,

2010.[36]

15.    Ultimately, Walter was not called as a witness in the criminal trial.  This is only

---

[30] *See* Vidocq's Synopsis at 1 [Dkt. No. 293-2 at 119].
[31] *See* 2000-07-17 Wilcox Report at 1 [Dkt. No. 296 at 179]; Autopsy Report (Exhibit 5 to Puracal Decl.); Dannels Case Summary for Vidocq at 1 (Exhibit 4 to Puracal Decl.) ("No broken bones were found.").
[32] 2000-07-06 Wilcox Report of Car [Dkt. No. 310-15 at 231]; Kathy Wilcox Deposition at 109:1–110:13, 113:6–115:13 (Exhibit 6 to Puracal Decl.); Kathy McGuffin Deposition at 14:23–27:21 (Exhibit 21 to Puracal Decl.).
[33] Vidocq's Synopsis at 1 [Dkt. No. 293-2 at 119].
[34] 2016-08-10 Letter from Frasier to Reim at 5 [Dkt. No. 293-2 at 105].
[35] *See* Grand Jury Subpoena to Denise Bertrand (née Freeman) (Exhibit 77 to Puracal Decl.).
[36] *See* Grand Jury (2010) Transcripts [Dkt. No. 295-1] (starting with testimony of Denise Bertrand (née Freeman).



MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

so, however, because it came out that Walter lacked credibility and had fabricated evidence in other cases. Prior to his work pursuing McGuffin, multiple courts admonished Walter for fabricating evidence in criminal cases by employing a method of finding out from law enforcement who their lead suspect was, concocting a false psychological profile and narrative of the crime to fit the existing suspect, and in turn encouraging law enforcement to continue its pursuit of the lead suspect.[37]

16.     Nonetheless, the evidence fabricated by Walter and the Municipal Defendants was featured in the criminal case, including at grand jury,[38] as well as in the state's closing argument for trial, which was punctuated by the fabricated narrative of the crime and hallmarks

---

[37] *Drake v. Portuondo*, 553 F.3d 230, 238, 244 (2nd Cir. 2009) ("Walter's deposition on remand confirms that he grossly exaggerated most of his qualifications and outright lied about some of them. . . . Walter then had two weeks to conjure up his quackery. His direct testimony on picquerism, which spans twelve pages of trial transcript, consisted largely of uninterrupted and prolix exposition, weaving the complicated facts of the case into a seemingly coherent narrative, all pointing to the symptoms of the fictive syndrome called picquerism. Walter even adapted the symptoms of the syndrome to remedy any potential weaknesses in the prosecution's theory of Drake's motive, for example, the lack of semen evidence."); *Drake v. Portuondo*, 321 F.3d 338, 342 (2nd Cir. 2003) ("It is now apparent that Walter's testimony concerning his qualifications was perjurious."); *State v. Roquemore*, 620 N.E.2d 110, 114 (Ct. App. Ohio 1993) (finding Walter's opinions inadmissible as "stereotyping the defendant"); *State v. Haynes*, 1988 Ohio App. LEXIS 3811, at *13 (1988) (finding Walter's opinions inadmissible as "stereotyping").
[38] *See* Grand Jury (2010) (David Zavala) at 102:2–105:10 [Dkt. No. 295-1 at 98] (testifying to fabricated report of McGuffin driving over the bridge toward home); Grand Jury (2010) (Kris Karcher) at 146:1–147:7, 148:3–11 [Dkt. No. 295-1 at 254] (testifying Freeman was dumped, rolled down the hill, and a path like someone had walked to the edge and looked down; testifying that blood on the shoe was high velocity and could have come from a cough (*i.e.*, from the mouth) or sneeze (*i.e.*, from the nose)); Grand Jury (2010) (Dave Hall) at 66:7–11 [Dkt. No. 295-1 at 186] (testifying McGuffin switched cars); Grand Jury (2010) (Kip Oswald) at 78:1–5 [Dkt. No. 295-1 at 294](testifying it was his DNA on Freeman's shoe); Grand Jury (2010) (Craig Zanni) at 93:13–21 [Dkt. No. 295-1 at 349] (testifying eliminate everyone except McGuffin); Grand Jury (2010) (Ray McNeely) at 138:4–141:18 [Dkt. No. 295-1 at 1126] (testifying that he confirmed Lindegren's *Survivor* story with a cable tv guide and falsely testifying he never looked up if Rudy was voted off); Grand Jury (2010) (Mark Dannels) at 131:3–132:2, 132:6–138:21 [Dkt. No. 295-1 at 1541] (testifying that no one has threatened any witnesses and there were no difficult witnesses; testifying no DNA of anyone else; testifying eliminated everyone except McGuffin); Indictment [Dkt. No. 291-15 at 2] (listing witnesses appearing by report, including Krings and Wilcox).

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

of the made-up "power assertive" theory, including references to the arrogance that, in Walter's

narrative, leads to an inadvertent "confession":

> [McGuffin] gets really upset. "This is my Babydoll. This is my girl. No one else's." He finds her by the high school. He tries to get her into the car. She loses a shoe. *She ends up with a bloody lip or a bloody nose.* She screams, which is what was heard by Mr. Bounds. And in an effort to keep her quiet, or *in anger*, he strangles her.
>
> And then it goes downhill from there. He panics, *changes clothes, switches cars, body gets dumped.* He has to cover for himself. *Has to go around asking questions.* "Where is Leah?" The pressure builds. He has guilt over what he did. He had that anxiety attack.
>
> And then, as time goes by, we start seeing *the arrogance.* And then we get to the point of, "It's amazing what you can get away with in Coos County."[39]

### III.  POINTS AND AUTHORITIES ON PLAINTIFFS' CLAIMS UNDER 42 U.S.C. § 1983

**A.      A reasonable jury can find Vidocq engaged in "state action."**

Vidocq and Walter assert that they cannot be liable under 42 U.S.C. § 1983 because they

are private parties that did not act under "color of law."[40]  Section 1983 can be asserted against

private parties acting under color of law.[41]  Indeed, private companies—like those that provide

jail or prison medical services, those that provide private security at the behest of police officials,

and those that act as an investigating arm of the state—are routinely held liable for constitutional

---

[39] 2011 Criminal Trial Transcript at D9 156:2–15 [Dkt. No. 284-1 at 1756] (emphasis added). Freeman's cousin—a woman McGuffin barely knew—falsely reported that McGuffin said to her, "It's amazing what you can get away with in Coos County," and the State Defendants, in their motion, portrayed the statement as an admission of guilt.  *But see* Plaintiffs' Response to State Defendants' Motion at III(B)(4).

[40] Vidocq's Motion for Summary Judgment at 34 [Dkt. No. 287].

[41] *See Perez-Morciglio v. Las Vegas Metro. Police Dep't*, 820 F. Supp. 2d 1100, 1106 (D. Nev. 2011).  *See also Vineyard v. Soto*, No. 10-CV-1481-SI, 2011 U.S. Dist. LEXIS 129274, at *18 (D. Or. Nov. 7, 2011).



MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

violation. A § 1983 plaintiff "must allege a violation of his constitutional rights and show that the defendant's actions were taken under color of state law."[42] Under Supreme Court authority, the "traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."[43]

The determination thus hinges on whether the conduct causing the deprivation of federal rights is "fairly attributable" to the government.[44] The Supreme Court's "fair attribution" test under *Lugar v. Edmonson Oil Co*. "has two components: a state policy and a state actor."[45] Under the state policy component, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible."[46] Vidocq does not address this issue in its motion for summary judgment.

Vidocq moves for summary judgment solely on the second component: whether it is a state actor. Under the state actor component, "the defendant must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."[47]

The Ninth Circuit recognizes that the inquiry into whether a private party is a state actor is "necessarily fact-bound."[48] Federal courts sometimes analyze four factors to assist in

---

[42] *Id.* at *16 (quoting *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 921 (9th Cir. 2011)).

[43] *Id.* (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).

[44] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

[45] *Hernandez v. AFSCME Cal.*, 424 F. Supp. 3d 912, 919 (E.D. Cal. 2019) (quoting *Roudybush v. Zabel*, 813 F.2d 173, 177 (8th Cir. 1987)).

[46] *Roudybush*, 813 F.2d at 176.

[47] *Id.* at 176–77.

[48] *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) (*quoting Lugar*, 457 U.S. at 939).



MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

determining whether private conduct constitutes state action within the meaning of section 1983: (1) whether the otherwise private actor is performing a public function, (2) whether the otherwise private actor is conducting joint action in concert with state actors, (3) whether the government compelled the action, or (4) whether there is a sufficient nexus between the private and public actors to constitute state action.[49]  "While these factors are helpful in determining the significance of state involvement, there is no specific formula for defining state action."[50] Instead, "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance."[51]  Courts, therefore, "ask whether the State provided a mantle of authority that enhanced the power of the harm-causing individual actor."[52]

Although the ultimate determination of whether the action of a private entity is considered the action of the state is a question of law to be resolved by the court, "the extent of the state involvement in the action presents a question of fact."[53]

There is evidence from which a jury can conclude that Plaintiffs satisfied the joint action factor.  The joint action factor can be satisfied in several ways.  For example, the joint action factor is satisfied if the private party is a "willful participant" in joint action with the government or its agents.[54]  Thus, joint action can be established through facts showing "a substantial degree of cooperative action."[55]  Under this law, courts find joint action when "the actions of the state

---

[49] *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835–36 (9th Cir. 1999) (citations omitted).
[50] *Id.* (citations omitted).
[51] *Id.* (quoting *Burton v. Wilmington*, 365 U.S. 715 (1961)).
[52] *Id.*
[53] *J.P. v. Cnty. of Alameda*, No. 4:17-CV-5679-YGR, 2021 U.S. Dist. LEXIS 224316, at **7–8 (N.D. Cal. Nov. 19, 2021) (citing *Lugar*, 457 U.S. at 939)).  *See also Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002) (recognizing "the fact-intensive nature of the [state action] inquiry").
[54] *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).
[55] *Vineyard*, 2011 U.S. Dist. LEXIS 129274, at **16–17 (*quoting Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989)).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

and the private party are intertwined or when the parties have a symbiotic relationship."[56]  Joint action can also be found where a private party agrees to serve as an investigating arm of the government.[57]

Here, because a reasonable jury can find joint action and agreement between Vidocq and the Municipal Defendants, questions of fact preclude summary judgment on this basis.  Vidocq is an organization made up of current and former law enforcement agents, including detectives from local police departments, as well as individuals from county sheriff's offices and federal law enforcement agencies across the country.[58]  The organization also boasts active prosecutors, Assistant District Attorneys, and Assistant United States Attorneys.[59]  Vidocq testified in this case that its very purpose is to "pool" its expertise to "try to help the smaller police departments" who lack resources, particularly in cold cases.[60]  Vidocq's job is to work exclusively with law enforcement agencies.[61]

---

[56] *Id.* (*quoting Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 960 (9th Cir. 2008)).

[57] *N.L. v. Childrens Hospital Los Angeles*, 711 Fed. Appx. 433, 433 (9th Cir. 2018) (hospital was exercising its discretion to collaborate with county government to investigate child abuse); *Thomas v. Nationwide Children's Hosp.*, 882 F.3d 608, 616 (6th Cir. 2018) ("Had the County conscripted Nationwide as an investigative arm of the State, the physicians' actions would be state action[.]").  *See also Hunter v. S.D. Dep't of Soc. Servs.*, 377 F. Supp. 3d 964, 978 (D. S.D. Mar. 25, 2019) ("Hunter can show state action when a medical provider acts as an 'investigative arm of the State.'") (citing *Thomas*, 882 F.3d at 616); *O'Handley v. Weber*, 62 F.4th 1145, 1159 (9th Cir. 2023) ("A constitutional problem would arise if Twitter had agreed to serve as an arm of the government, thereby fulfilling the State's censorship goals.").

[58] Fleisher Deposition at 23:15–24:6 (Exhibit 89 to Puracal Decl.); "The Vidocq Society" by William Fleisher at 5 [Fleisher deposition exhibit no. 2] (Exhibit 89 to Puracal Decl.) (listing membership including investigators from law enforcement agencies, the District Attorney of Philadelphia, and federal and local prosecutors); Vidocq Journal 2010 at 11 [Fleisher deposition exhibit no. 6] (Exhibit 89 to Puracal Decl.) (Sheriff of Montgomery County was a member); "The Founding of the Vidocq Society" (Exhibit 94 to Puracal Decl.).  *Cf.* Declaration of Barbara Cohan ¶ 8 ("The information on Vidocq Society's website, https://www.vidocq.org/, is up-to-date and accurate.") [Dkt. No. 194].

[59] *See*, *supra*, n.58.  *See also* William Fleisher Deposition at 24:2–6, 43:12–44:3 (Exhibit 89 to Puracal Decl.); Rule 30(b)(6) Deposition of Vidocq at 7:6–24 (Exhibit 90 to Puracal Decl.).

[60] *Id.* at 26:25–27:12, 40:2–20, 59:11–60:16.  *See also* "The Vidocq Society" by William Fleisher at 2 [Fleisher deposition exhibit 12] (Exhibit 89 to Puracal Decl.).

[61] *Cf.* Rule 30(b)(6) Deposition of Vidocq Deposition at 60:14–16, 61:18–23, 117:8–25 (Exhibit

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

The organization is governed by a Board that currently includes—and has always included—high-ranking government agents, such as the Chief of Detectives for the Philadelphia Police Department, the Superintendent of Police for the Bensalem Township, and an Assistant United States Attorney.[62]  The three founders of Vidocq—Defendant Richard Walter, along with William Fleisher and Frank Bender—were themselves working for or with the government.[63] Fleisher also took on the role of Commissioner for Vidocq—the organization's highest-ranking officer—and continued in that position through the time that Vidocq was investigating McGuffin.[64]

Vidocq seeks to "to guide police departments" across the country,[65] and the United States Department of Justice lists Vidocq as cold-case resource for law enforcement.[66]

Vidocq and Walter cooperate with local police departments in several ways.  First, Vidocq assists with cold case homicide investigations by bringing law enforcement agencies to Philadelphia to present their cases.  Every month, a Vidocq "member or [police department] guest presents facts and evidence concerning an unsolved homicide."[67]  The police provide Vidocq members with a "confidential" written synopsis of the case and a PowerPoint presentation, which may include maps, autopsy photos, written statements, lab reports, photos of the crime scene, photos of evidentiary items, and even confidential information that the police do not want to share with the public.[68]  Vidocq members then "offer a fresh look at the case and act

---

90 to Puracal Decl.) (Vidocq works exclusively with law enforcement agencies).

[62] *See* Vidocq Society Website, Officers and Directors (Exhibit 94 to Puracal Decl.); William Fleisher Deposition at 24:2–25:18, 95:3–5 (Exhibit 89 to Puracal Decl.); Rule 30(b)(6) Deposition of Vidocq at 7:6–24 (Exhibit 90 to Puracal Decl.).

[63] William Fleisher Deposition at 10:12–11:18, 32:8–33:23, 107:19–108:1 (Exhibit 89 to Puracal Decl.).

[64] *Id.*

[65] Rule 30(b)(6) Deposition of Vidocq at 27:21–22 (Exhibit 90 to Puracal Decl.).

[66] William Fleisher Deposition at 46:10–48:25 (Exhibit 89 to Puracal Decl.).

[67] Vidocq Journal 2009 at 6 [Fleisher deposition exhibit 4] (Exhibit 89 to Puracal Decl.).

[68] Rule 30(b)(6) Deposition of Vidocq at 95:20–96:25, 152:14–155:13 (Exhibit 90 to Puracal Decl.).



MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

as a catalyst among police, prosecutors, and the family, to prompt interest in a renewed inquiry."[69]  Vidocq suggests leads, witnesses to investigate, evidence to test for DNA, or a theory of the crime or the suspect.[70]  Vidocq's designee testified that Vidocq helps to "solve" cases by identifying the likely perpetrator and how the crime occurred.[71]  Vidocq "assists in the investigation of unsolved deaths and homicides only when law enforcement agencies accept their support, and the investigating agency directs all Vidocq Society efforts."[72]

Second, Vidocq provides case assistance out in the field, "functioning as a case manager would function, in reviewing a case, to see if there is anything where [Vidocq] might be able to assist them to move it forward."[73]  Vidocq members view case files in the field and visit the crime scene with local law enforcement.[74]

Third, Vidocq also assists by training local law enforcement.[75]  Vidocq members—who may themselves be part of law enforcement—travel across the country offering free seminars to other law enforcement agencies.[76]

The relationship between Vidocq and the government is a symbiotic one.  For example,

---

[69] Vidocq Journal 2009 at 6 [Fleisher deposition exhibit 4] (Exhibit 89 to Puracal Decl.).

[70] Rule 30(b)(6) Deposition of Vidocq at 97:3–13, 140:7–146:2, 155:14–156:1, 173:1–22 (Exhibit 90 to Puracal Decl.).

[71] Rule 30(b)(6) Deposition of Vidocq at 126:1–128:4 (Exhibit 90 to Puracal Decl.).  *See also* Kate Morgan, "The Heirs of Sherlock Holmes," SJ Mag Media (June 2016) (Exhibit 91 to Puracal Decl.) ("People ask, 'How many cases have you solved?' Fleisher says, 'and I say about 80 percent. . . . Most of the cases we see, we have it pretty much figured out who the subject is or at least a good profile of the person who is likely to have done it.'").

[72] Richard H. Walton*, The Vidocq Society: A "Free" Cold Case Resource*, Chesapeake Examiner at 1 (Fall 2009) (Exhibit 92 to Puracal Decl.).  The resource publication was written by a Vidocq member.  *See* Vidocq Website, Member Publications (Exhibit 94 to Puracal Decl.) (Walton published a book featured on the list of member publications).

[73] Rule 30(b)(6) Deposition of Vidocq at 112:11–115:24 (Exhibit 90 to Puracal Decl.).

[74] *Id.*

[75] William Fleisher Deposition at 37:19–39:2, 57:10–58:13 (Exhibit 89 to Puracal Decl.); Rule 30(b)(6) Deposition of Vidocq at 63:5–66:16 (Exhibit 90 to Puracal Decl.); Vidocq Journal 2011 at 2 [Fleisher deposition exhibit 8] (Exhibit 89 to Puracal Decl.).

[76] Rule 30(b)(6) Deposition of Vidocq at 63:5–66:16 (Exhibit 90 to Puracal Decl.).



MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

not only does Vidocq train other state actors, Vidocq also gets trained *by* state actors.[77]  For example, Philadelphia's Chief Medical Examiner trained the Vidocq membership on gunshot wounds, injuries from car accidents, and "what types of things to look for in various kinds of injuries."[78]  The purpose of the seminars is to provide the membership with information about "the application of forensic techniques as they may be used in solving cold case homicides."[79]

Vidocq also benefits from access to government resources in other ways.  For example, it is Vidocq's policy to destroy all copies of the written summary that law enforcement presenters provide for case presentations.[80]  In years past, to make sure that the summaries were destroyed, one of Vidocq's Board members (a then-Assistant United States Attorney) would take the summaries to the U.S. Attorney's Office and dump them into the shredder bins to be "mulched" along with the U.S. Attorney's other "sensitive" documents.[81]

In some cases, such as the McGuffin case, Vidocq members provide post-presentation assistance, including by viewing the police department's case file, going out to the crime scene, and using specialized investigative skills to assist.[82]  For example, in one case, Fleisher went to the local police department to conduct a polygraph of the suspect that Walter developed through profiling.[83]  In multiple cases, Walter traveled out-of-state to join local police in their investigative efforts, profiling and interviewing suspects, offering a theory of the crime when the police had no evidence to go on, and even meeting with prosecutors.[84]

A reasonable jury could infer the same degree of cooperative action between Vidocq,

---

[77] *Id.*

[78] *Id.* at 64:17–25.

[79] *Id.*

[80] Rule 30(b)(6) Deposition of Vidocq at 97:19–99:9 (Exhibit 90 to Puracal Decl.).

[81] *Id.*

[82] *Id.* at 142:5–143:9.

[83] William Fleisher Deposition at 73:21–79:10 (Exhibit 89 to Puracal Decl.).

[84] "The Vidocq Society" by William Fleisher at 6–7 [Fleisher deposition exhibit 2] (Exhibit 89 to Puracal Decl.); William Fleisher Deposition at 41:3–5, 65:17–85:11 (Exhibit 89 to Puracal Decl.).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

including Walter, and the Coquille investigators during the McGuffin investigation.[85]  It is undisputed that, in January 2010, Dannels and Zanni (along with the District Attorney and an individual from the Oregon Department of Justice) flew to Philadelphia to present the McGuffin case to Vidocq, including Walter.[86]  It is further undisputed that Dannels prepared a written summary of the case for the Vidocq membership, and the Municipal Defendants provided information to Vidocq and Walter from the (otherwise confidential) investigative files for the Freeman murder.[87]  It was after receiving and reviewing these materials that Walter approached the Municipal Defendants and District Attorney with his "profile" of the killer.[88]

After the presentation to the full Vidocq membership, the Municipal Defendants asked Walter to travel to Coquille to assist, and Vidocq agreed that he could.[89]  After Dannels and Zanni returned from Philadelphia, there was a meeting of the HIT Team where the team discussed its new strategy to "Keep the press active.  Bring in Vidocq."[90]

In late June 2010, Walter traveled to Coquille where he met with the Municipal Defendants at the Coquille Police Department, reviewed portions of the case file, went out to the crime scene, and appeared on national television with Dannels, at the cemetery where Freeman's right (cemetery) shoe was found, discussing Walter's profile of the perpetrator and their concocted narrative of how the crime occurred.[91]  Dannels also arranged for Walter to talk to the District Attorney about convening a grand jury.[92]

Walter was not the only Vidocq member involved.  Fleisher, Walter, and Bender

---

[85] Vidocq also provided assistance in another case in Oregon in 2014.  *See* Vidocq Society Presentations at 1 [Fleisher deposition exhibit 5] (Exhibit 89 to Puracal Decl.).

[86] *See* Statement of Facts ¶ 8; Richard Walter Deposition at 187:24–188:1 (Exhibit 93 to Puracal Decl.).

[87] *See* Statement of Facts ¶ 8.

[88] R. Paul Frasier Civil Suit Deposition at 227:18–228:7 (Exhibit 3 to Puracal Decl.).

[89] Richard Walter Deposition at 257:16–23 (Exhibit 93 to Puracal Decl.).

[90] 2010-01-28 HIT Team Note at 1 (Exhibit [ ] to Puracal Decl.); R. Paul Frasier Civil Suit Deposition at 109:9–110:7 (Exhibit 3 to Puracal Decl.).

[91] *See* Statement of Facts ¶¶ 11–12.

[92] R. Paul Frasier Civil Suit Deposition 115:1–116:10 (Exhibit 3 to Puracal Decl.).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

(Vidocq's co-founders) all appeared in the ABC News 20/20 piece about the McGuffin investigation, and someone else associated with Vidocq also provided the Municipal Defendants with a "statement analysis" by reviewing the audio recording or written transcript of McGuffin's interrogation.[93]

Whether Dannels (and the other Municipal Defendants) ultimately made use of the information from Vidocq and Walter is not the question, both because they obviously did and because it is irrelevant to state action.  The question—for the purpose of determining whether Vidocq and Walter were state actors—is whether there was a "substantial degree of cooperative action."[94]  Describing the partnership with Vidocq, Dannels told ABC News 20/20, "When we have some [*sic*] of that magnitude offering up services, we're jumping all over it."[95]

Around the same time, Vidocq's Deputy Commissioner and Case Manager documented Walter's involvement with the Municipal Defendants.[96]  In that internal document, the Deputy Commissioner wrote: "Richard says that the DA was very impressed and indicated that they now saw the case in a new light and he may have enough to indict."[97]

Vidocq ignores all of the evidence of cooperative action and focuses instead on *agency*, an inquiry that is not relevant to the joint action factor.[98]  Likewise, Vidocq misdirects the Court by focusing on the fact that it provided "pro bono" assistance.[99]  This, too, is irrelevant.  The Defendants' own briefing suggests that the state knowingly accepted the benefits derived from unconstitutional behavior.[100]  The Municipal Defendants fed Walters false information, and

---

[93] William Fleisher Deposition at 103:21–104:16 (Exhibit 89 to Puracal Decl.); Mark Dannels Deposition at 99:25–101:22 (Exhibit 51 to Puracal Decl.).
[94] *Vineyard*, 2011 U.S. Dist. LEXIS 129274, at **16–17.
[95] 2010-10-15 ABC News 20/20 Transcript (2010) at 8 (Exhibit 1 to Puracal Decl.).
[96] *See* Statement of Facts ¶ 12; Rule 30(b)(6) Deposition of Vidocq at 92:1–5 (Exhibit 90 to Puracal Decl.) (Bornhofen wrote case synopsis); Richard Walter Deposition 176:11–16 (Exhibit 93 to Puracal Decl.) (Fred Bornhofen was Deputy Commissioner and Case Manager).
[97] Vidocq Synopsis at 1 [Dkt. No. 293-2 at 119].
[98] Vidocq Motion for Summary Judgment at 87–88 [Dkt. No. 287].
[99] *Id.* at 35.
[100] *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012) (joint action exists "if the state

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Walter weaved those falsities into a cohesive narrative that (1) the Municipal Defendants relied on at grand jury and (2) the District Attorney ultimately relied on in closing.[101]  There are material questions of fact related to misconduct through joint fabrications of evidence and the encouragement of criminal proceedings.  These questions support joint action.

The same facts support the governmental nexus factor, as well as conspiracy as discussed below.[102]  These questions of material fact preclude summary judgment.

**B.    A reasonable jury can find Walter acted pursuant to Vidocq's policies and practices, that Walter's actions constitute official policy, and that Vidocq ratified Walter's conduct.**

Vidocq moves for summary judgment on Plaintiffs' *Monell* claims, asserting that there is no evidence that Vidocq, independent of Walter, fabricated and suppressed evidence that caused the deprivation of constitutional rights.  Vidocq's argument conflates the standard for claims against individuals (based on constitutional violations) with the standard for claims against entities (based on the failure to enact policies and procedures to prevent constitutional violations).  The cases on which Vidocq attempts to rely do not address the standard under *Monell*.

Vidocq's section 1983 liability will be based on its policies and practices, or its knowledge of misconduct.[103]  A private corporation acting under color of law may be subject to a

---

'knowingly accepts the benefits derived from unconstitutional' behavior").

[101] *See* Statement of Facts ¶¶ 11, 12, 16.  *See also* Walter's Statement of Facts ¶¶ 21, 22, 23, 31, 32 [Dkt. No. 314].

[102] *See Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002) (need only satisfy a single test).  *See, e.g.*, *Hughes v. Patrolmen's Benevolent Ass'n*, 850 F.2d 876, 880 (2nd Cir. 1988) ("[A]ppellee's § 1983 claim and its jurisdictional counterpart, 28 U.S.C. § 1343, rested on allegations that the New York City Police Department participated in the conspiracy, thus constituting joint activity considered to be state action by all parties involved.").

[103] *See Hunter*, 377 F. Supp. 3d at 978 (citing *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007)) ("[A] private corporation may be liable under § 1983 if the injury alleged is the result of the corporation's policy or practice or if the corporation knew of its employees' misconduct and failed to take steps to end the misconduct.").  *See also Gonzalez v. Ahern*, No. 19-cv-07423-JSC, 2020 U.S. Dist. LEXIS 217163, at *14 n.3 (N.D. Cal. Nov. 19, 2020).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

number of theories of liability under § 1983, just as any municipality would.[104]  Three examples prove the point.  First, a corporation "may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'"[105]  Second, a corporation "may be held liable under § 1983 for acts of 'omission' when such omissions amount to the [corporation's] own official policy," if that omission rises to the level of "deliberate indifference" to a constitutional right.[106]  And third, a corporation "may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'"[107]

The question is not whether Vidocq, independent of Walter, fabricated or suppressed evidence.  The question is whether Vidocq's policies and practices became the "moving force" behind Walter's constitutional violations.[108]

There is evidence from which a jury could find liability against Vidocq under each of the three theories set forth above.

## 1.    There is evidence from which a jury could find a policy of inaction.

A *Monell* custom of inaction can be based, among other things, on an entity's "failure to implement procedural safeguards to prevent constitutional violations," such as by failing to enact a policy or separately by failing to train or supervise its agents.[109]  To prove liability based on a policy of inaction or failure to train or supervise, the plaintiff must also show that the entity's inaction (1) constitutes deliberate indifference and (2) caused the violation "in the sense that the

---

[104] *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016).
[105] *Id.* (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978)).
[106] *Id.* (citing *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1461 (9th Cir. 1988)).
[107] *Id.* at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)).
[108] *Monell*, 436 U.S. 658, 694 (1978).
[109] *Tsao*, 698 F.3d at 1143 (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

[entity] could have prevented the violation with an appropriate policy."[110]

### (a)    Deliberate Indifference

Indifference can be proved by showing that the entity "was on actual or constructive notice that its omission would likely result in a constitutional violation."[111]  For example, a plaintiff can show the need for a policy or training is "so 'obvious' that ignoring it amounted to deliberate indifference."[112]  The test is an objective one.[113]  A plaintiff need not prove the defendant actually knew the omission would result in a constitutional violation.[114]  The question is whether any reasonable person would recognize the need for action to prevent a violation.[115]

A plaintiff can also prove indifference by offering a "pattern of similar constitutional violations[.]"[116]  A pattern can illustrate both notice and indifference, and courts, such as the Ninth Circuit in *Henry v. County of Shasta*, recognize the relevance of both pre- and post-incident events.[117]  Post-incident events show the entity "continues to turn a blind eye" to constitutional violations, allowing the jury to infer the existence of a previous policy or custom of deliberate indifference.[118]

Plaintiffs, here, alleged several theories of deliberate indifference.  First, there are facts from which a jury could infer that the need for policies or training on *Brady* is obvious.  Vidocq admits that it works solely with law enforcement on criminal investigations, and the organization's mission is to "solve" the case by identifying a perpetrator who will be charged.[119]

---

[110] *Id.* (internal citations omitted).
[111] *Id.* at 1145 (citing *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1186 (9th Cir. 2002)).
[112] *Id.*
[113] *Castro*, 833 F.3d at 1076.
[114] *Gibson*, 290 F.3d at 1195.
[115] *Id.*
[116] *Tsao*, 698 F.3d at 1145 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).
[117] *See Henry v. Cnty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997).
[118] *Corona v. City of Fontana*, No. 5:22-cv-00034-JGB-SP, 2023 U.S. Dist. LEXIS 74550, at *8 (C.D. Cal. Apr. 27, 2023).
[119] *See*, *supra*, Section III(A).



MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

There are facts from which a jury could conclude that Vidocq does more than just chance "consulting": the entity is made up of law enforcement officers and prosecutors, with Vidocq going so far as to put active government officers on its Board and advertising the fact that the U.S. Department of Justice offers Vidocq as a resource for smaller law enforcement agencies.[120] Yet, Vidocq admits that it does not train its members to comply with *Brady*.[121] A jury could infer it was obvious Vidocq needed policies or training to ensure its members, as part of a law enforcement team that provides evidence to prosecutors and the courts on a regular basis, would comply with all constitutional rights afforded those accused of crime, including the due process right to all evidence that is exculpatory or impeaching under *Brady*.[122]

Second, there are facts from which a jury could infer a pattern. For example, before Walter's involvement in the McGuffin investigation, Vidocq knew that Walter had been admonished by multiple courts for fabricating evidence.[123] In one case, the Second Circuit concluded in a published opinion that Walter had conjured up a "profile" of the alleged murderer by learning facts about the case from law enforcement and then simply creating a "profile" to fit the suspect under investigation.[124] The Second Circuit wrote that Walter had "weav[ed] the

---

[120] *See*, *supra*, Section III(A).
[121] Rule 30(b)(6) Deposition of Vidocq (Volume II) at 67:4–6 (Exhibit 90 to Puracal Decl.).
[122] *Cf. Stewart v. Coughlin*, No. 3:20-cv-00497-M, 2023 U.S. Dist. LEXIS 2364, at *24 (N.D. Tex. Jan. 6, 2023) (a reasonable factfinder could determine that risk of constitutional violations was or should have been an obvious or highly predictable consequence of the city's failure to train on *Brady*); *Salazar v. City of Phoenix*, No. 2022 U.S. Dist. LEXIS 189353, at *60–61 (D. Ariz. Sept. 14, 2022) ("The need for training police officers with respect to the handling and disclosure of Brady material is evident given the constitutional right at issue—a criminal defendant's due process right to a fair trial. Further, police officer testimony on behalf of the State is a very common situation, making the need to train police officers about Brady requirements related to impeachment evidence paramount. Most police officers do not go to law school; thus, absent specific training, there would be no way for police officers to obtain the legal knowledge necessary to apply constitutional law principles, specifically, the principles outlined in Brady, and ensure that due process rights of criminal defendants are not violated prior to criminal trials.").
[123] *See*, *supra*, n.37.
[124] *Drake*, 553 F.3d at 244.



MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

complicated facts of the case into a seemingly coherent narrative" and even adapted his profile "to remedy any potential weaknesses in the prosecution's theory of [the defendant's] motive."[125] The Second Circuit further found that Walter had "grossly exaggerated most of his qualifications and outright lied about some of them."[126]  Vidocq co-founder and former Commissioner, Fleisher, testified that Vidocq has been aware of the allegations since at least 2003[127]—six years before Vidocq began its partnership with the Municipal Defendants.  Vidocq performed only a perfunctory investigation into the allegations of fraud, relying on Walter himself to refute the allegations and not taking a single step to fact-check Walter's representations to the Board.[128]

Despite the Second Circuit's written opinion documenting Walter's "quackery" that resulted in a criminal conviction,[129] Vidocq took no action to train or supervise Walter.[130]  In addition, Vidocq did not place any restrictions on Walter's work for Vidocq and did not make any effort to warn law enforcement partners about the allegations in the Second Circuit case.[131] Indeed, the Coos County District Attorney discovered Walter's scheme only after the Municipal Defendants had been working with Vidocq and Walter for several months.[132]  It was then that the District Attorney began his efforts to "disassociate" himself from Walter.[133]  By that time, however, Walter had already conjured up and shared with the District Attorney and the Municipal Defendants his profile of Freeman's killer that matched McGuffin—the only suspect already under serious investigation.[134]  Walter had, furthermore, already fabricated evidence of a blood spot on Freeman's right (cemetery) shoe that, according to Walter, indicated Freeman was

---

[125] *Id.*
[126] *Id.* at 238.
[127] William Fleisher Deposition at 93:5–12 (Exhibit 89 to Puracal Decl.).
[128] *See id.* at 93:25–96:22.
[129] *Drake*, 553 F.3d at 244.
[130] William Fleisher Deposition at 101:2–102:16 (Exhibit 89 to Puracal Decl.).
[131] *Id.*
[132] R. Paul Frasier Civil Suit Deposition at 118:20–25, 157:13–161:9.
[133] *Id.* at 159:24–160:1.
[134] *Id.* at 117:7–14, 237:14–18.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

"forcibly taken from" the road next to the cemetery where she "got probably smashed in the face."[135]  Even after the District Attorney "disassociate[d]" himself from Walter, the Municipal Defendants continued to weave Walter's theory of how the crime occurred into the case, and that false narrative wound up in grand jury and the state's closing argument.[136]

The question of whether Vidocq was deliberately indifferent is one for the jury.[137]  A reasonable jury could agree that if what Walter did, or failed to do, was not acceptable to Vidocq, "changes would have been made."[138]

**(b)    Causation**

Summary judgment cannot be granted as to causation or deliberate indifference.  A showing of causation is made by pointing to the "likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," which can "justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right."[139]  In addition, the "high degree of predictability may also support an inference of causation—that the municipality's indifference led directly to the very consequence that was so predictable."[140]

To establish causation, "Plaintiff need only demonstrate that 'the identified deficiency ... [is] closely related to the ultimate injury.'"[141]  There are material questions of fact on the issue of whether Vidocq could have prevented the violation with an appropriate policy.[142]  A reasonable

---

[135] ABC News 20/20 Transcript (2010) at 11 (Exhibit 1 to Puracal Decl.).
[136] *See* Statement of Facts ¶¶ 11, 12, 16.
[137] *Gibson*, 290 F.3d at 1194–95 (citations omitted).
[138] *Henry*, 132 F.3d at 520.
[139] *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409–10 (1997).
[140] *Id.*
[141] *Oviatt*, 954 F.2d at 1478 (quoting *Canton v. Harris*, 489 U.S. 378, 391(1989)).
[142] *Cf. Oviatt*, 954 F.2d at 1478; *see also Gibson*, 290 F.3d at 1196; *Lovato v. Delta Hospital Group*, No. 3:22-cv-00264-SB, 2023 U.S. Dist. LEXIS 21076, at *13 (D. Or. Feb. 8, 2023).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

jury could find that, had Vidocq adopted a *Brady* policy and trained its members on the requirements, that policy and training could have prevented Walter from suppressing evidence of the true nature and extent of his involvement, and other evidence impeaching the credibility of the investigation as a whole.[143]  Material questions of fact preclude summary judgment.

### 2. There is evidence from which a jury could find that Walter's decisions constitute the official policy of Vidocq.

*Monell* liability can be based solely on a single decision, regardless of whether the entity "had taken similar action in the past or intended to do so in the future," when the decision constitutes official policy by a policymaker,[144] such as Richard Walter here.

There are material questions of fact about whether Walter was a policymaker for Vidocq. Walter was a co-founder of Vidocq,[145] was held out as a leader,[146] and was the subject of a book about the organization.[147]  Vidocq does not know who its officers or directors were when the organization was founded and does not know who was on the board in 2010 during its

---

[143] *See*, *e.g.*, *supra*, n.37 (documented evidence of issues with Walter's credibility); R. Paul Frasier Civil Suit Deposition at 114:16–19 (Exhibit 3 to Puracal Decl.) (referring to Walter as "an idiot from the Vidocq Society").  *See also Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant, and we may consider such use in assessing a possible *Brady* violation."); *Lindsey v. King*, 769 F.2d 1034, 1042 (5th Cir. 1985) (awarding new trial of prisoner convicted in Louisiana state court because withheld *Brady* evidence "carried within it the potential . . . for the . . . discrediting . . . of the police methods employed in assembling the case").

[144] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

[145] *History of the Vidocq Society: The Founding of the Vidocq Society* (Exhibit 94 to Puracal Decl.).  *Cf.* Declaration of Barbara Cohan ¶ 8 ("The information on Vidocq Society's website, https://www.vidocq.org/, is up-to-date and accurate.").

[146] *The Vidocq Society: Solving Murders Over Lunch*, National Public Radio (August 12, 2010), available on the Vidocq website at https://www.vidocq.org/news-publications/.

[147] *See* Michael Capuzzo, *The Murder Room: The Heirs of Sherlock Holmes Gather to Solve the World's Most Perplexing Cold Cases*, available on the Vidocq website at https://www.vidocq.org/news-publications/.  William Fleisher Deposition at 50:6–21 (Exhibit 89 to Puracal Decl.).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

involvement in the McGuffin investigation.[148]  Vidocq cannot be certain of whether Walter held

any officer or director positions prior to approximately 2005, and, in its Rule 30(b)(6) deposition,

Vidocq initially attempted to deny Walter's involvement on the Board.[149]  Vidocq was forced to

later correct itself and admit that Walter became "an 'ex-officio' member of the Board" in 2012

and "thereafter did attend board of directors meetings."[150]  Vidocq does not know what the "ex-

officio" title meant.  By its bylaws, however, Vidocq follows "Robert's Rules of Order," and

those rules define an "ex-officio" member of the board as a member "by virtue of their office,"

suggesting Walter held some sort of office within the organization.[151]

Vidocq's long-serving Commissioner, William Fleisher, testified that Walter gave

trainings to local law enforcement offices on behalf of Vidocq and worked directly with police

and prosecutors on Vidocq's cases.[152]  Material questions of fact preclude summary judgment on

the question of whether Walter was a policymaker.  If the jury finds that he was, Vidocq will be

liable for Walter's actions that constitute official policy of Vidocq.

### 3.     There is evidence from which a jury could find ratification.

While the "'mere failure to overrule a subordinate's actions, without more, is insufficient

to support' a ratification theory," evidence that shows "the specific pathway through which

ratification occurred" is sufficient.[153]  For example, a § 1983 plaintiff can show that a

---

[148] Rule 30(b)(6) Deposition of Vidocq (Volume I) at 45:6–46:6, 67:21–70:8, 180:10–21 and
(Volume II) at 11:8–20, 37:15–41:11 (Exhibit 90 to Puracal Decl.).

[149] Rule 30(b)(6) Deposition of Vidocq (Volume I) at 7:15–24, 45:6–46:6, 67:21–70:8, 180:10–
21 and (Volume II) at 11:8–20, 37:15–41:11 (Exhibit 90 to Puracal Decl.).

[150] *Id.* at 11:8–20.

[151] *See* Vidocq's Bylaws at 6 [Dkt. No. 293-1 at 124].  *See also* Robert's Rules of Order at
section 51, available at http://www.rulesonline.com/rror-09.htm.

[152] *See, e.g.*, William Fleisher Deposition at 38:9–39:5, 41:3–5, 55:10–12, 57:13–58:23, 70:12–
73:20 (Exhibit 89 to Puracal Decl.).

[153] *Robertson v. Bruckert*, 568 F. Supp. 3d 1044, 1049 (N.D. Cal. 2021) (quoting *Lytle v. Carl*,
382 F.3d 978, 987 (9th Cir. 2004)).



MALONEY | LAUERSDORF | REINER rc
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

policymaker showed affirmative agreement with a subordinate's actions.[154]

There is evidence that Vidocq showed affirmative agreement with Walter's actions. After the Second Circuit exposed Walter's scheme, Vidocq continued to offer up Walter as a resource for local police, including the Coquille PD.[155]  The evidence is sufficient to support the inference that Vidocq ratified the misconduct.  Material questions of fact preclude summary judgment.

### 4.      There is evidence from which a jury could find an expressly unconstitutional policy.

There is evidence from which a jury could find that Vidocq had a written policy requiring confidentiality of information, in direct violation of *Brady*.  On page one of the Vidocq's Society Code of Ethics, the organization states that it "takes pride in its professionalism and assures law enforcement agencies that the confidential details about their matters remain confidential."[156] The Code of Ethics also requires Vidocq Society members to keep all information confidential.[157]

Vidocq's website also confirms its commitment to confidentiality, "The Vidocq Society's assistance to law enforcement necessarily involves the review and analysis of case materials such as reports, statements, and physical evidence.  The confidentiality and security of these materials are of paramount importance."[158]  While it makes perfect sense for Vidocq to keep its information confidential from the public, Vidocq was *not* permitted to suppress information that would be material to an actual criminal prosecution—that information must be disclosed to the prosecutor

---

[154] *See id.*

[155] *See*, *supra*, Section III(B)(1)(a).

[156] Vidocq's Code of Ethics & Conduct at 1 [Dkt. No. 293-1 at 133].  *See also* Vidocq Rule 30(b)(6) Deposition at 56:1–57:5 (Exhibit 90 to Puracal Decl.) (Code of Conduct from 2014 codified what was already in place).

[157] Vidocq's Code of Ethics & Conduct at 1 [Dkt. No. 293-1 at 133].

[158] https://www.vidocq.org/#confidentiality.  *See also* Walton, *supra*, n.72, at 2 ("The policy of the Vidocq Society is to neither confirm nor deny any role in any investigation.").

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

and defense.

Vidocq's over-broad policy of confidentiality fails to direct all members involved in law enforcement investigations or consulting with law enforcement to objectively document and disclose all exculpatory and inculpatory information. Vidocq asserts that it does not have a *Brady* obligation.[159] If the jury finds that Vidocq is a state actor, however, the obligation under *Brady* applies as a matter of law.[160] The Ninth Circuit explained long ago that "exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does."[161] Any rule to the contrary "would undermine *Brady* by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency decided the prosecutor ought to have it, and by allowing the prosecutor to tell the investigators not to give him certain materials unless he asked for them."[162]

Vidocq also argues that it did not suppress any *Brady* material because, according to Vidocq, the "synopsis" was written after McGuffin's criminal trial. Vidocq ignores established case law. The *Brady* obligation extends through, at least, the point at which a conviction is final (*i.e.*, the conclusion of direct appeal).[163] In addition, Vidocq quotes only one portion of the synopsis and omits the earlier portion of the synopsis that a reasonable jury can easily conclude was written *prior* to the indictment: "Richard [Walter] says that the DA was very impressed and indicated that they now saw the case in a new light and he may have enough to indict."[164]

---

[159] Vidocq Rule 30(b)(6) Deposition (Volume II) at 65:10–67:6 (Exhibit 90 to Puracal Decl.).
[160] *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.").
[161] *Tennison v. City & Cnty. of San Francisco*, 570 F.3d 1078, 1087 (9th Cir. 2009) (quoting *United States v. Blanco*, 392 F.3d 382, 388 (9th Cir. 2004)).
[162] *Id.*
[163] *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68–69 (2009).
[164] Vidocq Synopsis at 1 [Dkt. No. 293-2 at 119].



MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Indeed, with the inclusion of the information from after the trial, a reasonable jury can infer that the document was iterative (and that the parts material to McGuffin's defense were written and suppressed *before* the criminal conviction became final). From the plain language on the page, a jury can conclude that Vidocq's case manager, Fred Bornhofen, wrote the document in stages, beginning with Walter's early work with the Municipal Defendants which prompted the indictment after a decade of inaction. Bornhofen passed away long ago, and no one at Vidocq has any information to refute the plain language of the synopsis that shows it was started pre-indictment.[165]

Moreover, the document itself is a recording of information known to Vidocq and Walter before McGuffin's criminal trial and certainly before the conviction was final. *Brady* applies to information that is favorable to the accused, regardless of whether the information is reduced to writing.[166] Even if the jury found that the synopsis itself was written after the criminal trial, the jury would nonetheless have to conclude that there was information favorable to McGuffin known to Vidocq and Walter before and during the criminal trial.[167]

A reasonable jury could find that Vidocq had a policy of confidentiality even with respect to active criminal prosecutions and that policy was the moving force behind Walter's failure to document and disclose favorable information, in direct violation of *Brady*. "[A] single

---

[165] *See* William Fleisher Deposition at 112:9–10 (Exhibit 89 to Puracal Decl.) (Commission of Vidocq describing Vidocq's full synopsis of cases as a "running synopsis that Fred would keep and be updated, I guess, by Bill Gill, the case manager"; agreeing it was presented to the board); Rule 30(b)(6) Deposition of Vidocq at 92:1–5 (Exhibit 90 to Puracal Decl.) (Bornhofen prepared the synopsis).

[166] *See Stewart v. Coughlin*, No. 3:20-cv-00497-M, 2023 U.S. Dist. LEXIS 2364, at *22 (N.D. Tex. Jan. 6, 2023) ("More importantly, *Brady* does not limit exculpatory evidence to that which is reduced to writing and stored in an investigative file. Hypothetically, if Coughlin only remembered that Davidson had made prior inconsistent statements to police officers, as opposed to memorializing it in writing, *Brady* would be violated if that impeachment evidence was intentionally withheld.").

[167] *See* Statement of Facts ¶¶ 11, 12, 16.



MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

constitutional violation undertaken pursuant to a formal policy may be sufficient to establish municipal Section 1983 liability."[168]  That is, a § 1983 plaintiff "need not attribute a history or pattern of similar constitutional violations attributable to the relevant formal policy in order to pursue her *Monell* claim.  It is sufficient to show the express policy attaches to the constitutional tort at issue."[169]  Vidocq's express policy of confidentiality is sufficient for a jury to find Vidocq liable under *Monell*.

**C.    A reasonable jury can find Vidocq is liable to S.M.**

Vidocq argues that, if McGuffin's section 1983 claims fail, S.M.'s section 1983 claim fails as well.[170]  As discussed above and in response to the motions by the other Defendants, McGuffin's section 1983 claims do not fail.  S.M.'s section 1983 claim, therefore, survives.

Vidocq also argues that S.M.'s loss of consortium claim under state law fails, because there is no cause of action for parental loss of consortium under Oregon law.[171]  The Court already addressed this argument when the State Defendants raised it in their motion to dismiss.[172]  The Court specifically recognized that a child has a cognizable claim for loss of consortium under Oregon law as a result of a defendant's intentional and reckless actions.[173]  Vidocq does not provide any authority to the contrary and makes no attempt to address the Court's prior ruling.  As discussed above and in response to the motions filed by the other Defendants, there is significant evidence of intentional or reckless misconduct by Vidocq and Walter.

///

///

---

[168] *Estate of Kong v. City of San Diego*, No. 22-cv-1858-BAS-DDL, 2023 U.S. Dist. LEXIS 134641, at *15 (S.D. Cal. Aug. 2, 2023) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).

[169] *Id.* (citing *Lowry v. City of San Diego*, 818 F.3d 840, 855 (9th Cir. 2016), *rev'd on other grounds*, 858 F.3d 1248 (2017) (en banc)).

[170] Vidocq's Motion for Summary Judgment at 49 [Dkt. No. 287].

[171] Vidocq's Motion for Summary Judgment at 50 [Dkt. No. 287].

[172] Findings and Recommendations at 28 [Dkt. No. 83].

[173] *Id.*

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

## IV.  POINTS AND AUTHORITIES ON PLAINTIFFS'
## CLAIMS UNDER STATE LAW

### A.     Plaintiffs' claim for false imprisonment must go to the jury.

Vidocq argues it cannot be liable for false imprisonment because it did not imprison
McGuffin or participate in his arrest.[174]  Vidocq raised this same issue in its motion to dismiss,
and the Court ruled against Vidocq there.[175]  In its Findings and Recommendations, the Court
recognized that "[i]n Oregon, 'liability for false imprisonment extends not only to the person
who directly confines a plaintiff, but equally to one who instigates the confinement by directing,
requesting, inviting or encouraging it."[176]  The Court correctly found that "[a]n actor instigates
an arrest if he plays a role in persuading or influencing the decision 'as to what shall be done
about any arrest.'"[177]  Further, under Oregon law, "[t]he plaintiff is not required to prove that the
defendant was the sole, or exclusive, instigator of his arrest, but that the defendant participated
by taking an active part in bringing about the arrest."[178]

### B.     A reasonable jury can find Vidocq instigated or encouraged the indictment and conviction.

Vidocq asserts that it cannot be liable for malicious prosecution because there is no
evidence that Vidocq and Walter insisted, caused, or in any way contributed to the decision to
charge.[179]

Under Oregon law, "where the prosecutor, after an independent investigation and in the
exercise of his independent discretion, decides to bring criminal proceedings, the defendant will

---

[174] Vidocq's Motion for Summary Judgment at 44 [Dkt. No. 287].
[175] Findings and Recommendations at 33 [Dkt. No. 83].
[176] *Id.* (quoting *Hiber v. Creditors Collection Serv.*, *Inc.*, 154 Or. App. 408, 414, 961 P.2d 898 (1998)).
[177] *Id.* (quoting *Pearson v. Galvin*, 253 Or. 331, 335–37, 454 P.2d 638 (1969)).
[178] *Pearson*, 253 Or. at 337.
[179] Vidocq's Motion for Summary Judgment at 45 [Dkt. No. 287].

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

be insulated from liability."[180]  That rule, however, "contains the limitation that the defendant must have been truthful and did not withhold information in his presentation of the facts to the prosecutor."[181]  If, instead, "pertinent information is withheld or there are misrepresentations made as to the facts, or undue influence brought to bear, there can be no intelligent exercise of the officer's discretion, and the person thus procuring the action of the officer is not insulated from responsibility."[182]

There are material questions of fact about whether Walter (as Vidocq's agent[183]) instigated or encouraged the indictment by fabricating evidence and withholding exculpatory evidence.  There is evidence that the Municipal Defendants worked with Walter to fabricate evidence and withhold exculpatory evidence.[184]  There is also evidence that Walter partnered up with Dannels to announce their fabricated theory of the crime on national television.[185]  Vidocq also documented that fabricated theory in an internal memorandum.[186]

Vidocq asserts that it did not contribute to the District Attorney's decision to pursue an indictment against McGuffin.  But there are facts from which a reasonable jury can find the opposite.  After the presentation in Philadelphia during which Dannels and Zanni identified McGuffin as the lead suspect, Vidocq told the District Attorney, Dannels, and Zanni that they were "on the right track," and Walter gave them a profile of a "Power Assertive" perpetrator that Walter said "fits Mr. McGuffin."[187]

Though the fabrication and withholding of evidence is sufficient to deny the motion,

---

[180] *Rose v. Whitbeck*, 277 Or. 791, 797, 562 P.2d 188 (1977).
[181] *Id.*
[182] *Id.* (quoting *Humbert v. Knutson*, 224 Or. 133, 138, 354 P.2d 826 (1960)).
[183] *See*, *infra*, Section IV(D)(1).
[184] *See* Statement of Facts ¶¶ 11, 12, 16.
[185] *See* ABC News 20/20 Transcript (2010) at 9–11 (Exhibit 1 to Puracal Decl.) (discussing fabricated blood evidence on Freeman's right shoe and fabricated evidence that she was hit in the face causing her to bleed in that location next to the cemetery).
[186] Vidocq Synopsis [Dkt. No. [293-2 at 119].
[187] R. Paul Frasier Civil Suit Deposition at 226:10–23, 228:2–16, 231:14–20, 238:8–24 (Exhibit 3 to Puracal Decl.).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

there is also evidence that Walter and other officers specifically tried to convince the District Attorney to pursue an indictment of only McGuffin.[188]

One week after Walter's meeting with the Municipal Defendants in Coquille, the District Attorney issued grand jury subpoenas, and proceedings began one week later. During those grand jury proceedings, several of the Municipal Defendants presented pieces of the fabricated narrative, and Dannels testified that they eliminated everyone except McGuffin.[189] That tactic—of saying they eliminated everyone except McGuffin—came directly from Walter. Earlier in 2010, Walters told ABC News 20/20, "You want to rule out, rule out, rule out. Eventually, then, your bad guy, you're not gonna be able to rule him out, okay? So there he stands with his hand up that he really has no answer for where he was, what he was doing."[190]

Based on the fabricated evidence and Dannels' representation that they eliminated everyone except McGuffin, the grand jury indicted.[191] At trial the following year, the state's closing argument parroted Walter's phony theory of how the crime occurred.[192] The jury convicted.[193]

The question for the jury in this civil suit will be whether Walter worked with the Municipal Defendants to secure the indictment by fabricating evidence (including a theory of how the crime occurred and how McGuffin could not be eliminated), withholding exculpatory evidence (including the fact of Walter's involvement in crafting the fabrications), and exercising undue influence over the prosecutor (including by announcing the fabricated theory on national television and to the District Attorney). If so, the jury may also find Vidocq vicariously liable for Walter's misconduct under state law.[194] The Court should deny the motions.

---

[188] *Id.* at 114:11–116:16.
[189] Grand Jury (2010) (Mark Dannels) at 134:1–8, 137:2–138:21 [Dkt. No. 295-1 at 1544].
[190] *See* ABC News 20/20 Transcript (2010) at 16 (Exhibit 1 to Puracal Decl.).
[191] Indictment [Dkt. No. 291-15 at 2].
[192] *See* Statement of Facts ¶ 16.
[193] Criminal Case Judgment (Exhibit 71 to Puracal Decl.).
[194] *See Stroud v. Denny's Restaurant, Inc.*, 271 Or. 430, 431, 437, 532 P.2d 790 (1975)

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

**C.     A reasonable jury can find Vidocq joined the conspiracy.**

Vidocq argues that it cannot be liable for civil conspiracy because there is no evidence of a "meeting of minds."[195]  This argument must fail.  There is specific evidence from which a jury could conclude that Walter, as part of Vidocq, joined the conspiracy to fabricate evidence that would result in the indictment, prosecution, and conviction of McGuffin.  Vidocq wrote it down.  In its synopsis of the case, Vidocq documented the agreement between Walter and the Municipal Defendants to fabricate evidence.  Vidocq recorded the "meeting of the minds" and the evidence that was fabricated as a result.[196]  Vidocq also recorded the purpose of the conspiracy and the goal achieved: an indictment and conviction.[197]

Vidocq further recorded when the agreement occurred: *prior* to indictment.[198]  Material questions of fact preclude summary judgment on Plaintiffs' claim for conspiracy.

Vidocq also argues that it cannot be liable for civil conspiracy because there is no agency relationship between Vidocq and the Coquille Police Department.  Vidocq does not cite any authority for the proposition that a conspiracy is limited to actors who have a pre-existing agency relationship.  There is no such authority.  Indeed, it is the conspiracy itself that creates the "mutual agency" between co-conspirators.[199]  Vidocq can be held jointly liable with its coconspirators under a civil conspiracy theory, regardless of any separate agency relationship.

---

(company vicariously liable for punitive damages in malicious prosecution suit based on acts of employee); *Fearing v. Bucher*, 328 Or. 367, 372–73, 977 P.2d 1163 (1999) ("Under the doctrine of *respondeat superior*, an employer is liable for an employee's torts, including intentional torts, if the employee was acting within the scope of employment.").

[195] Vidocq's Motion for Summary Judgment at 46 [Dkt. No. 287].

[196] Vidocq Synopsis at 1 [Dkt. No. 293-2 at 119] (emphasis added).

[197] *Id.*

[198] *Id.* (District Attorney "may have enough to indict").

[199] *See Osborne v. Fadden*, 225 Or. App. 431, 437, (2009) (Civil conspiracy "is not a separate tort or basis for recovery but, rather, a theory of mutual agency under which a conspirator becomes jointly liable for the tortious conduct of his or her coconspirators.") (citing *Granewich v. Harding*, 329 Or. 47. 53, 985 P.2d 788 (1999)).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

**D.      There is evidence from which a jury could conclude that Vidocq is liable for the negligent training or supervision of Walter.**

Under Oregon law, a principal may be directly liable for the tortious acts of an agent if the principal was negligent in training or supervising the agent.[200]  Vidocq raises two issues related to Plaintiffs' claim for negligent training and supervision.  First, Vidocq asserts that there is no evidence that Walter was Vidocq's agent.  Second, Vidocq asserts that it did not have a legal duty to train or supervise Walter.  Plaintiffs address each in turn.

**1.      A reasonable jury can find that Walter was Vidocq's agent.**

Under Oregon law, an agency relationship "results from the manifestation of consent by one person to another that the other shall act on behalf and subject to his control, and consent by the other so to act.  The agency relationship can arise either from actual consent (express or implied) or from the appearance of such consent."[201]

First, there is a question of fact about whether an agency relationship between Vidocq and Walter arose from actual consent.  Oregon courts find that actual consent "may be express or implied.  When a principal explicitly authorizes the agent to perform certain acts, the agent has express authority."[202]  In addition, because "most actual authority is implied," a principal may "implicitly permit[ ] the agent to do those things that are reasonably necessary for carrying out the agent's express authority."[203]  Here, Vidocq requires Board approval for all involvement in a case.[204]  The Bylaws establish the authority of the Senior Deputy Commissioner to act as

---

[200] *See Towner v. Bernardo*, 304 Or. App. 397, 418, 467 P.3d 17 (2020); *Vaughn v. First Transit, Inc.*, 346 Or. 128, 138 n.7, 206 P.3d 181 (2009).

[201] *Eads v. Borman*, 351 Or. 729, 735–36, 277 P.3d 503 (2012).

[202] *Columbia Cascade Co. v. City of Fernandina Beach*, 286 Or. App. 729, 736, 400 P.3d 1001 (2017) (citations omitted).

[203] *Id.*

[204] *See* Vidocq Bylaws at 4 [Dkt. No. 293-1 at 124] (Senior Deputy Commissioner acts as Case Manager); Vidocq Code of Ethics and Conduct at 2–3 [Dkt. No. 293-1 at 133] (members may not have separate involvement in a case in which Vidocq participates).

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Vidocq's "Case Manager" who selects the cases for Vidocq participation.[205]  Vidocq's Rule

30(b)(6) designee (Barb Cohan) also testified that the Case Manager must authorize post-

presentation assistance, with the approval of the Board.[206]  Walter testified that Vidocq's Case

Manager (Fred Bornhofen) authorized Vidocq's involvement in the McGuffin investigation and

then verbally authorized Walter's continued involvement after the January 2010 presentation.[207]

The Vidocq Synopsis is evidence of that authorization.[208]  Bornhofen wrote the synopsis and

described in detail Walter's involvement in the investigation in the months following the January

2010 presentation.[209]  Vidocq's then-Commissioner (Fleisher) testified that Bornhofen shared the

synopsis with the Board.[210]  There is evidence from which a jury could conclude that Vidocq

gave express or implied consent for Walter to act as its agent in the investigation.

Second, there is a question of fact about whether an agency relationship between Vidocq

and Walter also arose from apparent authority.  Apparent authority is created "by some conduct

of the principal which, when reasonably interpreted, causes a third party to believe that the

principal consents to have the apparent agent act for him on that matter."[211]  There are, therefore,

"two keys to the analysis: (1) the principal's representations; and (2) a third party's reasonable

reliance on those representations."[212]  Here, Vidocq's involvement began sometime in 2009.[213]

An email between Dannels and Bornhofen (Vidocq's Case Manager) documents a phone call in

July 2009 during which Dannels discussed "your organization [Vidocq] and the possible

assistance of your membership."[214]  After an exchange of emails, Vidocq formally invited

---

[205] Vidocq Bylaws at 4 [Dkt. No. 293-1 at 124].
[206] Rule 30(b)(6) Deposition of Vidocq at 142:5–144:8 (Exhibit 90 to Puracal Decl.).  *See also*
William Fleisher Deposition at 104:17–105:9 (Exhibit 89 to Puracal Decl.).
[207] Richard Walter Deposition at 178:6–8 and 257:16–259:1 (Exhibit 93 to Puracal Decl.).
[208] Vidocq Synopsis [Dkt. No. 293-2 at 119].
[209] *Id.*; *see also* Rule 30(b)(6) Deposition of Vidocq at 92:1–5 (Exhibit 90 to Puracal Decl.).
[210] William Fleisher Deposition at 112:8–113:1 (Exhibit 89 to Puracal Decl.).
[211] *Columbia Cascade Co.*, 286 Or. App. at 739 (citations omitted).
[212] *Id.*
[213] Email from Dannels to Bornhofen (Exhibit 96 to Puracal Decl.).
[214] *Id.*

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Dannels to present the case to the Vidocq membership "to try to assist you in the resolution of this crime."[215]  Dannels and Zanni traveled to Philadelphia to present the case, and that is where they met Walter.[216]  Dannels and the District Attorney testified that they understood Walter was a member of Vidocq.[217]  The District Attorney even believed Walter was on Vidocq's Board.[218]  The District Attorney testified that they also spoke with Vidocq's President and then continued their meeting with Walter through dinner.[219]  Walter testified that, after the dinner, Dannels and the others asked Walter to travel to Coquille to further assist.[220]  Walter testified that he told them, "it would depend on whether Vidocq agrees with it."[221]  Walter testified that he received a phone call that evening from Bornhofen who said that "they had contacted and wanted [Walter] to come out[.]"[222]  Walter testified that he asked Bornhofen, "What does the Vidocq Society think about that?" and Bornhofen said, "It's your decision[.]"[223]  Based on that call with Bornhofen, Walter understood "apparently it was okay."[224]  Walter then traveled to Coquille, worked with the Municipal Defendants, and filmed his involvement for ABC News 20/20.[225]  Bornhofen documented all of that in the Vidocq Synopsis.[226]  Significantly, 20/20 also filmed Vidocq's then-Commissioner (Fleisher) with Walter and the third co-founder (Bender) for use in the one-hour special on the McGuffin investigation.[227]  The Vidocq Board documented its continued involvement in its June 2010 Board minutes: "ABC will be doing a 1 hour show on *a*

---

[215] Letter from Vidocq to Dannels [Dkt. No. 293-1 at 98].

[216] R. Paul Frasier Civil Suit Deposition at 83:1–85:10 (Exhibit 3 to Puracal Decl.).

[217] *Id.* at 85:19–22; Mark Dannels Deposition at 172:2–9 (Exhibit 51 to Puracal Decl.).

[218] 2016-08-10 Letter from Frasier to Reim at 6 [Dkt. No. 293-2 at 105].

[219] R. Paul Frasier Civil Suit Deposition at 85:16–86:10 (Exhibit 3 to Puracal Decl.).

[220] Richard Walter Deposition at 255:18–259:1 (Exhibit 93 to Puracal Decl.).

[221] *Id.* at 257:19–21.

[222] *Id.* at 258:15–16.

[223] *Id.* at 258:17–18.

[224] *Id.*

[225] *Id.*

[226] Vidocq Synopsis [Dkt. No. 293-2 at 119].

[227] ABC News 20/20 Transcript (2010) at 9 (Exhibit 1 to Puracal Decl.); Excerpt from ABC News 20/20 Video (2010) at Time Stamp 3:19 (Exhibit 2 to Puracal Decl.).

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

*Vidocq assisted case* in Oregon . . ."[228]  The 20/20 program aired in October 2010, and the show specifically highlighted Walter's role as "the point man" for Vidocq's involvement in the case.[229] Vidocq did not take any action to disclaim the information reported on 20/20.[230]  There is evidence from which a jury could conclude that Walter had apparent authority to act as Vidocq's agent in the investigation.  There is also evidence from which a jury could conclude that Vidocq ratified Walter's acts.[231]

### 2.    A reasonable jury can find Vidocq had a duty to train and supervise Walter.

It is well-established that Oregon law imposes liability for negligence if one's conduct unreasonably creates a foreseeable risk of the type of harm that befell the plaintiff.[232]  Oregon courts recognize that "foreseeability is generally regarded as a question of fact, and the issue is 'not a likely candidate for summary judgment.'"[233]  The question for the jury in this case is whether the risk of harm from Walter's misconduct was foreseeable.

As discussed above, there are material facts that preclude summary judgment.  There is evidence from which a jury could conclude that Vidocq's negligence in failing to train and supervise Walter created a foreseeable risk of harm, which was of the type that befell Plaintiffs.[234]

---

[228] Vidocq Board Minutes (June 2010) (Exhibit 96 to Puracal Decl.) (emphasis added); Rule 30(b)(6) Deposition of Vidocq at 32:14–19 (Exhibit 90 to Puracal Decl.).
[229] ABC News 20/20 Transcript (2010) at 9 (Exhibit 1 to Puracal Decl.).
[230] Rule 30(b)(6) Deposition of Vidocq at 162:17–20 (Exhibit 90 to Puracal Decl.).
[231] *Yarbrough v. Oregon Bank*, 64 Or. App. 370, 375, 668 P.2d 451 (1983) ("A principal can ratify after the fact any act he could but did not authorize his agent to perform on his behalf before the fact.") (citing Restatement (Second) of Agency § 84 (1958)).
[232] *See Fazzolari v. Portland School Dist.*, 303 Or. 1, 17, 734 P.2d 1326 (1987) ("In short, unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff.").
[233] *Panpat v. Owens-Brockway Glass Container, Inc.*, 188 Or. App. 384, 393, 71 P.3d 553 (2003) (quoting *Cunningham v. Happy Palace, Inc.*, 157 Or. App. 334, 337, 970 P.2d 669 (1998)).
[234] *See*, *supra*, Section III(B)(1)(a).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

E.    **A reasonable jury can find that Vidocq is liable for intentional infliction of emotional distress.**

Vidocq argues that Plaintiffs have not identified any specific conduct by Vidocq "that was expressly intended [to] cause McGuffin to suffer emotional distress."[235]  Vidocq misconstrues the standard to prove "intent" under Oregon law.  Under Oregon law, a plaintiff need not prove that the defendant "acted with the purpose of inflicting severe emotional distress on a plaintiff."[236]  Instead, the element of intent is satisfied "where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct."[237]  Significantly, "[i]f the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result."[238]

There is evidence from which a jury could conclude that Walter (Vidocq's agent) knew that severe emotional distress was certain, or substantially certain, to result from his conduct. Walter partnered with the Municipal Defendants, including Dannels, to fabricate evidence that would secure McGuffin's indictment, prosecution, and wrongful conviction.[239]

Walter specifically told ABC News 20/20 about the distress he wants to inflict on individuals that he investigates: "It's sweet revenge.  And I gain great personal satisfaction in hearing handcuffs click."[240]  There are material questions of fact in this case that preclude summary judgment.

---

[235] Vidocq's Motion for Summary Judgment at 47 [Dkt. No. 287].
[236] *Babick v. Or. Arena Corp.*, 333 Or. 401, 413, 40 P.3d 1059 (2002) (emphasis added).
[237] *Id.* at 412.
[238] *McGanty v. Staudenraus*, 321 Or. 532, 550, 901 P.2d 841 (1995).
[239] Vidocq Synopsis [Dkt. No. 293-2 at 119].
[240] ABC News 20/20 Transcript (2010) at 10 (Exhibit 1 to Puracal Decl.).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

**F.      A reasonable jury can find that Vidocq destroyed evidence.**

Vidocq argues that Plaintiffs' claim for spoliation is premature.[241]  The State Defendants

made the same argument in their motion to dismiss, and the Court rejected it.[242]  In its Findings

and Recommendations, the Court specifically addressed the *Classen* and *Melo* cases—the same

cases Vidocq cites in its motion for summary judgment.[243]  This Court has already recognized

that Plaintiffs' claim for spoliation is not premature because "Plaintiffs' spoliation claim, unlike

the claims in *Claussen* and *Melo*, arises from the same nucleus of facts as the other underlying

claims against Defendants."[244]

Since the Court's ruling on the State's motion to dismiss, other courts in this district have

found that spoliation claims are premature until the underlying action is resolved and the

diminution of value is known.[245]  Those rulings, however, do not address the circumstances at

issue here.  As Plaintiffs pointed out in opposition to the State's motion to dismiss the spoliation

claim as premature, litigating the spoliation claim in a separate action will result in a waste of

judicial resources.[246]  Plaintiffs allege that the Defendants are liable for their destruction of

evidence under a number of theories—including under federal law interpreting § 1983 and

Oregon law governing false imprisonment, malicious prosecution, civil conspiracy, negligence,

and intentional infliction of emotional distress—all of which contributed to McGuffin's wrongful

indictment and conviction and the more than nine years he spent in prison for a crime that he did

not commit.  Spoliation is an additional theory of liability arising from the same destruction of

evidence, but, under the spoliation theory, the damage is the diminution in value of the

---

[241] Vidocq's Motion for Summary Judgment at 48 [Dkt. No. 287].

[242] Findings and Recommendations at 27 [Dkt. No. 83].

[243] *Compare* Vidocq's Motion for Summary Judgment at 48 [Dkt. No. 287] *with* Findings and Recommendations at 27 [Dkt. No. 83].

[244] Findings and Recommendations at 27 [Dkt. No. 83].

[245] *See Halsey v. Airbus Helicopter S.A.S.*, No. 6:24-cv-00649-MC, 2025 U.S. Dist. LEXIS 14733, at **18–19 (D. Or. Jan. 28, 2025).

[246] Plaintiffs' Opposition to State Defendants' Motion to Dismiss at 28 [Dkt. No. 62].

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

underlying claims alleged in this lawsuit.

Vidocq proposes that the parties should litigate the destruction of evidence that resulted in the wrongful conviction and incarceration, and then, in a new action, again litigate that same destruction of evidence under the theory of spoliation. To prevent judicial waste, courts in other jurisdictions find more effective avenues of addressing spoliation, including through a bifurcated trial.[247] A plaintiff's claim for spoliation is not premature where, as here, the plaintiff alleges a factual basis to prosecute that claim. The motion should be denied.

Vidocq further argues that none of the evidence of its involvement in the investigation was spoliated. To the contrary, there is testimony from which the jury could conclude that Vidocq and Walter destroyed evidence.

For example, a jury could find that Vidocq destroyed handwritten notes of its involvement in the investigation. It is undisputed that Dannels provided a written case summary for the presentation to Vidocq, and it should be further undisputed that Vidocq members took handwritten notes during the presentation. Vidocq produced a single copy of the case summary with a member's handwritten notes taken during the presentation.[248] Those notes confirm, for example, that the presenters discussed a "rumor that she was hit by car," as well as "blood on sole of shoe" found on Hudson Ridge.[249] Vidocq destroyed all other notes made by its members during the presentation. Vidocq's Rule 30(b)(6) designee (Barb Cohan) testified that it is Vidocq's practice to destroy the case summaries provided by law enforcement for presentation to the Vidocq membership.[250] Cohan testified that she personally took case summaries to the United States Attorney's Office for destruction.[251] A jury could find that Vidocq spoliated all

---

[247] *Rosenblit v. Zimmerman*, 166 N.J. 391, 407 (2001).
[248] Case Summary with Handwritten Notes (Exhibit 97 to Puracal Decl.); Rule 30(b)(6) Deposition of Vidocq at 99:13–25 (Exhibit 90 to Puracal Decl.).
[249] Case Summary with Handwritten Notes at 1 and 3 (Exhibit 97 to Puracal Decl.).
[250] Rule 30(b)(6) Deposition of Vidocq at 97:19–99:9 (Exhibit 90 to Puracal Decl.).
[251] *Id.*



MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

other hand-written notes of the presentation and theories espoused by the presenters and the Vidocq members.[252]

As another example, a jury could find that Vidocq destroyed evidence that it authorized Walter's trip to Coquille. Cohan testified that such trips must be authorized by the Board.[253] Walter testified that Vidocq authorized his trip, but he searched for records related to payment for travel and those records no longer exist.[254] Cohan, too, testified that Vidocq does not have records related to Walter's travel to Coquille.[255] Now Vidocq is asserting that it never authorized the trip.[256] There is, however, evidence from which a jury could find that Vidocq destroyed the very evidence that would undermine that assertion.

As yet another example, a jury could find that Walter destroyed the materials he reviewed as part of his involvement in the investigation. The District Attorney testified that Dannels sent some materials to Vidocq in advance of the January 2010 presentation and, when the team arrived in Philadelphia, "it was either as we were walking in the door or shortly thereafter, here's Mr. Walter."[257] The District Attorney testified that Walter immediately started "telling us how he had looked at the material that had been sent in. He started talking about a profile he had developed."[258] That was the "Power Assertive" profile "that fit Mr. McGuffin."[259] Walter, however, has never produced the "material" he reviewed that led to the development of that profile. Now Walter is asserting that he never reviewed anything.[260] There is evidence from which a jury could find that Walter destroyed the very evidence that would impeach the credibility of his "profile" and confirm exactly what the Second Circuit came to believe about

---

[252] Rule 30(b)(6) Deposition of Vidocq at 97:19–99:9 (Exhibit 90 to Puracal Decl.).
[253] Id. at 142:5–144:5.
[254] Richard Walter Deposition at 257:16–259:15 (Exhibit 93 to Puracal Decl.).
[255] Rule 30(b)(6) Deposition of Vidocq at 140:2–144:12 (Exhibit 90 to Puracal Decl.).
[256] Vidocq's Motion for Summary Judgment at 21 [Dkt. No. 287].
[257] R. Paul Frasier Civil Suit Deposition at 227:18–228:7 (Exhibit 3 to Puracal Decl.).
[258] Id.
[259] Id. at 218:21–219:6.
[260] Walter's Motion for Summary Judgment at 17–18 [Dkt. No. 314].

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Walter's work—as the District Attorney put it, "that he would take the facts of the case as we knew them and then he would manufacture, if you will, a profile that would fit the only suspect that the prosecution was looking at."[261]

There are questions of material fact that preclude summary judgment on Plaintiffs' spoliation claim.

## V.  POINTS AND AUTHORITIES ON REMAINING ISSUE

Vidocq (and Walter) argue that the claims in this lawsuit are barred by the doctrine of collateral estoppel (issue preclusion).  Vidocq did not plead estoppel in its answer.[262]  As an affirmative defense pursuant to Rule 8(c), Vidocq's failure to plead collateral estoppel in its answer prevents Vidocq from raising it now.[263]  The motion should be denied on this basis alone.

Nonetheless, Vidocq argues that the issue of whether Vidocq's misconduct caused McGuffin's wrongful conviction was "actually litigated" in the post-conviction case, precluding re-litigation in this federal civil suit.[264]  Walter simultaneously argues that (1) the issue of Walter's misconduct was "actually litigated" in the post-conviction case such that collateral estoppel applies and (2) the issue of Walter's misconduct was never litigated in the post-conviction case such that it should be deemed waived.[265]  Neither parties' arguments is legally or factually correct.

---

[261] *Id.* at 118:20–25.

[262] *See* Vidocq's Answer at 42–44 [Dkt. No. 154].

[263] *In re Adbox, Inc.*, 488 F.3d 836, 841 (9th Cir. 2007) ("Federal Rule of Civil Procedure 8(a) and (c) provide that a defendant's failure to raise an 'affirmative defense' in his answer effects a waiver of that defense.") (citations omitted).  *See also Tinn v. EMM Labs*, *Inc.*, No. 07-963-AC, 2009 U.S. Dist. LEXIS 15753, at *29 (D. Or. Feb. 27, 2009).

[264] Vidocq's Motion for Summary Judgment at 57 [Dkt. No. 287].

[265] Walter's Motion for Summary Judgment at 53 [Dkt. No. 314].

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Collateral estoppel under Oregon law requires proof of five elements,[266] and Vidocq/Walter bear the burden of proof.[267]  Vidocq/Walter have not—and cannot—sustain their burden for at least four reasons.

First, Oregon courts look unfavorably on a non-party attempting to assert offensive collateral estoppel in a proceeding like this. The Oregon Supreme Court has "therefore counseled the courts to 'scrutinize with care any situation where collateral estoppel is asserted by a person who was neither a party nor in privity with a party to the first case, to make certain no unfairness will result to the prior litigant if the estoppel is applied.'"[268]  Here, equity stands strongly against allowing Vidocq to try to claim that McGuffin's criminal proceedings—where he was trying to secure his freedom, not prove anyone's liability—were the opportunity to litigate his claims against Vidocq.  Indeed, given the strength of the *Heck* doctrine, forbidding civil litigation that would challenge the propriety of an extant conviction, McGuffin cannot be faulted in any way for focusing on the issues in post-conviction that were necessary to have the wrongful conviction vacated, without the distraction of also focusing on civil liability.

Moreover, given the fact that a reasonable jury can find Vidocq, Walter, and the other Defendants fabricated evidence and suppressed exculpatory information, much of which was

---

[266] *Nelson v. Emerald People's Util. Dist.*, 318 Or. 99, 104, 862 P.2d 1293 (1993) (Elements of collateral estoppel under Oregon law requires proof that five requirements are met: "1. The issue in the two proceedings is identical.  2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.  3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.  4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.  5. The prior proceeding was the type of proceeding to which this court will give preclusive effect.") (citations omitted).

[267] *Hernandez v. Los Angeles*, 624 F.2d 935, 937 (9th Cir. 1980) ("The burden of pleading and proving the identity of issues rests on the party asserting estoppel.  To sustain this burden a party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action.") (citations omitted).

[268] *State Farm Fire & Cas. Co. v. Century Home Components, Inc*., 275 Or. 97, 103, 550 P.2d 1185, 1188 (1976) (citations and internal quotes omitted).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

uncovered after the post-conviction proceedings ended, it would be inequitable to apply

preclusion here.  Specifically, the new evidence of Vidocq and Walter's misconduct that has

been unearthed in discovery in this case means preclusion cannot apply, both as an equitable

matter and because the suppression of evidence deprived McGuffin a full and fair opportunity

address those issues in post conviction.  To be sure, "the Oregon Supreme Court has recognized

the possibility that 'the existence of newly discovered or crucial evidence that was not available

to the litigant at the first trial would provide a basis for denying preclusion where it appears the

evidence would have a significant effect on the outcome.'"[269]

Second, the issues in the two proceedings are not identical.  Vidocq seeks to preclude

McGuffin from litigating the issue of whether misconduct by Vidocq/Walter caused McGuffin

harm.[270]  Vidocq erroneously asserts that the "fundamental issue" in the post-conviction case was

whether McGuffin was wrongfully convicted and who caused that conviction.[271]  Vidocq is

wrong.  Causation is not at issue in Oregon post-conviction proceedings.[272]  The issue in post-

conviction proceedings is whether there was a substantial denial of constitutional rights in the

underlying criminal case.[273]  To justify relief, the post-conviction court must determine that the

---

[269] *Hayes Oyster Co. v. Dulcich*, 199 Or. App. 43, 51, 110 P.3d 615 (2005) (quoting *State Farm v. Century Home,* 275 Or. 97, 108–09, 550 P.2d 1185 (1976)); *see also id.* (declining to apply preclusion where additional evidence of defendant's misconduct was revealed in subsequent discovery); *Woods by & through Wade v. City of Reno, Nevada*, No. 316CV00494MMDVPC, 2018 U.S. Dist. LEXIS 8596, at *12 (D. Nev. Jan. 18, 2018) (declining to apply preclusion where, among other things, the plaintiff contended the "Defendants withheld pertinent, exculpatory facts from the state district court during Plaintiff's trials" which counseled against finding preclusion because it is an equitable doctrine (citing *Montana v. United States*, 440 U.S. 147, 159 (1979) ("It is, of course, true that changes in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action raising the same issues.")).
[270] Vidocq's Motion for Summary Judgment at 56–57 [Dkt. No. 287].
[271] *Id.* at 51.
[272] *Cf. Cox v. Premo,* 297 Or. App. 302, 314, 440 P.3d 81 (2019) (citing *Green v. Franke*, 357 Or. 301, 322–23, 350 P.3d 188 (2015)).
[273] ORS 138.530.  *See also* Plaintiffs' Opposition to Motion to Dismiss by City/County

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

denial of constitutional rights resulted in prejudice.  The prejudice standard is not the same as proof of causation by a preponderance.  For example, for claims arising out of the ineffective assistance of criminal counsel, the petitioner must prove that counsel's acts or omissions had "a tendency to affect the outcome" of the proceedings.[274]  Causation is not the question.  The question is the "tendency" to affect the outcome.  Under Ninth Circuit authority, "[s]imilarity between issues is not sufficient; collateral estoppel is applied only when the issues are identical."[275]  In addition, under Oregon law, collateral estoppel "does not apply where the burden of proof is higher in the second proceeding than it was in the first."[276]  The standard for relief in post-conviction proceedings is lower and substantively different from the standard to prove proximate cause by a preponderance of evidence in a civil case such as this one.[277]

Third, the question of whether Vidocq/Walter caused McGuffin harm *could not* be litigated in post-conviction proceedings as a matter of law.  Vidocq/Walter and the Municipal Defendants raised the issue of claim preclusion in their motion to dismiss in this case, and the Court denied the motions on the ground that "there is no identity of claims between McGuffin's

---

Defendants at 32 [Dkt. No. 51] (addressing Oregon post-conviction law).

[274] *Cox,* 297 Or. App. at 31.  Similarly, for claims arising out of a *Brady* violation, the petitioner must prove that "had the evidence been disclosed to the defense, the result of the proceeding would have been different," and for claims arising out of a conviction obtained through use of false evidence, the petitioner must prove that there is a "reasonable likelihood that the false testimony could have affected the judgment of the jury."  *Tiner v. Premo*, 284 Or. App. 59, 71, 391 P.3d 816 (2017).  None of these standards to prove prejudice require proof that any individual "caused" harm.

[275] *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).

[276] *Lucke v. Multnomah Cnty.*, 2008 U.S. Dist. LEXIS 71861, at **55–56 (D. Or. Sept. 22, 2008).

[277] *See Cox*, 297 Or. App. at 31 (petitioner entitled to post-conviction relief where the petitioner establishes "more than mere possibility, but less than probability" that trial counsel's acts or omissions "*could have* tended to affect the outcome of the case"). (emphasis added).

MALONEY | LAUERSDORF | REINER PC
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

claims for post-conviction relief and this action[.]"[278]  Vidocq attempts to circumvent the Court's prior order by re-characterizing the question as "issue preclusion" instead of "claim preclusion."[279]  But the same reasoning applies.  As McGuffin explained in opposition to the motions to dismiss, a post-conviction petitioner has no right to raise a claim for relief against any defendant other than the superintendent of the Department of Corrections' facility where the post-conviction petitioner is imprisoned.[280]  The post-conviction court could not, as a matter of law, address the issue of whether Vidocq/Walter caused McGuffin harm because the post-conviction court could not, by statute, hear any claims against Vidocq/Walter.[281]  The issue of whether Vidocq/Walter caused McGuffin harm has never been litigated in any court in any jurisdiction.[282]

Fourth, the issue of whether Vidocq/Walter caused McGuffin harm was never "actually litigated" and did not result in a "final decision on the merits," as required to satisfy the second element of collateral estoppel.[283]  Vidocq concedes that issues relating to Vidocq's misconduct were not presented at trial in the post-conviction proceedings.[284]  Nonetheless, Vidocq argues that the voluntary dismissal of claims prior to summary judgment in the post-conviction

---

[278] Findings and Recommendations dated July 27, 2021, at 23 [Dkt. No. 83].
[279] Vidocq's Motion for Summary Judgment at 50 [Dkt. No. 287].
[280] *See* Plaintiffs' Opposition to Motion to Dismiss by City/County Defendants at 32 [Dkt. No. 51].
[281] *Id.  See also* Vidocq's Motion for Summary Judgment at 55 n.121 ("Notably, these allegations are not directed to Vidocq—but to the State.") [Dkt. No. 287].
[282] The Fourth Circuit recently reversed a district court's decision to apply collateral estoppel in a section 1983 case where the misconduct had never been litigated in a civil suit, because doing so "would impose an unfair and inequitable result that is inconsistent with the doctrine." *Washington v. Pellegrini*, 2025 U.S. App. LEXIS 185, *23 (4th Cir. Jan. 6, 2025).
[283] *Nelson v. Emerald People's Util. Dist.*, 318 Or. 99, 104, 862 P.2d 1293 (1993) (citations omitted).
[284] Vidocq's Motion for Summary Judgment at 55–56 [Dkt. No. 287].

MALONEY | LAUERSDORF | REINER rc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

proceedings estops McGuffin from bringing claims against Vidocq in the present case.[285]

Collateral estoppel, however, requires that the issue be actually litigated and essential to a final

decision on the merits in the prior proceeding.[286]  It is well-established in the Ninth Circuit that

"[a] voluntary dismissal of a claim prior to any adjudication and without any stipulated findings

of fact does not actually litigate any issue."[287]

Significantly, Vidocq wrongly asserts that McGuffin "agreed" with the State's argument

in the post-conviction proceedings that there was no evidence to support the claim that the State

failed to disclose materials relating to Vidocq's involvement.[288]  Vidocq does not offer evidence

of any such agreement.  Vidocq, instead, concedes that McGuffin voluntarily dismissed the

claim.[289]  A voluntary dismissal under Oregon law is without prejudice and cannot, by definition,

constitute a "final decision on the merits."[290]  Collateral estoppel applies where a party *actually*

litigated an issue to final judgment, not where the party chooses *not* to litigate that issue.[291]

Collateral estoppel cannot apply, and the Court should deny the motion.

*       *       *

///

///

---

[285] *Id.* at 56.
[286] *Nelson*, 318 Or. at 104 (citations omitted).
[287] *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1159 (9th Cir. 2002).  *See also Shore v. Shore*, No. C09-848Z, 2011 U.S. Dist. LEXIS 25571, at *4–5 (W.D. Wash. Mar. 10, 2011).  *Cf. Rawson*, 2022 U.S. Dist. LEXIS 169885, at **15–16.
[288] Vidocq's Motion for Summary Judgment at 55 [Dkt. No. 287].
[289] *Id.*
[290] Or. R. Civ. P. 54(A)(1).
[291] *See In re Gygi*, 273 Or. at 447 ("The doctrine of collateral estoppel acts as a restraint on the relitigation of issues already adjudicated.  It proceeds upon the premise that, in the absence of a showing of actual unfairness, one who has had a full, complete and fair opportunity to litigate an issue upon which his rights depend, and has lost, need not be granted a second opportunity to contest that issue.").  Vidocq appears to understand the problem with its own argument.  *See* Vidocq's Motion at 57 n.129 [Dkt. No. 287].

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Finally, Vidocq (and Walter) ask the Court to take judicial notice of documents from the underlying criminal and post-conviction cases.[292]  Federal Rule of Evidence 201 governs judicial notice of adjudicative facts, permitting courts to take notice of a fact that is not subject to reasonable dispute because it is either generally known within the court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.  Vidocq asks the Court to judicially notice transcripts of trial testimony and depositions, briefing, and even correspondence.   Some of those documents include the very evidence Plaintiffs contend was fabricated.  Plaintiffs do not object to judicial notice of the *existence* of those documents.  This Court cannot, however, take judicial notice of the *facts* recited in those documents,[293] and Plaintiffs object to Vidocq's request.

///

///

///

///

///

///

///

---

[292] Vidocq's Motion for Summary Judgment at 57 [Dkt. No. 287].

[293] *See Williams v. Alameda Cnty.*, 642 F. Supp. 3d 1001, 1014 (N.D. Cal. 2022) (declining to take judicial notice of disputed facts in declarations on summary judgment); *Bank of N.Y. Mellon v. Davidson*, No. 1:17-cv-01335-DAD-EPG, 2019 U.S. Dist. LEXIS 138460, at **12–13 (E.D. Cal. Aug. 15, 2019) ("A court may take judicial notice of a public record not for the truth of the facts recited therein, but for the existence of the document.  It is unclear to the court why plaintiff seeks judicial notice of documents identified above.  At the summary judgment stage, these documents could have been attached to the moving papers without judicial notice. . . . Moreover, if the court took judicial notice, it would only notice the existence of the documents, and not the truth of any facts asserted therein.  Finding no reason to take judicial notice at this stage of the litigation, the court denies plaintiff's request for judicial notice, but will consider the documents identified above as admissible evidence submitted in support of plaintiff's motion for summary judgment.") (citations omitted).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

## VI. CONCLUSION

Based upon the foregoing, Plaintiffs request the Court deny Vidocq's motion for

summary judgment.

DATED: February 18, 2025

| MALONEY LAUERSDORF REINER PC | LOEVY & LOEVY |
|---|---|
| By /s/Janis C. Puracal<br>  Janis C. Puracal, OSB #132288<br>  E-Mail: jcp@mlrlegalteam.com<br>  Andrew C. Lauersdorf, OSB #980739<br>  E-Mail: acl@mlrlegalteam.com | By /s/David B. Owens<br>  David B. Owens, WSBA #53856<br>  E-Mail: david@loevy.com<br>  *Pro hac vice* |

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable page limitation under Dkt. No. 271 because it contains less than 50 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2025, the foregoing RESPONSE TO VIDOCQ'S MOTION FOR SUMMARY JUDGMENT was served on the following parties at the following address by sending to them a true copy thereof via the method indicated below:

| | |
|---|---|
| Robert E. Franz, Jr.<br>Sarah R. Henderson<br>Law Office of Robert E. Franz, Jr.<br>PO Box 62<br>Springfield, OR 97477<br>rfranz@franzlaw.comcastbiz.net<br>shenderson@franzlaw.comcastbiz.net<br>    *Attorneys for Defendants*<br>    *City of Coquille, City of Coos Bay, Coos*<br>    *County, Craig Zanni, Chris Webley, Eric*<br>    *Schwenninger, Sean Sanborn, Ray McNeely,*<br>    *Kris Karcher, Pat Downing, Mark Dannels,*<br>    *Kip Oswald, Michael Reaves, David Zavala,*<br>    *Anthony Wetmore, Shelly McInnes* | Jesse B. Davis<br>Todd Marshall<br>Kristen Hoffmeyer<br>Oregon Department of Justice<br>100 SW Market Street<br>Portland, OR 97201<br>todd.marshall@doj.state.or.us<br>jesse.b.davis@doj.state.or.us<br>kristen.hoffmeyer@doj.state.or.us<br>    *Attorneys for Defendants Oregon State*<br>    *Police, John Riddle, Susan Hormann,*<br>    *Mary Krings, Kathy Wilcox* |
| Anthony R. Scisciani III<br>Kelsey L. Shewbert<br>Meredith A. Sawyer<br>Lisa Lear<br>HWS Law Group<br>101 SW Main Street, Suite 1605<br>Portland, OR 97204<br>ascisciani@hwslawgroup.com<br>kshewbert@hwslawgroup.com<br>msawyer@hwslawgroup.com<br>llear@hwslawgroup.com<br>    *Attorneys for Defendant Vidocq Society* | Eric S. DeFreest<br>Luvaas Cobb<br>777 High Street, Ste. 300<br>Eugene, OR 97401<br>edefreest@luvaascobb.com<br><br>Laura E. Coffin<br>Coffin Law<br>541 Willamette Street, Ste. 211<br>Eugene, OR 97401<br>lauracoffin@coffin.law<br>    *Attorneys for Defendant Richard*<br>    *Walter* |

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

☒ by electronic means through the Court's ECF System on the date set forth above.

MALONEY LAUERSDORF REINER PC


By  /s/Janis C. Puracal
    Janis C. Puracal, OSB #132288
    E-Mail:  jcp@mlrlegalteam.com

Attorneys for Plaintiffs

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417