Kip D. Oswald
December 22, 2021

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| NICHOLAS JAMES MCGUFFIN, as an individual and as guardian ad litem, on behalf of S.M., a minor, | ) )<br>) Civil No.<br>) 6:20-cv-01163-MK |
| Plaintiffs, | )<br>) VIDEOCONFERENCE<br>) DEPOSITION |
| v. | ) ) |
| MARK DANNELS, PAT DOWNING, SUSAN HORMANN, MARY KRINGS, KRIS KARCHER, SHELLY MCINNES, RAYMOND MCNEELY, KIP OSWALD, MICHAEL REAVES, JOHN RIDDLE, SEAN SANBORN, ERIC SCHWENNINGER, RICHARD WALTER, CHRIS WEBLEY, ANTHONY WETMORE, KATHY WILCOX, CRAIG ZANNI, DAVID ZAVALA, ESTATE OF DAVE HALL, VIDOCQ SOCIETY, CITY OF COQUILLE, CITY OF COOS BAY, COOS COUNTY, and OREGON STATE POLICE, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

DEPOSITION UPON ORAL EXAMINATION

OF KIP D. OSWALD

Kip D. Oswald
December 22, 2021

Page 2

1    BE IT REMEMBERED THAT, pursuant to the Oregon Rules of
2  Civil Procedure, the deposition of KIP D. OSWALD, an
3  adverse-party witness, was taken remotely via videoconference
4  on behalf of the Plaintiffs, before JEAN M. KOSTNER, a
5  Certified Court Reporter for Oregon, on Wednesday, the 22nd day
6  of December, 2021, at the hour of 9:00 a.m., in the State of
7  Oregon.

Page 3

            APPEARANCES

ON BEHALF OF THE PLAINTIFFS:

       Janis C. Puracal, OSB #132288
       Andrew C. Lauersdorf, OSB #980739
       Christine A. Webb, OSB #184744
       MALONEY LAUERSDORF, REINER, PC
       1111 East Burnside Street, Suite 300
       Portland, Oregon  97214
       (503) 245-1518
       jcp@mlrlegalteam.com
       acl@mlrlegalteam.com
       caw@mlrlegalteam.com
ON BEHALF OF THE DEFENDANTS:
       Sarah R. Henderson
       LAW OFFICE OF ROBERT E. FRANZ, JR.
       Post Office Box 62
       Springfield, Oregon  97477
       (541) 741-8220
       shenderson@franzlaw.comcastbiz.net
         (Representing City of Coquille, City of Coos Bay,
         Coos County, Craig Zanni, Chris Webley, Eric
         Schwenninger, Sean Sanborn, Ray McNeely, Kris
         Karcher, Pat Downing, Mark Dannels, Kip Oswald,
         Michael Reaves, David Zavala, Anthony Wetmore,
         Shelly D. McInnes)

       Jesse B. Davis
       OREGON DEPARTMENT OF JUSTICE
       100 Southwest Market Street
       Portland, Oregon  97201
       (503) 947-4700
       jesse.b.davis@doj.state.or.us
         (Representing Oregon State Police, John Riddle,
         Susan Hormann, Mary Krings, Kathy Wilcox)
       Karin L. Schaffer
       WOOD SMITH HENNING & BERMAN LLP
       12755 Southwest 69th Avenue, Suite 100
       Portland, Oregon  97223
       (971) 256-4023
       kschaffer@wshblaw.com
         (Representing Vidocq Society and Richard Walter)

Page 4

1  ALSO PRESENT:
2       Nick McGuffin
3
   REPORTED BY:
4
         Jean M. Kostner, CSR #90-0051
5       Subcontractor for:
            US LEGAL SUPPORT

Page 5

                INDEX OF TESTIMONY

WITNESS                                                PAGE
   KIP D. OSWALD
       Examination by Ms. Puracal . . . . . . . . .     7
       Examination by Mr. Davis . . . . . . . . .    251


                                             PAGE    LINE

Objection marked                              248      4



              REQUESTS FOR INFORMATION

Information Requested by Ms. Puracal:         PAGE    LINE

    Picture taken of shoe in 2021              144      9

Kip D. Oswald
December 22, 2021

Page 6

```
 1              INDEX OF EXHIBITS
 2  DEPOSITION
 3  EXHIBIT NO.      DESCRIPTION              IDENTIFIED
 4
 5  Exhibit 1   Photo of Bent Arm Takedown         83
 6  Exhibit 4   Google Earth - Lone Pine Lane 1   135
 7  Exhibit 5   Google Earth - Lone Pine Lane 2   136
 8  Exhibit 9   Google Earth - Marked             140
 9  Exhibit 11  North Bend Police Department Incident
                Report, No. 20011114, 07/05/00  (34 pages)  212
10
    Exhibit 12  Coos County Sheriff's Office Incident
11              Narrative, No. 20-10627, 07/05/00  (17 pages)  171
12  Exhibit 13  Coos County Sheriff's Office Incident
                Report, Property Found, 07/05/00   172
13
    Exhibit 14  Coos County Sheriff's Office Incident
14              Report, Property Found, 07/07/00   177
15  Exhibit 15  Coos County Sheriff's Office Incident
                Narrative, No. so20012968, 08/21/00
16              (5 pages)                          192
17  Exhibit 16  Coos County Sheriff's Office Incident
                Narrative, No. so20013001, 08/22/00
18              (3 pages)                          201
19  Exhibit 17  Photographs                        203
20  Exhibit 18  Photographs                        205
21  Exhibit 19  Coos County Sheriff's Office Incident
                Narrative, No. 20-12118, 08/01/00
22              (5 pages)                          220
23  Exhibit 22  Video Taken by Kip Oswald          233
24
25
```

Page 7

```
 1              KIP D. OSWALD,
 2  called as a witness on behalf of the Plaintiffs, having been
 3  first duly sworn to tell the truth, the whole truth, and
 4  nothing but the truth, was examined and testified as follows:
 5          THE WITNESS:  Yes, I do.
 6                  EXAMINATION
 7  BY MS. PURACAL:
 8      Q.  Good morning, Mr. Oswald.  I'm Janis Puracal.  I'm
 9  one of the attorneys representing the plaintiffs in this
10  matter, Mr. McGuffin and his daughter.  Do you understand that
11  this is a lawsuit that you are testifying in today?
12      A.  Yes.
13      Q.  Can you give us your full name as given at birth?
14      A.  Kip Darwin Oswald.
15      Q.  Can you spell the middle name for me.
16      A.  D-A-R-W-I-N.
17      Q.  Have you ever changed your name?
18      A.  No.
19      Q.  Have you ever used a nickname?
20      A.  A lot of people call me a lot of things, some
21  better than others.  No.  I've just used Kip.
22      Q.  Have you ever used an alias?
23      A.  No.
24      Q.  Can you give me your place and date of birth.
25      A.  Coos Bay, Oregon, at McAuley Hospital.  And the
```

Page 8

```
 1  date?
 2      Q.  Yes, please.
 3      A.  That's May 28th, 1953.
 4      Q.  And can you give me the current address.  A work
 5  address is fine.
 6      A.  My current address is 1795 Pennsylvania Avenue,
 7  Coos Bay, Oregon.  I'm retired.
 8      Q.  Is that a home address rather than a work address?
 9      A.  What was the -- a work address, did you say?
10      Q.  I said is that a home address rather than a work
11  address?
12      A.  Yes.  I don't work.  I'm retired.
13          COURT REPORTER:  Could I interrupt?
14          MS. PURACAL:  Yes.
15          COURT REPORTER:  Sorry.  I did not hear the name of
16  the hospital.
17          THE WITNESS:  Oh, it's McAuley Hospital.  It no
18  longer exists.
19  BY MS. PURACAL:
20      Q.  And I understand, Mr. Oswald, that you are
21  currently retired.  Who was your last employer?
22      A.  North Bend Police Department.
23      Q.  What was your title there?
24      A.  I was patrol officer, police officer.
25      Q.  What is your DPSST number?
```

Page 9

```
 1      A.  I think it's 08674.
 2      Q.  And you understand that you're here today to be
 3  deposed.  Do you understand that?
 4      A.  I'm not sure exactly what "deposed" means, but ...
 5      Q.  So I'll back up a little bit.  This is a deposition
 6  in a lawsuit.  Do you understand that?
 7      A.  I do.
 8      Q.  Okay.  And you understand that we are recording
 9  this deposition through a court reporter, Ms. Kostner.  Do you
10  understand that?
11      A.  Yes, ma'am.
12      Q.  And the deposition today is being conducted over a
13  remote Zoom platform.  Do you understand that?
14      A.  Yes.
15      Q.  Will you state the current -- your current location
16  for the record?
17      A.  My current location?  I'm at Mill Casino, in Coos
18  Bay.
19      Q.  I understand Ms. Henderson, your attorney, is in
20  the room with you.  Is there anyone else in the room with you
21  today?
22      A.  No.
23      Q.  Are there any electronic devices in the room with
24  you other than the computer that you're using to talk to me?
25      A.  Just the one that I have and the one that she has,
```

Kip D. Oswald
December 22, 2021

Page 62
1  (Discussion off the record.)
2  MS. PURACAL:  We can go back on the record.
3  BY MS. PURACAL:
4  Q.  Okay.  So you mentioned the training from Pierce
5  Brooks, that it included some information about what to collect
6  and how to handle evidence.  Do you remember any other
7  trainings that covered the collection of evidence?
8  A.  I think it's through your whole career.  I mean,
9  you get it when you go through your training manuals, and of
10 course, I went through three different sets of training
11 manuals.  And that case -- we probably even had a course on
12 collecting evidence.  I don't -- I can't remember.
13 Q.  When you say you probably had a course on
14 collecting evidence, do you mean at the academy, or is that
15 something different?
16 A.  No.  Probably in-house.
17 Q.  Was that through Coos County?
18 A.  I'm just guessing, but I think that's probably a
19 fair assessment that that probably occurred sometime.
20 Q.  Did you get specific training on how to preserve
21 evidence?
22 A.  Yes.
23 Q.  Do you remember that training?  I mean, do you have
24 an independent recollection of attending that type of training?
25 A.  No.

Page 63
1  Q.  Did you get specific training on how to document
2  evidence at a crime scene?
3  A.  Yes.
4  Q.  Do you have an independent recollection of what
5  that training was, where that was, and when it was?
6  A.  No.
7  Q.  Was there any kind of an ethics policy at Coos
8  County when you were there?
9  A.  Yes.
10 Q.  Do you remember whether it was written?
11 A.  It was written like a model, and, um, it's -- there
12 is a policy, yes.  It's in the policies and procedures manual.
13 Q.  Is that a manual that you were given when you
14 started at Coos County Sheriff's office?
15 A.  That's your training manuals, your policies and
16 procedures manual.
17 Q.  So it's something physical that they handed to you.
18 Is that right?
19 A.  I don't know if I got to -- got to keep that or
20 not.  I believe so.
21 Q.  If you got to keep that, do you -- do you have any
22 memory about where you kept it?
23 A.  No.
24 Q.  Was that something that you would just have in an
25 office?

Page 64
1  A.  You know, I -- I think I had a notebook with it in
2  there.
3  Q.  A notebook.  When you say "notebook," are you
4  talking about, like, a three-ring binder?
5  A.  Yes.
6  Q.  Where would you take that?  I mean, did you have an
7  office at Coos County Sheriff's Office, or is that something
8  you would just take home with you?
9  A.  When I -- when I was a patrol officer I -- or
10 deputy, I carried it in my -- with my other stuff in my trunk.
11 And then when I became a supervisor, I had it on my desk, I
12 believe.
13 Q.  Is that something that every officer had?
14 A.  I think everybody gets a copy of it when they --
15 when they go to work there, yes.
16 Q.  Do you know whether you have to give that back when
17 you leave the office?
18 A.  I don't remember.
19 Q.  Do you remember whether there were any policies or
20 procedures, whether it's in that manual or elsewhere, on
21 report-writing?
22 A.  Oh, yes.  Report-writing was covered, yes.  It's in
23 your --
24 Q.  Was that -- go ahead.  Sorry.
25 A.  It's in your training manual.

Page 65
1  Q.  Do you know if there were any policies and
2  procedures on making statements to the press?
3  A.  I don't remember that.
4  Q.  Do you know whether there were any policies and
5  procedures on Brady obligations?
6  A.  I never heard of Brady until recently.  I don't
7  even know what it was.
8  Q.  When did you recently hear of Brady?
9  A.  Within the last month or two.
10 Q.  What was the context in which you heard about
11 Brady?
12 A.  My name was used on Facebook saying that I was a
13 Brady person.
14 Q.  Can you tell me a little bit more about that?
15 A.  That's all it said.  My name was on there.  It
16 was -- some woman wrote about people involved in this case
17 saying that they were Brady for this and Brady for that, but
18 they never explained why I was Brady, or if I -- if it was even
19 the truth.  I still don't know.
20 Q.  What was your understanding of Brady?
21 A.  I don't understand it at all.  That's the first I
22 had heard of it, and my understanding is that you do something
23 wrong or something to get on this list.  I -- that's all I
24 know.
25 Q.  And I'm understanding that that's only been your

Page 66
1 understanding in the last month or so.  Is that right?
2     A.    That's correct.
3     Q.    So before that you didn't have any understanding of
4 Brady.  Is that right?
5     A.    No.
6     Q.    I guess I want to make sure that we're clear for
7 the transcript here.  I asked before, about a month ago, you
8 didn't have any understanding of Brady, and you responded "No."
9 And so I just want to make sure it's clear.  "No," you did not
10 have any understanding of Brady, or "No," I'm wrong on that?
11     A.    No, I didn't have any understanding of Brady.
12     Q.    Did your policies and procedures at Coos County
13 address your obligation to disclose evidence to the defendant
14 in a case?
15     A.    Disclose it to a defendant?  I don't know.  I -- I
16 would -- if I'm interviewing somebody or something, I would
17 disclose sometimes what I had and stuff.  I always felt that
18 that was -- before a case, that his attorney or their attorney
19 were welcome to that information.
20     Q.    Let me ask a better question.  I'm trying to
21 understand whether you had any policies or procedures on
22 disclosing things like reports, notes, anything like that to a
23 defendant who has been charged in a criminal case.  Do you have
24 any policy on that?
25     A.    I guess what I'm getting confused on here a little

Page 67
1 bit is what -- at what time are you saying that it would be
2 available to you?  Are you saying while I'm investigating the
3 case, right at the point of the time where I make -- I mean,
4 there's times where you don't want to divulge information that
5 you have because it ruins the case.  And you may not ever get
6 to the truth if you let that out.  So I'm kind of -- are you
7 talking about before they go to court?
8     Q.    That's a good clarification.  So let's talk about
9 the time once an individual has been charged with a crime or
10 indicted for a crime and then that case is going to go to
11 prosecution.  Did you have any policies and procedures on
12 disclosing reports and notes and evidence at that point in
13 time?
14     A.    I don't remember if that's actually in there, but I
15 believe they have the right to the information to defend
16 themselves.  I mean, we're not there to railroad people.  We're
17 there to get the facts.
18     Q.    And was that your understanding when you were at
19 Coos County Sheriff's Office as well?
20     A.    Yes.
21     Q.    In June of 2000, did you have a regular shift that
22 you were working at Coos County Sheriff's Office?
23     A.    I believe I was working the night shift at that
24 time.  I'm not positive.  I think so.
25     Q.    Was that always the case day after day where you

Page 68
1 were you working the night shift, or did it flip-flop?
2     A.    It was usually on a three-month rotation.  You
3 would work three months of nights and then three months of
4 days.
5     Q.    Do you remember the time when shift would start and
6 end?
7     A.    I don't.  Wow.
8     Q.    Did you always work with the same other officers on
9 shift?
10     A.    No.  We would rotate -- rotate with the same ones
11 sometimes but not always.
12     Q.    Who were you generally working with on shift in
13 June of 2000 at Coos County Sheriff's Office?
14     A.    I don't remember.
15     Q.    Do you remember who your supervising officer was?
16     A.    I'm going to guess that it might have been Larry
17 Leader.
18     Q.    If you were working night shift, would you have one
19 supervising officer, and then when you rotated to day shift,
20 would you have a different supervising officer, or did you
21 always have the same supervising officer?
22     A.    Well, again, you might rotate with that supervisor,
23 or you may not.  And, of course, during the daytime you had
24 other superiors there, like the sheriff, and you had detectives
25 that oversaw some of the stuff, and more sergeants.  If it was

Page 69
1 not a sergeant, then detectives; and there was a captain there
2 sometimes.
3     Q.    So in your role -- and, I apologize, you might have
4 said this.  In June of 2000 had you already become a sergeant,
5 or were you still a corporal?
6     A.    I don't remember.  I don't -- I don't think I was a
7 sergeant yet.  I'm not sure.
8     Q.    So you -- your direct supervising officer -- if you
9 were a corporal, is your direct supervising officer the
10 sergeant?
11     A.    Yeah.  Even if I was a corporal, the director would
12 be sergeant, yes.  But there were a lot of times where the
13 corporal would be in charge also because there wouldn't be a
14 sergeant.
15     Q.    There wouldn't be a sergeant on a particular shift
16 or just no sergeant at all?
17     A.    Wouldn't be a sergeant on that particular shift at
18 that time.
19     Q.    In June of 2000, the individual who is now Sheriff
20 Zanni was a sergeant.  Do you remember that?
21     A.    Yes.
22     Q.    Was Sergeant Zanni at that time ever your
23 supervising officer?
24     A.    No.  I believe he was a sergeant of detectives.
25     Q.    So you did not report to Sergeant Zanni.  Is that

```
                                              Page 254
 1           DECLARATION UNDER PENALTY OF PERJURY
 2
 3        I, KIP D. OSWALD, do hereby certify under
 4   penalty of perjury that I have read the foregoing
 5   transcript of my deposition taken on December 22, 2021;
 6   that I have made such corrections as appear noted on the
 7   Deposition Errata Page, attached hereto, signed by me;
 8   that my testimony as contained herein, as corrected, is
 9   true and correct.
10
11        Dated this _____day of_____,
12   20____, at _____, _____.
13
14
15
16        _____
17             KIP D. OSWALD
18
19
20
21
22
23
24
25
```

```
                                              Page 255
 1              DEPOSITION ERRATA SHEET
 2   Page No._____ Line No._____
 3   Change:_____
 4   Reason for change:_____
 5   Page No._____ Line No._____
 6   Change:_____
 7   Reason for change:_____
 8   Page No._____ Line No._____
 9   Change:_____
10   Reason for change:_____
11   Page No._____ Line No._____
12   Change:_____
13   Reason for change:_____
14   Page No._____ Line No._____
15   Change:_____
16   Reason for change:_____
17   Page No._____ Line No._____
18   Change:_____
19   Reason for change:_____
20   Page No._____ Line No._____
21   Change:_____
22   Reason for change:_____
23
24   _____    _____
25   KIP D. OSWALD                       Dated
```

```
                                              Page 256
 1   STATE OF OREGON    )
                        )   ss.  C E R T I F I C A T E
 2   County of Douglas  )
 3
 4        I, JEAN M. KOSTNER, Certified Shorthand Reporter for the
 5   state of Oregon, do hereby certify that:
 6        Pursuant to stipulation of counsel for the respective
 7   parties, hereinbefore set forth, KIP D. OSWALD, appeared
 8   remotely before me via zoom videoconference at the time and
 9   place set forth in the caption hereof;
10        That, at said time and place, I reported in stenotype
11   all testimony adduced and oral proceedings had in the foregoing
12   matter, to the best of my ability;
13        That, thereafter, my notes were reduced to typewriting,
14   and that the foregoing transcript, pages 1 through 253, both
15   inclusive, constitutes a full, true, and correct transcript of
16   all such testimony adduced and oral proceedings had and of the
17   whole thereof.
18        IN WITNESS WHEREOF, I have hereunto set my hand and CSR
19   stamp this 14th day of January, 2022, in the City of Roseburg,
20   County of Douglas, State of Oregon.
21                    /s/ Jean M. Kostner
22
                      _____
23                    JEAN M. KOSTNER
                      Certified Court Reporter
24                    CSR No. 90-0051
25
```