Robert Paul Frasier
August 29, 2023

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| NICHOLAS JAMES MCGUFFIN, as an individual and as guardian ad litem, on behalf of S.M., a minor, | ) ) ) ) | Civil No. 6:20-cv-01163-MK (Lead Case) |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| MARK DANNELS, PAT DOWNING, SUSAN HORMANN, MARY KRINGS, KRIS KARCHER, SHELLY MCINNES, RAYMOND MCNEELY, KIP OSWALD, MICHAEL REAVES, JOHN RIDDLE, SEAN SANBORN, ERIC SCHWENNINGER, RICHARD WALTER, CHRIS WEBLEY, ANTHONY WETMORE, KATHY WILCOX, CRAIG ZANNI, DAVID ZAVALA, JOEL D. SHAPIRO AS ADMINISTRATOR OF THE ESTATE OF DAVID E. HALL, VIDOCQ SOCIETY, CITY OF COQUILLE, CITY OF COOS BAY, and COOS COUNTY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | DEPOSITION |
| Defendants. | ) ) | |
| VIDOCQ SOCIETY, | ) ) | |
| Cross-Claimant, | ) ) | |
| v. | ) ) | |
| MARK DANNELS, PAT DOWNING, SUSAN HORMANN, MARY KRINGS, KRIS KARCHER, SHELLY MCINNES, RAYMOND MCNEELY, KIP OSWALD, MICHAEL REAVES, JOHN RIDDLE, SEAN SANBORN, ERIC SCHWENNINGER, RICHARD WALTER, CHRIS WEBLEY, ANTHONY WETMORE, KATHY WILCOX, CRAIG ZANNI, DAVID ZAVALA, JOEL D. SHAPIRO | ) ) ) ) ) ) ) ) ) ) | |

EXHIBIT 17
Page 1 of 9

Robert Paul Frasier
August 29, 2023

AS ADMINISTRATOR OF THE ESTATE    )
OF DAVID E. HALL, VIDOCQ          )
SOCIETY, CITY OF COQUILLE, CITY   )
OF COOS BAY, and COOS COUNTY,     )
                                  )
                                  )
              Cross-Defendants.)
_____    )
                                  )
NICHOLAS JAMES MCGUFFIN, as an    ) Civil Case No.
individual and as guardian ad     ) 3:21-cv-01719-MK
litem, on behalf of S.M. a        ) (Trailing Case)
minor,                            )
                                  )
              Plaintiffs,         )
                                  )
      v.                          )
                                  )
OREGON STATE POLICE,              )
                                  )
              Defendant.          )
_____    )

DEPOSITION UPON ORAL EXAMINATION

OF ROBERT PAUL FRASIER

    BE IT REMEMBERED THAT, pursuant to the Oregon Rules of

Civil Procedure, the deposition of ROBERT PAUL FRASIER was

taken on behalf of the Plaintiffs, before JEAN M. KOSTNER, a

Certified Court Reporter for Oregon, on Tuesday, the 29th day

of August, 2023, at the hour of 9:03 a.m., at the Coquille

Community Center, 105 North Birch Street, in the City of

Coquille, County of Coos, State of Oregon.

Robert Paul Frasier
August 29, 2023

inaccurate about your -- your meeting with Vidocq?

A.    Well, first off, I don't know what the initial PA stands for, but in the first paragraph, "The suspect was found to be deceptive on two polygraph tests," that's inaccurate because I was only aware of one.

Q.    Anything else?

A.    The third paragraph, "Richard says that the DA was very impressed and indicated that they now saw the case in a new light."  I don't recall ever saying I was impressed and that I saw this case in a new light.  Mr. Walters may have thought that, but I don't recall saying that.

Q.    Do you recall saying after the meeting that you thought you may have enough to indict?

A.    I don't recall telling that to anybody.

Q.    Okay.  Do you -- you talked about the initials PA. Do you recall discussing the concept of power-assertive murderers with Mr. Walter?

A.    That came from Mr. Walter.  And -- yeah, that came from him.

Q.    Okay.  And do you recall Vidocq recommending that given it was the 10th anniversary, some publicity might bring out some additional information?

A.    You know, I don't recall the Vidocq Society giving me any advice.  And, frankly, I was disappointed in the trip.

Q.    Okay.

EXHIBIT 17
Page 3 of 9

Robert Paul Frasier
August 29, 2023

A.    He wanted me to concentrate on Nick, and I said, "No, we're not going to do that.  We're going to do it the way I told you before.  We're going to present all angles on this case to the grand jury, and we're going to let the grand jury decide who should get indicted, if someone should get indicted, and who that should be."  He did not agree with my decision to handle the case that way.

Q.    Okay.  And who did he send from Vidocq to talk to you and try to persuade you to --

A.    It was Mr. Walter.

Q.    Mr. Walter?

A.    Yes.

Q.    Okay.  When did that meeting occur?

A.    It was --

MR. DAVIS:  Objection.  Assumes facts.

A.    When did I meet with Mr. Walter?

BY MR. LAUERSDORF:

Q.    Yeah.  You said there in your deposition that he sent somebody from the Vidocq Society to try to convince you to move forward with indicting Mr. McGuffin.

A.    That's correct.

Q.    And so I'm asking when did the meeting with the person from Vidocq take place -- or when did the communication with the person from Vidocq take place?

A.    It took place during the week that 20/20 was in

EXHIBIT 17
Page 4 of 9

Robert Paul Frasier
August 29, 2023

town.

Q.   Okay.

A.   And it was an afternoon.  I met with Mr. Walter at -- the chief asked me to meet with Mr. Walter in his office at Coquille PD.

Q.   Okay.  And how long did you meet with Mr. Walter?

A.   Oh, it was maybe a half hour.

Q.   Okay.  And what was Mr. Walter's message?

A.   He started off with, you know, "The chief wants you to do this."

And I told him, "Look, this is my decision.  That's a nonstarter.  I'm tired of people" -- this was the second person that had been put up to come and talk to me about, and I said, "It's not happening."  And that part of the conversation was very short and to the point.  I said, "I'm doing it my way.  Let's not even go down this road."

Q.   Okay.  Who was the second person that was sent to talk to you about that?

A.   Eric Schwenninger from Coquille -- or from Coos Bay PD and somebody else.  I forget who was with him.  They came and talked to me, and that was well before 20/20 was in town.

Q.   Okay.

A.   That was the first time.

MR. DAVIS:  I just want to clarify.  You had testified that Walter was the second.

EXHIBIT 17
Page 5 of 9

Robert Paul Frasier
August 29, 2023

Q.   That's Drake vs. Portuondo?

A.   Right.

Q.   Okay.

A.   In my mind, there had to have been an altercation at that scene because of the lost shoe and the blood on the other shoe and so forth.  There had to have been -- Leah had to have been bleeding for her blood to get on her shoes, so there had to be some altercation.  My argument was based on the facts of the case, not on anything that Mr. Walters told me.

Q.   Okay.  So let's go to Exhibit 2, CPD020533.

A.   Okay.

Q.   And that's the same day.  And I guess that gets back to you being concerned about crossing your t's and dotting your i's.  Do you see where I am at the top of the page there?

A.   Right.

Q.   It's a note about "Paul, make sure that the DNA profiles - Leah, Cory, and Denny samples; shoes from the bedroom belonging to Leah; Leah's clothing is still in England; there's a problem with customs; Nick's DNA sample, question mark; swabs of blood stains from Leah's shoes; need found shoes."

The DNA on the shoes is -- appears to be something that you're focused on at that point.  Is that right?

A.   No.  I think this is -- I'm focusing on the physical evidence that I would probably need to present at

EXHIBIT 17
Page 6 of 9

Robert Paul Frasier
August 29, 2023

Q.   And when you said "his theory," were you -- are you referring to his power-assertive theory?

A.   Yes.  His profile.  Yes.

Q.   Did you use that language in your prosecution of the McGuffin --

A.   No.

Q.   -- at the McGuffin trial?

A.   No.

Q.   "Power-assertive"?

A.   No.

Q.   Okay.  And you're saying that very stridently.  Why is that?

A.   Because I didn't want to have anything to do with Mr. Walter's theory when we got to trial.

Q.   And that's because you didn't find him particularly credible.  Is that correct?

A.   It didn't matter whether I found him particularly credible or not.  What mattered was what was in that court opinion.  And to me what was in that court opinion, whether it was true or not, ruined any opportunity for us to use him.

Q.   You testified a moment ago that it appeared he had reviewed material that had been already provided either to him or to the Vidocq Society before you got there.  Do I have that right?

A.   Yes.  Because he started right off the bat telling

EXHIBIT 17
Page 7 of 9

Robert Paul Frasier
August 29, 2023

A.   No.

Q.   What was discussed during dinner?

A.   We had kind of normal social talk, and then Mr. Walters began talking about how he had been working with Scotland Yard on the Jack the Ripper case, and he started -- and he must have talked for an hour about things he had done, things that they had found out, things along that line.

Q.   Did Mr. Walter prepare any sort of a written profile for use by your office or the Coquille Police Department with respect to the potential offender, murderer of Leah Freeman?

A.   The only thing he --

Q.   Anything in writing?

A.   The only thing he gave me in writing was the first article which he gave us in Pennsylvania, which he claimed had been published.  And he says, "I think this is the profile of the person you are looking for, and I think it fits Mr. McGuffin."  That's the only thing at that time he gave me.

And then when we had the meeting in the summertime when 20/20 came to town, I told him I had read the article and I said, "I don't think this thing fits Mr. McGuffin at all."

And that's when he handed me the second article, and said, "Well, I haven't published this yet, but this might be more what you need."

So the only things in writing he ever gave me were

EXHIBIT 17
Page 8 of 9

Robert Paul Frasier
August 29, 2023

STATE OF OREGON            )
                           )        ss.  C E R T I F I C A T E
County of Douglas          )


        I, JEAN M. KOSTNER, Certified Shorthand Reporter for the State of Oregon, do hereby certify that:

        Pursuant to stipulation of counsel for the respective parties, hereinbefore set forth, ROBERT PAUL FRASIER appeared before me at the time and place set forth in the caption hereof;

        That, at said time and place, I reported in stenotype all testimony adduced and oral proceedings had in the foregoing matter, to the best of my ability;

        That, thereafter, my notes were reduced to typewriting, and that the foregoing transcript, pages 1 through 251, both inclusive, constitutes a full, true, and correct transcript of all such testimony adduced and oral proceedings had and of the whole thereof.

        IN WITNESS WHEREOF, I have hereunto set my hand and CSR stamp this 12th day of September, 2023, in the City of Roseburg, County of Douglas, State of Oregon.

_____
JEAN M. KOSTNER
Certified Court Reporter
CSR No. 90-0051

EXHIBIT 17
Page 9 of 9