**EXHIBIT - 35**

**FILED DISTRICT COURT**
**Third Judicial District**

**JUN 20 2013**

SALT LAKE COUNTY

By_____

Deputy Clerk

HOBBS
&OLSON LC

June 19, 2013

Honorable Denise Lindberg
Third District Court,
450 South State Street
Salt Lake City Utah 84111                    VIA HAND DELIVERY

Re:   State of Utah v. Johnny Brickman Wall
      Case No.   131903972
      **Bail Reduction Hearing June 21, 2013 at 1:30 p.m.**

Dear Judge Lindberg:

I represent the deceased victim's oldest son and designee under
the Utah Rights of Crime Victims Act, Pelle von Schwedler Wall,
in the above case.  Utah Code Ann. 77-39-9(2).   We have asked
to be heard "on issues relating to whether to release [Dr.
Wall] . . ." on bail.  See Notice dated April 30, 2013; Utah
Code Ann. § 77-39-4(1)(d).

This matter was set for a Bail Reduction Hearing on Monday May
20, 2013.  In advance of that proceeding I hand delivered
materials for consideration by Judge Reese, who was scheduled
to preside that day.  Namely, I attached a Crime Assessment to
support my client's position that the defendant, Dr. Johnny
Wall, is a dangerous man likely to kill again.

The Crime Assessment was prepared by an expert witness I
retained during the discovery phase of a wrongful death case
involving these same facts.  *Wall v. Wall*, Civil No. 120907737.

After the first bail hearing was postponed, defense counsel
filed a Memorandum attacking the credibility of that expert,
Richard Walter, and challenging some of his factual
assumptions.

www.haolaw.com  |  PH.801.519.2555   |  ATTORNEYS AND COUNSELORS
                                FAX.801.519.2999  |  466 EAST 500 SOUTH, SUITE 300
                                                     SALT LAKE CITY, UT 84111-3350

VIDOCQ_000025

Judge Denise Lindberg
June 19, 2013
Page 2

_____


I will not propound the Crime Assessment at the bail hearing
this week, as we do not wish to interject any collateral issues
into what should be a straightforward determination on the
facts.

However, I feel compelled, on the record, to defend the
credentials and credibility of Richard Walter and therefore
submit the following relating to the "Drake Case" which has
been used to besmirch Richard Walter's reputation:

> The VIDOCQ Society investigated and cleared Richard
> Walter, a founding member, of wrongdoing.  *See* 6/6/13
> Fleisher Letter, Exhibit A.

> The American Academy of Forensic Sciences investigated and
> cleared Richard Walter, a fellow, of any ethics violation.
> See 6/15/13 and 2/2/96 Letters, Exhibit B.

> Factual rebuttal on the "Drake Case" compiled in the form
> of Peter Stephenson's 6/15/13 Letter and Attachment,
> Exhibit C.

We plan to appear at the bail hearing Friday and will
respectfully ask to be heard on "on issues relating to whether
to release [Dr. Wall] . . ." Our position is the same:  Dr.
Wall should be denied bail because he is a flight risk and a
substantial danger to others.

Very truly yours,

Margaret H. Olson, Esq.
Of Counsel

cc:    Fred Metos -- email
       Howard Lundgren -- email
       Paul Parker -- email
       Matthew Janzen -- email

Enclosures

VIDOCQ_000026

# EXHIBIT "A"

VIDOCQ_000027

# THE VIDOCQ SOCIETY

1704 Locust Street, Second Floor • Philadelphia, PA 19103
Phone (215) 545-1450 • Fax (215) 545-1773
www.vidocq.org

June 6, 2013

Margaret H. Olson
Hobbs & Olson, LC
Esquire of Counsel
Attorneys and Counselors
466 East 500 South, Suite 300
Salt Lake City, Utah 84111

Re: Richard Walter and the Drake Matter

Dear Ms. Olson:

Please let me introduce myself. I am Bill Fleisher, co-founder and commissioner of the Vidocq Society. I have known Richard Walter since 1990, when he, the late Frank Bender, and I met for lunch and subsequently co-founded the Vidocq Society (Society). The Vidocq Society is a 501c (3) Non-Profit social organization established to solve cold-case homicides.

Mr. Walter was very active in the Society for many years until there came a time when he was besmirched by an individual in regards to a double homicide, which has become to be known as the "Drake Case." The allegations were made against Mr. Walter in a Federal *habeas corpus* action in the State of New York that while testifying as an expert witness in the field of forensic profiling in a double homicide trial he perjured himself. A known professional foe of Mr. Walter, posted this on his blog.

To wit, in his habeas action, Drake alleged that Mr. Walter lied on the stand as to his qualifications and apparently gave a bogus diagnosis of the psychological aspect of the crime for which Drake was on trial. Specifically, Drake stated, as I recall, that when Mr. Walter testified at his trial, he was not a psychologist; exaggerated his experience of having viewed approximately 40,000 homicide cases while employed at the Los Angeles County Medical Examiner's Office, when in fact he was only employed as a lab technician. Further, when stating that he was an "adjunct" professor at of Michigan State University and having testified before as an expert in homicide cases we was exaggerating. In addition, Drake alleged when Mr. Walter testified that he, Drake, had been engaged "piquerism," when he repeated shot the victims with a rifle, that piquerism is a pseudo-scientific psychological classification which did not even exist at the time of trial

Mr. Walter himself immediately presented these allegations to the Society Board, perhaps, in June of 2003. Needless to say, the Board took these allegations seriously and there was much discussion how to deal with them and Mr. Walter's status in the Society. The Board

VIDOCQ_000028

decided Mr. Walter's membership status would be temporarily being placed in a suspended status, until the case was resolved in federal court and we could review the allegations.

In addition, we asked Mr. Walter to address each allegation, which he did to our satisfaction. After the Judge ruled in the Drake case, the Board revisited this matter and it was clear, notwithstanding the Judge's decision, it was the consensus of the Board that the allegations against Mr. Walter were unfounded and he was immediately restated as a full member of the Society.

In my personal and professional assessment of Richard Walter is that he did not lie when he testified in the initial Drake homicide trial. As for his expertise, I believe that he is an outstanding profiler who has an unbelievable record of accomplishment. He enjoys an excellent reputation among his colleagues and friends. The picture painted of him by the Judge in Drake matter is undeserved.

If you want to discuss this further with me, do not hesitate to call me.

Sincerely,

William L. Fleisher, CFE, VSM
Commissioner

# EXHIBIT "B"

VIDOCQ_000030



# AMERICAN ACADEMY OF FORENSIC SCIENCES

410 North 21ˢᵗ Street • Colorado Springs, CO 80904 • (719) 636-1100 • Fax (719) 636-1993

Haskell M. Pitluck
573 Lake Avenue
Crystal Lake, Illinois 60014
Phone: (815) 459-7192
Email: pitluck@mc.net

**Confidential Memorandum**

Richard D. Walter                                          June 15 , 2013
1879 Chenango Street
Montrose, PA 18801

Dear Mr. Walter,

It has come to the attention of the Ethics Committee of the American Academy of Forensic Sciences that there may be some confusion and/or misinformation regarding the status of any alleged ethics violation against you with the American Academy of Forensic Sciences.

The work of the Ethics Committee of the Academy is confidential unless and until a violation is found and acted upon by the Academy's Board of Directions. If no violation is found and sent to the Board by the Ethics Committee, the work of the Ethics Committee is not publicized. However, in order to clear up some misconceptions, the Ethics Committee will provide you with the following information.

As you know there was a previous case against you in 1996, wherein you received a letter from Ethics Committee Chair, Don Harper Mills, informing you there was no violation of the Academy's *Code of Ethics*.

In addition, you received a letter from me, as Committee Chair, dated November 28, 2003, in case #191, stating no violation of the Academy's *Code of Ethics and Conduct*.

Subsequent to that case, the Ethics Committee again received similar information as the two previous cases and no new case was opened, and there are no pending matters against you.

All of the information had to do with the 'Drake' case, in which you were involved and was substantially the same as dealt with in the first complaint in which no violations were found.

The Academy takes allegations of ethic violations very seriously and does not hesitate to act. No violations of the Academy's *Code of Ethics and Conduct* were found in any of the allegations against you.

I hope this will clear up any confusion that has arisen.

Sincerely,

Haskell M. Pitluck, Ethics Chair

Email: membship@aafs.org              Web Site: http://www.aafs.org              Federal ID Number: 87-0287045

VIDOCQ_000031



# AMERICAN ACADEMY OF FORENSIC SCIENCES
P.O. Box 669 • Colorado Springs • CO 80901-0669 • 719/636-1100 • Fax 719/636-1993

**OFFICERS 1995-1996**

PRESIDENT
Haskell M. Pitluck, J.D.
Woodstock, IL

PRESIDENT-ELECT
Richard Rosner, M.D.
New York, NY

PAST PRESIDENT
Steven C. Batterman, Ph.D.
Cherry Hill, NJ

VICE PRESIDENTS
Frankie E. Franck, M.F.B.
San Bruno, CA

Patricia J. McFeeley, M.D.
Albuquerque, NM

SECRETARY
Barry A.J. Fisher, M.S., M.B.A.
Los Angeles, CA

TREASURER
Michael A. Peat, Ph.D.
Overland Park, KS

**BOARD OF DIRECTORS**

CRIMINALISTICS
Ronald L. Singer, M.S.
Fort Worth, TX

ENGINEERING SCIENCES
David J. Schorr, P.E.
Abington, PA

GENERAL
Mary Fran Ernst, B.S.
St. Louis, MO

JURISPRUDENCE
Carol Henderson, J.D.
Ft. Lauderdale, FL

ODONTOLOGY
Jeffrey R. Burkes, D.D.S.
New York, NY

PATHOLOGY/BIOLOGY
Edmund R. Donoghue, M.D.
Chicago, IL

PHYSICAL ANTHROPOLOGY
Michael Finnegan, Ph.D
Manhattan, KS

PSYCHIATRY & BEHAVIORAL SCIENCE
Robert Weinstock, M.D.
Los Angeles, CA

QUESTIONED DOCUMENTS
A. Lamar Miller, M.S.
Birmingham, AL

TOXICOLOGY
Graham R. Jones, Ph.D.
Edmonton, Alberta, Canada

**EXECUTIVE DIRECTOR**

Anne H. Warren, B.S.
Colorado Springs, CO

911 Studebaker Road, Suite 250
Long Beach, CA 90815
Phone: (310) 431-7272 Fax: (310) 431-2009

## CONFIDENTIAL
## MEMORANDUM

February 2, 1996

Richard D. Walter
710 S. Dexter Drive
Lansing, MI 48910-4642

Dear Mr. Walter:

I enclose the Ethics Committee response to Mrs Drake. This file is now closed. Thank you for your courtesy and cooperation.

Very truly yours,

Don Harper Mills, M.D., J.D.
Chairman, Ethics Committee

DHM/sdh

enclosure

Street Address:
410 North 21st Street • Suite 203
Colorado Springs, CO 80904-2798

Federal I.D. Number 87-0287045

VIDOCQ_000032



# AMERICAN ACADEMY OF FORENSIC SCIENCES

P.O. Box 669 • Colorado Springs • CO 80901-0669 • 719/636-1100 • Fax 719/636-1993

911 Studebaker Road, Suite 250
Long Beach, CA 90815
Phone: (310) 431-7272 Fax: (310) 431-2009

**OFFICERS 1995-1996**

**PRESIDENT**
Haskell M. Pitluck. J.D.
Woodstock, IL

**PRESIDENT-ELECT**
Richard Rosner, M.D.
New York, NY

**PAST PRESIDENT**
Steven C. Batterman, Ph.D
Cherry Hill, NJ

**VICE PRESIDENTS**
Frankie E. Flanck, M.F.S.
San Bruno, CA

Patricia J. McFeeley, M.D.
Albuquerque, NM

**SECRETARY**
Barry A.J. Fisher, M.S., M.B.A.
Los Angeles, CA

**TREASURER**
Michael A. Peat, Ph.D.
Overland Park, KS

**BOARD OF DIRECTORS**

**CRIMINALISTICS**
Ronald L. Singer, M.S.
Fort Worth, TX

**ENGINEERING SCIENCES**
David J. Schon, P.E.
Abington, PA

**GENERAL**
Mary Fran Ernst, B.S.
St. Louis, MO

**JURISPRUDENCE**
Carol Henderson, J.D.
Ft. Lauderdale, FL

**ODONTOLOGY**
Jeffrey R. Burkes, D.D.S.
New York, NY

**PATHOLOGY/BIOLOGY**
Edmund R. Donoghue, M.D.
Chicago, IL

**PHYSICAL ANTHROPOLOGY**
Michael Finnegan, Ph.D.
Manhattan, KS

**PSYCHIATRY & BEHAVIORAL SCIENCE**
Robert Weinstock, M.D.
Los Angeles, CA

**QUESTIONED DOCUMENTS**
A. Lamar Miller, M.S.
Birmingham, AL

**TOXICOLOGY**
Graham R. Jones, Ph.D.
Edmonton, Alberta, Canada

**EXECUTIVE DIRECTOR**

Anne H. Warren, B.S.
Colorado Springs, CO

# CONFIDENTIAL
# MEMORANDUM

February 2, 1996

Mrs. Marlene V. Drake
19 East Park MHC
Hyde Park, N Y 12538

     RE:    Richard D. Walter

Dear Mrs. Drake:

The Committee has reviewed your complaints and transcripts and has sought additional comments from Michigan and California. Most of the issues do not involve the Academy's Code of Ethics. Though Mr. Walter's representation of status in Michigan and of experiences in California do fall within the purview of the Code, the Committee has concluded unanimously that there was no material misrepresentation and therefore no Code violation.

Very truly yours,

Don Harper Mills, M.D., J.D.
Chairman, Ethics Committee

DHM/sdh

**Street Address:**
410 North 21st Street • Suite 203
Colorado Springs, CO 80904-2798

# EXHIBIT "C"

VIDOCQ_000034


Norwich University
1819 Advanced Computing Center

15 June 2013

Margaret H. Olson
Esquire of Counsel
Attorneys and Counselors
466 East 500 South, Suite 300
Salt Lake City, Utah 84111
margaret@haolaw.com

Re: Richard D. Walter

Dear Attorney Olson:

First, by way of introduction, I am the director of the Norwich University Center for Advanced Computing and Digital Forensics. I hold a PhD in digital investigation from Oxford Brookes University, UK and an MA in diplomacy with a concentration in terrorism. I hold the following professional certifications: Certified Cyber Forensics Professional and Certified Information Systems Security Professional ((ISC)$^2$), Certified Information Security Manager (ISACA), Fellow of the Institute for Communications, Arbitration and Forensics (UK), and am a licensed professional investigator in the state of Michigan. I am in my 50th year in the information security profession, which includes cyber forensics/investigation, and have written or contributed to 18 books including one of the first (2000) on investigating computer related crime. That book is now out in its second edition.

Richard Walter is a colleague and my research partner and I have been his student for the past three years. When I met Mr. Walter I became aware of the Drake case and the accusations against him, and I made it my business to investigate the circumstances of those allegations. Mr. Walter and I have published two peer reviewed academic papers together and have presented two peer reviewed conference sessions at the Annual Scientific Meeting of the American Academy of Forensic Sciences of which I am a member and he is a fellow. We have developed the technique of hybrid crime assessment (physical crimes with a strong cyber component). We have conducted cold case investigations together on behalf of the Vidocq Society, of which we both are members (he as one of the three founders) and I feel that we know each other rather well. I am satisfied that he did not commit perjury as was originally alleged in the Drake case. It is my privilege to share with you my reasoning and how I came to that conclusion that you might make appropriate use of it in your current case. I also would like to point out a very important distinction that the Drake case missed but that is central to the report that he provided to you. I will begin there.

Throughout the Drake discussions Mr. Walter has been referred to as a profiler. While he certainly is a very capable psychological profiler, his work in general, and the report he prepared for you in particular, have little to do with profiling. They are, rather, examples of crime assessment. The distinction is subtle for some people but, none-the-less, very important. Simply put, profiling works in the psychological

**Norwich University Center for Advanced Computing and Digital Forensics**
158 Harmon Drive, Room 221B Dewey Hall
Northfield, Vermont 05663

VIDOCQ_000035

**Norwich University**
**Advanced Computing Center**

domain while crime assessment works in the criminological domain. Why the distinction is important is at the core of Mr. Walter's – and my – work. Profiling deals with diagnostic-related analysis of an individual's personality and attempts to describe that personality from the appearance of the crime scene. Over the years the nominative experts in criminal profiling have been the Behavioral Analysis Unit of the FBI. They define crime scenes in two dimensions: organized or disorganized. Although the analysis methodology comes from hundreds - perhaps even thousands - of interviews with violent criminals, profiling is controversial and is not acceptable in all jurisdictions.

Crime assessment, on the other hand, focuses upon evidence at a crime scene and its direct meaning in the context of the crime. Because a person committing a crime will reflect his or her behavioral characteristics on the crime scene, analysis of the crime scene can lead to a description of the person who committed the crime and created/left the scene behind. I currently am conducting research with a random sample of 1,000 murder cases - all very thoroughly documented - to validate the four sub-types used in crime assessment. Anecdotally, the methodology is so precise that Mr. Walter and I have been able to apply it experimentally to crimes in cyberspace where we know little or nothing about the suspect. I have used it to extract a confession from a suspect simply by depending upon an analysis of his computer as the crime scene and applying Mr. Walter's principles to my observations.

Now, on to the court record that supports my conviction, in the context of his work in crime assessment, that Mr. Walter is honest, ethical, and of high moral character. While I, personally, accept that as a general statement, our concern here simply is within the crime assessment – and, particularly, the Drake case - context.

I have analyzed several documents, some contemporaneous with the Drake case and some of more current origin. Those documents are:

1. Memorandum filed in support of the Respondent's motion for summary judgment in the Drake habeas corpus proceeding

2. Letter from William Fleisher, Vidocq Society dated 6 June 2013

3. Letter from Haskell M. Pitluck, American Academy of Forensic Sciences[1]

4. Supplemental Memorandum in Support of Objection to Request of the Alleged Victim's Representative of 3 June 2013 containing the record of the appeal in State v. Haynes dated 21 Sept 1988

---

[1] The matter was investigated thoroughly by the ethics committees of the Vidocq Society and the American Academy of Forensic Sciences and Mr. Walter was exonerated completely.

VIDOCQ_000036


Norwich University
1819 Advanced Computing Center

Of those, the most valuable to me in my decision-making process is document number 1. Others, received more recently, did nothing to disabuse me of my earlier conclusion that the allegations against Mr. Walter were spurious, unsubstantiated and misleading. My reading document of number 4 suggests that the attorney, Mr. Metos, is relying upon those same allegations. I have attached document number 1 in case you do not have it. It was written by Mr. Thomas H. Brandt, Assistant District Attorney, Niagara County, New York and Mr. Walter can advise you as to its provenance. I will quote the pertinent conclusions from this document directly and leave you to draw your own conclusions.

First and foremost is Mr. Brandt's direct and unambiguous statement that "Mr. Walter Did Not Commit Perjury". This, of course, is the heart of the matter. ForensicReporter.com[2] Outlines the sequence of events simply and concisely ending with the conclusion that the "Federal District Court Judge wrote that my role in the proceedings did not unfairly prejudice the jury and that Drake did not have cause for complaint."[3] Document number 1 is Mr. Brandt's Motion for Summary Judgment.

Likewise, Mr. Brandt's conclusions regarding the elements of the issue are (summarized):

- Mr. Walter's Statements Regarding His Experiences At The Los Angeles County Coroner's Office Were Truthful
- Mr. Walter Did Lecture At Northern Michigan University
- Mr. Walter Was A Limited Psychologist At The Michigan Department Of Corrections And He Never Stated Otherwise
- Mr. Walter Truly Believed He Had Testified Previously As An Expert
- Walter Did Not Invent the Diagnosis of Picquerism

Finally, Mr. Brandt makes this important observation:

> It is easy to misunderstand exactly what Walter said when he originally testified at trial. Even the Second Circuit Court of Appeals got the facts regarding Walter's testimony incorrect in their decision. The Court stated that Walter claimed that he had "an adjunct professorship at Northern Michigan University;...and expert testimony given at hundreds of criminal trials in Los Angeles and Michigan." Drake v. Portuondo, 321 F.3d 338 at 342 (2d Cir. 2003). Unmistakably, nowhere in his testimony did Walter state that he was an adjunct professor at Northern Michigan, and at no point did Walter mention that he had previously testified at hundreds of trials. If the Second Circuit is getting some of the facts wrong, then

---

[2] Tuesday, May 16, 2006, *Richard Walter Triumphant in 'Drake v. Portuondo'*
http://forensicreporter.blogspot.com/2006/05/richard-walter-triumphant-in-drake-v.html retrieved 15 June 2013

[3] Walter in footnote 2

**Norwich University Center for Advanced Computing and Digital Forensics**
158 Harmon Drive, Room 221B Dewey Hall
Northfield, Vermont 05663

VIDOCQ_000037

**Norwich University**
**1819 Advanced Computing Center**

*part of the testimony is easily misconstrued. However, this does not imply that Walter was perjuring himself on the stand, and upon a closer inspection of the testimony, the evidence shows that perjury did not occur.*

The details supporting these conclusions are part of the Motion for Summary Judgment attached. Based upon the above and my personal knowledge of Mr. Walter, I concluded – and still do – that the allegations against him in this case do not merit the negative attention that they seem to have generated. Mr. Walter and I both subscribe to multiple codes of ethics and I am confident that he is as diligent in living up to those codes as am I. I have known and worked closely with Mr. Walter for the past three years and this is absolutely the only conclusion which I can draw.

If I may provide further information please do not hesitate to contact me either by phone or email per my signature block below.

Very respectfully,

Peter R. Stephenson, PhD, VSM, CCFP, CISSP, CISM, FICAF, LPI
Director, Center for Advanced Computing and Digital Forensics
Associate Professor and Director, Computing Program
Chief Information Security Officer
Norwich University
pstephen@norwich.edu – 248-373-2813

**Norwich University Center for Advanced Computing and Digital Forensics**
158 Harmon Drive, Room 221B Dewey Hall
Northfield, Vermont 05663

VIDOCQ_000038