IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

NICHOLAS JAMES MCGUFFIN, as an )
individual and as guardian ad )
litem, on behalf of S.M., a ) No. 6:20-cv-1163-MTK
minor, )        3:21-cv-1719-MTK
)
            Plaintiffs, ) April 30, 2025
)
        v. ) Eugene, Oregon
)
MARK DANIELS, PAT DOWNING, SUSAN )
HORMANN, MARY KRINGS, KRIS )
KARCHER, SHELLY MCINNES, RAYMOND )
MCNEELY, KIP OSWALD, MICHAEL )
REAVES, JOHN RIDDLE, SEAN )
SANBORN, ERIC SCHWENNINGER, )
RICHARD WALTER, CHRIS WEBLEY, )
ANTHONY WETMORE, KATHY WILCOX, )
CRAIG ZANNI, DAVID ZAVALA, ESTATE )
OF DAVID E. HALL, VIDOCQ SOCIETY, )
CITY OF COQUILLE, CITY OF COOS )
BAY, and COOS COUNTY, )
)
            Defendants. )
_____ )
)
VIDOCQ SOCIETY, )
)
            Cross-Claimant. )
)
RICHARD WALKER, )
)
            Cross-Claimant. )
_____ )
)
)
)
)
)
)
)
)
)
)
)

NICHOLAS JAMES MCGUFFIN, as an                )
individual and as guardian ad                 )
litem, on behalf of S.M., a                   )
minor,                                        )
                                              )
                Plaintiff,                     )
                                              )
        v.                                     )
                                              )
OREGON STATE POLICE,                           )
                                              )
                Defendant.                     )


**TRANSCRIPT OF PROCEEDINGS**

(Status Conference by videoconference)


BEFORE THE HONORABLE MUSTAFA T. KASUBHAI

UNITED STATES DISTRICT COURT JUDGE


**COURT REPORTER:**
Kellie M. Humiston, RMR, CRR
(503) 326-8186
Kellie_Humiston@ord.uscourts.gov

**A P P E A R A N C E S - i**

FOR THE PLAINTIFFS:
MALONEY LAUERSDORF REINER
By:  Andrew C. Lauersdorf
1111 E. Burnside Street
Suite 300
Portland, OR 97214

FOR THE PLAINTIFFS:
LOEVY & LOEVY
By:  David B. Owens
P.O. Box 85110
Suite 265
Seattle, WA 98145

FOR THE PLAINTIFFS:
MALONEY LAUERSDORF REINER
By:  Mia Stigler
1111 E. Burnside Street
Suite 300
Portland, OR 97214

FOR THE DEFENDANTS DANIELS, ET AL.:
FRANZ & HENDERSON
By:  Robert E. Franz, Jr.
P.O. Box 62
Springfield, OR 97477

FOR THE DEFENDANTS DANIELS, ET AL.:
FRANZ & HENDERSON
By:  Sarah Rose Henderson
P.O. Box 62
Springfield, OR 97477

**A P P E A R A N C E S - ii**

FOR THE DEFENDANTS HORMANN, ET AL.:
                    OREGON DEPARTMENT OF JUSTICE
                    By:  Jesse B. Davis
                    100 SW Market Street
                    Portland, OR 97201


FOR THE DEFENDANTS HORMANN, ET AL.:
                    OREGON DEPARTMENT OF JUSTICE
                    By:  Kristen Hoffmeyer
                    100 SW Market Street
                    Portland, OR 97201


FOR THE DEFENDANT WALTER:
                    LUVAAS COBB
                    By:  Eric Scott DeFreest
                    777 High Street
                    Suite 300
                    Eugene, OR 97440


FOR THE DEFENDANT WALTER:
                    LUVAAS COBB
                    By:  Erek J. Andrus
                    777 High Street
                    Suite 300
                    Eugene, OR 97440


FOR THE DEFENDANT VIDOCQ SOCIETY:
                    HWS LAW GROUP
                    By:  Lisa E. Lear
                    101 SW Main Street
                    Suite 1605
                    Portland, OR 97204


FOR THE DEFENDANT VIDOCQ SOCIETY:
                    HWS LAW GROUP
                    By:  Meredith Sawyer
                    101 SW Main Street
                    Suite 1605
                    Portland, OR 97204

(April 30, 2025, 10:41 a.m.)

**P R O C E E D I N G S**

THE COURTROOM DEPUTY:  United States District Court for the District of Oregon is now in session, the Honorable Mustafa T. Kasubhai presiding.

THE COURT:  Good morning.  Please call the case.

THE COURTROOM DEPUTY:  Now is the time set for Case Numbers 20-1163 and 21-01719, McGuffin, et al. v. Daniels, et al., and McGuffin v. Oregon State Police, et al., for a status conference.

THE COURT:  Good morning, counsel.  Thank you for making yourselves available.  There may be some new faces or perhaps I've just also forgotten who's who, so let's start with introductions first.

Plaintiff's counsel, if you'd be kind enough to give me your full name and honorific, such as Mr., Ms., or Mx. Who's here for plaintiff?

MR. LAUERSDORF:  Your Honor, Mr. Andrew Lauersdorf here on behalf of plaintiffs.

THE COURT:  Thank you.  And are you the only person here for plaintiffs?

MR. LAUERSDORF:  No.

MR. OWENS:  Good morning, Your Honor.  This is David B. Owens, O-W-E-N-S, also here for plaintiff.

THE COURT:  All right.  Thank you, Mr. Owens.

And for defendants.  Let's start with the --

MS. STIGLER:  Excuse me.  One more for plaintiff, Your Honor.

THE COURT:  Oh.  All right.

MS. STIGLER:  Mia Stigler here for plaintiff.

THE COURT:  Thank you.  Anyone else for plaintiffs?

Then for, let's start with the Oregon State Police individual officers.  Who's present?

MR. DAVIS:  Good morning, Your Honor.  Mr. Jesse Davis for the state defendants.

THE COURT:  Good morning, Mr. Davis.

And for the City of Coquille, Coos Bay?

MR. DAVIS:  And sorry, Your Honor.  One other attorney for state defendants.  I'll let her introduce herself.

MS. HOFFMEYER:  Thank you, Judge.  Sorry. Ms. Kristen Hoffmeyer, also for the state defendants.

THE COURT:  And then for the City and County, individual defendants.

MR. FRANZ:  Good morning, Your Honor.  Mr. Franz with the municipal defendants.

THE COURT:  Thank you.

MS. HENDERSON:  And good morning, Your Honor. Ms. Sarah Henderson also on behalf of the municipal

defendants.

THE COURT:  All right.  And for the Vidocq Society?

MS. SAWYER:  Good morning, Your Honor.  Ms. Meredith Sawyer on behalf of the Vidocq defendants.

THE COURT:  And Richard Walters.

MS. SAWYER:  And there's one other person from our office, Your Honor.

THE COURT:  Oh, sorry.  Going back to Vidocq Society, was there someone else?

MS. LEAR:  Ms. Lisa Lear for Vidocq Society.

THE COURT:  Thank you, Ms. Lear.

All right.  Now for the Defendant Richard Walters.

MR. DEFREEST:  For Defendant Walter, this is Mr. Eric DeFreest.  And with me, though not on camera at the moment, is my associate Mr. Erek Andrus.  If the Court would like him on video, I can arrange that.

THE COURT:  Well, I'm having a hard enough time tracking all of you, so we'll keep anybody who does not appear off the screen so I can find out -- I can pay attention to everyone here.  So I have -- looks like I have ten people on the video screen here.  Yes.

All right.  Now that we have some introductions out of the way, I'm going to turn to the plaintiffs first. Mr. Lauersdorf or Mr. Owens, I'll let you decide who wants to take the lead on giving me an idea, a heads-up of the agenda

of items to discuss today, one of which might -- I think -- I know there was some -- a notice of appeal filed, and I think in part, if not entirely, flowing from my letter to everybody advising you of my preliminary decisions on the motions for summary judgment, also some matters that we need to take up regarding calendars, pretrial filings.  So let's identify (pause) -- and there may be some other -- other administrative matters to take up to try to keep things moving along efficiently.

So who wants to start, Mr. Lauersdorf, Mr. Owens?

MR. OWENS:  Yes, Judge, this is David Owens.  I think that the first issue, and I think there are some other administrative issues that Mr. Lauersdorf will address, but I think that the primary thought for us being here today was -- concerned the Court's preliminary letter regarding summary judgment and the pretrial deadlines, which are set to begin here in the next couple of weeks.

I think it's our -- our sort of position and belief that, I think, everything -- you know, the parties would benefit, or at least we believe we would benefit and the Court would likely benefit from having the Court's order on summary judgment as we prepare things like exhibits, motions in limine, and other things.  And, you know, the Court's letter indicated and we appreciate and accept that the trial will be no more than six weeks.  And, you know, as we sort of

set out to make a plan about what that looks like, the Court's order will be, I think, helpful in determining that. And, you know, just frankly, we don't want to file a bunch of motions in limine and then get the summary judgment opinion, if there are things there that are different, and have to do them again or have to edit, undo, things like that.

And so given the significant amount of time between when the trial is set for mid September and the current pretrial conference is June, you know, I think it makes sense, if the Court is amenable to that, to move the pretrial conference to some time maybe in August to give the Court more time to finish its order, which I think will make things more efficient for our pretrial submissions. So that's sort of component 1.

And then regardless, separate from any efficiency, you know, plaintiffs believe and it's our position that the notices of appeal are premature and that, you know, it's our position that they are frivolous, and this Court is empowered under *Chuman* against *Wright* and other authorities to certify the appeal frivolous.

The problem is since the appeals are so premature, there's no -- you know, the defendants don't, you know, know the rationale the Court has provided for why they are appealing. So we could file a motion and say that. The Ninth Circuit has issued authority that says, you know, notice of

appeal should be considered judgment, not a knee-jerk reaction, and so we can address that, but I do think that whether or not there's ultimately jurisdiction for any type of interlocutory appeal is going to determine -- be influenced heavily by the Court's decision, and so it would be beneficial to have that as well.

So those are the two things that we wanted to raise before setting off additional litigation with respect to whether there can be appeals and with respect to the pretrial filings.

THE COURT:  So I'm going to distill at least two items.  One is -- well, maybe there might be three:  a question about the status of my opinion and order regarding the several motions for summary judgment; the second, moving the date for the pretrial conference and, therefore, providing for additional time for parties to file the submissions.  And you're suggesting an August date as opposed to June.  And I think we currently have it set for June 23rd and 24th.

And then the third is, you know, maybe just a side issue -- or perhaps overarching issue of this notice of appeal and what, if anything, it does to affect this case's progress in litigation.

Is that, I think, the three -- three main issues that you raised, Mr. Owens?

MR. OWENS:  That's -- that's right, Your Honor.  And

there are some others, but I think that's the core that led us to send the Court an e-mail to ask for the status today.

THE COURT:  Well, I'm really not -- I'm not sure how helpful it will be to hear from all of the defendants' counsel about positions on these particular points.

Let me first tell you what I'm thinking, and then I'll open it up to defense counsel to -- you know, to give me their thoughts, and then if anything needs to be altered.

First, I want to make sure you understand two things. The letter -- the letter that I sent, the informal -- the correspondence, and it was not filed as an opinion and an order, it was provided as a courtesy to everyone, recognizing -- I mean, frankly, and somewhat of an ease for me, too, because we had oral argument scheduled, I believe, May 30th.  After reviewing the briefs in depth and considering the arguments made, I determined that oral argument was not going to be helpful.  It -- the briefs were complete in themselves, identified the issues that I needed to consider, the arguments that needed to be made for me to ultimately bring to some conclusion my position.

Now, as you can all appreciate, there were, I believe, four summary judgment motions.  There's a lot of writing left to be done to be able to capture the arguments raised and to provide my reasoning.  It's an opinion and order that's going to take time to draft.  That doesn't necessarily

undermine the extent of the conviction that -- that motivated the decision outlined in my letter.

So I want to make sure that you all understand that absent some very unusual shifts in the analysis as I work through the writing of the opinion, those bottom line decisions are the decisions that you should work from.  So to that end, I don't see any reason to -- for any of you to consider how to navigate -- (interruption in video and audio transmission).

(Pause in proceedings)

THE COURT:  All right.  Let's rewind a few seconds.

The correspondence I sent to everybody, all counsel, summarized the bottom line, provided a bottom line for each of the issues raised by the motions for summary judgment.  That was made after a thoughtful review of the motions for summary judgment and the responses.  It's highly unlikely that the outcome will be different after you receive the opinion and order.

I provided the letter to all of you as a courtesy so you had information in advance so we could stay on schedule, not extend things out so close to the date of trial.  So to that end, what you see in my letter in all likelihood will be that which you will find in the final opinion that will be entered.

It is not -- it was not offered nor entered as an

opinion letter in the court -- in the case docket, but, again, as a courtesy for all of you to keep the case moving along so we would not get any unnecessary speed bumps along the way on a case that is far too many years old and that needs to be tried.

If parties would like, you can disregard the letter, disregard my opinion if that makes life easier for you to live in the mystery of what the Court might do, and then you can respond in kind once the opinion letter -- the opinion and order is filed and entered.  That's up to you, but I would -- I would be disappointed if you took this extension of courtesy to -- to be used as a sword against the process of trying to move this case forward.

The O&O will take some time to draft and enter.  I attempted to capitalize on vacating the oral argument and not waiting until after oral argument to spend the time heavy lifting with the drafting of that opinion.  It's on -- it's high on my priority list to be completed, and it will get done when -- when it is ready and final and as complete as can be before summary judgment motions will be drafted.

The feedback is coming back in, and I (pause) -- all right.

I'm not -- in light of the information that I've just -- I've just shared with you, I don't know how effective or necessary moving the pretrial conference and the

submissions would be.  My concern about moving our -- now, having said that, I recognize everyone's busy and you all have other cases in addition to the one here.

I'm curious as to -- I'm going to take a look at where we are.  In August -- trial is scheduled to begin September 8th.  My concern is that there is -- given my existing schedule, there's very limited time that I have in August to devote to moving the pretrial conference that we've had on the books now, especially one that is scheduled for two days.  And on top of that, that would create a crunch on my end to have to be able to respond to essentially four, I would -- four sets of complex arguments regarding the evidentiary issues and a complicated trial.

So as I'm working through this out loud as you bear having to listen to me, I'm disinclined to move the pretrial conference dates.  While it would make my summer schedule much more manageable, it will just simply -- it would back-end the amount of work that all of us would have to do right before trial, and I'm far more concerned about making sure that this trial moves -- you know, gets off without a hitch come September.

Then finally on the issue of the notice of appeal, I guess I'm as curious and puzzled about the efficacy of a notice of appeal flowing from my letter as anybody else may be, and if the plaintiffs are inclined to take it up with the

Ninth Circuit, then I think that would be the best approach. I haven't been briefed on what I can or cannot do with respect to what appears to be an empty appeal on something that has yet to be formally entered, but I haven't briefed myself -- I haven't briefed it nor researched that issue.

All right. So let's take the last -- last piece first, the issue of this appeal. How, if at all, does anyone think it affects the status of our schedule for trial? And, Mr. Franz, let's start with you.

MR. FRANZ: Thank you, Your Honor. The -- I'm getting feedback, so (pause) --

THE COURT: I can hear you okay, but if -- but maybe you can mute the courtroom, Ms. Davies, while Mr. Franz is speaking, which would require that you -- (courtroom muted).

Yeah. We're going to go mute, and then I'll hear from Mr. Franz.

MR. FRANZ: Okay. So can you hear me, Your Honor?

THE COURT: Yeah. Go ahead.

MR. FRANZ: Okay. So with regards to the notice of appeal, the standard is if the Court issues a finding that conclusively determines the claim, then it's considered a final order and can be appealed from.

When we got your letter, and you can call it a letter, a decision, an order, the letter itself says, quotation mark, qualified immunity, the Court's decision

denied.  So to me, that means you've made up your mind, that's the Court's decision.  And as you indicated, you're not inclined to change it, and I agree.  I don't think you are going to change it.  So your decision is qualified immunity is denied.  So then the next step is what is the consequence of that decision.

Now, in light of qualified immunity, it's immunity from trial, it's immunity from going forward with discovery, it's immunity from going forward with trial, and so that's why all the case law says you decide it as soon as possible.

So then I take a look at the consequence of your denial and I look at the trial management order.  The trial management order says it is so ordered.  So your trial management order clearly orders the municipal defendants to proceed with trial, to proceed with gathering documents, and we're definitely going to trial.

So you take those two combinations that you've conclusively determined that there is no immunity, the consequences you ordered the municipal co-defendants, the notice of appeal is not premature.  It is in the Ninth Circuit.  The Ninth Circuit has scheduled the briefing.  Our first brief is due July 8th.  And so we're following the notice in that order.  So I don't think it's premature.  I don't think there's anything further you have to do.  Your order is decided.  And for purposes of the trial, I think

everything is stayed that relates to qualified immunity.

So that is our thinking. We're fine with the schedule set forth. We just had the question about exhibits and paper copies that we can discuss as the next item, but that's the explanation as to why we feel the order is final, because the consequence is we have to go forward with a tremendous amount of work on those issues.

THE COURT: All right. I appreciate that -- that explanation and I -- and, Mr. Owens, coming back to a point that you made earlier about whether this Court can find it to be frivolous, again, it hasn't been briefed to me and I don't know enough about whether it's appropriate for this Court to take that up if a notice of appeal has been filed with the Ninth Circuit. So if you think -- if you think that there is an appropriate motion to file for which you -- for which you can establish clearly that I have authority to rule on, then -- then file that motion, otherwise, I think you need to take it up with the Ninth Circuit.

Specifically with respect to, Mr. Franz, your comment about, well, the issue for -- the issue of qualified immunity is -- is stayed for all intents and purposes given the notice of appeal as it relates to the trial, you agree, nevertheless, that there are matters set for trial that will remain on for trial?

MR. FRANZ: Yes. As far as I can -- and I can't find

a case on all fours out of the Ninth Circuit, but it seems to be that the stay stays everything that's related to the qualified immunity. So state law claims at first blush, you would still have jurisdiction. The issue would be for you to decide are there going to be issues decided at trial that could be changed by the Ninth Circuit on the appeal. And let me just give you a quick example.

We have a state law claim of false arrest. So an arrest is false if there's no probable cause. On appeal, we have whether or not the individual defendants are immune because either there was probable cause or the things establishing probable cause were not clearly established.

So normally -- and I've never had a situation before where we've had a -- the trial go forward on state law claims when we have appeal on qualified immunity, so normally everybody just says, "Okay. That's stayed. Let things go, proceed."

THE COURT: Mr. Franz, I got to warn you, any time anybody ever tells me "I've never seen something like that" sounds to me like an invitation to break the -- break the rule to -- you got to use a better reverse psychology for me than "I've never seen" to convince me that something --

MR. FRANZ: Well, I can't -- yeah. I'm not trying to use psychology on you at all. In the -- in the time that I've practiced, I have never seen it. It's always been abated.

And I think we can go through the list of cases, but I -- but I think that --

THE COURT: And I think the court -- I mean, the trial court would have the authority -- the discretion to proceed on the -- the remaining claims. I don't think there's anything that says that the Court can't do it. It would be a question of judicial efficiency perhaps as well as, you know, the Court's calendar and desire to move the litigation along.

Look, I'm up against the fact that this case has been on the books for far too many years. We've had quite a bit of opportunity to litigate this case up -- you know, up and down, and I'm -- I'm not inclined to move the trial. I'm not inclined to delay the -- what, if anything, does remain. And I'm not quite sure whether -- whether, if the plaintiffs do take this up with -- with the Ninth Circuit, that the notice of appeal would be deemed, you know, ripe at this point.

Now, having said that, as soon as my order is issued and assuming for the sake of this discussion that there's nothing different about my order than that which you already know by -- by my -- my written correspondence to you, I mean, then I imagine at that time you would take up another notice of appeal if for some reason the court found it was premature now.

That does leave us, then, in a situation that if an interlocutory appeal is appropriate, then we're in the same

boat, but we won't find out for maybe another couple of months.

MR. FRANZ:  Yes.  I agree that -- I agree it's your discretion, Your Honor.  I cannot find a case that says you do not have jurisdiction over any state law claims, and the reasons -- you have the judicial authority as you outlined.

THE COURT:  Well, then let me open it up to any of the other defense counsel if you have other -- different thoughts than what Mr. Franz has described.  I do know that Vidocq Society did not file a notice of appeal, and I don't know if that was a function of intending on joining -- you know, joining up on that point or -- but, again, I don't know what the -- what their position is.  So perhaps I can open it up to those from the Vidocq Society.

MS. SAWYER:  Good morning, Your Honor.  That is correct, we did not file a notice of appeal.  I think that Mr. Franz's explanation about where we are procedurally with respect to these notices of appeal and the Court's ruling on qualified immunity creates questions for the rest of us about what specific claims are before the Court, what we should be briefing with respect to the Court's pretrial order, who -- who are going to be the parties that are going to be at trial in September, does this open up the possibility that we have two trials.  It just creates a lot of uncertainty, at least for my clients.

THE COURT:  Yes.  I -- I agree wholeheartedly with your assessment of the situation.  It does create a more complicated puzzle.

Mr. DeFreest, did you have anything else you wanted to add with respect to Mr. Walter?

MR. DEFREEST:  Thank you, Your Honor.  No.  It -- as stated by -- I think Mr. Franz and Ms. Sawyer have adequately framed the issue of concerns as to complications of, you know, what issues are going to be before the Court, what parties are moving forward and on which issues, and then concerns as to what rulings create law of the case, which may complicate one versus two trials.

THE COURT:  I'm going to -- I'm going to turn back to Mr. Owens and Mr. Lauersdorf.  I didn't know if you had anything else you wanted to offer on the plaintiff's side before I turn back to Mr. Owens, Mr. Lauersdorf, on this issue of -- of the notice of appeal and its impact.

MR. LAUERSDORF:  Not for me.  That's Mr. Owens' area of specialty, Your Honor.

THE COURT:  All right.  Mr. Owens (pause) --

MR. OWENS:  Yes, Judge.

THE COURT:  I think it would -- would it be fair to say that once my opinion and order is issued, and, again, assuming that it is -- the outcomes are the same as that which I've provided already in advance, then Mr. Franz will just

renew his notice of appeal in -- you know, in -- within a couple of months, and that puts us out to July, notice of appeal is filed, and then now we're -- so in many ways, time travel can be a curse. We know what's going to happen.

And so Mr. Franz files -- even if you're able to convince the Ninth Circuit that it's -- and in a timely way -- that the filing of this notice of appeal is untimely, in a couple of months, Mr. Franz will file another notice of appeal and -- and that will trigger an interlocutory appeal on qualified immunity. Is that your understanding of how it would play out?

MR. OWENS: I certainly hope not. I think that's one potential scenario, but the reason that I say that is because, you know, the defendants have to have a reasonable basis for seeking an interlocutory appeal that's consistent with the limited interlocutory jurisdiction, and Mr. Franz doesn't have that now and I don't necessarily know he would have that even depending on what your order says, right? So --

THE COURT: Would he not have it based on the merits of the qualified immunity decision?

MR. OWENS: Right. It depends on what your decision says, yes, in some part.

THE COURT: And what is it that you think the decision would -- would say one way or the other to shift that?

MR. OWENS:  So there's a -- I could -- and these are all obviously hypothetical.  I could imagine the Court saying, as we -- you know, as we argued, that the defendants failed to establish their initial burden at summary judgment by -- by failing to construe the facts in the light most favorable to the plaintiff, and so have not met their initial burden at stage one.  The Court could have said there are material facts in dispute that -- on which qualified immunity depends, things like that.  So there are a number of ways that this Court could have -- and the Court could also make factual findings about what a reasonable jury could conclude.  Those -- those factual findings are -- cannot be challenged, are categorically unreviewable.  *Johnson* against *Jones* says that at the United States Supreme Court.  And so those types of things -- now, you know, if -- are going to determine the scope of any interlocutory jurisdiction.

So, you know, with the way that I would hope it would play out is that the defendants would take a look at the opinion and order and make an actual assessment about whether or not they're going to appeal.

Part of our objection here is saying, "We're going to appeal no matter what."  That -- you know, that's not an appropriate way, in our -- in my view and, I think, consistent with the law, of how appeals should work, particularly given the fact that federal courts are of limited jurisdiction and

interlocutory appeals are a very narrow exception under the collateral bar doctrine.

So, you know, I do think that there is a chance -- and I'm not saying that the -- things couldn't play out that, you know, there won't be another interlocutory appeal in a couple of months, something like that.  I just -- I'm not saying it's -- I'm not going to accept it as a matter of course, because it seems to me to be questionably under the law and ethics.  That said, obviously that could occur.

And I do want to just sort of jump back.  I think that part of the -- this is part of the reason why we want -- just from a procedural aspect, I think the Court's right.  We would have to file a motion to certify any interlocutory appeal as frivolous.  I've filed them a number of times.  I will give the Court the authority.  You know, I mentioned one case, *Chuman* against *Wright*.  That's the lead Ninth Circuit case which adopted the law from *Apostle v. Gomillion* in the Seventh Circuit.  We file those motions regularly, and we will file one here, but I also think another issue about the trial in the fall as it relates to the stay, this isn't like bankruptcy where there's, like, an automatic stay entered once the proceeding is entered.  You know, Mr. Franz or somebody else, if they want to stay the trial, needs to file a motion asking the Court to stay the proceedings and then to determine what is stayed or not.

And so in any other cases that I have had that -- where there's been a question about the interlocutory appeal, there's usually a motion to stay that accompanies it.  So that's not sort of an automatic thing.

And I do want to just mention, Your Honor, I think we would regardless of, you know -- and I understand -- we don't want to tie the Court up.  I hear what you're saying about the order, but I guess sort of separately and apart from all of this, our lead counsel, Ms. Puracal, who's not here today because she's in a trial and she was in another trial two weeks ago, you know, the May deadline is, you know, just unworkable for us.  So if there is maybe an interim time maybe in July that we could find for the pretrial conference, that would be our separate request.  Then I don't want to jam you up if August is too far out, but we would separately --

THE COURT:  You said a May deadline.  A May deadline for what?

MR. OWENS:  So on -- according to the trial -- your order, Your Honor, our -- I've got it right here.  On May 12th, so it's six -- it's tied to six weeks before the pretrial conference, plaintiff has to provide exhibit lists and copies of exhibits to chambers, and witness statements and pretrial --

THE COURT:  So you're referring to the May deadline submission -- the submission deadlines that are laid out in

the TMO.

MR. OWENS:  Correct, Your Honor.

THE COURT:  So --

MR. OWENS:  Yes.

THE COURT:  -- you're still asking to see if we can move the pretrial conference later --

MR. OWENS:  Yeah.

THE COURT:  -- than June, but understanding not as late as August.

MR. OWENS:  Yeah.  And totally unrelated to this, I think due to, you know, we all have a bunch of obligations, but, you know, trials are different and sometimes trials settle, sometimes trials go.  And both of Mr. -- excuse me -- Ms. Puracal's trials set for the last two weeks have gone, I think she had, like, a couple days between trials and is in trial now, and would be the primary -- our lead attorney in this case and has been.  So that's a separate issue from all of these and part of our request that we would have no problem briefing informally if we need to.

THE COURT:  All right.  With respect to going forward on some, if not all, of the issues for trial, Mr. Owens?  I mean, if -- if certain matters are taken up and are appropriately noticed for appeal to the Ninth Circuit, what is it that the plaintiff is prepared to do in -- in that event for the purposes of trial?  We'll talk about pretrial matters

in just -- let's set that aside for the moment.  I'm more interested about what's going to happen in the fall for the moment here.

Let me be more clear.  If there are matters that are taken up to the Court of Appeals -- interlocutory appeals to the Ninth Circuit, does the plaintiff want to continue with the issues that remain for trial or to just wait for the -- for the appellate issues to be resolved and then consolidate everything for some later trial date?

MR. OWENS:  So I apologize in advance for not giving a direct answer to this question, Your Honor.  The answer is it depends.  We agree with the Court that this matter's been pending for a long time.  We are prepared to go to trial in September.  We want to go to trial in September.

And it's not just the state law claims, but obviously the *Monell* claims.  The municipalities don't have qualified immunity, and there's ample authority that shows that we would only have to show a constitutional violation to still be able to proceed against municipality, and so we don't -- it's not tied to the individual liability of any officer exactly in part because of the existence of qualified immunity.  So it wouldn't just be the state law claims, but it would also be the *Monell* claims.

And I think when I say that it depends, it relates a little bit to the issue I just mentioned, which is we would

need to know what issues are up and what aren't, and, you know, I think probably if we had clarification from the Court about that, but like I said, we are -- at this point, you know, agree with the Court this matter's been pending too long and that we should move the claims to trial that we know that we can move to trial, and there's good authority for this Court having the discretion to do that.

And I just don't -- you know, if -- if there's some kind of ruling that -- that -- I just want to say that, you know, it depends, because some ruling could, an intervening fact could change our position, and that's part of the reason why I want to be very measured, because there are a number of things that could happen.  In the same way that Mr. Franz -- you know, I just argued that I think the defendants need to be considered about whether to appeal and how to appeal, I think, you know, we as -- on the plaintiff's side approach it the same way, though our first instinct is with the Court that we need to take this case to trial.

THE COURT:  All right.  Let's also -- I want to set out some guidelines here.  If somebody does want to say something, raise your hand.  I don't want to just simply make it a conversation between myself and Mr. Owens.  So I want to be mindful that other people may have something that you'd like to say, so I'm not going to automatically just simply open it up back -- to everybody as I continue the

conversation, but let me know that you have something that you'd like to say to inform this part of the conversation. I'll be happy to give you that time.

So let me offer this. I'm not inclined to take the trial off the calendar. I'm not -- I'm not interested in doing that. So if there are issues that remain despite an interlocutory appeal, then we need to identify what those are and then make sure that we're all on the same page with those issues and then get them T'd up for our pretrial conference as well as for that trial, however -- however long and however it might look. I get that it's going to look potentially very piecemeal, maybe, it depends on what's remaining and what the parties -- everyone agrees to with this trial, but I'm not inclined to take it off the books.

Now, Mr. Owens, you've indicated that, you know, I guess what remains for trial depends on what I decided. I'm not sure what else I need to decide other than my final opinion, which reflects -- which is, in essence, reflected by my letter to all of you.

So perhaps you can give me some clarity -- or I can provide some clarity based on questions you might ask me about what needs -- what will -- what will be the -- the balance of issues remaining for trial based on what you understand my decision is likely going to be from these motions for summary judgment.

MR. OWENS:  Yeah.  I apologize for being a little unclear, Your Honor.  All I meant is -- and maybe the easiest way to do this is in light of the Court's comments today, the parties can get together, confer about things that we think are in and out.  I just meant if there -- if there's a dispute as we think that this should be part of the trial and they may disagree, the Court might have to resolve a dispute, but I don't know what those disputes are.  I wasn't thinking of anything in particular.  I just sort of meant maybe -- maybe we might not agree and the Court might have to tell us what's in or out.

THE COURT:  Okay.  Well, again, a boon and a blessing to know in advance what you -- what I'm likely going to decide.  It helps create the mess that we're in now.  I suppose I'll learn for future reference never to show any of you -- or any lawyer my cards in advance.  I'll just -- I'll let you have to just pick up the mess later when you find out what that O&O might look like, but be that as it may, here we are.

You have an understanding of what my decision -- the bottom line is going to be.  And I recognize that whether something is available for interlocutory appeal or not also depends on the reasoning and the evaluation of the evidentiary record on summary judgment.  All of that will play into the final decision that I -- that I have available to you.

So part of it -- part of the challenge will be the discussion that you might have now about what's available for trial is -- is based on a very open interpretation of what is available for interlocutory appeal right now. So I think that there's a bit of a challenge there.

You probably -- and now I can appreciate why you will need my opinion to know what really is going to be available for interlocutory appeal or not, unless Mr. Franz will file a general notice of appeal on everything anyway, and then you'll just have to take it up with the Ninth Circuit and figure out what's available and what's not for -- for the trial.

Having said all of that, I still think that given a broad notice of interloc- -- a broad interlocutory appeal, there are going to be issues that are impervious to that appeal, and the parties can identify what those are. And I can tell you that at the very minimum, that's what we're going to trial on.

So I'm open to the idea of letting all of you confer and identify that common denominator of issues for trial that will not be subject to interlocutory appeal.

MR. OWENS: Your Honor, this is Mr. Owens. If I can just jump in again. And sorry to talk so much.

I want to say that I think the parties generally, even though we're not talking about it now, do benefit greatly from and have benefited greatly from your letter. I think,

you know, a lot of judges that I practice in front of have this preliminary practice.  It does help things and helps us get our ducks in a row and think about what's happening. That's why we're here.  We got some more information from you.

One of the things the Court mentioned in the letter is whether or not this would facilitate some potential settlement discussions in advance of the trial before we all do a bunch of work.  And I'll just say, and I think I can say that -- that the Court's letter has prompted the parties to begin engaging in some of those discussions and to seek some of those methods, and including over the weekend, including engaging insurers in ways that we hadn't in years of litigation before this, so please don't abandon the preliminary ruling.  I think it -- you know, it's not before the Court now, but that aspect of it, the parties are actively pursuing as well.

THE COURT:  And I appreciate that, Mr. Owens.  I think I will modify my -- my outright disavowal of using this kind of approach.  I will not use it, though, when Mr. Franz is involved in litigation in the future.  Never -- never let an old fox know what you're up to, because they'll take advantage of it every time.

MR. OWENS:  There we go.  But in every one of my cases, Judge, I've got four more coming, please, I'll take it.

THE COURT:  All right.  So, again, I haven't seen any

hands raised, and I want to -- I want to give you the opportunity, so please don't be bashful about weighing in. And in the meantime, though, we'll just make it the Owens-Kasubhai show until we can -- you know, we have some other things to play out.

So what I'd like to do is figure out what that common denominator is, and ask that you confer on that point and get me an answer sooner than later. You know, this has also been very helpful in just helping me understand, you know, what's helpful for all of you as we work through some of these issues from my summary judgment opinion, and -- and I'm grateful for that.

I'm -- I'm concerned about making sure we stay on track to get this T'd up for the trial starting in September, and so I'm -- I'm willing to try to see if there's some kind of a date in July to accommodate this, but I can't -- I can't guarantee you that we can probably find common days given that we are actually quite close. Let's take a look.

So we have June 23rd, 24th. I (pause) -- I could likely make a July 18th marathon day. I could do July 10th or 11th as well.

Mr. Owens, I'll give you first crack at any of those dates.

MR. DAVIS: Your Honor -- Your Honor, this is Jesse Davis. I didn't mean to cut off Mr. Owens, but I did want to

offer a couple of -- couple of things, if I may.

THE COURT:  Please, go.  Go ahead.

MR. DAVIS:  July 10 and 18, I believe, work for at least part of the state defendants' counsel, although Mr. McGuffin has parallel litigation against the State on statutory compensation claims that are due to be heard in a pretrial conference on July 11, making that somewhat more complicated, so just from our schedule perspective, but I did want to also mention that, you know, from a filing of a notice of appeal perspective, there is some authority, at least, out of the Fifth Circuit that a court, you know, made an oral ruling on a motion for summary judgment.  That was deemed to be starting the clock on filing a notice of appeal, and in that case the appellant was -- had an untimely appeal, so it did emphasize the need to be cautious and protective in filing notice of -- notices of appeal.

Certainly the state defendants recognize that Your Honor's ruling in your opinion and order is certainly much more likely to be fully ripe and fully unquestionably at least final for purposes of taking interlocutory appeal aside from its merits, but understood that that's -- that would be the ideal scenario, but understanding the law where in that instance the party was precluded from taking their appeal, that makes caution somewhat advised under the circumstances. And, again, it is not meant to take a sword to the -- to the

practice of providing the parties inter- -- you know, preliminary guidance on the Court's view.

So I wanted to chime in and second what others have said about -- about the practice and about the circumstances we find ourselves in.

THE COURT: Appreciate that. And so -- and the 10th and the 18th are open to the -- to the state defendants?

MR. DAVIS: That's -- that's correct. And if I -- if I may on one other issue, I think -- I think what the parties will be looking at will be, I guess, plaintiffs will pursue a motion to certify the appeal as frivolous and, in the interim, the counter motion or the companion motion from the defendants' side will be some kind of motion to stay to sort of formalize the -- the proceed -- you know, what the parties believe to be the legal effect of the notices of appeal as we go forward, understanding that the state law claims are not automatically subject to the appeal -- or subject to stay by interlocutory appeal, but that because of the close overlap of their factual premises, that they may be subject on a sort of discretionary basis to -- to a stay.

So that's what I foresee the motion practice to look like on this. And certainly I'm open to what the others may say, but that's what I foresee.

THE COURT: And I understand that the motion to stay would be filed with me, but the motion to certify the appeal

as frivolous would be with the Ninth Circuit, or both motion --

MR. DAVIS:  Both would be with you, Your Honor.

THE COURT:  Okay.  Well, that --

MR. DAVIS:  At least in --

THE COURT:  That does create more work for me.  It might take me longer to get the opinion out on the summary judgment motion.

All right.  Yeah.  I think this litigation is about who cries uncle first, and you're getting me awful close to crying uncle as --

MR. OWENS:  All my family's deceased.

So, Your Honor, the 18th will work for the plaintiffs.

THE COURT:  So let's pick apart and try to grab some low-hanging fruit.  I'll be willing to move the pretrial conference.  It's going to be one day, not two.  And so be prepared, it's going to be a long day and it's a Friday, so we might just go into Saturday.  I was joking about that part.  We'll just go up until 11:59 on Friday if we need to, so be prepared.  We'll be -- it might be a long day if it -- if it comes to that.  July 18 --

MS. SAWYER:  July 18th or the 11th?

THE COURT:  I'm sorry?

MS. SAWYER:  Are you saying July 18th or the 11th?

THE COURT: July 18th. So let's confirm, then, with everybody else. 18, any hard objections to significant conflicts that make it impossible to participate?

All right. Hearing no objections, then, July 18th it is. We'll start at 9:00 in the morning and then keep going until we're done.

How do you anticipate this to affect your trial submissions -- or your pretrial submissions? Do you want me to just slide everything down proportionate to the dates that are currently in place?

MR. OWENS: Yes, Your Honor.

THE COURT: Any other -- any other suggestions anyone wants to make other than just sliding them down? All right. I'll go ahead and do that.

I will need as well -- you know, I did ask -- and, actually, I don't -- let me see. I think I do actually have this here.

I did indicate that I think this case should take no more than six weeks. Mr. Owens, agree or disagree?

MR. OWENS: I agree that's what you said, Your Honor.

THE COURT: Well, I'll start with the areas of agreement. That's always a good place to start --

MR. OWENS: Sure.

THE COURT. -- but I'll infer from that -- from that answer that substantively you disagree with -- with --

MR. OWENS:  No, Your Honor.  I think that we can get it done, and I think this is a trial that should only take a few weeks.  Nobody likes months and months long trials, and we will work to prepare our case efficiently.  And I do think that this is a case that could be and should be done in less than six weeks, but making -- having six weeks available makes sense.

THE COURT:  All right.  And so the trial will start September 15th, end October 24th or end when it ends.  Yeah.  September 15th and going through to -- I'll have a schedule for October -- for October 24th ending date.

I would like -- so I think it will be hard for you to really develop a calendar of how this is going to play out until you have a chance to talk about what issues remain.  And to the extent that the common denominator of the issues that will remain regardless of any interlocutory appeal may actually make the case tried -- the trial may be shorter than six weeks anyway.  So I think once -- once we can identify the common denominator, the remaining issues for trial, then I think we can actually, you know, firm up the amount of time that the case will take to try all together.

I would like that information, though, sooner -- sooner than the pretrial conference so we can all sort of narrow it down what we're in for come September.  So when -- how much time would you like to confer with each other about

the common denominator issues and then identify sort of a calendar for that -- for that trial starting September 15th?

MS. LEAR:  Your Honor, this is --

THE COURT:  Yes.  And, Ms. Lear --

MS. LEAR:  -- Lisa Lear --

THE COURT:  -- you're appearing twice.

MS. LEAR:  -- for Vidocq Society.  I want to address with you the question of --

THE COURT:  Before you continue, Ms. Lear, you're appearing twice on my screen, and so you're coming in double-sounded.

MS. LEAR:  Huh.  I don't know how to fix that.

THE COURT:  We're going to see if we can fix that on our end by drooping one of the -- one of the -- oh, looks like --

MS. LEAR:  There we go.

THE COURT:  Looks like we're good to go.

MS. LEAR:  Okay.  I'm with Vidocq Society and I wanted to raise a couple of points about the situation that we're in.

First of all, with respect to the appeal, I agree that I think this is -- this -- the pending appeals, all 12 of them, are premature, but I do think that once -- once the case comes back, they will just file a new appeal when your opinion and order comes out, so we're going to be in the same boat

with what issues are going to get tried and what are going to get postponed, because, you know, the -- the question of qualified immunity is subject to interlocutory appeal.  And, again, that does depend on the specific nature of your rulings, but if we assume that the -- that the qualified immunity issues are going to be on appeal and the rest are not, I'm not sure that's going to affect what is left for trial, in part because in order to fully try the issues that remain, you're going to have to have all the same evidence before the jury in order for them to understand how we got to where we are.

So if -- for the Vidocq Society, for them to understand what the circumstances were about Ms. Freeman's death and what the Vidocq Society did to advise about -- or make suggestions about what could happen, the jury's going to need to know what did happen and what the state and federal people did based on the meeting that -- the luncheon that was held.  The -- and, of course, if the state claims do get tried along with that, that would be, you know, less of an issue, because those things are going to be tried fully anyway.

To the extent that the -- the municipal and state defendants disagree and don't want their state law claims tried at the same time, the Vidocq Society is going to still need their -- their individual parties as witnesses in order to try the Vidocq claims, and I just don't see how this case

is going to get made smaller.

I wanted to offer that up, but I also wanted again to reaffirm the whole discussion earlier about the status of the case with respect to appeals.

THE COURT:  Okay.  And I'm glad you raised the point. I mean, I think that's good and important to consider.  I'm sure when you all confer, you'll -- you'll be able to appreciate, like, what evidence is going to be necessary for whatever claims remain in play.

Mr. Franz -- Franz's notice of appeal on the issues of qualified immunity raise whether some -- whether any of these defendants are immune from suit.  That doesn't make them immune from testifying as witnesses, and so I agree there may very well be a full-throated litigation and development of the record on all counts, on all fronts with all the witnesses in play.  I'll just ask that you all confer on that.  And if at the end of the day, you need all six weeks to try the case, then I think that -- then that's what we'll -- we'll take up.

And I'm anticipating, absent perhaps maybe one or two days where we might take a half day to just simply take on evidence, these are going to be full days, 9:00 to 5:00 absent -- you know, excepting a lunch break.  So I think we should have ample time in that six weeks to try everything that needs to be tried, develop a complete record on the issues that are appropriate -- appropriately before me.

And I also agree that even in light of an interlocutory appeal on some -- on some issues on qualified immunity, that nevertheless still means that evidence itself may be relevant for the -- for the existing claims.

So -- but I think I'm going to need to leave it to all of you to confer, identify, then, to the extent that there are disputes about something, then we need to take that up at our pretrial conference come July 18th.

And here's the -- here's the thing. I'm not looking at -- I'm inclined to move with all the -- all the evidence that was necessary for all the issues that have been before us as we move forward. So -- so if somebody's looking to try to keep evidence out because of this interlocutory appeal, it's going to be a burden on them to try to convince me that that evidence is not relevant for the remaining issues at trial.

MR. DEFREEST: Your Honor, if I may. Eric DeFreest.

THE COURT: Yes.

MR. DEFREEST: So with regard to Ms. Lear's point and extrapolating a bit, I still am concerned, and it may be that the Court is directing the parties to, as part of their conferral, determine where -- if there is a stay which becomes effective as to, say, the 1983 aspects of the state and municipal defendants but Mr. Walter and Vidocq need to move forward on those 1983 Act claims, then it's essentially forcing the state or defendant -- or municipal defendants to

Case 3:21-cv-01719-MTK    Document 261    Filed 05/16/25    Page 43 of 71

43

actually defend their actions that are underlying the 1983 Act claims.

Is that (pause) -- it seems like that's forcing the state and municipal to defend those claims even though those claims may only be moving forward as to Vidocq and Walter.

THE COURT:  I mean, I -- I don't create the predicaments, I just try to navigate through them, and so I appreciate the problem here.  The other -- I mean, the only alternative -- and I can appreciate it would be great to kick the can down the road and wait until you all figure it out on appeal and then we try it all together at one time, but that's -- that's -- I'm just not -- I'm not convinced that that's -- that's appropriate and just, and certainly within my discretion it falls within to keep the case on for trial.

These witnesses are going to need to be subpoenaed. If they're not defendants because the matter's stayed for the purposes of the cases against them and the plaintiffs are ready to proceed against the remaining defendants for which there is no stay, then we -- we've got a bit of, you know, a prickly -- a prickly patch of navigating to get through on this trail.  I get it.  It's not going to be easy.  We'll have to figure it out, but I also -- you know, understanding that, you know -- you know, the plaintiffs may have some -- I mean, they may be -- they may be tied up on a couple things where maybe it'll be difficult for them to pursue.  I don't know.

Again, I just don't -- I don't know enough about how that's going to play out in the evidence, and so that's why I want you all to confer.

Now, after you all confer, perhaps it's -- perhaps the plaintiffs will come back and say, "Yeah.  Maybe -- maybe we ought to wait for all this to be worked out on appeal." Then come back and tell me that, and then we'll -- we'll talk about whether that makes sense, because if -- if all the parties are in agreement that this can't -- this really shouldn't be tried because there are far many more complications than can be managed because of -- because of a stay on appeal, I'm willing to consider what to do on that, but as long as -- as long -- as long as at this point, I mean, the plaintiffs have indicated they're ready to go to trial and I know the other defendants for which they are not seeking any interlocutory appeal understand that trial's on, I mean, I'm -- I'm prepared to get this case tried.

And you're right.  I don't know what -- I'm not sure at this point how Mr. Franz's clients who will be necessarily witnesses are going to end up addressing the matter.  And then the question I'm sure you might raise is Mr. Franz may not have a right to ask questions at this trial of the witnesses that are being subpoenaed.

So, I mean, everyone gets to make their -- you know, everyone gets to set the -- set the gears of destiny in

motion.  We'll just simply figure out how we -- we have to manage this trial as cleanly as we can and make sure everyone builds an appropriate record for the issues before me and before the court.

I'm glad we're all thinking about -- about the potential consequences here, and hopefully this will be a good prime -- priming of the conversation that you'll all have when you confer on what the common denominator issues are going to be.

Now, you also raised the issue of a motion for certifying the appeal as frivolous and the motion for a stay. Let's talk about the timing for that.

Mr. Owens, it'll be your motion for certification of the appeal as frivolous and then it'll be the defendants' motion for a stay.

MR. OWENS:  Yes.

THE COURT:  This has got to be an expedited motion, because I can't -- I can't keep this on a normal schedule at this point.  We've got to move it along.  So both motions need to be filed in 14 days, responses in 14 days, replies in 7.

Now, if you -- if you tell me that it's too painful and not possible to do, I'm open to hearing it, but I just need to get some dates down so we can start moving things along.  Mr. Owens?

MR. OWENS:  That works for us, Judge.  I was prepared

for the Court to only give us a week, so we'll take two. Thank you.

THE COURT:  Fair enough.  All right.

MS. SAWYER:  Your Honor, can you just confirm dates instead of weeks?  So are we saying May 14th?

THE COURT:  Yes.  Let's do that.  Let me take a look here.  Let's see.  Wednesday, we'll start -- May 15th, motion for certification as -- appeal as frivolous and the motion for stay must be filed.  May 29th, the reply, and June 4th -- I'm sorry.  There was -- sorry.

The motions on the 15th, responses on the 29th, reply on the 4th of July.  Actually, July -- June, June 4th.

And I'll issue a minute order confirming those dates for all of you as well.  And I'm not -- I'm not taking argument.  I'll rely on just the briefing and issue a ruling soon after that.  I also believe -- actually, I'm not going to give you an anticipated date of when my opinion on the summary judgment motions will be coming, but it's moving along.

Okay.  We've already moved the pretrial conference to July 18th.  I will slide all other -- all of the submissions down the timeline to reflect the new pretrial conference date.

I don't know if we actually went back to determining the time for all of you to confer and identify the common denominators for trial.  Can that be done in 14 days?

MR. OWENS:   (Nodding head).

THE COURT:  Within 14 days.  Let me ask you, given that I think I've been under-negotiating with Mr. Owens on times, can you confer and submit a joint report on the issues that would be most definitely available for trial within 14 days, so by May -- by May 14th?

MR. OWENS:  Yes, Your Honor.

THE COURT:  Okay.  And I'll rely on anyone raising their hand to catch my attention to either object or suggest something different.  All right.

MR. LAUERSDORF:  Your Honor, this is Andy Lauersdorf.  I have my hand raised, but it's for a different issue.  I just want to make sure I get your attention for one thing before we conclude the call.

THE COURT:  Yes.  Go ahead.

MR. LAUERSDORF:  It's a separate issue, really, and that is we have, of course, ADR reporting due, I think -- I think the current order is 45 days after your order on the motions for summary judgment issues.  I don't know how realistic that is given our time crunch.

And I -- I'll leave it up to the other attorneys to say if I'm speaking out of turn here, but I think there has been some kind of sincere interest in getting together and talking about a settlement or the prospect of that, and I think part of the problem that we're running into is finding somebody to use as a neutral in that matter.  And my

suggestion would be -- or has been that we enlist the Court's help in recruiting maybe a magistrate judge or somebody from the court there in Oregon to serve as a settlement judge in this matter.  And so I just wanted to throw that out there. We have that obligation coming up.  If the parties disagree, they can certainly object, but I think we could use -- use some help from the Court in recruiting somebody to take a close look at this and sit down with the parties.

THE COURT:  Mr. Franz, in light of the posture of the case to date, do you think settlement with a district judge or a magistrate judge would be in any way helpful?

MR. FRANZ:  We have no objection going to mediation.

THE COURT:  And I appreciate the artful response.  I was hoping something more blunt from you, Mr. Franz, since I could always rely on blunt responses from you.

Realistically, I mean, is this case going to -- do you think given what you understand about this case, that -- that a settlement judge can be effective or helpful to move it along?

MR. FRANZ:  I'd have to say, at this point, I don't think so.

THE COURT:  You don't think so?  I didn't -- I didn't quite hear what you said.

MR. FRANZ:  I don't think -- yeah.  I don't think so, based on the responses we've got so far.

THE COURT: Okay. In light of those issues, Mr. Owens -- or, actually, Ms. Sawyer.

MS. SAWYER: Yeah. Well, I just wanted to follow up on what Andrew -- or Mr. Lauersdorf had said. I'm not -- I think utilization of a magistrate judge at least could be helpful with respect to issues related to some, if not all, of the parties.

THE COURT: Okay.

MS. SAWYER: And we have circulated a suggestion among the parties prior to this status conference.

THE COURT: All right. And I appreciate you reminding me that not all defendants may have similar -- similar positions and assessments, and so let me see what I can do. I can -- how soon would you be thinking about trying to get together and working with a settlement judge? I mean, I'd be happy to try to get it done in the -- I mean, try to find somebody that could do it within the next 30 days if you think you'd all be T'd up and ready for being able to do something like that. Is that too soon?

MR. DAVIS: Your Honor, this is Mr. Davis. I think that would not be too soon. I think that would be perfectly appropriate given the timeline that we've discussed today and the deadlines that are coming.

And I wanted to, I guess, express on behalf of the state defendants that state defendants do think the case would

benefit from efforts at settlement and that finding someone on an expedited basis to help us consider it would be useful to the parties.

THE COURT:  Okay.  Then -- and are there any particular judges that you had in mind that you'd like me to reach out to if they're available?  And if you don't -- if there is somebody that you've worked with that you think might be, you know, sort of primed for this kind of a case, happy to -- happy to explore their availability and then -- then follow up with other colleagues as alternates.

MR. DAVIS:  To be candid, Your Honor -- again, Mr. Davis here -- I had before the call reached out to Judge Beckerman, Judge Beckerman's office.  I think Judge Beckerman would be a good candidate, but I say that with the reservation that I haven't inquired as to others' thoughts about that, and with the other reservation that Ms. Becker- -- or Judge Beckerman's staff told me that she is relatively busy and doesn't have availability, I believe, until maybe July.  And so, Your Honor, we were hoping that you would have some -- some weight with Judge Beckerman in perhaps freeing --

THE COURT:  Well, I owe her a lot more favors than she owes me at this point, but I'll see if I'm willing to get into greater -- greater obligation and debt to my colleague and see what I can do.

MR. DAVIS:  Thanks, Judge.

THE COURT:  Judge Acosta, are people okay with me also inquiring of Judge Acosta and his availability on this case?  Any -- any (pause) -- all right.

MR. DAVIS:  No objection.

MR. LAUERSDORF:  Your Honor, plaintiffs -- plaintiffs are fine with Judge Acosta or anyone else in particular.  We have no preference other than to -- if we're going to try something, let's try it.

THE COURT:  And will this be in person?

MR. LAUERSDORF:  Plaintiff's preference would be yes, Your Honor.

THE COURT:  I would -- I would like it to be in person as well.  It would be most effective when everybody is -- everybody's there face to face.  So I know that -- well, so -- and just by -- for example, Judge Beckerman, the settlement would be in all likelihood held up in the Portland area; with Judge Acosta, in all likelihood, because he is now -- his duty station is here in the Eugene courthouse, it would be in Eugene.

And -- and I'll inquire -- I'll first inquire of Judge Beckerman, and then follow up with Judge Acosta if Judge Beckerman might not be able to accommodate a schedule within 30 days.  So I do want to make sure, then, will everyone make themselves available if Judge Beckerman does find some dates within the next 30 days?

MR. LAUERSDORF:  Plaintiffs will, Your Honor.  Yeah.

MR. DAVIS:  State defendants will.

THE COURT:  Okay.

MS. SAWYER:  As will Vidocq Society.  The date that is difficult for me is June 23rd.  That is a difficult date for me, but other than that, yes.

THE COURT:  Okay.  Very good, then.

Any other housekeeping matters?  Any other dates that we need to discuss?  Any other issues that need clarification?  Mr. -- I'll go back to Mr. Owens first.

MR. FRANZ:  Yes, Your Honor.

MR. OWENS:  Your Honor, yes.  I think for plaintiffs, there's one other outstanding issue.

Mr. Lauersdorf, is that correct?

MR. LAUERSDORF:  No.  I don't believe so.  We --

MR. OWENS:  Okay.

MR. LAUERSDORF:  We haven't had a chance to confer on one of the two issues that we had raised, and I'll be speaking with Ms. Henderson and Mr. Franz about that later this afternoon, hopefully.

MR. OWENS:  Okay.  My apologies.  Nothing from plaintiffs, Your Honor.

THE COURT:  Any defense counsel, raise your hand and let me know if there's something else that you'd like to take up, advise.  Mr. Franz.

MR. FRANZ:  Yes, Your Honor.  The trial management order requires paper copies of exhibits to be served, put in chambers, you know, when we file our witness list and our exhibit list.  And the problem from -- from a practical standpoint, you know, there's a good possibility we're going to have 50 notebooks, you know, 40 to 50 notebooks with 450 pages apiece.

All of the parties have these digitally.  So when we get discovery, we exchange, you know, thousands of exhibits, 50,000 maybe pages of exhibit -- of copies, but we did that digitally.  And so when we would need to put paper -- a deposition or something, we did paper.

So I'm wondering if it's okay with the Court, so let's just say my exhibit list is due and I have 40 notebooks, and those are all digital, so I can give a thumb drive.  And this goes to the other parties, too.  So the plaintiffs are going to go first, so the plaintiffs are going to be the first ones to come up with how many notebooks do we have, how are we going to get these to the Court.

So what I'm thinking is we submit those to you and the parties on a thumb drive.  So we have nice exhibit lists for you, which would be paper.  We then have all the exhibits. We then have the pretrial conference.  And then we decide, okay, what group comes in, what groups don't come in, and at that time, you decide, okay, this comes in, this doesn't come

in.  Then we rearrange what comes in.  And then if the Court still wants paper copy exhibits for the Court or the jury, we provide them.

And the fear I have is let's just say we give ten notebooks, and let's just say 50 pages here, 10 pages here, 30 pages here come out, then those papers would have to be completely reprinted, we'd have to re-Bates stamp them, versus if we did that digitally, we can literally just pull those pages out and re-Bates stamp them with Adobe, which is one click, and then if you still want paper copies, we could do that.

I can -- we conferred on this, and I'm not sure I ever -- we ever got an answer.  Mr. Owens indicates that, you know, courts sometimes that he's involved with don't even want paper exhibits anymore, but I don't -- I don't mind if we have to print a whole bunch for the jury, although I don't think they're going to read them all, they'll just use the ones we point out, but at least for pretrial conferences, otherwise we're going to go to the printer's and have a lot of paper copies.  So I'm wondering if we could do it in a digital fashion to at least start off with.

THE COURT:  You had me at 50 notebooks, Mr. Franz.

MR. FRANZ:  Yeah.  There's a lot.

THE COURT:  If everybody is in general agreement about -- about the use of a digital format, I'm open to it,

but I -- I will tell you now, thumb drives are all thumbs, or I'm all thumbs with those things and it's going to be really unwieldy for me to manage what goes on.

So what I would -- what I would suggest is let's level up from thumb drives, and if there are some folks here that are a little bit more tech -- far more tech -- everyone here will be technologically more advanced than me, but I suspect that if we can set up some kind of a secure cloud drive that all of you are now going to be uploading these submissions and that I would have access to and that you would have access to, that way it -- then everything is in one location, and if it's properly labeled and there's a -- there's a protocol for labeling them, I'll be able to find them without having to flip through multiple thumb drives. And I'm guarantied to lose something, even if it's in a physical form.

So do we have a tech czar that -- that will have the ability to do something like that?  And I'm not --

MR. FRANZ:  I mean, I think that --

THE COURT:  -- looking at you, Mr. Franz.

MR. FRANZ:  Yeah.  I think what we can do if this is acceptable to everybody, we can open a Dropbox account, one separate Dropbox account, you know, with three terabytes or two terabytes.  And everybody has Dropbox.  I think that's how we've been sharing them.  We can set that one account up, and

then I know that Mr. Kasubhai (sic.), a clerk there, all he has to do, we send the e-mail, he clicks share, and then all of us -- so the plaintiffs would start. We could set up the Dropbox. We, you know, set it up, and the plaintiffs would start by drop -- putting yours in the Dropbox in the regular format you do, and then as parties add their exhibits, we add it that way. If that's acceptable, we can do that.

THE COURT: Mr. Owens?

MR. OWENS: That works for us, Your Honor. And we've been successful in doing that in other wrongful conviction trials like this, as Mr. Franz mentioned.

THE COURT: Okay. So what I'll do is amend the trial management order by way of a minute order instructing that the parties can -- can disregard the filing of paper motions and documents, exhibits, and that -- and that -- that the plaintiffs will be responsible for establishing a cloud -- a cloud drive and will provide that access to all of the -- all the counsel and Court to be able to access and read, review, and edit as necessary?

MR. OWENS: (Nodding head).

THE COURT: Okay. And, frankly, if you want to coordinate with each other, I don't care whether it's you, Mr. Owens, as plaintiff's counsel or defense counsel that set it up or manage it or, you know, share the cost of it all. That's also appropriate since everybody will be probably

saving thousands and thousands of dollars in -- in the lack of paper being -- being shipped around.  Okay.  So I'll --

MR. OWENS:  We'd appreciate it.

THE COURT:  I'll submit a minute order amending the TMO to that effect.

MR. DAVIS:  Your Honor, may I ask one question by way of clarification?  Jesse Davis.

THE COURT:  Yes.

MR. DAVIS:  I understand you to be saying that -- I thought we had been referring to just the evidentiary filings, the submissions of, you know, exhibits and depositions, et cetera, but I understand you to also extend that to the motions or the filings like the exhibit lists and the witness descriptions?

THE COURT:  This is what -- and thank you for the clarification.  In my mind, I kind of -- I'm thinking of this Dropbox as sort of my judge's copies of everything.  So whatever you would have been giving me in hard copy format to review for the pretrial conference would be now in this Dropbox, but you should still file everything that you need to file, like your motions in limine, with the court -- in the court docket.

MR. DAVIS:  Understood.  Thank you.

THE COURT:  So, yeah.  Thank you for the clarification.  I just -- treat this Dropbox like the -- the

providing of the judge's copies for all -- for all your submissions. So please do include in that box, you know, the motions that are -- motions and responses and replies that are due as well. That way I'll have it all in one drive rather than having to switch between the drive and CM/ECF to look for whatever it is these exhibits refer to. Okay.

MR. DAVIS: Understood.

THE COURT: All right. Anything else for the good of the order? Plaintiff's counsel, Mr. Owens, Mr. Lauersdorf?

MR. OWENS: Nothing from us. Thank you for your time.

THE COURT: Vidocq Society, Ms. Sawyer, Ms. Lear?

MS. SAWYER: Nothing from us, Your Honor. Thank you for your time.

THE COURT: Mr. DeFreest for Mr. Walter?

MR. DEFREEST: Nothing further, Your Honor.

THE COURT: I apologize. I've been neglecting Ms. Stigler as part of plaintiff's counsel. So I take it you haven't -- you haven't chimed in, so I --

MS. STIGLER: Thank you, Your Honor. Nothing.

THE COURT: All right. And then I'm sorry. Mr. DeFreest. I interrupted you.

MR. DEFREEST: Nothing further on behalf of Mr. Walter. Thank you very much, Your Honor.

THE COURT: Thank you. And for the -- for the State,

OSP and state defendants.

MR. DAVIS:  Nothing further from us.  Thank you, Your Honor.

THE COURT:  All right.  I'll enter a minute order reflecting the deadlines for the motion for stay and motion for certifying the appeal as frivolous, the timelines, the change in the dates to July 18th for our pretrial conference, and moving all the other dates forward -- actually, back -- back towards the July 18th pretrial conference date for our submissions.  And then also the minute order will reflect the parties will confer and provide information regarding common denominator issues in 14 days and file a joint report advising the Court of what those issues will be.

And I also recognize again that it will be difficult to identify a calendar for those six weeks.  Actually, let me revisit this.  I think Ms. Lear's point about much of this evidence might still very well be part of the record even if the motion for a stay is granted and the appeal goes forward -- the interlocutory appeal goes forward on the qualified immunity, that it may not change what the -- what the evidence -- the evidentiary record will look like.

If the parties end up agreeing to that or generally agreeing to that, I'd like a calendar, at least some kind of a general calendar to understand how the plaintiff's case will look and how the -- you know, how defense counsel may present

its evidence, again, a sketch of what to expect in those six weeks for the trial. So that will be part of the conferral that will be due on May 14th as a joint -- that'll be part of the joint status report due May 14th following your conferral regarding the common denominator issues.

Okay. My hope is that my minute order will be clear enough and that it will come out in probably -- today's Wednesday, so it should -- either by later on today or tomorrow, you'll get the minute order that reflects all of our -- all of the points.

Oh, and last and hopefully the most of all significant things will be identifying a settlement judge for all of you within the next 30 days so -- so you'll have your best shot at getting the matter resolved before we all make each other's lives a living hell. Okay.

All right. Thank you all very much. I look forward to seeing you in person down the road, and in the meantime, take care.

MR. LAUERSDORF: Thank you, Judge.

MR. DAVIS: Thank you, Judge.

(Proceedings adjourned at 12:12 p.m.)

**C E R T I F I C A T E**

I certify by signing below that the foregoing is a true and correct transcript of the record, taken by stenographic means, to the best of my ability, of the videoconference/telephonic proceedings in the above-entitled cause.

Due to the video/telephonic connections of parties appearing via videoconference, speakerphone, or cell phone, speakers talking over one another, speakers failing to enunciate, speakers not identifying themselves before they speak, and/or other technical difficulties that occur during videoconference/telephonic proceedings, this certification is limited by the above-mentioned reasons and any technological difficulties of such proceedings occurring over the video and/or telephone.

A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

DATED this 16th day of May 2025.

/s/ Kellie M. Humiston

Kellie M. Humiston, RMR, CRR
Official Court Reporter
Certificates Expire:  9/2027

**/**

**/s** [1] - 61:22

**1**

**1** [1] - 9:14
**10** [2] - 34:3, 54:5
**100** [2] - 4:4, 4:8
**101** [2] - 4:19, 4:23
**10:41** [1] - 5:1
**10th** [2] - 33:20, 35:6
**11** [1] - 34:7
**1111** [2] - 3:4, 3:12
**11:59** [1] - 36:20
**11th** [3] - 33:21, 36:23, 36:25
**12** [1] - 39:22
**12:12** [1] - 60:21
**12th** [1] - 25:20
**14** [6] - 45:20, 46:24, 47:1, 47:4, 59:12
**14th** [4] - 46:5, 47:5, 60:3, 60:4
**15th** [5] - 38:9, 38:10, 39:2, 46:7, 46:11
**1605** [2] - 4:20, 4:24
**16th** [1] - 61:20
**18** [3] - 34:3, 36:22, 37:2
**18th** [11] - 33:20, 35:7, 36:13, 36:23, 36:25, 37:1, 37:4, 42:8, 46:20, 59:7, 59:9
**1983** [3] - 42:22, 42:24, 43:1

**2**

**20-1163** [1] - 5:9
**2025** [3] - 1:8, 5:1, 61:20
**21-01719** [1] - 5:9
**23rd** [3] - 10:18, 33:19, 52:5
**24th** [4] - 10:18, 33:19, 38:9, 38:11
**265** [1] - 3:9
**29th** [2] - 46:9, 46:11

**3**

**30** [7] - 1:8, 5:1, 49:17, 51:23, 51:25, 54:5, 60:13
**300** [4] - 3:5, 3:13, 4:12, 4:16
**30th** [1] - 11:15
**326-8186** [1] - 2:24
**3:21-cv-1719-MTK** [1]

- 1:7

**4**

**40** [2] - 53:6, 53:14
**45** [1] - 47:17
**450** [1] - 53:6
**4th** [3] - 46:9, 46:12

**5**

**50** [4] - 53:6, 54:5, 54:22
**50,000** [1] - 53:10
**503** [1] - 2:24
**5:00** [1] - 41:21

**6**

**62** [2] - 3:16, 3:20
**6:20-cv-1163-MTK** [1]
- 1:6

**7**

**7** [1] - 45:20
**777** [2] - 4:11, 4:15

**8**

**85110** [1] - 3:8
**8th** [2] - 14:6, 16:22

**9**

**9/2027** [1] - 61:24
**97201** [2] - 4:5, 4:8
**97204** [2] - 4:20, 4:24
**97214** [2] - 3:5, 3:13
**97440** [2] - 4:12, 4:16
**97477** [2] - 3:17, 3:21
**98145** [1] - 3:9
**9:00** [2] - 37:5, 41:21

**A**

**a.m** [1] - 5:1
**abandon** [1] - 32:13
**abated** [1] - 18:25
**ability** [2] - 55:18, 61:5
**able** [9] - 11:23, 14:11, 22:5, 27:18, 41:7, 49:18, 51:22, 55:13, 56:18
**above-entitled** [1] - 61:6
**above-mentioned** [1] - 61:14
**absent** [3] - 12:4, 41:19, 41:22

**accept** [2] - 8:24, 24:7
**acceptable** [2] - 55:22, 56:7
**access** [4] - 55:10, 55:11, 56:17, 56:18
**accommodate** [2] - 33:16, 51:22
**accompanies** [1] - 25:3
**according** [1] - 25:18
**account** [3] - 55:22, 55:23, 55:25
**Acosta** [5] - 51:1, 51:2, 51:6, 51:17, 51:21
**Act** [2] - 42:24, 43:1
**actions** [1] - 43:1
**actively** [1] - 32:15
**actual** [1] - 23:19
**ad** [2] - 1:6, 2:1
**add** [3] - 21:5, 56:6
**addition** [1] - 14:3
**additional** [2] - 10:8, 10:16
**address** [3] - 8:13, 10:2, 39:7
**addressing** [1] - 44:20
**adequately** [1] - 21:7
**adjourned** [1] - 60:21
**administrative** [2] - 8:7, 8:13
**Adobe** [1] - 54:9
**adopted** [1] - 24:17
**ADR** [1] - 47:16
**advance** [6] - 12:20, 21:25, 27:10, 30:13, 30:16, 32:7
**advanced** [1] - 55:7
**advantage** [1] - 32:22
**advise** [2] - 40:14, 52:25
**advised** [1] - 34:24
**advising** [2] - 8:4, 59:12
**affect** [3] - 10:21, 37:7, 40:7
**affects** [1] - 15:8
**afternoon** [1] - 52:20
**agenda** [1] - 7:25
**ago** [1] - 25:11
**agree** [13] - 16:3, 17:22, 20:3, 21:1, 27:12, 28:4, 30:10, 37:19, 37:20, 39:21, 41:13, 42:1
**agreeing** [2] - 59:22, 59:23
**agreement** [3] - 37:22, 44:9, 54:24
**agrees** [1] - 29:13

**ahead** [4] - 15:18, 34:2, 37:14, 47:14
**al** [3] - 5:9, 5:10
**AL** [4] - 3:15, 3:19, 4:3, 4:6
**altered** [1] - 11:8
**alternates** [1] - 50:10
**alternative** [1] - 43:9
**amenable** [1] - 9:10
**amend** [1] - 56:12
**amending** [1] - 57:4
**amount** [4] - 9:7, 14:18, 17:7, 38:20
**ample** [2] - 27:17, 41:23
**analysis** [1] - 12:4
**Andrew** [3] - 3:4, 5:19, 49:4
**Andrus** [2] - 4:15, 7:15
**Andy** [1] - 47:10
**answer** [5] - 27:11, 33:8, 37:25, 54:13
**ANTHONY** [1] - 1:13
**anticipate** [1] - 37:7
**anticipated** [1] - 46:17
**anticipating** [1] - 41:19
**anyway** [3] - 31:9, 38:18, 40:20
**apart** [2] - 25:8, 36:15
**apiece** [1] - 53:7
**apologies** [1] - 52:21
**apologize** [3] - 27:10, 30:1, 58:17
**Apostle** [1] - 24:17
**appeal** [75] - 8:2, 9:17, 9:20, 10:1, 10:4, 10:20, 14:22, 14:24, 15:3, 15:7, 15:20, 16:20, 17:13, 17:22, 18:6, 18:9, 18:15, 19:16, 19:22, 19:25, 20:10, 20:16, 20:18, 21:17, 22:1, 22:3, 22:7, 22:8, 22:9, 22:15, 23:20, 23:22, 24:5, 24:14, 25:2, 26:23, 28:15, 29:7, 30:22, 31:4, 31:8, 31:9, 31:13, 31:15, 31:20, 34:10, 34:13, 34:14, 34:16, 34:20, 34:23, 35:11, 35:15, 35:17, 35:18, 35:25, 38:16, 39:21, 39:24, 40:3, 40:6, 41:10, 42:2, 42:13, 43:11, 44:6, 44:12, 44:16, 45:11, 45:14, 46:8, 59:6, 59:18, 59:19

**appealed** [1] - 15:22
**appealing** [1] - 9:24
**Appeals** [1] - 27:5
**appeals** [7] - 9:21, 10:9, 23:24, 24:1, 27:5, 39:22, 41:4
**appear** [1] - 7:18
**appearing** [3] - 39:6, 39:10, 61:9
**appellant** [1] - 34:14
**appellate** [1] - 27:8
**appreciate** [12] - 8:24, 11:21, 17:8, 31:6, 32:17, 35:6, 41:8, 43:8, 43:9, 48:13, 49:11, 57:3
**approach** [3] - 15:1, 28:16, 32:19
**appropriate** [9] - 17:12, 17:15, 19:25, 23:23, 41:25, 43:13, 45:3, 49:22, 56:25
**appropriately** [2] - 26:23, 41:25
**April** [2] - 1:8, 5:1
**area** [2] - 21:18, 51:17
**areas** [1] - 37:21
**argued** [2] - 23:3, 28:14
**argument** [5] - 11:14, 11:16, 13:15, 13:16, 46:15
**arguments** [4] - 11:16, 11:19, 11:23, 14:12
**arrange** [1] - 7:16
**arrest** [2] - 18:8, 18:9
**artful** [1] - 48:13
**aside** [2] - 27:1, 34:20
**aspect** [2] - 24:12, 32:15
**aspects** [1] - 42:22
**assessment** [2] - 21:2, 23:19
**assessments** [1] - 49:13
**associate** [1] - 7:15
**assume** [1] - 40:5
**assuming** [2] - 19:18, 21:24
**attempted** [1] - 13:15
**attention** [3] - 7:19, 47:8, 47:12
**attorney** [2] - 6:15, 26:16
**attorneys** [1] - 47:20
**audio** [1] - 12:8
**August** [6] - 9:11, 10:17, 14:5, 14:8, 25:15, 26:9
**authorities** [1] - 9:19

**authority** [8] - 9:25, 17:16, 19:4, 20:6, 24:15, 27:17, 28:6, 34:10
**automatic** [2] - 24:21, 25:4
**automatically** [2] - 28:24, 35:17
**availability** [3] - 50:9, 50:18, 51:2
**available** [11] - 5:13, 30:22, 30:25, 31:2, 31:4, 31:7, 31:11, 38:6, 47:4, 50:6, 51:24
**awful** [1] - 36:10

**B**

**back-end** [1] - 14:17
**balance** [1] - 29:22
**bankruptcy** [1] - 24:21
**bar** [1] - 24:2
**based** [6] - 22:19, 29:21, 29:23, 31:3, 40:17, 48:25
**bashful** [1] - 33:2
**basis** [3] - 22:14, 35:20, 50:2
**Bates** [2] - 54:7, 54:9
**Bay** [1] - 6:13
**BAY** [1] - 1:15
**bear** [1] - 14:14
**Becker** [1] - 50:16
**Beckerman** [7] - 50:13, 50:20, 51:15, 51:21, 51:22, 51:24
**Beckerman's** [2] - 50:13, 50:17
**becomes** [1] - 42:21
**BEFORE** [1] - 2:14
**begin** [3] - 8:16, 14:5, 32:10
**behalf** [7] - 1:6, 2:2, 5:20, 6:25, 7:4, 49:24, 58:23
**belief** [1] - 8:18
**below** [1] - 61:3
**beneficial** [1] - 10:5
**benefit** [5] - 8:20, 8:21, 31:24, 50:1
**benefited** [1] - 31:25
**best** [3] - 15:1, 60:14, 61:5
**better** [1] - 18:21
**between** [4] - 9:7, 26:15, 28:22, 58:5
**bit** [6] - 19:10, 27:25, 31:5, 42:19, 43:19, 55:6

**blessing** [1] - 30:12
**blunt** [2] - 48:14, 48:15
**blush** [1] - 18:3
**boat** [2] - 20:1, 39:25
**books** [3] - 14:9, 19:10, 29:14
**boon** [1] - 30:12
**bottom** [4] - 12:5, 12:13, 30:21
**box** [1] - 58:2
**Box** [3] - 3:8, 3:16, 3:20
**break** [3] - 18:20, 41:22
**brief** [1] - 16:22
**briefed** [4] - 15:2, 15:4, 15:5, 17:11
**briefing** [4] - 16:21, 20:21, 26:19, 46:15
**briefs** [2] - 11:15, 11:17
**bring** [1] - 11:20
**broad** [2] - 31:13
**builds** [1] - 45:3
**bumps** [1] - 13:3
**bunch** [4] - 9:3, 26:11, 32:8, 54:16
**burden** [3] - 23:4, 23:6, 42:14
**Burnside** [2] - 3:4, 3:12
**busy** [2] - 14:2, 50:17

**C**

**calendar** [7] - 19:8, 29:5, 38:13, 39:2, 59:15, 59:23, 59:24
**calendars** [1] - 8:6
**camera** [1] - 7:14
**candid** [1] - 50:11
**candidate** [1] - 50:14
**cannot** [3] - 15:2, 20:4, 23:12
**capitalize** [1] - 13:15
**capture** [1] - 11:23
**cards** [1] - 30:16
**care** [2] - 56:22, 60:18
**case** [34] - 5:7, 13:1, 13:2, 13:4, 13:13, 16:10, 18:1, 19:9, 19:11, 20:4, 21:11, 24:16, 24:17, 26:17, 28:18, 34:14, 37:18, 38:4, 38:5, 38:17, 38:21, 39:23, 40:25, 41:4, 41:17, 43:14, 44:17, 48:10, 48:16, 48:17, 49:25, 50:8,

51:3, 59:24
**Case** [1] - 5:8
**case's** [1] - 10:21
**cases** [5] - 14:3, 19:1, 25:1, 32:24, 43:17
**catch** [1] - 47:8
**categorically** [1] - 23:13
**caution** [1] - 34:24
**cautious** [1] - 34:15
**cell** [1] - 61:9
**certain** [1] - 26:22
**certainly** [6] - 22:12, 34:17, 34:18, 35:22, 43:13, 48:6
**Certificates** [1] - 61:24
**certification** [3] - 45:13, 46:8, 61:13
**certified** [1] - 61:18
**certify** [5] - 9:19, 24:13, 35:11, 35:25, 61:3
**certifying** [2] - 45:11, 59:6
**cetera** [1] - 57:12
**challenge** [2] - 31:1, 31:5
**challenged** [1] - 23:12
**chambers** [2] - 25:22, 53:3
**chance** [3] - 24:3, 38:14, 52:17
**change** [5] - 16:3, 16:4, 28:11, 59:7, 59:20
**changed** [1] - 18:6
**chime** [1] - 35:3
**chimed** [1] - 58:19
**CHRIS** [1] - 1:13
**Chuman** [2] - 9:19, 24:16
**Circuit** [17] - 9:25, 15:1, 16:21, 17:14, 17:18, 18:1, 18:6, 19:15, 22:6, 24:16, 24:18, 26:23, 27:6, 31:10, 34:11, 36:1
**circulated** [1] - 49:9
**circumstances** [3] - 34:24, 35:4, 40:13
**City** [2] - 6:13, 6:19
**CITY** [2] - 1:15
**claim** [2] - 15:21, 18:8
**Claimant** [2] - 1:19, 1:21
**claims** [21] - 18:3, 18:14, 19:5, 20:5, 20:20, 27:15, 27:16, 27:22, 27:23, 28:5, 34:6, 35:16, 40:18,

40:22, 40:25, 41:9, 42:4, 42:24, 43:2, 43:4, 43:5
**clarification** [5] - 28:2, 52:9, 57:7, 57:16, 57:25
**clarity** [2] - 29:20, 29:21
**cleanly** [1] - 45:2
**clear** [2] - 27:4, 60:6
**clearly** [3] - 16:14, 17:16, 18:12
**clerk** [1] - 56:1
**click** [1] - 54:10
**clicks** [1] - 56:2
**clients** [2] - 20:25, 44:19
**clock** [1] - 34:13
**close** [5] - 12:21, 33:18, 35:18, 36:10, 48:8
**cloud** [3] - 55:8, 56:16, 56:17
**CM/ECF** [1] - 58:5
**co** [1] - 16:19
**co-defendants** [1] - 16:19
**COBB** [2] - 4:10, 4:14
**collateral** [1] - 24:2
**colleague** [1] - 50:23
**colleagues** [1] - 50:10
**combinations** [1] - 16:17
**coming** [7] - 13:21, 17:9, 32:24, 39:10, 46:18, 48:5, 49:23
**comment** [1] - 17:19
**comments** [1] - 30:3
**common** [10] - 31:19, 33:6, 33:17, 38:15, 38:19, 39:1, 45:8, 46:23, 59:11, 60:5
**companion** [1] - 35:12
**compensation** [1] - 34:6
**complete** [3] - 11:17, 13:19, 41:24
**completed** [1] - 13:18
**completely** [1] - 54:7
**complex** [1] - 14:12
**complicate** [1] - 21:11
**complicated** [3] - 14:13, 21:3, 34:8
**complications** [2] - 21:8, 44:11
**component** [1] - 9:14
**concern** [2] - 14:1, 14:6
**concerned** [4] - 8:15, 14:19, 33:13, 42:19

**concerns** [2] - 21:8, 21:10
**conclude** [2] - 23:11, 47:13
**conclusion** [1] - 11:20
**conclusively** [2] - 15:21, 16:18
**confer** [14] - 30:4, 31:18, 33:7, 38:25, 41:7, 41:16, 42:6, 44:3, 44:4, 45:8, 46:23, 47:3, 52:17, 59:11
**conference** [22] - 5:11, 9:9, 9:11, 10:15, 13:25, 14:8, 14:16, 25:13, 25:21, 26:6, 29:9, 34:7, 36:17, 38:23, 42:8, 46:19, 46:21, 49:10, 53:23, 57:19, 59:7, 59:9
**Conference** [1] - 2:12
**conferences** [1] - 54:18
**conferral** [3] - 42:21, 60:2, 60:4
**conferred** [1] - 54:12
**confirm** [2] - 37:1, 46:4
**confirming** [1] - 46:13
**conflicts** [1] - 37:3
**conformed** [1] - 61:17
**connections** [1] - 61:8
**consequence** [3] - 16:5, 16:11, 17:6
**consequences** [2] - 16:19, 45:6
**consider** [5] - 11:18, 12:8, 41:6, 44:12, 50:2
**considered** [3] - 10:1, 15:21, 28:15
**considering** [1] - 11:15
**consistent** [2] - 22:15, 23:23
**consolidate** [1] - 27:8
**constitutional** [1] - 27:18
**construe** [1] - 23:5
**continue** [3] - 27:6, 28:25, 39:9
**conversation** [4] - 28:22, 29:1, 29:2, 45:7
**conviction** [2] - 12:1, 56:10
**convince** [3] - 18:22, 22:6, 42:14

3

convinced [1] - 43:12
coordinate [1] - 56:22
COOS [2] - 1:15, 1:15
Coos [1] - 6:13
copies [8] - 17:4, 25:22, 53:2, 53:10, 54:10, 54:20, 57:17, 58:1
copy [2] - 54:2, 57:18
Coquille [1] - 6:13
COQUILLE [1] - 1:15
core [1] - 11:1
correct [5] - 20:16, 26:2, 35:8, 52:14, 61:4
correspondence [3] - 11:11, 12:12, 19:20
cost [1] - 56:24
counsel [15] - 5:12, 5:16, 11:4, 11:7, 12:12, 20:8, 25:9, 34:4, 52:23, 56:18, 56:23, 58:9, 58:18, 59:25
counter [1] - 35:12
counts [1] - 41:15
County [1] - 6:19
COUNTY [1] - 1:15
couple [10] - 8:17, 20:1, 22:2, 22:8, 24:6, 26:15, 34:1, 39:19, 43:24
course [3] - 24:8, 40:18, 47:16
Court [43] - 5:4, 7:15, 8:20, 9:10, 9:11, 9:18, 9:23, 11:2, 13:8, 15:20, 17:10, 17:12, 19:6, 20:20, 21:9, 23:2, 23:7, 23:9, 23:10, 23:14, 24:15, 24:24, 25:7, 27:5, 27:12, 28:2, 28:4, 28:7, 28:17, 30:7, 30:10, 32:5, 32:15, 42:20, 46:1, 48:7, 53:13, 53:19, 54:1, 54:2, 56:18, 59:13, 61:23
court [9] - 13:1, 19:3, 19:4, 19:22, 34:11, 45:4, 48:3, 57:21, 57:22
COURT [99] - 1:1, 2:15, 2:23, 5:7, 5:12, 5:21, 6:1, 6:5, 6:7, 6:12, 6:19, 6:23, 7:2, 7:5, 7:8, 7:11, 7:17, 10:11, 11:3, 12:11, 15:12, 15:18, 17:8,

18:18, 19:3, 20:7, 21:1, 21:13, 21:20, 21:22, 22:19, 22:23, 25:16, 25:24, 26:3, 26:5, 26:8, 26:20, 28:19, 30:12, 32:17, 32:25, 34:2, 35:6, 35:24, 36:4, 36:6, 36:15, 36:24, 37:1, 37:12, 37:21, 37:24, 38:8, 39:4, 39:6, 39:9, 39:13, 39:17, 41:5, 42:17, 43:6, 45:17, 46:3, 46:6, 47:1, 47:7, 47:14, 48:9, 48:13, 48:22, 49:1, 49:8, 49:11, 50:4, 50:21, 51:1, 51:9, 51:12, 52:3, 52:7, 52:23, 54:22, 54:24, 55:20, 56:8, 56:12, 56:21, 57:4, 57:8, 57:15, 57:24, 58:8, 58:12, 58:15, 58:17, 58:21, 58:25, 59:4
Court's [15] - 8:15, 8:21, 8:23, 9:1, 10:5, 15:25, 16:2, 19:8, 20:18, 20:21, 24:12, 30:3, 32:9, 35:2, 48:1
courtesy [4] - 11:12, 12:19, 13:2, 13:11
courthouse [1] - 51:18
courtroom [2] - 15:13, 15:14
COURTROOM [2] - 5:4, 5:8
courts [2] - 23:25, 54:14
crack [1] - 33:22
CRAIG [1] - 1:14
create [6] - 14:10, 21:2, 21:11, 30:14, 36:6, 43:6
creates [2] - 20:19, 20:24
cries [1] - 36:10
Cross [1] - 1:19
cross [1] - 1:21
Cross-Claimant [1] - 1:19
cross-Claimant [1] - 1:21
CRR [2] - 2:24, 61:23
crunch [2] - 14:10, 47:19
crying [1] - 36:11

curious [2] - 14:4, 14:23
current [2] - 9:8, 47:17
curse [1] - 22:4
cut [1] - 33:25
czar [1] - 55:17

**D**

DANIELS [3] - 1:10, 3:15, 3:19
Daniels [1] - 5:9
date [12] - 10:15, 10:17, 12:21, 27:9, 33:16, 38:11, 46:17, 46:21, 48:10, 52:4, 52:5, 59:9
DATED [1] - 61:20
dates [10] - 14:16, 33:23, 37:9, 45:23, 46:4, 46:13, 51:24, 52:8, 59:7, 59:8
David [3] - 3:8, 5:24, 8:11
DAVID [2] - 1:14, 1:14
Davies [1] - 15:13
Davis [7] - 4:4, 6:11, 6:12, 33:25, 49:20, 50:12, 57:7
DAVIS [18] - 6:10, 6:14, 33:24, 34:3, 35:8, 36:3, 36:5, 49:20, 50:11, 50:25, 51:4, 52:2, 57:6, 57:9, 57:23, 58:7, 59:2, 60:20
days [16] - 14:10, 26:15, 33:17, 41:20, 41:21, 45:20, 46:24, 47:1, 47:5, 47:17, 49:17, 51:23, 51:25, 59:12, 60:13
deadline [4] - 25:11, 25:16, 25:24
deadlines [4] - 8:16, 25:25, 49:23, 59:5
death [1] - 40:14
debt [1] - 50:23
deceased [1] - 36:12
decide [7] - 7:24, 16:10, 18:5, 29:17, 30:14, 53:23, 53:25
decided [3] - 16:25, 18:5, 29:16
decision [13] - 10:5, 12:2, 15:24, 15:25, 16:2, 16:4, 16:6, 22:20, 22:21, 22:24, 29:24, 30:20, 30:25
decisions [3] - 8:4,

12:6
deemed [2] - 19:16, 34:12
defend [2] - 43:1, 43:4
DEFENDANT [4] - 4:10, 4:14, 4:18, 4:22
defendant [1] - 42:25
Defendant [3] - 2:6, 7:12, 7:13
defendants [30] - 6:2, 6:11, 6:15, 6:18, 6:20, 6:22, 7:1, 7:4, 9:22, 16:14, 16:19, 18:10, 22:14, 23:3, 23:18, 28:14, 34:17, 35:7, 40:22, 41:12, 42:23, 42:25, 43:16, 43:18, 44:15, 49:12, 49:25, 52:2, 59:1
DEFENDANTS [4] - 3:15, 3:19, 4:3, 4:6
Defendants [1] - 1:16
defendants' [4] - 11:4, 34:4, 35:13, 45:14
defense [5] - 11:7, 20:8, 52:23, 56:23, 59:25
definitely [2] - 16:16, 47:4
DEFREEST [6] - 7:13, 21:6, 42:16, 42:18, 58:16, 58:23
DeFreest [6] - 4:11, 7:14, 21:4, 42:16, 58:15, 58:22
delay [1] - 19:13
denial [1] - 16:12
denied [2] - 16:1, 16:5
denominator [8] - 31:19, 33:7, 38:15, 38:19, 39:1, 45:8, 59:12, 60:5
denominators [1] - 46:24
DEPARTMENT [2] - 4:3, 4:7
deposition [1] - 53:12
depositions [1] - 57:11
depth [1] - 11:15
DEPUTY [2] - 5:4, 5:8
described [1] - 20:9
descriptions [1] - 57:14
desire [1] - 19:8
despite [1] - 29:6
destiny [1] - 44:25
determine [4] - 10:4, 23:15, 24:24, 42:21

determined [2] - 11:16, 16:18
determines [1] - 15:21
determining [2] - 9:2, 46:22
develop [2] - 38:13, 41:24
development [1] - 41:14
devote [1] - 14:8
different [7] - 9:5, 12:17, 19:19, 20:8, 26:12, 47:9, 47:11
difficult [4] - 43:25, 52:5, 59:14
difficulties [2] - 61:12, 61:15
digital [3] - 53:15, 54:20, 54:25
digitally [4] - 53:8, 53:11, 54:8, 61:18
direct [1] - 27:11
directing [1] - 42:20
disagree [5] - 30:7, 37:19, 37:25, 40:22, 48:5
disappointed [1] - 13:11
disavowal [1] - 32:18
discovery [2] - 16:8, 53:9
discretion [4] - 19:4, 20:4, 28:7, 43:14
discretionary [1] - 35:20
discuss [3] - 8:1, 17:4, 52:9
discussed [1] - 49:22
discussion [3] - 19:18, 31:2, 41:3
discussions [2] - 32:7, 32:10
disinclined [1] - 14:15
dispute [3] - 23:8, 30:5, 30:7
disputes [2] - 30:8, 42:7
disregard [3] - 13:6, 13:7, 56:14
distill [1] - 10:11
District [2] - 5:4, 5:5
district [1] - 48:10
DISTRICT [3] - 1:1, 1:2, 2:15
DIVISION [1] - 1:3
docket [2] - 13:1, 57:22
doctrine [1] - 24:2
documents [2] - 16:15, 56:15

**dollars** [1] - 57:1
**done** [7] - 11:23, 13:18, 37:6, 38:2, 38:5, 46:24, 49:16
**double** [1] - 39:11
**double-sounded** [1] - 39:11
**down** [9] - 19:11, 37:9, 37:13, 38:24, 43:10, 45:23, 46:21, 48:8, 60:17
**DOWNING** [1] - 1:10
**draft** [2] - 11:25, 13:14
**drafted** [1] - 13:20
**drafting** [1] - 13:17
**drive** [6] - 53:15, 53:21, 55:9, 56:17, 58:4, 58:5
**drives** [3] - 55:1, 55:5, 55:14
**drooping** [1] - 39:14
**drop** [1] - 56:5
**Dropbox** [8] - 55:22, 55:23, 55:24, 56:4, 56:5, 57:17, 57:20, 57:25
**ducks** [1] - 32:3
**Due** [1] - 61:8
**due** [8] - 16:22, 26:11, 34:6, 47:16, 53:14, 58:4, 60:3, 60:4
**during** [1] - 61:12
**duty** [1] - 51:18

## E

**e-mail** [2] - 11:2, 56:2
**ease** [1] - 11:13
**easier** [1] - 13:7
**easiest** [1] - 30:2
**easy** [1] - 43:21
**edit** [2] - 9:6, 56:19
**effect** [2] - 35:15, 57:5
**effective** [4] - 13:24, 42:22, 48:18, 51:13
**efficacy** [1] - 14:23
**efficiency** [2] - 9:15, 19:7
**efficient** [1] - 9:13
**efficiently** [2] - 8:9, 38:4
**efforts** [1] - 50:1
**either** [3] - 18:11, 47:8, 60:8
**emphasize** [1] - 34:15
**empowered** [1] - 9:18
**empty** [1] - 15:3
**end** [10] - 12:7, 12:22, 14:11, 14:17, 38:9, 39:14, 41:17, 44:20, 59:22
**ending** [1] - 38:11
**ends** [1] - 38:9
**engaging** [2] - 32:10, 32:12
**enlist** [1] - 48:1
**enter** [2] - 13:14, 59:4
**entered** [6] - 12:24, 12:25, 13:10, 15:4, 24:21, 24:22
**entirely** [1] - 8:3
**entitled** [1] - 61:6
**enunciate** [1] - 61:11
**Erek** [2] - 4:15, 7:15
**ERIC** [1] - 1:12
**Eric** [3] - 4:11, 7:13, 42:16
**especially** [1] - 14:9
**essence** [1] - 29:18
**essentially** [2] - 14:11, 42:24
**establish** [2] - 17:16, 23:4
**established** [1] - 18:12
**establishing** [2] - 18:12, 56:16
**ESTATE** [1] - 1:14
**ET** [4] - 3:15, 3:19, 4:3, 4:6
**et** [4] - 5:9, 5:10, 57:12
**ethics** [1] - 24:9
**EUGENE** [1] - 1:3
**Eugene** [5] - 1:9, 4:12, 4:16, 51:18, 51:19
**evaluation** [1] - 30:23
**event** [1] - 26:24
**evidence** [11] - 40:9, 41:8, 41:21, 42:3, 42:10, 42:13, 42:15, 44:2, 59:17, 59:21, 60:1
**evidentiary** [4] - 14:13, 30:23, 57:10, 59:21
**exactly** [1] - 27:20
**example** [2] - 18:7, 51:15
**excepting** [1] - 41:22
**exception** [1] - 24:1
**exchange** [1] - 53:9
**excuse** [2] - 6:3, 26:13
**exhibit** [6] - 25:21, 53:4, 53:10, 53:14, 53:21, 57:13
**exhibits** [12] - 8:22, 17:3, 25:22, 53:2, 53:9, 53:22, 54:2, 54:15, 56:6, 56:15, 57:11, 58:6

**existence** [1] - 27:21
**existing** [2] - 14:7, 42:4
**expect** [1] - 60:1
**expedited** [2] - 45:17, 50:2
**Expire** [1] - 61:24
**explanation** [3] - 17:5, 17:9, 20:17
**explore** [1] - 50:9
**express** [1] - 49:24
**extend** [2] - 12:21, 57:12
**extension** [1] - 13:11
**extent** [4] - 12:1, 38:15, 40:21, 42:6
**extrapolating** [1] - 42:19

## F

**face** [2] - 51:14
**faces** [1] - 5:13
**facilitate** [1] - 32:6
**fact** [3] - 19:9, 23:25, 28:11
**facts** [2] - 23:5, 23:7
**factual** [3] - 23:10, 23:12, 35:19
**failed** [1] - 23:3
**failing** [2] - 23:5, 61:10
**fair** [2] - 21:22, 46:3
**fall** [2] - 24:20, 27:2
**falls** [1] - 43:14
**false** [2] - 18:8, 18:9
**family's** [1] - 36:12
**far** [8] - 13:4, 14:19, 17:25, 19:10, 25:15, 44:10, 48:25, 55:6
**fashion** [1] - 54:21
**favorable** [1] - 23:5
**favors** [1] - 50:21
**fear** [1] - 54:4
**federal** [2] - 23:25, 40:16
**feedback** [2] - 13:21, 15:11
**few** [2] - 12:11, 38:3
**Fifth** [1] - 34:11
**figure** [5] - 31:10, 33:6, 43:10, 43:22, 45:1
**file** [18] - 9:3, 9:24, 10:16, 17:15, 17:17, 20:10, 20:16, 22:8, 24:13, 24:18, 24:19, 24:23, 31:8, 39:24, 53:3, 57:20, 57:21, 59:12

**filed** [9] - 8:2, 11:11, 13:10, 17:13, 22:3, 24:14, 35:25, 45:20, 46:9
**files** [1] - 22:5
**filing** [5] - 22:7, 34:9, 34:13, 34:15, 56:14
**filings** [4] - 8:6, 10:10, 57:10, 57:13
**final** [7] - 12:23, 13:19, 15:22, 17:5, 29:17, 30:25, 34:20
**finally** [1] - 14:22
**findings** [2] - 23:10, 23:12
**fine** [2] - 17:2, 51:6
**finish** [1] - 9:12
**firm** [1] - 38:20
**first** [16] - 5:15, 7:23, 8:12, 11:6, 11:9, 15:7, 16:22, 18:3, 28:17, 33:22, 36:10, 39:21, 51:20, 52:10, 53:17
**fix** [2] - 39:12, 39:13
**flip** [1] - 55:14
**flowing** [2] - 8:3, 14:24
**folks** [1] - 55:5
**follow** [3] - 49:3, 50:10, 51:21
**following** [2] - 16:22, 60:4
**FOR** [12] - 1:2, 3:3, 3:7, 3:11, 3:15, 3:19, 4:3, 4:6, 4:10, 4:14, 4:18, 4:22
**forcing** [2] - 42:25, 43:3
**foregoing** [1] - 61:3
**foresee** [2] - 35:21, 35:23
**forgotten** [1] - 5:14
**form** [1] - 55:16
**formalize** [1] - 35:14
**formally** [1] - 15:4
**format** [3] - 54:25, 56:6, 57:18
**forth** [1] - 17:3
**forward** [15] - 13:13, 16:8, 16:9, 17:6, 18:14, 21:10, 26:20, 35:16, 42:12, 42:24, 43:5, 59:8, 59:19, 60:16
**four** [4] - 11:22, 14:11, 14:12, 32:24
**fours** [1] - 18:1
**fox** [1] - 32:21
**framed** [1] - 21:8

**frankly** [3] - 9:3, 11:13, 56:21
**FRANZ** [17] - 3:15, 3:19, 6:21, 15:10, 15:17, 15:19, 17:25, 18:23, 20:3, 48:12, 48:20, 48:24, 52:11, 53:1, 54:23, 55:19, 55:21
**Franz** [26] - 3:16, 6:21, 15:9, 15:13, 15:16, 17:19, 18:18, 20:9, 21:7, 21:25, 22:5, 22:8, 22:16, 24:22, 28:13, 31:8, 32:19, 41:10, 44:21, 48:9, 48:14, 52:19, 52:25, 54:22, 55:20, 56:11
**Franz's** [3] - 20:17, 41:10, 44:19
**freeing** [1] - 50:20
**freeman's** [1] - 40:13
**Friday** [2] - 36:18, 36:20
**frivolous** [10] - 9:18, 9:20, 17:11, 24:14, 35:11, 36:1, 45:11, 45:14, 46:8, 59:6
**front** [1] - 32:1
**fronts** [1] - 41:15
**fruit** [1] - 36:16
**full** [3] - 5:17, 41:14, 41:21
**full-throated** [1] - 41:14
**fully** [4] - 34:19, 40:8, 40:20
**function** [1] - 20:11
**future** [2] - 30:15, 32:20

## G

**gathering** [1] - 16:15
**gears** [1] - 44:25
**general** [3] - 31:9, 54:24, 59:24
**generally** [2] - 31:23, 59:22
**given** [10] - 9:7, 14:6, 17:21, 23:24, 31:12, 33:17, 47:1, 47:19, 48:17, 49:22
**glad** [2] - 41:5, 45:5
**Gomillion** [1] - 24:17
**grab** [1] - 36:15
**granted** [1] - 59:18
**grateful** [1] - 33:11
**great** [1] - 43:9
**greater** [2] - 50:23

**greatly** [2] - 31:24, 31:25
**group** [1] - 53:24
**GROUP** [2] - 4:18, 4:22
**groups** [1] - 53:24
**guarantee** [1] - 33:17
**guarantied** [1] - 55:15
**guardian** [2] - 1:6, 2:1
**guess** [5] - 14:23, 25:8, 29:16, 35:10, 49:24
**guidance** [1] - 35:2
**guidelines** [1] - 28:20

## H

**half** [1] - 41:20
**HALL** [1] - 1:14
**hand** [4] - 28:21, 47:8, 47:11, 52:23
**hands** [1] - 33:1
**hanging** [1] - 36:16
**happy** [4] - 29:3, 49:16, 50:8, 50:9
**hard** [4] - 7:17, 37:2, 38:12, 57:18
**head)** [2] - 46:25, 56:20
**heads** [1] - 7:25
**heads-up** [1] - 7:25
**hear** [6] - 11:4, 15:12, 15:15, 15:17, 25:7, 48:23
**heard** [1] - 34:6
**hearing** [2] - 37:4, 45:22
**heavily** [1] - 10:5
**heavy** [1] - 13:16
**held** [2] - 40:18, 51:16
**hell** [1] - 60:15
**help** [4] - 32:2, 48:2, 48:7, 50:2
**helpful** [8] - 9:2, 11:4, 11:17, 33:9, 33:10, 48:11, 48:18, 49:6
**helping** [1] - 33:9
**helps** [2] - 30:14, 32:2
**HENDERSON** [3] - 3:15, 3:19, 6:24
**Henderson** [3] - 3:20, 6:25, 52:19
**herself** [1] - 6:16
**high** [1] - 13:18
**High** [2] - 4:11, 4:15
**highly** [1] - 12:16
**hitch** [1] - 14:20
**HOFFMEYER** [1] - 6:17
**Hoffmeyer** [2] - 4:7,

6:18
**Honor** [51] - 5:19, 5:24, 6:4, 6:10, 6:14, 6:21, 6:24, 7:3, 7:7, 10:25, 15:10, 15:17, 20:4, 20:15, 21:6, 21:19, 25:5, 25:19, 26:2, 27:11, 30:2, 31:21, 33:24, 36:3, 36:13, 37:11, 37:20, 38:1, 39:3, 42:16, 46:4, 47:6, 47:10, 49:20, 50:11, 50:19, 51:5, 51:11, 52:1, 52:11, 52:12, 52:22, 53:1, 56:9, 57:6, 58:13, 58:16, 58:20, 58:24, 59:3
**Honor's** [1] - 34:18
**HONORABLE** [1] - 2:14
**Honorable** [1] - 5:5
**honorific** [1] - 5:17
**hope** [3] - 22:12, 23:17, 60:6
**hopefully** [3] - 45:6, 52:20, 60:11
**hoping** [2] - 48:14, 50:19
**HORMANN** [3] - 1:10, 4:3, 4:6
**housekeeping** [1] - 52:8
**Humiston** [3] - 2:24, 61:22, 61:23
**HWS** [2] - 4:18, 4:22
**hypothetical** [1] - 23:2

## I

**idea** [2] - 7:25, 31:18
**ideal** [1] - 34:22
**identified** [1] - 11:18
**identify** [9] - 8:6, 29:7, 31:15, 31:19, 38:18, 39:1, 42:6, 46:23, 59:15
**identifying** [2] - 60:12, 61:11
**ii** [1] - 4:1
**imagine** [2] - 19:21, 23:2
**immune** [3] - 18:10, 41:12, 41:13
**immunity** [22] - 15:25, 16:4, 16:7, 16:8, 16:9, 16:18, 17:1, 17:20, 18:3, 18:15, 20:19, 22:10, 22:20, 23:8, 27:17, 27:21,

40:3, 40:6, 41:11, 42:3, 59:20
**impact** [1] - 21:17
**impervious** [1] - 31:14
**important** [1] - 41:6
**impossible** [1] - 37:3
**IN** [1] - 1:1
**inclined** [7] - 14:25, 16:3, 19:12, 19:13, 29:4, 29:14, 42:10
**include** [1] - 58:2
**including** [2] - 32:11
**indicate** [1] - 37:18
**indicated** [4] - 8:24, 16:2, 29:15, 44:14
**indicates** [1] - 54:13
**individual** [7] - 1:6, 2:1, 6:9, 6:20, 18:10, 27:20, 40:24
**infer** [1] - 37:24
**influenced** [1] - 10:4
**inform** [1] - 29:2
**informal** [1] - 11:10
**informally** [1] - 26:19
**information** [5] - 12:20, 13:23, 32:4, 38:22, 59:11
**initial** [2] - 23:4, 23:6
**inquire** [2] - 51:20
**inquired** [1] - 50:15
**inquiring** [1] - 51:2
**instance** [1] - 34:23
**instead** [1] - 46:5
**instinct** [1] - 28:17
**instructing** [1] - 56:13
**insurers** [1] - 32:12
**intending** [1] - 20:11
**intents** [1] - 17:21
**inter** [1] - 35:1
**interest** [1] - 47:22
**interested** [2] - 27:2, 29:5
**interim** [2] - 25:12, 35:11
**interloc** [1] - 31:13
**interlocutory** [25] - 10:4, 19:25, 22:9, 22:15, 22:16, 23:16, 24:1, 24:5, 24:13, 25:2, 27:5, 29:7, 30:22, 31:4, 31:8, 31:13, 31:20, 34:20, 35:18, 38:16, 40:3, 42:2, 42:13, 44:16, 59:19
**interpretation** [1] - 31:3
**interrupted** [1] - 58:22
**interruption** [1] - 12:8
**intervening** [1] - 28:10

**introduce** [1] - 6:15
**introductions** [2] - 5:15, 7:22
**invitation** [1] - 18:20
**involved** [2] - 32:20, 54:14
**issue** [22] - 8:12, 10:20, 14:22, 15:5, 15:7, 17:20, 18:4, 21:8, 21:16, 24:19, 26:17, 27:25, 35:9, 40:19, 45:10, 46:13, 46:15, 47:11, 47:15, 52:13
**issued** [3] - 9:25, 19:17, 21:23
**issues** [43] - 8:13, 10:23, 11:18, 12:14, 14:13, 15:20, 17:7, 18:5, 21:9, 21:10, 26:21, 27:7, 27:8, 28:1, 29:6, 29:9, 29:23, 31:14, 31:19, 33:10, 38:14, 38:15, 38:19, 39:1, 40:1, 40:6, 40:8, 41:10, 41:25, 42:2, 42:11, 42:15, 45:3, 45:8, 47:3, 47:18, 49:1, 49:6, 52:9, 52:18, 59:12, 59:13, 60:5
**it'll** [3] - 43:25, 45:13, 45:14
**item** [1] - 17:4
**items** [2] - 8:1, 10:12
**itself** [2] - 15:24, 42:3

## J

**jam** [1] - 25:14
**JAMES** [2] - 1:5, 2:1
**jerk** [1] - 10:1
**Jesse** [4] - 4:4, 6:10, 33:24, 57:7
**JOHN** [1] - 1:12
**Johnson** [1] - 23:13
**joining** [2] - 20:11, 20:12
**joint** [4] - 47:3, 59:12, 60:3, 60:4
**joking** [1] - 36:19
**Jones** [1] - 23:13
**Jr** [1] - 3:16
**judge** [8] - 48:2, 48:3, 48:10, 48:11, 48:18, 49:5, 49:15, 60:12
**Judge** [22] - 6:17, 8:11, 21:21, 32:24, 45:25, 50:12, 50:13, 50:16, 50:20, 50:25,

51:1, 51:2, 51:6, 51:15, 51:17, 51:21, 51:24, 60:19, 60:20
**JUDGE** [1] - 2:15
**judge's** [2] - 57:17, 58:1
**judges** [2] - 32:1, 50:5
**judgment** [18] - 8:5, 8:16, 8:22, 9:4, 10:1, 10:14, 11:22, 12:14, 12:16, 13:20, 23:4, 29:25, 30:24, 33:11, 34:12, 36:8, 46:18, 47:18
**judicial** [2] - 19:7, 20:6
**July** [20] - 16:22, 22:2, 25:13, 33:16, 33:20, 34:3, 34:7, 36:22, 36:23, 36:25, 37:1, 37:4, 42:8, 46:12, 46:20, 50:18, 59:7, 59:9
**jump** [2] - 24:10, 31:22
**June** [9] - 9:9, 10:17, 10:18, 26:8, 33:19, 46:9, 46:12, 52:5
**jurisdiction** [6] - 10:3, 18:4, 20:5, 22:16, 23:16, 23:25
**jury** [4] - 23:11, 40:10, 54:2, 54:16
**jury's** [1] - 40:15
**JUSTICE** [2] - 4:3, 4:7

## K

**KARCHER** [1] - 1:11
**Kasubhai** [3] - 5:6, 33:4, 56:1
**KASUBHAI** [1] - 2:14
**KATHY** [1] - 1:13
**keep** [7] - 7:18, 8:8, 13:2, 37:5, 42:13, 43:14, 45:18
**Kellie** [3] - 2:24, 61:22, 61:23
**Kellie_Humiston@ ord.uscourts.gov** [1] - 2:25
**kick** [1] - 43:9
**kind** [11] - 5:16, 13:9, 28:9, 32:19, 33:15, 35:13, 47:22, 50:8, 55:8, 57:16, 59:23
**KIP** [1] - 1:11
**knee** [1] - 10:1
**knee-jerk** [1] - 10:1
**KRINGS** [1] - 1:10
**KRIS** [1] - 1:10

**Kristen** [2] - 4:7, 6:18

## L

**labeled** [1] - 55:12
**labeling** [1] - 55:13
**lack** [1] - 57:1
**laid** [1] - 25:25
**last** [4] - 15:6, 26:14, 60:11
**late** [1] - 26:9
**LAUERSDORF** [13] - 3:3, 3:11, 5:19, 5:23, 21:18, 47:10, 47:15, 51:5, 51:10, 52:1, 52:15, 52:17, 60:19
**Lauersdorf** [11] - 3:4, 5:19, 7:24, 8:10, 8:13, 21:14, 21:16, 47:10, 49:4, 52:14, 58:9
**law** [14] - 16:10, 18:3, 18:8, 18:14, 20:5, 21:11, 23:24, 24:9, 24:17, 27:15, 27:22, 34:22, 35:16, 40:22
**LAW** [2] - 4:18, 4:22
**lawyer** [1] - 30:16
**lead** [4] - 7:25, 24:16, 25:9, 26:16
**LEAR** [7] - 7:10, 39:3, 39:5, 39:7, 39:12, 39:16, 39:18
**Lear** [7] - 4:19, 7:10, 7:11, 39:4, 39:5, 39:9, 58:12
**Lear's** [2] - 42:18, 59:16
**learn** [1] - 30:15
**least** [11] - 8:20, 10:11, 20:24, 34:4, 34:10, 34:19, 36:5, 49:5, 54:18, 54:21, 59:23
**leave** [3] - 19:24, 42:5, 47:20
**led** [1] - 11:1
**left** [2] - 11:23, 40:7
**legal** [1] - 35:15
**less** [2] - 38:5, 40:19
**letter** [19] - 8:3, 8:15, 8:24, 11:10, 12:2, 12:19, 12:22, 13:1, 13:6, 13:9, 14:24, 15:23, 15:24, 29:19, 31:25, 32:5, 32:9
**letting** [1] - 31:18
**level** [1] - 55:5
**liability** [1] - 27:20
**life** [1] - 13:7

**lifting** [1] - 13:17
**light** [7] - 13:23, 16:7, 23:5, 30:3, 42:1, 48:9, 49:1
**likelihood** [3] - 12:22, 51:16, 51:17
**likely** [5] - 8:21, 29:24, 30:13, 33:20, 34:19
**limine** [3] - 8:23, 9:4, 57:21
**limited** [4] - 14:7, 22:16, 23:25, 61:14
**line** [4] - 12:5, 12:13, 30:21
**Lisa** [3] - 4:19, 7:10, 39:5
**list** [5] - 13:18, 19:1, 53:3, 53:4, 53:14
**listen** [1] - 14:15
**lists** [3] - 25:21, 53:21, 57:13
**litem** [2] - 1:6, 2:2
**literally** [1] - 54:8
**litigate** [1] - 19:11
**litigation** [8] - 10:8, 10:22, 19:8, 32:13, 32:20, 34:5, 36:9, 41:14
**live** [1] - 13:7
**lives** [1] - 60:15
**living** [1] - 60:15
**location** [1] - 55:12
**LOEVY** [2] - 3:7
**look** [16] - 14:4, 16:11, 16:12, 19:9, 23:18, 29:11, 30:18, 33:18, 35:21, 46:6, 48:8, 58:5, 59:21, 59:25, 60:16
**looking** [4] - 35:10, 42:9, 42:12, 55:20
**looks** [4] - 7:20, 9:1, 39:14, 39:17
**lose** [1] - 55:15
**loud** [1] - 14:14
**low** [1] - 36:16
**low-hanging** [1] - 36:16
**lunch** [1] - 41:22
**luncheon** [1] - 40:17
**LUVAAS** [2] - 4:10, 4:14

## M

**magistrate** [3] - 48:2, 48:11, 49:5
**mail** [2] - 11:2, 56:2
**Main** [2] - 4:19, 4:23
**main** [1] - 10:23

**MALONEY** [2] - 3:3, 3:11
**manage** [3] - 45:2, 55:3, 56:24
**manageable** [1] - 14:17
**managed** [1] - 44:11
**management** [5] - 16:12, 16:13, 16:14, 53:1, 56:13
**marathon** [1] - 33:20
**mark** [1] - 15:25
**MARK** [1] - 1:10
**Market** [2] - 4:4, 4:8
**MARY** [1] - 1:10
**material** [1] - 23:7
**matter** [6] - 23:22, 24:7, 44:20, 47:25, 48:4, 60:14
**matter's** [3] - 27:12, 28:4, 43:16
**matters** [7] - 8:5, 8:8, 17:23, 26:22, 26:25, 27:4, 52:8
**McGuffin** [3] - 5:9, 5:10, 34:5
**MCGUFFIN** [2] - 1:5, 2:1
**MCINNES** [1] - 1:11
**MCNEELY** [1] - 1:11
**mean** [16] - 11:13, 19:3, 19:20, 26:22, 33:25, 41:6, 43:6, 43:8, 43:23, 44:13, 44:16, 44:24, 48:16, 49:15, 49:16, 55:19
**means** [3] - 16:1, 42:3, 61:5
**meant** [4] - 30:2, 30:5, 30:9, 34:25
**meantime** [2] - 33:3, 60:17
**measured** [1] - 28:12
**mediation** [1] - 48:12
**meeting** [1] - 40:17
**mention** [2] - 25:5, 34:9
**mentioned** [5] - 24:15, 27:25, 32:5, 56:11, 61:14
**Meredith** [2] - 4:23, 7:3
**merits** [2] - 22:19, 34:21
**mess** [2] - 30:14, 30:17
**met** [1] - 23:6
**methods** [1] - 32:11
**Mia** [2] - 3:12, 6:6
**MICHAEL** [1] - 1:11

**mid** [1] - 9:8
**might** [18] - 8:1, 10:12, 13:8, 29:11, 29:21, 30:7, 30:10, 30:18, 31:2, 36:7, 36:19, 36:21, 41:20, 44:21, 50:7, 51:22, 59:17
**mind** [4] - 16:1, 50:5, 54:15, 57:16
**mindful** [1] - 28:23
**minimum** [1] - 31:16
**minor** [2] - 1:7, 2:2
**minute** [7] - 46:13, 56:13, 57:4, 59:4, 59:10, 60:6, 60:9
**modify** [1] - 32:18
**moment** [3] - 7:14, 27:1, 27:3
**Monell** [2] - 27:16, 27:23
**months** [6] - 20:2, 22:2, 22:8, 24:6, 38:3
**morning** [10] - 5:7, 5:12, 5:24, 6:10, 6:12, 6:21, 6:24, 7:3, 20:15, 37:5
**most** [4] - 23:5, 47:4, 51:13, 60:11
**motion** [27] - 9:24, 17:15, 17:17, 24:13, 24:23, 25:3, 34:12, 35:11, 35:12, 35:13, 35:21, 35:24, 35:25, 36:2, 36:8, 45:1, 45:10, 45:11, 45:13, 45:15, 45:17, 46:7, 46:8, 59:5, 59:18
**motions** [19] - 8:4, 8:22, 9:3, 10:14, 11:22, 12:14, 12:15, 13:20, 24:18, 29:24, 45:19, 46:11, 46:18, 47:18, 56:14, 57:13, 57:21, 58:3
**motivated** [1] - 12:1
**move** [14] - 9:10, 13:13, 14:15, 19:8, 19:12, 26:6, 28:5, 28:6, 36:16, 42:10, 42:12, 42:23, 45:19, 48:18
**moved** [1] - 46:19
**moves** [1] - 14:20
**moving** [11] - 8:8, 10:14, 13:2, 13:25, 14:1, 14:8, 21:10, 43:5, 45:23, 46:18, 59:8
**MR** [82] - 5:19, 5:23,

5:24, 6:10, 6:14, 6:21, 7:13, 8:11, 10:25, 15:10, 15:17, 15:19, 17:25, 18:23, 20:3, 21:6, 21:18, 21:21, 22:12, 22:21, 23:1, 25:18, 26:2, 26:4, 26:7, 26:10, 27:10, 30:1, 31:21, 32:23, 33:24, 34:3, 35:8, 36:3, 36:5, 36:12, 37:11, 37:20, 37:23, 38:1, 42:16, 42:18, 45:16, 45:25, 46:25, 47:6, 47:10, 47:15, 48:12, 48:20, 48:24, 49:20, 50:11, 50:25, 51:4, 51:5, 51:10, 52:1, 52:2, 52:11, 52:12, 52:15, 52:16, 52:17, 52:21, 53:1, 54:23, 55:19, 55:21, 56:9, 56:20, 57:3, 57:6, 57:9, 57:23, 58:7, 58:10, 58:16, 58:23, 59:2, 60:19, 60:20
**MS** [22] - 6:3, 6:6, 6:17, 6:24, 7:3, 7:6, 7:10, 20:15, 36:23, 36:25, 39:3, 39:5, 39:7, 39:12, 39:16, 39:18, 46:4, 49:3, 49:9, 52:4, 58:13, 58:20
**multiple** [1] - 55:14
**municipal** [8] - 6:22, 6:25, 16:14, 16:19, 40:21, 42:23, 42:25, 43:4
**municipalities** [1] - 27:16
**municipality** [1] - 27:19
**must** [1] - 46:9
**MUSTAFA** [1] - 2:14
**Mustafa** [1] - 5:6
**mute** [2] - 15:13, 15:15
**muted)** [1] - 15:14
**Mx** [1] - 5:17
**mystery** [1] - 13:8

## N

**name** [1] - 5:17
**narrow** [2] - 24:1, 38:24
**nature** [1] - 40:4
**navigate** [2] - 12:8,

43:7
**navigating** [1] - 43:20
**necessarily** [3] - 11:25, 22:17, 44:19
**necessary** [4] - 13:25, 41:8, 42:11, 56:19
**need** [25] - 8:5, 17:17, 26:19, 28:1, 28:14, 28:18, 29:7, 29:17, 31:7, 34:15, 36:20, 37:15, 40:16, 40:24, 41:17, 42:5, 42:7, 42:23, 43:15, 45:19, 45:23, 52:9, 53:11, 57:20
**needed** [2] - 11:18, 11:19
**needs** [5] - 11:8, 13:4, 24:23, 29:22, 41:24
**neglecting** [1] - 58:17
**negotiating** [1] - 47:2
**neutral** [1] - 47:25
**never** [7] - 18:13, 18:19, 18:22, 18:25, 30:15, 32:20
**nevertheless** [2] - 17:22, 42:3
**new** [3] - 5:13, 39:24, 46:21
**next** [6] - 8:17, 16:5, 17:4, 49:17, 51:25, 60:13
**nice** [1] - 53:21
**NICHOLAS** [2] - 1:5, 2:1
**Ninth** [15] - 9:24, 15:1, 16:20, 16:21, 17:14, 17:18, 18:1, 18:6, 19:15, 22:6, 24:16, 26:23, 27:6, 31:10, 36:1
**nobody** [1] - 38:3
**normal** [1] - 45:18
**normally** [2] - 18:13, 18:15
**notebooks** [6] - 53:6, 53:14, 53:18, 54:5, 54:22
**nothing** [8] - 19:19, 52:21, 58:10, 58:13, 58:16, 58:20, 58:23, 59:2
**notice** [25] - 8:2, 9:25, 10:20, 14:22, 14:24, 15:19, 16:20, 16:23, 17:13, 17:21, 19:15, 19:21, 20:10, 20:16, 21:17, 22:1, 22:2, 22:7, 22:8, 31:9, 31:13, 34:9, 34:13,

34:16, 41:10
**noticed** [1] - 26:23
**notices** [4] - 9:17, 20:18, 34:16, 35:15
**number** [3] - 23:9, 24:14, 28:12
**Numbers** [1] - 5:9

## O

**O&O** [2] - 13:14, 30:18
**object** [2] - 47:8, 48:6
**objection** [3] - 23:21, 48:12, 51:4
**objections** [2] - 37:2, 37:4
**obligation** [2] - 48:5, 50:23
**obligations** [1] - 26:11
**obviously** [3] - 23:2, 24:9, 27:15
**occur** [2] - 24:9, 61:12
**occurring** [1] - 61:15
**October** [3] - 38:9, 38:11
**OF** [7] - 1:2, 1:14, 1:15, 2:11, 4:3, 4:7
**offer** [4] - 21:15, 29:4, 34:1, 41:2
**offered** [1] - 12:25
**office** [2] - 7:7, 50:13
**officer** [1] - 27:20
**officers** [1] - 6:9
**Official** [1] - 61:23
**old** [2] - 13:4, 32:21
**once** [7] - 13:9, 21:23, 24:21, 38:18, 39:23
**one** [31] - 6:3, 6:14, 7:6, 8:1, 10:12, 14:3, 14:9, 21:11, 22:12, 22:24, 23:7, 24:15, 24:19, 32:5, 32:23, 35:9, 36:17, 39:14, 41:19, 43:11, 47:12, 52:13, 52:18, 54:9, 55:11, 55:22, 55:25, 57:6, 58:4, 61:10
**ones** [2] - 53:18, 54:17
**open** [12] - 11:7, 20:7, 20:13, 20:23, 28:25, 31:3, 31:18, 35:7, 35:22, 45:22, 54:25, 55:22
**opinion** [21] - 9:4, 10:13, 11:11, 11:24, 12:5, 12:17, 12:23, 13:1, 13:7, 13:9, 13:17, 21:23, 23:19, 29:18, 31:7, 33:11, 34:18, 36:7, 39:24,

46:17
**opportunity** [2] - 19:11, 33:2
**opposed** [1] - 10:17
**OR** [10] - 3:5, 3:13, 3:17, 3:21, 4:5, 4:8, 4:12, 4:16, 4:20, 4:24
**oral** [5] - 11:14, 11:16, 13:15, 13:16, 34:11
**order** [41] - 8:21, 9:2, 9:12, 10:13, 11:12, 11:24, 12:18, 13:10, 15:22, 15:24, 16:12, 16:13, 16:14, 16:23, 16:25, 17:5, 19:17, 19:19, 20:21, 21:23, 22:18, 23:19, 25:8, 25:19, 34:18, 39:25, 40:8, 40:10, 40:24, 46:13, 47:17, 53:2, 56:13, 57:4, 58:9, 59:4, 59:10, 60:6, 60:9
**ordered** [2] - 16:13, 16:19
**orders** [1] - 16:14
**OREGON** [4] - 1:2, 2:5, 4:3, 4:7
**Oregon** [5] - 1:9, 5:5, 5:10, 6:8, 48:3
**original** [1] - 61:17
**OSP** [1] - 59:1
**OSWALD** [1] - 1:11
**others'** [1] - 50:15
**otherwise** [2] - 17:17, 54:18
**ought** [1] - 44:6
**ourselves** [1] - 35:5
**outcome** [1] - 12:17
**outcomes** [1] - 21:24
**outlined** [2] - 12:2, 20:6
**outright** [1] - 32:18
**outstanding** [1] - 52:13
**overarching** [1] - 10:20
**overlap** [1] - 35:18
**owe** [1] - 50:21
**OWENS** [33] - 5:24, 5:25, 8:11, 10:25, 21:21, 22:12, 22:21, 23:1, 25:18, 26:2, 26:4, 26:7, 26:10, 27:10, 30:1, 31:21, 32:23, 36:12, 37:11, 37:20, 37:23, 38:1, 45:16, 45:25, 46:25, 47:6, 52:12, 52:16,

52:21, 56:9, 56:20, 57:3, 58:10
**Owens** [29] - 3:8, 5:25, 6:1, 7:24, 8:10, 8:11, 10:24, 17:9, 21:14, 21:16, 21:20, 26:21, 28:22, 29:15, 31:21, 32:17, 33:4, 33:22, 33:25, 37:19, 45:13, 45:24, 47:2, 49:2, 52:10, 54:13, 56:8, 56:23, 58:9
**Owens'** [1] - 21:18
**Owens-Kasubhai** [1] - 33:4
**owes** [1] - 50:22

## P

**p.m** [1] - 60:21
**P.O** [3] - 3:8, 3:16, 3:20
**page** [1] - 29:8
**pages** [6] - 53:7, 53:10, 54:5, 54:6, 54:9
**painful** [1] - 45:21
**paper** [11] - 17:4, 53:2, 53:11, 53:12, 53:22, 54:2, 54:10, 54:15, 54:19, 56:14, 57:2
**papers** [1] - 54:6
**parallel** [1] - 34:5
**part** [21] - 8:3, 22:22, 23:21, 24:11, 26:18, 27:21, 28:11, 29:2, 30:6, 31:1, 34:4, 36:19, 40:8, 42:20, 47:24, 58:18, 59:17, 60:2, 60:3
**participate** [1] - 37:3
**particular** [4] - 11:5, 30:9, 50:5, 51:6
**particularly** [1] - 23:24
**parties** [30] - 8:19, 10:16, 13:6, 20:22, 21:9, 29:13, 30:4, 31:15, 31:23, 32:9, 32:15, 35:1, 35:9, 35:14, 40:24, 42:20, 44:9, 48:5, 48:8, 49:7, 49:10, 50:3, 53:8, 53:16, 53:21, 56:6, 56:14, 59:11, 59:22, 61:8
**party** [1] - 34:23
**PAT** [1] - 1:10
**patch** [1] - 43:20
**pause** [7] - 8:7, 13:21, 15:11, 21:20, 33:19,

43:3, 51:3
**Pause** [1] - 12:10
**pay** [1] - 7:19
**pending** [3] - 27:13, 28:4, 39:22
**people** [4] - 7:20, 28:23, 40:17, 51:1
**perfectly** [1] - 49:21
**perhaps** [9] - 5:14, 10:20, 19:7, 20:13, 29:20, 41:19, 44:4, 50:20
**person** [5] - 5:21, 7:6, 51:9, 51:13, 60:17
**perspective** [2] - 34:8, 34:10
**phone** [1] - 61:9
**physical** [1] - 55:16
**pick** [2] - 30:17, 36:15
**piece** [1] - 15:6
**piecemeal** [1] - 29:12
**place** [2] - 37:10, 37:22
**plaintiff** [8] - 5:18, 5:25, 6:3, 6:6, 23:6, 25:21, 26:24, 27:6
**Plaintiff** [1] - 2:3
**plaintiff's** [8] - 5:16, 21:15, 28:16, 51:10, 56:23, 58:9, 58:18, 59:24
**Plaintiffs** [1] - 1:8
**plaintiffs** [23] - 5:20, 5:22, 6:7, 7:23, 9:16, 14:25, 19:14, 35:10, 36:14, 43:17, 43:23, 44:5, 44:14, 51:5, 52:1, 52:12, 52:22, 53:16, 53:17, 56:3, 56:4, 56:16
**PLAINTIFFS** [3] - 3:3, 3:7, 3:11
**plan** [1] - 9:1
**play** [9] - 22:11, 23:18, 24:4, 30:24, 33:5, 38:13, 41:9, 41:16, 44:2
**point** [14] - 17:9, 19:16, 20:12, 28:3, 33:7, 41:5, 42:18, 44:13, 44:19, 45:19, 48:20, 50:22, 54:18, 59:16
**points** [3] - 11:5, 39:19, 60:10
**Police** [2] - 5:10, 6:8
**POLICE** [1] - 2:5
**Portland** [7] - 3:5, 3:13, 4:5, 4:8, 4:20, 4:24, 51:16

**position** [6] - 8:18, 9:16, 9:18, 11:20, 20:13, 28:11
**positions** [2] - 11:5, 49:13
**possibility** [2] - 20:23, 53:5
**possible** [2] - 16:10, 45:22
**postponed** [1] - 40:2
**posture** [1] - 48:9
**potential** [3] - 22:13, 32:6, 45:6
**potentially** [1] - 29:11
**practical** [1] - 53:4
**practice** [5] - 32:1, 32:2, 35:1, 35:4, 35:21
**practiced** [1] - 18:25
**precluded** [1] - 34:23
**predicaments** [1] - 43:7
**preference** [2] - 51:7, 51:10
**preliminary** [5] - 8:4, 8:15, 32:2, 32:14, 35:2
**premature** [6] - 9:17, 9:21, 16:20, 16:23, 19:22, 39:23
**premises** [1] - 35:19
**prepare** [2] - 8:22, 38:4
**prepared** [6] - 26:24, 27:13, 36:18, 36:21, 44:17, 45:25
**present** [2] - 6:9, 59:25
**presiding** [1] - 5:6
**pretrial** [29] - 8:6, 8:16, 9:9, 9:10, 9:13, 10:9, 10:15, 13:25, 14:8, 14:15, 20:21, 25:13, 25:21, 25:23, 26:6, 26:25, 29:9, 34:7, 36:16, 37:8, 38:23, 42:8, 46:19, 46:21, 53:23, 54:18, 57:19, 59:7, 59:9
**prickly** [2] - 43:20
**primary** [2] - 8:14, 26:16
**prime** [1] - 45:7
**primed** [1] - 50:8
**priming** [1] - 45:7
**print** [1] - 54:16
**printer's** [1] - 54:19
**priority** [1] - 13:18
**probable** [3] - 18:9, 18:11, 18:12

**problem** [5] - 9:21, 26:18, 43:8, 47:24, 53:4
**procedural** [1] - 24:12
**procedurally** [1] - 20:17
**proceed** [7] - 16:15, 18:17, 19:5, 27:19, 35:14, 43:18
**proceeding** [1] - 24:22
**PROCEEDINGS** [1] - 2:11
**proceedings** [5] - 12:10, 24:24, 61:6, 61:13, 61:15
**Proceedings** [1] - 60:21
**process** [1] - 13:12
**progress** [1] - 10:21
**prompted** [1] - 32:9
**properly** [1] - 55:12
**proportionate** [1] - 37:9
**prospect** [1] - 47:23
**protective** [1] - 34:15
**protocol** [1] - 55:13
**provide** [6] - 11:24, 25:21, 29:21, 54:3, 56:17, 59:11
**provided** [5] - 9:23, 11:12, 12:13, 12:19, 21:25
**providing** [3] - 10:15, 35:1, 58:1
**psychology** [2] - 18:21, 18:24
**pull** [1] - 54:8
**Puracal** [1] - 25:9
**Puracal's** [1] - 26:14
**purposes** [5] - 16:25, 17:21, 26:25, 34:20, 43:17
**pursue** [2] - 35:10, 43:25
**pursuing** [1] - 32:16
**put** [2] - 53:2, 53:11
**puts** [1] - 22:2
**putting** [1] - 56:5
**puzzle** [1] - 21:3
**puzzled** [1] - 14:23

### Q

**qualified** [18] - 15:25, 16:4, 16:7, 17:1, 17:20, 18:3, 18:15, 20:19, 22:10, 22:20, 23:8, 27:16, 27:21, 40:3, 40:5, 41:11, 42:2, 59:20

**questionably** [1] - 24:8
**questions** [3] - 20:19, 29:21, 44:22
**quick** [1] - 18:7
**quite** [4] - 19:10, 19:14, 33:18, 48:23
**quotation** [1] - 15:25

### R

**raise** [6] - 10:7, 28:21, 39:19, 41:11, 44:21, 52:23
**raised** [8] - 10:24, 11:24, 12:14, 33:1, 41:5, 45:10, 47:11, 52:18
**raising** [1] - 47:7
**rather** [1] - 58:4
**rationale** [1] - 9:23
**RAYMOND** [1] - 1:11
**re** [2] - 54:7, 54:9
**re-Bates** [2] - 54:7, 54:9
**reach** [1] - 50:6
**reached** [1] - 50:12
**reaction** [1] - 10:2
**read** [2] - 54:17, 56:18
**ready** [4] - 13:19, 43:18, 44:14, 49:18
**reaffirm** [1] - 41:3
**realistic** [1] - 47:19
**realistically** [1] - 48:16
**really** [6] - 11:3, 31:7, 38:13, 44:9, 47:15, 55:2
**rearrange** [1] - 54:1
**reason** [5] - 12:7, 19:22, 22:13, 24:11, 28:11
**reasonable** [2] - 22:14, 23:11
**reasoning** [2] - 11:24, 30:23
**reasons** [2] - 20:6, 61:14
**REAVES** [1] - 1:12
**receive** [1] - 12:17
**recognize** [4] - 14:2, 30:21, 34:17, 59:14
**recognizing** [1] - 11:13
**record** [7] - 30:24, 41:15, 41:24, 45:3, 59:17, 59:21, 61:4
**recruiting** [2] - 48:2, 48:7
**refer** [1] - 58:6
**reference** [1] - 30:15

**referring** [2] - 25:24, 57:10
**reflect** [2] - 46:21, 59:10
**reflected** [1] - 29:18
**reflecting** [1] - 59:5
**reflects** [2] - 29:18, 60:9
**regard** [1] - 42:18
**regarding** [6] - 8:6, 8:15, 10:13, 14:12, 59:11, 60:5
**regardless** [3] - 9:15, 25:6, 38:16
**regards** [1] - 15:19
**regular** [1] - 56:5
**regularly** [1] - 24:18
**REINER** [2] - 3:3, 3:11
**related** [2] - 18:2, 49:6
**relates** [4] - 17:1, 17:22, 24:20, 27:24
**relatively** [1] - 50:17
**relevant** [2] - 42:4, 42:15
**rely** [3] - 46:15, 47:7, 48:15
**remain** [8] - 17:23, 19:13, 27:7, 29:6, 38:14, 38:16, 40:9, 41:9
**remaining** [6] - 19:5, 29:12, 29:23, 38:19, 42:15, 43:18
**remains** [1] - 29:16
**reminding** [1] - 49:12
**renew** [1] - 22:1
**replies** [2] - 45:20, 58:3
**reply** [2] - 46:9, 46:11
**report** [3] - 47:3, 59:12, 60:4
**Reporter** [1] - 61:23
**REPORTER** [1] - 2:23
**reporting** [1] - 47:16
**reprinted** [1] - 54:7
**request** [2] - 25:14, 26:18
**require** [1] - 15:14
**requires** [1] - 53:2
**researched** [1] - 15:5
**reservation** [2] - 50:14, 50:16
**resolve** [1] - 30:7
**resolved** [2] - 27:8, 60:14
**respect** [11] - 10:8, 10:9, 15:2, 17:19, 20:18, 20:21, 21:5, 26:20, 39:21, 41:4, 49:6

**respond** [2] - 13:9, 14:11
**response** [1] - 48:13
**responses** [6] - 12:16, 45:20, 46:11, 48:15, 48:25, 58:3
**responsible** [1] - 56:16
**rest** [2] - 20:19, 40:6
**reverse** [1] - 18:21
**review** [3] - 12:15, 56:18, 57:19
**reviewing** [1] - 11:15
**revisit** [1] - 59:16
**rewind** [1] - 12:11
**RICHARD** [2] - 1:13, 1:20
**Richard** [2] - 7:5, 7:12
**RIDDLE** [1] - 1:12
**ripe** [2] - 19:16, 34:19
**RMR** [2] - 2:24, 61:23
**road** [2] - 43:10, 60:17
**Robert** [1] - 3:16
**Rose** [1] - 3:20
**row** [1] - 32:3
**rule** [2] - 17:16, 18:20
**ruling** [7] - 20:18, 28:9, 28:10, 32:14, 34:12, 34:18, 46:15
**rulings** [2] - 21:11, 40:5
**running** [1] - 47:24

### S

**S.M** [2] - 1:6, 2:2
**sake** [1] - 19:18
**SANBORN** [1] - 1:12
**Sarah** [2] - 3:20, 6:25
**Saturday** [1] - 36:19
**saving** [1] - 57:1
**SAWYER** [10] - 7:3, 7:6, 20:15, 36:23, 36:25, 46:4, 49:3, 49:9, 52:4, 58:13
**Sawyer** [5] - 4:23, 7:4, 21:7, 49:2, 58:12
**scenario** [2] - 22:13, 34:22
**schedule** [9] - 12:20, 14:7, 14:16, 15:8, 17:3, 34:8, 38:10, 45:18, 51:22
**scheduled** [4] - 11:14, 14:5, 14:9, 16:21
**SCHWENNINGER** [1] - 1:12
**scope** [1] - 23:16
**Scott** [1] - 4:11
**screen** [3] - 7:19,

7:21, 39:10
**SEAN** [1] - 1:12
**Seattle** [1] - 3:9
**second** [2] - 10:14, 35:3
**seconds** [1] - 12:11
**secure** [1] - 55:8
**see** [11] - 12:7, 12:22, 26:5, 33:15, 37:16, 39:13, 40:25, 46:7, 49:13, 50:22, 50:24
**seeing** [1] - 60:17
**seek** [1] - 32:10
**seeking** [2] - 22:15, 44:15
**send** [2] - 11:2, 56:2
**sense** [3] - 9:9, 38:7, 44:8
**sent** [2] - 11:10, 12:12
**separate** [5] - 9:15, 25:14, 26:17, 47:15, 55:23
**separately** [2] - 25:8, 25:15
**September** [11] - 9:8, 14:6, 14:21, 20:23, 27:14, 33:14, 38:9, 38:10, 38:24, 39:2
**serve** [1] - 48:3
**served** [1] - 53:2
**session** [1] - 5:5
**set** [17] - 5:8, 8:16, 9:1, 9:8, 10:18, 17:3, 17:23, 26:14, 27:1, 28:19, 44:25, 55:8, 55:25, 56:3, 56:4, 56:23
**sets** [1] - 14:12
**setting** [1] - 10:8
**settle** [1] - 26:13
**settlement** [9] - 32:7, 47:23, 48:3, 48:10, 48:18, 49:15, 50:1, 51:16, 60:12
**Seventh** [1] - 24:18
**several** [1] - 10:14
**share** [2] - 56:2, 56:24
**shared** [1] - 13:24
**sharing** [1] - 55:25
**SHELLY** [1] - 1:11
**shift** [1] - 22:24
**shifts** [1] - 12:4
**shipped** [1] - 57:2
**shorter** [1] - 38:17
**shot** [1] - 60:14
**show** [3] - 27:18, 30:15, 33:4
**shows** [1] - 27:17
**sic** [1] - 56:1
**side** [4] - 10:19, 21:15,

28:16, 35:13
**signature** [3] - 61:17, 61:18
**signed** [1] - 61:18
**significant** [3] - 9:7, 37:2, 60:12
**signing** [1] - 61:3
**similar** [2] - 49:12, 49:13
**simply** [5] - 14:17, 28:21, 28:24, 41:20, 45:1
**sincere** [1] - 47:22
**sit** [1] - 48:8
**situation** [4] - 18:13, 19:24, 21:2, 39:19
**six** [11] - 8:25, 25:20, 37:19, 38:6, 38:18, 41:17, 41:23, 59:15, 60:1
**sketch** [1] - 60:1
**slide** [2] - 37:9, 46:20
**sliding** [1] - 37:13
**smaller** [1] - 41:1
**SOCIETY** [4] - 1:14, 1:18, 4:18, 4:22
**Society** [12] - 7:2, 7:8, 7:10, 20:10, 20:14, 39:7, 39:18, 40:12, 40:14, 40:23, 52:4, 58:12
**someone** [2] - 7:9, 50:1
**sometimes** [3] - 26:12, 26:13, 54:14
**somewhat** [3] - 11:13, 34:7, 34:24
**soon** [6] - 16:10, 19:17, 46:16, 49:14, 49:19, 49:21
**sooner** [3] - 33:8, 38:22, 38:23
**sorry** [8] - 6:14, 6:17, 7:8, 31:22, 36:24, 46:10, 58:21
**sort** [13] - 8:18, 8:25, 9:13, 24:10, 25:4, 25:8, 30:9, 35:13, 35:19, 38:23, 39:1, 50:8, 57:17
**sounded** [1] - 39:11
**sounds** [1] - 18:20
**speakerphone** [1] - 61:9
**speakers** [3] - 61:10, 61:11
**speaking** [3] - 15:14, 47:21, 52:18
**specialty** [1] - 21:19
**specific** [2] - 20:20,

40:4
**specifically** [1] - 17:19
**speed** [1] - 13:3
**spend** [1] - 13:16
**Springfield** [2] - 3:17, 3:21
**staff** [1] - 50:17
**stage** [1] - 23:7
**stamp** [2] - 54:7, 54:9
**standard** [1] - 15:20
**standpoint** [1] - 53:5
**start** [14] - 5:14, 6:2, 6:8, 8:10, 15:9, 37:5, 37:21, 37:22, 38:8, 45:23, 46:7, 54:21, 56:3, 56:5
**starting** [3] - 33:14, 34:13, 39:2
**STATE** [1] - 2:5
**State** [5] - 5:10, 6:8, 34:5, 52:2, 58:25
**state** [23] - 6:11, 6:15, 6:18, 18:3, 18:8, 18:14, 20:5, 27:15, 27:22, 34:4, 34:17, 35:7, 35:16, 40:16, 40:18, 40:21, 40:22, 42:22, 42:25, 43:4, 49:25, 59:1
**statements** [1] - 25:22
**STATES** [2] - 1:1, 2:15
**States** [2] - 5:4, 23:14
**station** [1] - 51:18
**Status** [1] - 2:12
**status** [7] - 5:10, 10:13, 11:2, 15:8, 41:3, 49:10, 60:4
**statutory** [1] - 34:6
**stay** [20] - 12:20, 18:2, 24:20, 24:21, 24:23, 24:24, 25:3, 33:13, 35:13, 35:17, 35:20, 35:24, 42:21, 43:19, 44:12, 45:11, 45:15, 46:9, 59:5, 59:18
**stayed** [5] - 17:1, 17:21, 18:16, 24:25, 43:16
**stays** [1] - 18:2
**stenographic** [1] - 61:5
**step** [1] - 16:5
**Stigler** [3] - 3:12, 6:6, 58:18
**STIGLER** [3] - 6:3, 6:6, 58:20
**still** [11] - 18:4, 26:5, 27:18, 31:12, 40:23, 42:3, 42:19, 54:2, 54:10, 57:20, 59:17

**Street** [8] - 3:4, 3:12, 4:4, 4:8, 4:11, 4:15, 4:19, 4:23
**subject** [5] - 31:20, 35:17, 35:19, 40:3
**submission** [2] - 25:25
**submissions** [10] - 9:13, 10:16, 14:1, 37:8, 46:20, 55:10, 57:11, 58:2, 59:10
**submit** [3] - 47:3, 53:20, 57:4
**subpoenaed** [2] - 43:15, 44:23
**substantively** [1] - 37:25
**successful** [1] - 56:10
**suggest** [2] - 47:8, 55:4
**suggesting** [1] - 10:17
**suggestion** [2] - 48:1, 49:9
**suggestions** [2] - 37:12, 40:15
**suit** [1] - 41:12
**Suite** [7] - 3:5, 3:9, 3:13, 4:12, 4:16, 4:20, 4:24
**summarized** [1] - 12:13
**summary** [17] - 8:5, 8:15, 8:21, 9:4, 10:14, 11:22, 12:14, 12:15, 13:20, 23:4, 29:24, 30:24, 33:11, 34:12, 36:7, 46:17, 47:18
**summer** [1] - 14:16
**suppose** [1] - 30:15
**Supreme** [1] - 23:14
**SUSAN** [1] - 1:10
**suspect** [1] - 55:8
**SW** [4] - 4:4, 4:8, 4:19, 4:23
**switch** [1] - 58:5
**sword** [2] - 13:12, 34:25

## T

**T'd** [3] - 29:9, 33:14, 49:18
**tech** [3] - 55:6, 55:17
**technical** [1] - 61:12
**technological** [1] - 61:14
**technologically** [1] - 55:7
**telephone** [1] - 61:16

**ten** [2] - 7:20, 54:4
**terabytes** [2] - 55:23, 55:24
**testifying** [1] - 41:13
**that'll** [1] - 60:3
**THE** [112] - 1:1, 1:2, 2:14, 3:3, 3:7, 3:11, 3:15, 3:19, 4:3, 4:6, 4:10, 4:14, 4:18, 4:22, 5:4, 5:7, 5:8, 5:12, 5:21, 6:1, 6:5, 6:7, 6:12, 6:19, 6:23, 7:2, 7:5, 7:8, 7:11, 7:17, 10:11, 11:3, 12:11, 15:12, 15:18, 17:8, 18:18, 19:3, 20:7, 21:1, 21:13, 21:20, 21:22, 22:19, 22:23, 25:16, 25:24, 26:3, 26:5, 26:8, 26:20, 28:19, 30:12, 32:17, 32:25, 34:2, 35:6, 35:24, 36:4, 36:6, 36:15, 36:24, 37:1, 37:12, 37:21, 37:24, 38:8, 39:4, 39:6, 39:9, 39:13, 39:17, 41:5, 42:17, 43:6, 45:17, 46:3, 46:6, 47:1, 47:7, 47:14, 48:9, 48:13, 48:22, 49:1, 49:8, 49:11, 50:4, 50:21, 51:1, 51:9, 51:12, 52:3, 52:7, 52:23, 54:22, 54:24, 55:20, 56:8, 56:12, 56:21, 57:4, 57:8, 57:15, 57:24, 58:8, 58:12, 58:15, 58:17, 58:21, 58:25, 59:4
**themselves** [3] - 11:18, 51:24, 61:11
**therefore** [1] - 10:15
**thinking** [7] - 11:6, 17:2, 30:8, 45:5, 49:14, 53:20, 57:16
**third** [1] - 10:19
**thoughtful** [1] - 12:15
**thoughts** [3] - 11:8, 20:9, 50:15
**thousands** [3] - 53:9, 57:1
**three** [4] - 10:12, 10:23, 55:23
**throated** [1] - 41:14
**throw** [1] - 48:4
**thumb** [5] - 53:15, 53:21, 55:1, 55:5, 55:14

**thumbs** [2] - 55:1, 55:2
**tie** [1] - 25:7
**tied** [3] - 25:20, 27:20, 43:24
**timeline** [2] - 46:21, 49:22
**timelines** [1] - 59:6
**timely** [1] - 22:6
**timing** [1] - 45:12
**TMO** [2] - 26:1, 57:5
**today** [7] - 8:1, 8:14, 11:2, 25:9, 30:3, 49:22, 60:8
**today's** [1] - 60:7
**together** [5] - 30:4, 38:21, 43:11, 47:22, 49:15
**tomorrow** [1] - 60:9
**took** [1] - 13:11
**top** [1] - 14:10
**totally** [1] - 26:10
**towards** [1] - 59:9
**track** [1] - 33:14
**tracking** [1] - 7:18
**trail** [1] - 43:21
**TRANSCRIPT** [1] - 2:11
**transcript** [2] - 61:4, 61:17
**transmission)** [1] - 12:9
**travel** [1] - 22:4
**treat** [1] - 57:25
**tremendous** [1] - 17:7
**trial** [68] - 8:24, 9:8, 12:21, 14:5, 14:13, 14:19, 14:20, 15:8, 16:8, 16:9, 16:12, 16:13, 16:15, 16:16, 16:25, 17:22, 17:23, 17:24, 18:5, 18:14, 19:4, 19:12, 20:22, 24:19, 24:23, 25:10, 25:18, 26:16, 26:21, 26:25, 27:7, 27:9, 27:13, 27:14, 28:5, 28:6, 28:18, 29:5, 29:10, 29:13, 29:16, 29:23, 30:6, 31:3, 31:11, 31:17, 31:19, 32:7, 33:14, 37:7, 38:2, 38:8, 38:17, 38:19, 39:2, 40:8, 42:15, 43:14, 44:14, 44:22, 45:2, 46:24, 47:4, 53:1, 56:12, 60:2
**trial's** [1] - 44:16
**trials** [9] - 20:24,

21:12, 26:12, 26:13, 26:14, 26:15, 38:3, 56:11
**tried** [9] - 13:5, 38:17, 40:1, 40:18, 40:20, 40:23, 41:24, 44:10, 44:17
**trigger** [1] - 22:9
**true** [1] - 61:4
**try** [16] - 8:8, 33:15, 36:15, 38:21, 40:8, 40:25, 41:17, 41:23, 42:12, 42:14, 43:7, 43:11, 49:16, 51:7, 51:8
**trying** [3] - 13:12, 18:23, 49:14
**turn** [4] - 7:23, 21:13, 21:16, 47:21
**twice** [2] - 39:6, 39:10
**two** [14] - 10:7, 10:11, 11:9, 14:9, 16:17, 20:24, 21:12, 25:10, 26:14, 36:17, 41:19, 46:1, 52:18, 55:24
**type** [1] - 10:3
**types** [1] - 23:14

## U

**ultimately** [2] - 10:3, 11:19
**uncertainty** [1] - 20:24
**uncle** [2] - 36:10, 36:11
**unclear** [1] - 30:2
**under** [5] - 9:19, 24:1, 24:8, 34:24, 47:2
**under-negotiating** [1] - 47:2
**underlying** [1] - 43:1
**undermine** [1] - 12:1
**understood** [3] - 34:21, 57:23, 58:7
**undo** [1] - 9:6
**UNITED** [2] - 1:1, 2:15
**United** [2] - 5:4, 23:14
**unless** [1] - 31:8
**unlikely** [1] - 12:16
**unnecessary** [1] - 13:3
**unquestionably** [1] - 34:19
**unrelated** [1] - 26:10
**unreviewable** [1] - 23:13
**untimely** [2] - 22:7, 34:14
**unusual** [1] - 12:4
**unwieldy** [1] - 55:3

**unworkable** [1] - 25:12
**up** [52] - 7:25, 8:5, 8:8, 11:7, 13:10, 14:25, 16:1, 17:13, 17:18, 19:9, 19:11, 19:15, 19:21, 20:7, 20:12, 20:14, 20:23, 25:7, 25:15, 26:22, 27:5, 28:1, 28:25, 29:9, 30:17, 31:10, 32:21, 33:14, 36:20, 38:20, 41:2, 41:18, 42:7, 43:24, 44:20, 47:20, 48:5, 49:3, 49:18, 50:10, 51:16, 51:21, 52:25, 53:18, 55:5, 55:8, 55:25, 56:3, 56:4, 56:24, 59:22
**uploading** [1] - 55:9
**useful** [1] - 50:2
**utilization** [1] - 49:5

## V

**vacating** [1] - 13:15
**versus** [2] - 21:12, 54:7
**via** [1] - 61:9
**video** [4] - 7:16, 7:21, 12:8, 61:15
**video/telephonic** [1] - 61:8
**videoconference** [2] - 2:12, 61:9
**videoconference/ telephonic** [2] - 61:6, 61:13
**VIDOCQ** [4] - 1:14, 1:18, 4:18, 4:22
**Vidocq** [16] - 7:2, 7:4, 7:8, 7:10, 20:10, 20:14, 39:7, 39:18, 40:12, 40:14, 40:23, 40:25, 42:23, 43:5, 52:4, 58:12
**view** [2] - 23:23, 35:2
**violation** [1] - 27:18

## W

**WA** [1] - 3:9
**wait** [3] - 27:7, 43:10, 44:6
**waiting** [1] - 13:16
**WALKER** [1] - 1:20
**Walter** [6] - 7:13, 21:5, 42:23, 43:5, 58:15, 58:24
**WALTER** [3] - 1:13,

4:10, 4:14
**Walters** [2] - 7:5, 7:12
**wants** [4] - 7:24, 8:10, 37:13, 54:2
**warn** [1] - 18:18
**ways** [3] - 22:3, 23:9, 32:12
**WEBLEY** [1] - 1:13
**Wednesday** [2] - 46:7, 60:8
**week** [1] - 46:1
**weekend** [1] - 32:11
**weeks** [15] - 8:17, 8:25, 25:11, 25:20, 26:14, 37:19, 38:3, 38:6, 38:18, 41:17, 41:23, 46:5, 59:15, 60:2
**weighing** [1] - 33:2
**weight** [1] - 50:20
**WETMORE** [1] - 1:13
**whole** [2] - 41:3, 54:16
**wholeheartedly** [1] - 21:1
**WILCOX** [1] - 1:13
**willing** [4] - 33:15, 36:16, 44:12, 50:22
**witness** [3] - 25:22, 53:3, 57:13
**witnesses** [6] - 40:24, 41:13, 41:15, 43:15, 44:20, 44:22
**wondering** [2] - 53:13, 54:20
**works** [2] - 45:25, 56:9
**Wright** [2] - 9:19, 24:16
**writing** [2] - 11:23, 12:5
**written** [1] - 19:20
**wrongful** [1] - 56:10

## Y

**years** [3] - 13:4, 19:10, 32:12
**yourselves** [1] - 5:13

## Z

**ZANNI** [1] - 1:14
**ZAVALA** [1] - 1:14