

Michelle R. Guyton, Ph.D., ABPP
Board Certified Forensic Psychologist

## EVALUATION OF KATE AMBER WORK PRODUCT
## CONFIDENTIAL

| | |
|---|---|
| **Case name:** | Nicholas James McGuffin and S.M. v Mark Dannels, Pat Downing, Susan Hormann, Mary Krings, Kris Karcher, Shelly McInnes, Raymond McNeely, Kip Oswald, Michael Reaves, John Riddle, Sean Sanborn, Eric Schwenninger, Richard Walter, Chris Webley, Anthony Wetmore, Kathy Wilcox, Craig Zanni, David Zavala, Joel D. Shapiro as administrator of the Estate of David E. Hall, Vidocq Society, City of Coquille, City of Coos Bay, and Coos County |
| **Referring attorneys:** | Andrew C. Lauersdorf and Janis C. Puracal of Maloney Lauersdorf Reiner, PC, and David. B. Owens of Loevy & Loevy |
| **Court number:** | 6:20-cv-01163-MTK, United States District Court of Oregon, Eugene Division |
| **Date of report:** | 06/26/2025 |
| **Examiner:** | Michelle R. Guyton, PhD, ABPP |

---

**Notice**
The summaries, conclusions, and opinions written in this report are based on the data available to the examiners by the date of the report noted above. Information provided to us after the issuance of this report could result in a modification of this report. Thus, we reserve the right to amend our report, including my conclusions and recommendations, upon receipt and review of new data.

---

**REFERRAL INFORMATION**
I have been retained by the above named attorneys who represent Nicholas McGuffin in the case of Nicholas McGuffin and S. M. v. Mark Dannels, et al. (case number 6:20-CV-01163-MK). These attorneys retained my services to provide rebuttal testimony regarding the report of Kate Amber, MSc who provided a report dated 01/04/2025. Ms. Amber was retained by the defendants in this case. Per her report, she reviewed documents provided to her by the defendants in order to respond to the following referral questions identified in her report: "Whether Nicholas McGuffin's behaviors are indicative of a pattern of coercive control, and if a pattern of coercive control (by Mr. McGuffin) can be established by a review of documents related to this case."

Northwest Forensic Institute | P.O. Box 4386 | Portland, Oregon 97208 | 503-946-9036| fax: 503-200-1328 | nwforensic.org

In response to these referral questions, Ms. Amber provided the following opinion: "Mr. Nicholas McGuffin's behaviors and attitudes demonstrate a recurring and severe pattern of abuse in line with the scholarly literature and legislative regulations established for coercive control and domestic violence." Ms. Amber also adds the following "professional opinion that any emotional distress, psychological impact, and social consequences stemming from his conviction are the sole responsibility of Mr. McGuffin."

I was asked to evaluate the scientific reliability and validity of Ms. Amber's evaluation report. To this end, I have reviewed the data described below and developed this report to address concerns about Ms. Amber's data analysis procedures and related conclusions. Importantly, I did not attempt to analyze the data to answer the referral questions listed in Ms. Amber's report. Rather, my work focuses on analyzing the scientific integrity and merit of her methods and subsequent conclusions.

## METHODOLOGY
To prepare the opinions offered in this report, Plaintiffs' counsel provided me with the records and materials listed below for my review. Because I am reviewing the work of Ms. Amber, I did not include any additional resources, such as interviews with collateral parties or other records that she did not employ. I referred to some additional resources, such as scholarly articles and professional standards not included in Ms. Amber's review of records, to substantiate my opinions. However, I did not review any case-related data beyond what Ms. Amber used in her record review in order to keep my review centered on her work product. I have divided my review and opinions by the following sections: 1) Methodology: general and applied concerns, 2) Sources of bias, and 3) Competency.

## RECORDS REVIEWED
For this evaluation, I reviewed all of the documents cited in Ms. Amber's report that she included in her analysis. I did not review case-related materials that Ms. Amber did not cite as sources of data in order to keep my review of information consistent with hers. I also reviewed and relied upon several research articles and other relevant publications. In Appendix A to this report, I have listed all of these sources.

## METHODOLOGY: GENERAL AND APPLIED CONCERNS
    A. In her report, Ms. Amber described her performance of a "coercive control case analysis" (CCCA), presumably to answer the first referral question regarding whether or not Mr. McGuffin exhibited a pattern of coercive control. However, this procedure is not described in her report in any manner. Further, there is no scholarly publication documenting this or any related method for analyzing coercive control.  Thus, it appears that this "analysis" is not based in any known scientific principles or methods that experts typically rely upon in their work. Rather, Ms. Amber's deposition testimony and her report suggest that this CCCA is her own idiosyncratic procedure and is thus not published, tested, nor generally accepted in any scientific or clinical communities. Procedures for developing assessment tools and methods are well-established in the psychological, educational, and other literatures. This CCCA does not appear to acknowledge or be informed by any of this vast literature.

B. Ms. Amber does not lay out nor describe her process for gathering data for the CCCA. It is not clear what data is relevant or irrelevant to her analysis, how she catalogs this data, how she rates the data, and whether she considers data that might be evidence against a pattern of coercive control. This is of central importance because any method for analyzing data should be reliable and valid. Reliability means that another person could use the same methods and reach a reasonably similar conclusion. However, when an idiosyncratic, unspecified, and untested method is used, the results likely could not be replicated by another professional and thus undermines the validity of the methodology and any conclusions reached.

C. Relatedly, there does not appear to be any form of scoring or data counting process specified in her analysis in her report. During her deposition, Ms. Amber suggested a pattern of coercive control would be evident if there were two or more different examples of the specific behavior across the span of decades for which she had records. So, for example, one behavior observed from a record of Mr. McGuffin's behavior in 2000 with one person and one other behavior from 2022 with a different person would be evidence of a pattern, in her view. There is no agreed upon, studied, or published data regarding this method, and her definition of a pattern is overbroad to the point of being meaningless. Thus, it is not clear whether there is any reliability (that two different people employing the analysis would gather and interpret the data the same way) or validity (that the results mean something) to this method in a foundational or applied manner.

D. Relatedly, there is a lack of definition of terms. For example, Ms. Amber describes how Mr. McGuffin "uses trauma-coerced attachment to manipulate his victims." However, she does not define what a trauma-coerced attachment style or behavior is, nor what evidence she found of this in the records. She indicates that the pattern "appears present in McGuffin's relationships with Leah, Meagan, Aleksandra, Jazmin, Abbigail, and Georgia" but offers no specific descriptions. The only example she offers is for Georgia Bartholomew's mother, with whom Mr. McGuffin had a very limited relationship and for which there is no evidence of any trauma-coerced attachment.

E. In an appendix of her report, Ms. Amber listed "case screenings and assessments" that she utilized in the present analysis. The two screening questionnaires, the Coercive Control Screening-Individual and Trauma-Coerced Attachment Screening-Individual, were developed by Ms. Amber's master's program mentors in recent years. These screening tools have not been published in the scientific literature that I could find, suggesting that they have not been used, nor have the methods or results been evaluated. Thus, there is no scientific basis to support the idea that these screening tools accurately screen for coercive control. Further, each of these questionnaires is a screening tool, suggesting that any positive findings indicates the possible presence of coercive control, not a definitive outcome that it is present. However, she does not indicate what steps she took after the screening to further investigate whether coercive control was present. In other words, a screening tool suggests the possible presence of a factor, and additional testing and analysis should be employed afterwards to determine if that factor is present or not. Ms. Amber does not define her methods to say what, if any, further investigation she completed to either rule in or rule out elements of coercive control after providing ratings on these questionnaires.

F. Relatedly, Ms. Amber appears to have used two of the "case screenings and assessments" in ways in which they are not intended and provided incorrect scoring on several items. Specifically, Ms. Amber provided ratings using the Trauma Coerced Attachment Screen Individual (TCAS11-I). A review of this questionnaire shows that it is supposed to be answered by a person in the context of an intimate partner relationship about their partner. Questions are phrased such as, "My partner was the most important thing in my life when I was with them," and "I felt obliged to keep secrets for my partner." The rating scale goes from 1 (strongly disagree) to 9 (strongly agree). Ms. Amber is using the questionnaire incorrectly because she is providing ratings, rather than administering the questionnaire to any of Mr. McGuffin's intimate partners. Secondly, it is unclear how Ms. Amber could know, with any degree of reliability or validity, what beliefs Mr. McGuffin's intimate partners had about their relationships with him because their beliefs about their relationship with him are not contained within the dataset Ms. Amber reviewed. In other words, how could Ms. Amber know how these partners rated any of these items given the data she had? Finally, Ms. Amber provided scores of 8, 9, and 10 on all of the 11 items. However, the scale only goes from 1 to 9. A score of 10 is not possible on any one item and yet Ms. Amber rated 6 of the 11 items as a "10."

G. The next case assessment Ms. Amber uses is the Coercive Control Scale Individual-12 (CCSI-12). The instructions to the person taking the questionnaire are "Thinking about your group, please respond to the following items (using the 9-1 scale below)." The questions appear to assess the person's thoughts and experiences related to some kind of group to which they belonged, likely a cult or similarly controlling organization. In her description of the questionnaire, Ms. Amber does not note that the questionnaire is designed to assess group-based dynamics rather than the dyadic intimate partner coercive control she seeks to assess. Thus, the questionnaire is not appropriately used in considering Mr. McGuffin's behaviors or relationships because he is a single individual. As discussed in point F above, Ms. Amber did not administer the questionnaire to anyone involved with Mr. McGuffin and the nature of the items suggest she had little to no information that would help her rate the scores in some summary manner. Further, Ms. Amber commits the same scoring errors by rating 4 of the 12 items as a "10" when the scale end is 9.

H. The third case assessment Ms. Amber purports to use is Jane Monckton Smith's homicide timeline assessment. It is unclear the nature and purpose of Ms. Amber's inclusion of this framework, as this timeline is used to describe the observable steps taken in how an intimate partner homicide progresses from earlier stages. The timeline is designed to show potential warning signs and points of intervention for law enforcement in domestically violent relationships before a homicide can occur. However, Ms. Amber's stated goal is to determine whether Mr. McGuffin exhibits a pattern of coercive control. This analysis is problematic on many levels. First, only one partner of Mr. McGuffin died via homicidal violence and Mr. McGuffin's conviction for her death was overturned. None of Mr. McGuffin's other partners have reported that he has been physically violent or coercive, much less engaged in homicidal violence. Secondly, Ms. Amber combines data from across multiple partners and decades occurring after Ms. Freeman's death as evidence supporting her assertion that Mr. McGuffin killed, or was at least at risk to kill, Leah Freeman.

Northwest Forensic Institute | P.O. Box 4386 | Portland, Oregon 97208 | 503-946-9036 | fax: 503-200-1328 | nwforensic.org

Appendix 4, Page 4 of 26

There is no scientific basis to support that type of retrospective inference. There are no publications, studies, or books that support Ms. Amber's attempt to infer what happened to Ms. Freeman based on an anecdotal, posthoc evaluation of Mr. McGuffin. Third, she appears to be guessing at some of the stages, such as stage 4, and providing no information to support other stages (stage 6). Ms. Amber indicated that Mr. McGuffin exhibited "definitive evidence of Stage 7 planning" although she provides no data to support this. Further, her analysis of stage 8 fails to include that Mr. McGuffin's conviction was overturned.

    I. Because Ms. Amber relied only on the written materials provided to her by  counsel who retained her, she did not gather data that is central to determining whether or not coercive control is present. Many researchers, including those cited by Ms. Amber, relied upon interviews with victims and collateral sources (e.g. family members, peers, coworkers) to gather data related to intimate partner violence and coercive control. Ms. Amber made no attempt to interview anyone and thus her data was limited by the goals of the original data source. It is notable that the trial transcripts and depositions she reviewed were not focused on coercive control elements, thus limiting the availability of relevant information. Ms. Amber does not acknowledge these limitations of the available data or how such limitations impact any researcher's ability to form valid opinions.

    J. The research literature on coercive control is clearly limited to intimate partner relationships as well as group-based control mechanisms such as cults. This is the literature that Ms. Amber cites in her references and is the basis for the screening assessments and tools that Ms. Amber used. However, Ms. Amber notably looks for elements of coercive control present in many other forms of relationships without acknowledging that this is a deviation of her method from the scientific literature. For example, she frequently references Mr. McGuffin's relationships with the parents of his romantic partners and his work relationship as evidence for her assertion that Mr. McGuffin exhibits a pattern of coercive control. However, there is no scientific foundation given in the available research, or the research that she cites, for including assessment of these non-intimate partner relationships in her analysis.

    K. Of significant importance, Ms. Amber's methodology combines data from across decades and multiple developmental periods. She exhibited no recognition of the problem of reviewing Mr. McGuffin's behaviors in adolescence as well as decades later and opining that they represent a unitary course of behavior. Of note, there is a very limited amount of published work on coercive control among adolescents, none of which is cited or referenced in Ms. Amber's materials. However, there is a large body of literature on the neurodevelopmental changes that occur in adolescence and young adulthood that document the changes in cognition, behavior, emotional maturity, and relationships that occur during this period. Ms. Amber appears to be unaware of this literature and dismissed the important distinction between adolescent and adult functioning during her deposition. This reflects her lack of both scientific and clinical understanding of human development and the importance of these concepts when looking at intimate, peer, and other relationships.

Case 6:20-cv-01163-MTK     Document 387-4     Filed 07/07/25     Page 6 of 26

Nicholas McGuffin and S.M. v Mark Dannels et al.                    Page 6 of 13
6:20-cv-01163-MTK

L. Building on this same foundation, there is no scientific basis for Ms. Amber's attempt to infer previous behavior from future behavior. For example, Ms. Amber indicated on page 5 of her report that her work,

> evaluates the characteristics and impacts of coercive control in both personal and professional relationships involving Mr. McGuffin. It specifically focuses on the repercussions of these power abuses on Leah Freeman, various associates at Legends, and their respective family members, colleagues, and friends.

The fundamental premise in Ms. Amber's work is that Mr. McGuffin exhibited a pattern of coercive control with Leah Freeman because she allegedly found evidence of coercive control in his relationships with other people well *after* Ms. Freeman's death. However, there is no merit nor scientific foundation for suggesting that behaviors that Ms. Amber believes are present when Mr. McGuffin is in his forties says anything about his behavior when he was 18 years old.

M. In her CCCA, Ms. Amber documents tactics of coercive control that "include, but are not limited to, isolation, intimidation, monitoring, control and humiliation, and are used by coercive controllers because they provide abusers with numerous benefits" (p. 10 of her report). In the immediately following section, Ms. Amber provides her reasoning for how she believes Mr. McGuffin shows evidence of isolation and control from this list. However, she does not provide evidence, for or against, the variables she identified as important: intimidation, monitoring, and humiliation. It is unclear if 1) Ms. Amber omitted these factors of her analysis intentionally, 2) Ms. Amber omitted these factors of her analysis unintentionally, or 3) some other reason. The omission falls below the standards for a psychological evaluation or future dangerousness risk assessment.

N. In her description of DARVO (Deny, Attack, Reverse Victim and Offender), Ms. Amber appears to misattribute this theme to the facts of the case. Although DARVO is a pattern that Harsey and Freyd (2020) have identified in two-person relationships that involve violence, Ms. Amber only ever references DARVO in the context of Mr. McGuffin's filing of the present lawsuit. This is a misattribution of the literature about intimate partner violence to suggest that Mr. McGuffin is victimizing the defendants by filing a lawsuit, a situation in which no interpersonal violence is involved. Further, the act of filing of a lawsuit against the defendants does not inform in any manner about Mr. McGuffin's relationship with Leah Freeman when he was an adolescent.

O. In her reported example of trauma-coerced attachment, Ms. Amber references an article by Doychak and Raghavan from 2018. This is a qualitative study of 14 individuals who were sex-trafficked and interviewed about the person(s) who sex-trafficked them. This study did not employ any similar coercive control case analysis like Ms. Amber. Further, there are no allegations in any of the data that Mr. McGuffin acted as a pimp or similar actor towards any of the women. Thus, there is no basis to apply such an analysis in this case.

P. There is a notable absence of any reference or citation to data that may be contrary to her opinions. Ms. Amber only points out when she believes coercive control exists and does not note

Northwest Forensic Institute | P.O. Box 4386 | Portland, Oregon 97208 | 503-946-9036 | fax: 503-200-1328 | nwforensic.org

Appendix 4, Page 6 of 26

Case 6:20-cv-01163-MTK    Document 387-4    Filed 07/07/25    Page 7 of 26

Nicholas McGuffin and S.M. v Mark Dannels et al.                                    Page 7 of 13
6:20-cv-01163-MTK

when it is absent. She only includes information presumed favorable to the parties who retained her. An objective analysis of Mr. McGuffin's relationships would show that he has no history of stalking, threatening, or intimate partner violence, all key predictors she identified as part of coercive control. This pattern of documenting only the presumed presence of coercive control without acknowledging when it is absent suggests a bias for only looking for confirming information and ignoring disconfirming data. This is called confirmation bias and appears readily apparent in her lack of objective assessment of the available data.

Q. As described above, Ms. Amber does not use any form of structured, evidence-based procedure. She also does not evidence any procedure for considering alternative explanations for the data she suggests is a pattern of coercive control, as required by the scientific literature in this area. So for example, when Ms. Amber identifies two different behaviors from across multiple decades, she labels this a pattern of coercive control without looking at the context, nature of the relationship, and the difference/similarity of these behaviors to one another. In this manner, any individual could have two episodes of a controlling behavior across multiple decades apart, but the lack of structured, evidence-based procedure makes it difficult to understand if this is meaningful or distinguishable from other more salient patterns of coercive control.

R. The data gathered and used by Ms. Amber does not provide her an adequate foundation to assess the goals for her report. For example, she asserts that Mr. McGuffin exhibited features of coercive control against Maegan Edgerton where he had a pattern of trauma-coerced attachment, intimidation and jealousy, and power imbalances in the relationship. However, Ms. Amber testified that the only documents related to Ms. Edgerton that she reviewed included hospital medical records for Mr. McGuffin and police reports related to a single incident where Ms. Edgerton reportedly assaulted Mr. McGuffin. Ms. Amber did not review the deposition transcript of Ms. Edgerton nor any other information pertaining to her. Thus, she had very limited information— noting in her deposition that the hospital records were of little significance to her findings—to make any findings related to the intimate partner relationship between Mr. McGuffin and Ms. Edgerton. Despite this lack of foundation, Ms. Amber made conclusions that Mr. McGuffin exhibited coercively controlling behaviors over Ms. Edgerton and did not identify any data to support her conclusion. The scientific literature in this area does not support this type of analysis and, in fact, rejects it. The literature clearly establishes that an evaluator is not permitted to draw conclusions in absence of data.

S. As a result of the absence of any structured method for gathering and analyzing data, Ms. Amber has little framework for deciding which data points support her opinions. For example, in her deposition testimony related to Mr. McGuffin and Ms. Edgerton, Ms. Amber testified that a person filing charges against a partner, filing then dropping charges against a partner, or not filing charges against a partner can all be tactics of coercive control. This definition of tactics of coercive control is so overbroad that it becomes meaningless and suggests that all behaviors could be evidence of coercive control in her view. Again, the scientific literature in this area does not support Ms. Amber's definition of coercive control or her conclusions.

Northwest Forensic Institute | P.O. Box 4386 | Portland, Oregon 97208 | 503-946-9036 | fax: 503-200-1328 | nwforensic.org

Appendix 4, Page 7 of 26

Case 6:20-cv-01163-MTK     Document 387-4     Filed 07/07/25     Page 8 of 26

Nicholas McGuffin and S.M. v Mark Dannels et al.                           Page 8 of 13
6:20-cv-01163-MTK

T. Ms. Amber added an additional "professional opinion that any emotional distress, psychological impact, and social consequences stemming from his conviction are the sole responsibility of Mr. McGuffin." However, whether or not Mr. McGuffin experienced emotional distress stemming from his conviction is unrelated to an analysis of whether he exhibited coercively controlling relationships. She did not describe any data that supported this claim other than her belief that Mr. McGuffin was responsible for Leah Freeman's death.

**SOURCES OF BIAS**

A. Human cognition is fraught with cognitive shortcuts to limit the amount of information that we take in from the environment for processing. While these may be useful in reducing information overload and helping humans makes sense of the world around them, these cognitive heuristics can influence our thinking in important ways. Because these can become even more salient in the adversarial setting of the legal system, it is imperative that experts have awareness of these influences and take steps to mitigate the influence of such biases.

B. As described in the section above, Ms. Amber exhibits a pervasive pattern of confirmation bias in her methodology and conclusions. Confirmation bias occurs when we seek information that confirms our existing beliefs and reject information that disconfirms our existing beliefs. It is notable that Ms. Amber does not point out, based on the available data, the relative dearth of information that suggests Mr. McGuffin had a coercively controlling relationship with any intimate partners. The lack of structured, scientifically-validated approach Ms. Amber uses allows for her confirmation bias to pick and choose the pieces of data that are most relevant to her pre-existing beliefs and disregard those that are not. Structured methods, validated by scientific procedure, are often useful to combat this type of confirmation bias, and, as discussed above, Ms. Amber did not use any of those methods here. Additionally, Ms. Amber's use of questionnaires in idiosyncratic ways further allows for confirmation bias to influence the data gathered and reported.

C. Relatedly, forensic experts have to be aware of adversarial allegiance, the tendency to make findings favorable to the retaining party. This concept is well-studied in many forensic domains. In Ms. Amber's work, her opinions align with defendants' stance in a near complete manner. Ms. Amber opines that all of Mr. McGuffin's relationships demonstrate coercive control, even those with family members of intimate partners, work colleagues, and the defendants, even when there is no explicit evidence to support these claims. She does not present any data or opinions that are unfavorable or neutral with respect to defendants. Because of her lack of structured, validated measures, her data gathering processes and subsequent opinions are highly vulnerable to this bias.

D. Further, Ms. Amber appears highly affected by task-irrelevant contextual information. This is a well-documented source of bias in forensic science contexts where a decision-maker is influenced by information that is not germane to the central analysis. There can be a tendency to use and weigh this extraneous information in a way that clouds the decision-maker's judgment. Ms. Amber includes multiple data points that appear irrelevant to the nature of coercive control in her CCCA. For example, in both her report and her deposition, Ms. Amber appears fixated on Mr.

Northwest Forensic Institute | P.O. Box 4386 | Portland, Oregon 97208 | 503-946-9036 | fax: 503-200-1328 | nwforensic.org

Appendix 4, Page 8 of 26

Case 6:20-cv-01163-MTK    Document 387-4    Filed 07/07/25    Page 9 of 26

Nicholas McGuffin and S.M. v Mark Dannels et al.                    Page 9 of 13
6:20-cv-01163-MTK

McGuffin's use of the term exoneration when he met with psychologist Suzanne Best. This reported communication between Mr. McGuffin and Dr. Best occurred 1) well after his relationship with Leah Freeman and 2) outside the context of any intimate partner relationships, and is thus irrelevant to coercive control. Ms. Amber then suggests that Mr. McGuffin's use of this terminology during a forensic psychological examination indicates he is manipulative and untruthful and Dr. Best's conclusions cannot be trusted. There is no scientific literature that supports the premise that an evaluator can tell whether a subject is truthful or trustworthy. These are not opinions that are typically offered in the type of evaluation that Ms. Amber claims to have conducted.

**COMPETENCY**

A. Ms. Amber's educational trajectory is unique. She completed a specialty master's degree in coercive control at the University of Salford in 2023. Per the program's website, this includes four modules (courses) and a dissertation research project, all of which can be completed in one year of fulltime instruction or two years of parttime instruction. The program is designed for individuals with a bachelor's degree in psychology or a related profession. However, Ms. Amber does not have a bachelor's degree in psychology or a related subject. Instead, she earned a bachelor's degree in General Studies in 1991. The equivalent of one year of full-time instruction in an online master's program appears to be the sole basis for her expertise in this case.

B. Her master's degree program of instruction is somewhat limited. Most master's programs in mental health subjects are the equivalent of two years of fulltime instruction. Thus, the master's program she earned does not include a similar level of content as other master's programs that require more extensive coursework, practicum training, and research.

C. Ms. Amber's work and reported expertise in coercive control is new and obtained only in the last few years. Prior to this, she reported work as a master photographer for many years. She has attended many trainings related to coercive control and allied subjects, but these were merely didactic trainings that did not provide any form of graded coursework, supervision, or mentorship. This is germane to the present case in that Ms. Amber's current expert work appears based only on the equivalent of one year of graduate training and it is unclear whether she has received any specific training or supervision in the methods she purports to use in her report related to Mr. McGuffin.

D. Ms. Amber's exposure to coercive control started through her lived experience and she has participated in many advocacy-based meetings and groups. This is important work. Ms. Amber demonstrated difficulty distinguishing between the advocacy-based nature of reducing coercive control and related harms and what should be an objective, neutral evaluation of data for a court case.

**SUMMARY**

Ms. Amber's methods for arriving at her conclusions appear idiosyncratic, untested, and not available in the published literature on coercive control or intimate partner violence more generally. Her analytic strategies were developed by her and applied in an unsystematic, unscientific, and at

Northwest Forensic Institute | P.O. Box 4386 | Portland, Oregon 97208 | 503-946-9036 | fax: 503-200-1328 | nwforensic.org

Appendix 4, Page 9 of 26

Case 6:20-cv-01163-MTK    Document 387-4    Filed 07/07/25    Page 10 of 26

Nicholas McGuffin and S.M. v Mark Dannels et al.                                    Page 10 of 13
6:20-cv-01163-MTK

times illogical manner. Her assessment of coercive control by Mr. McGuffin was overbroad to the point of being neither helpful nor useful. She included any potential sign of maladaptive behavior by Mr. McGuffin as evidence of coercive control due to her lack of structured, evidence-based assessment methods. Further, she continuously suggested that Mr. McGuffin's behaviors after Ms. Freeman's death were somehow related to his behavior with Ms. Freeman, even though there was no data to support these conclusions and no scientific basis to form such an opinion absent such data. Ms. Amber does not employ evidence-based research methods to develop or support the conclusions expressed in her report. Her work is fraught with multiple forms of bias that impair her data gathering process, and her objectivity in reaching her conclusions, and she has not taken the necessary steps to mitigate bias that are well-accepted in this field.

Thank you for the opportunity to work on this case. Please let me know if I can provide additional information or assistance.

_____
Michelle R. Guyton, Ph.D., ABPP
Board Certified in Forensic Psychology
Certified Forensic Evaluator (Oregon)
Licensed Psychologist, OR # 1829
Licensed Psychologist, WA #PY61127557
Northwest Forensic Institute, LLC
Director, Oregon Forensic Evaluator Training Program

Northwest Forensic Institute | P.O. Box 4386 | Portland, Oregon 97208 | 503-946-9036 | fax: 503-200-1328 | nwforensic.org

Appendix 4, Page 10 of 26

## APPENDIX A: RECORDS REVIEWED

**Records included in Ms. Amber's report also reviewed by me**

1. Incident Report P2100620, current as of date 03/23/2010 (pages 5 to 10 of report)
2. Direct testimony of Cory Courtright (Exhibit H at pages 1 through 6)
3. Memorandum of Mark Nortness, Coquille High School vice principal, dated 05/17/2000
4. Coquille High School Behavioral Record for Nick McGuffin dated 08/04/2000
5. Direct testimony of Kristen Steinhoff-Ramsey (Exhibit I at pages 1 through 6)
6. Exhibit 502 pages 1 to 4
7. Email exchange between Patrick J. Kelly and Fred Bornhofen dated 11/10/2009 and 11/18/2009
8. Analysis of Nick McGuffin's statement by Mark McClish dated 11/15/2009
9. Keppel, R. D. & Walter, R. (1999). Profiling killers: A revised classification model for understanding sexual murder. International Journal of Offender Therapy and Comparative Criminology, 43(3), 417-437.
10. Ressler, R.K., Muller, T. P., Osterheider, M. (undated) Understand ithe patterns and motives of violent sexual offenders. Unpublished abstract.
11. Walter, R. D., (undated). Non-sexual murder and violent crimes, unpublished paper
12. Independent psychological evaluation of Nichael McGuffin by Suzanne Best, Ph.D., dated 02/20/2024
13. Curriculum vitae of Suzanne R. Best, Ph.D.
14. Bay Area Hospital records for Nicholas McGuffin, dated 06/12/2002 to 06/17/2002
15. Grand Jury testimony of Megan Davidson (Exhibit J at pages 1 to 14)
16. Direct testimony of Melissa Smith (Exhibit K at pages 1 to 8)
17. Exhibit F at pages 1 to 15
18. Coquille Valley Hospital Emergency Room record for Nicholas McGuffin, dated 2000 to 2003
19. Coos County Circuit Court Conditional Release Agreement for Megan Edgerton, dated 08/16/2006
20. Bandon Police Department records (case number BN06-3415)
21. Deposition transcript of Nicholas McGuffin, dated 01/12/2023
22. Deposition transcript of Jazmin Spinney, dated 07/07/2023
23. Deposition transcript of Abbigail Beckham, dated 07/07/2023
24. Deposition transcript of Aleksandra Djeric, dated 12/11/2023
25. Deposition transcript of Lisa Marie Bartholomew, dated 12/12/2023
26. Exhibit G at pages 1 to 83 (text messages)
27. Text messages purportedly between Nicholas McGuffin and Georgia Bartholomew
28. Deposition transcript of Georgia Bartholomew, dated 12/13/2023
29. Multnomah County Circuit Court records (case number 24CR37869) and related police reports
30. Summary of emerging themes: Interview with [S.M.] by Melissa Noel, Ph.D.
31. Curriculum vitae of Melissa E. Noel, Ph.D.
32. Notes from meeting with [S.M.] via Zoom on 10/29/2023

Northwest Forensic Institute | P.O. Box 4386 | Portland, Oregon 97208 | 503-946-9036 | fax: 503-200-1328 | nwforensic.org

Appendix 4, Page 11 of 26

Case 6:20-cv-01163-MTK    Document 387-4    Filed 07/07/25    Page 12 of 26

Nicholas McGuffin and S.M. v Mark Dannels et al.                                    Page 12 of 13
6:20-cv-01163-MTK

33. Parent-adolescent relationship scale
34. Notes from Zoom meeting with Nick McGuffin, dated 11/20/2023
35. Strengths and Difficulties Questionnaire completed by ████ S.M. ████
36. Psychological evaluation of ████ S.M. ████ by Julie Poehlman, Ph.D., 12/27/2023
37. Curriculum vitae of Julie Poehlman, Ph.D.
38. Semi-structured interview guide by Melissa Noel, Ph.D.
39. Notes from interview with SM dated 10/22/2023
40. Notes from interview with Nicholas McGuffin by Suzanne Best, Ph.D.
41. Deposition transcript of Suzanne Best, Ph.D., dated 12/11/2024
42. Employee Employment/Separation Review for Nicholas McGuffin from Legends Bar and Grill, dated 03/31/2023
43. Malheur County Post-Conviction General Judgment (case number 15CV1030), dated 11/26/2019
44. Clackamas County Circuit Court Supplemental First Amended Complaint (case number 22CV07337)
45. Deposition transcript of Jacob Shafer, dated 09/25/2023
46. Email from Mason Martin to Nicky Young, dated 12/16/2022

**Additional sources**

1. American Educational Research Association, American Psychological Association, & National Council on Measurement in Education (Eds.). (2014). *Standards for Educational and Psychological Testing*. American Educational Research Association.
2. Aronson Fontes, L. (2015). *Invisible Chains: Overcoming Coercive Control in Your Intimate Relationship*. The Guilford Press.
3. Campbell, J., et al (2003). Risk factors for femicide in abusive relationships: Results from a multisite case control study. *American Journal of Public Health, 93*, 1089-1097.
4. Cooper, G. S., & Meterko, V. (2019). Cognitive bias research in forensic science: A systematic review. *Forensic science International*, *297*, 35-46.
5. Doychak, K., & Raghavan, C. (2020). "No voice or vote:" Trauma-coerced attachment in victims of sex trafficking. *Journal of Human Trafficking*, *6*(3), 339-357.
6. Harsey, S., & Freyd, J. J. (2020). Deny, attack, and reverse victim and offender (DARVO): what is the influence on perceived perpetrator and victim credibility? *Journal of Aggression, Maltreatment & Trauma*, *29*(8), 897-916.
7. Dror, I. E. (2017). Human expert performance in forensic decision making: seven different sources of bias. *Australian Journal of Forensic Sciences*, *49*(5), 541-547.
8. Hassan, S. A. (2020). The BITE model of authoritarian control: Undue influence, thought reform, brainwashing, mind control, trafficking and the law. Fielding Graduate University.
9. Kukucka, J., Kassin, S. M., Zapf, P. A., & Dror, I. E. (2017). Cognitive bias and blindness: A global survey of forensic science examiners. *Journal of Applied Research in Memory and Cognition*, *6*(4), 452-459.
10. Monckton Smith, J. (2021).*Control in Dangerous Relationships and How they End in Murder*. Bloomsbury Publishing.

Northwest Forensic Institute | P.O. Box 4386 | Portland, Oregon 97208 | 503-946-9036 | fax: 503-200-1328 | nwforensic.org

Appendix 4, Page 12 of 26

11. Monckton Smith, J. (2020). Intimate partner femicide: Using Foucauldian analysis to track an eight stage relationship progress to homicide. *Violence Against Women, 26(11)*, 1267-1285.

12. Myhill, A., & Hohl, K. (2019). The "Golden Thread:" Coercive control and risk assessment for domestic violence. *Journal of Interpersonal Violence, 34(21-22)*, 4477-4497.

13. Stark, E. (2007). *Coercive Control: How Men Entrap Women in Personal Life*. Oxford University Press.

14. Wood, M., Barter, C., & Berridge, D. (2010). 'Standing on my own two feet': Disadvantaged Teenagers, Intimate Partner Violence and Coercive Control.

Northwest Forensic Institute | P.O. Box 4386 | Portland, Oregon 97208 | 503-946-9036 | fax: 503-200-1328 | nwforensic.org

Appendix 4, Page 13 of 26

## CURRICULUM VITAE
### Michelle Renee Guyton, PH.D., ABPP
### Licensed Psychologist at Northwest Forensic Institute
### Board-certified in Forensic Psychology

## Current Positions

Licensed Psychologist, Founding Partner, and Training Director at Northwest Forensic Institute, LLC

Director, Oregon Forensic Evaluator Training Program

Secretary, Board of the American Academy of Forensic Psychology

## Licensure and Certification

| | |
|---|---|
| **2013 – Present** | Board certification in forensic psychology, American Board of Professional Psychology |
| **2021 – Present** | Licensed Psychologist, State of Washington (PY61127557) |
| **2012 – Present** | Certified Forensic Evaluator, State of Oregon |
| **2007 – Present** | Licensed Psychologist, State of Oregon (#1829) |

## Education

**University of Utah, Salt Lake City, Utah.**
2005 ▪ Doctor of Philosophy, Clinical Psychology.

Dissertation topic: A dimensional approach to risk assessment: Does psychopathology relate to institutional maladjustment in an incarcerated population?
Mentor: Stephen L. Golding, Ph.D., ABPP

**Sam Houston State University, Huntsville, Texas.**
1998 ▪ Master of Arts, Clinical Psychology.

Thesis Topic: The Effects of Perceived Perpetrator Dangerousness on Mock Jurors' Verdicts.
Mentor: David K. Marcus, Ph.D.

**Sam Houston State University, Huntsville, Texas.**
1996 ▪ Bachelor of Science in Psychology. *Summa cum laude* with Highest Honors in Psychology.

Thesis Topic: Priming and Juror Decision Making.
Mentor: David K. Marcus, Ph.D.

## Academic Appointments and Professional Experience

| | |
|---|---|
| **2018** | Adjunct Professor, Pacific University School of Graduate Psychology, Adult Forensic Psychology |
| **2017 – 2018** | Instructor, Washington State University Global Campus Psychology Department for Psychology 321, Introduction to Personality |

Prepared by MedConnect Pro, Phone: (503) 922-2160
info@medconnectpro.com

**2016 – present** Training Director, Northwest Forensic Institute

**2013 – 2015** Forensic track director, School of Professional Psychology, Pacific University.

**2012 – present** Director, curriculum developer, and presenter, State of Oregon Division of Addictions and Mental Health Forensic Evaluator Training Program. Lectures given: Competency to stand trial assessment tools, risk assessment, ethics, diversity, and report writing.

**2011 - 2017** Associate Professor, School of Professional Psychology, Pacific University. (Tenured through 2015)

**2008 – present** Founding Partner and Clinical Psychologist, Northwest Forensic Institute.

**2008 – 2012** Director of Academic Issues, School of Professional Psychology, Pacific University.

**2006 – 2008** Associate Director of Academic Issues, School of Professional Psychology, Pacific University.

**2005 – 2011** Assistant Professor, School of Professional Psychology, Pacific University.

**2006 – 2007** Psychologist Resident, Oregon Department of Corrections, Counseling and Treatment Services.

**2004 – 2005** Psychology Intern, Western State Hospital. *Rotations*: Special Commitment Center, Child Study and Treatment Center, and Inpatient Forensic Service.

**2002 – 2004** Research Assistant, NIMH-funded multi-site study of psychopathy. Principal Investigator: Norman Poythress, Ph.D.

**1997 – 2004** Practicum Student, *Sites*: Texas Department of Criminal Justice Sexual Offender Treatment Program, Sam Houston State University Counseling Center, University of Utah Counseling Center, Odyssey House of Utah (inpatient substance abuse treatment facility), University of Utah Neuropsychiatric Institute (psychiatric hospital), Assessment and Referral Services (assessment of individuals convicted of DUI), Salt Lake County Juvenile Detention Center.

## Publications

**Batastini, A. B., Guyton, M. R., Bernhard, P. A., Folk, J. B., Knuth, S. B., Kohutis, E. A., Lugo, A., Stanfill, M. L., & Tussey, C. M. (2023).** Recommendations for the use of telepsychology in psychology-law practice and research: A statement by American Psychology-Law Society (APA Division 41). *Psychology, Public Policy, and Law, 29(3)*, 255-271.

**Batastini, A. B., Anumba, N., Guyton, M. R., & Patel, M. (2022).** Implications and considerations for conducting remote forensic evaluations in underserved and marginalized communities. In G. Liell, L. Jones, & M. Fisher (Eds.), *Challenging Bias in Forensic Psychological Assessment and Testing: Theoretical and Practice Approaches to Working with Diverse Populations*. New York, NY: Routledge Taylor & Francis Group.

**Mallory, L. E., & Guyton, M. R. (2018).** Competency to stand trial and criminal responsibility in forensic neuropsychology practice. In S. S. Bush, G. J. Demakis, & M. L. Rohling (Eds.), *American Psychological Association Handbook of Forensic Neuropsychology*, Author: Washington DC.

**Guyton, M. R., & Foerchner, A. (2017).** Treatment of personality disorder in forensic/correctional settings. In R. Roesch & A. Cook (Eds.), *Handbook of Forensic Mental Health Services*. London: Routledge.

**Guyton, M. R., & Jackson, R. L. (2015).** Violence risk assessment. In R. L. Jackson & R. Roesch (Eds.), *Learning Forensic Assessment*. Malwah, NJ: Lawrence Erlbaum Associates.

**Montes, O. & Guyton, M. R.. (2014).** Performance of Hispanic Inmates on Spanish Miller Forensic Assessment of Symptoms Test (M-FAST). *Law and Human Behavior, 38, 428-438*.

**Anderson, S. & Guyton, M. R. (2013).** Ethics in an age of information seekers: A survey of licensed healthcare providers about online social networking. *Journal of Technology in Human Services.*

**Jackson, R. L. & Guyton, M. R. (2007).** Violence risk assessment. In R. L. Jackson (Ed.), *Learning Forensic Assessment* (pp. 153-182). Malwah, NJ: Lawrence Erlbaum Associates.

**Marcus, D. K., Lyons, Jr., P. M., & Guyton, M. R. (2000).** Studying perceptions of juror influence in vivo: A social relations analysis. *Law and Human Behavior, 24*, 173–186.

## Invited Addresses and Trainings Given

| | |
|---|---|
| **2024** | Violence risk assessment. Oregon Board of Parole and Post-Prison Supervision. Remote presentation, Oregon. |
| **2024** | Individual and group practice models in forensic psychology. American Psychology-Law Society Practice Committee Webinar. Co-presented with Mark Cunningham, Ph.D., ABPP. |
| **2024** | The ethics and emerging science supporting continued use of forensic telepsychology practice. American Academy of Forensic Psychology Annual Meeting, San Antonio, Texas. |
| **2024** | Conducting ethical forensic mental health evaluations via telepractice. Institute of Law, Psychiatry, & Public Policy remote webinar, Virginia |
| **2023** | Intellectual developmental disorder: Assessment and application to fitness to proceed. Oregon Criminal Defense Lawyers Association Winter Conference, Portland, Oregon. |

| 2023 | Forensic ethics: Navigating roles and relationships. American Academy of Forensic Psychology Annual Meeting, Scottsdale, Arizona. |
|------|------|
| 2023 | The complexities of relationships in Forensic work. Tennessee Department of Mental Health and Substance Use Services. (virtual) |
| 2023 | AP-LS recommendations for telepsychology: A review of emerging research and practice. Co-presented with Ashley Batastini, PhD, American Psychology-Law Society preconference workshop. |
| 2022 | Culture in forensic work. Washington Office of Forensic Mental Health Services. |
| 2022 | Considering culture when working with individuals who sexually offend and Ethical practice with those who sexually offend. Oregon Association or the Treatment of Sexual Abusers (virtual). |
| 2021 | Cultural considerations in forensic psychology. Utah State Hospital (virtual). |
| 2020 | Forensic evaluations: Getting to the point and staying there. State of California Forensic Services Division, Department of State Hospitals (virtual). |
| 2020 | Forensic evaluations via video conference, co-presented with Alexander Millkey, PsyD. University of Virginia Institute of Law, Psychiatry, & Public Policy (virtual). |
| 2020 | Cultural considerations in forensic work. <br>• California Department of Corrections and Rehabilitation, Pismo Beach, California (virtual). <br>• Fourth Judicial District, Minneapolis, Minnesota (virtual). |
| 2020 | Ethics in forensic practice. American Academy of Forensic Psychology. Portland, Oregon (virtual). |
| 2019 | Cultural considerations in forensic assessment. American Academy of Forensic Psychology. Dallas, Texas (April) and San Diego, California (November). |
| 2018 | Cultural considerations in forensic practice. American Academy of Forensic Psychology. Portland, Oregon. |
| 2018 | Ethics in forensic practice. American Academy of Forensic Psychology. New Orleans, Louisiana. |
| 2018 | Building and managing private practice. Panel member for the American Psychology-Law Society Conference Practice Committee presentation. Memphis, Tennessee. |
| 2017 | Issues in the assessment of adjudicative competence. One-day training with Stephen Golding, Ph.D. ABPP for Washington Department of Health and Human Services, Olympia, Washington. |
| 2017 | DSM-5 for forensic practitioners. One-day training at Western State Hospital. |

Lakewood, Washington.

**2017**       Cultural considerations in forensic psychology, Ethics in forensic practice. American Academy of Forensic Psychology. Pasadena, California.

**2016**       Cultural considerations in forensic psychology. American Academy of Forensic Psychology. Seattle, Washington.

**2015**       The brain on prison. CLE for the Federal Public Defender Office. Co-presented with Thomas Price, JD. Portland, Oregon.

**2015**       Cultural considerations in forensic psychology. American Academy of Forensic Psychology. Las Vegas, Nevada.

**2014**       Cultural considerations in forensic psychology. American Academy of Forensic Psychology. Scottsdale, Arizona.

**2014**       DSM-5. CLE for the Federal Public Defender Office. Co-presented with Les Goldman, PhD and Thomas Price, JD. Portland, Oregon.

**2012**       Psychopathy. Metropolitan Public Defender Office Annual training. Copresenter: Alexander Millkey, Psy.D.

**2012 – present** Oregon Forensic Evaluator Training Program. Director and training faculty of semi-annual training. Sessions taught: Competency/Fitness to proceed, Ethics, Risk assessment, Methamphetamine psychosis, report writing, and Nexus development.

**2012 – present** Competency to stand trial: Forensic assessment instruments. Oregon Health and Sciences University Forensic Psychiatry Fellowship Seminar Series. Copresenter: Claudia Kritz, Ph.D. (annual)

**2012**       Victimization of the incarcerated. National Crime Victim's Law Institute Conference. Portland, OR.

**2011**       Personality disorders, psychopathy, and dangerousness: Making sense of the labels. Oregon Criminal Defense Lawyers' Association Annual Conference. Bend, OR.

**2011**       Women's adjustment to prison: Personality, abuse history, and violence. Area seminar at Simon Fraser University. Vancouver, BC, Canada.

**2010**       Antisocial personality disorder: Diagnosis, assessment, and treatment planning. Continuing Education for Cedar Hills Hospital. Beaverton, OR.

**2010**       Personality disorder and trauma. Invited address to the Washington Association of Criminal Defense Lawyers Annual Conference, Lake Chelan, WA.

**2009**       Confidentiality upgrade: The ethics of privacy as technology advances. Invited address for School of Professional Psychology, Pacific University Ethics Workshop. Portland, OR.

**2006**          The accidental forensic psychologist: A primer of ethics for working with the legal system. Invited address for School of Professional Psychology, Pacific University Ethics Workshop. Portland, OR.

## Editorial Experience

**2017 - present** Ad-hoc reviewer, *Law and Human Behavior*

**2014 – 2020**    Editorial board member, *Psychology Public Policy, and Law*

**2012 - present** Ad-hoc review, *Psychological Services*

**2011**          Ad-hoc reviewer, *Aggression and Violent Behavior*

**2010**          Member, Fourth International Congress on Psychology and Law, Risk Assessment Review Panel

**2010 – present** Ad-hoc reviewer, *Criminal Justice and Behavior.*

**2008 –present** Ad-hoc reviewer, *Psychology, Public Policy, and Law.*

**2007**          Ad-hoc reviewer, *Journal of Clinical Case Studies*.

**2007**          Ad-hoc reviewer, *Journal of Clinical and Social Psychology*.

**2006**          Ad-hoc reviewer, *Journal of Anxiety Disorders*.

**2003 – present** Ad-hoc reviewer, American Psychology and Law Society Conference.

**2002 – 2005**    Ad-hoc reviewer, American Psychological Association Annual Conference.

## Research Presentations

**Guyton, M. R., Millkey, A. M., Waller, N., Stabeno, B., & Campbell, M. (2019).** Rapid Fitness to Proceed (rFTP) program: An interdisciplinary approach to competency to stand trial hearings. Symposium presented at the American Psychology-Law Society Conference, Portland, Oregon. (Symposium chair and presenter).

**Guyton, M. R. (2019).** Disentangling the role of substance use from mental illness in a criminal responsibility evaluation. Paper presented at the American Psychology-Law Society Conference, Portland, Oregon.

**Guyton, M. R. (2018).** Private forensic practice. Panelist at the American Psychology-Law Society Conference, Memphis, Tennessee.

**Guyton, M. R. (2017).** Supervision of forensic assessment: Perspectives from across the spectrum of training. Symposium presented at the American Psychology-Law Society Conference, Seattle, Washington.

**Cosby, R., Arnaut, G., & Guyton, M. R. (2017).** The effect of training on criminal responsibility nexus statements. Paper presented at the American Psychology-Law Society Conference, Seattle, Washington.

**Cosby, R. & Guyton, M.R. (2017).** Labeling psychopathic traits versus treatment focused descriptions of juveniles: How do descriptions of serious personality traits influence judges' perceptions? Paper presented at the American Psychology-Law Society Conference, Seattle, Washington.

**Montijo, K., & Guyton, M. R. (2016).** Conditional release outcome of insanity acquittees. Poster presented at the American Psychology-Law Society Conference, Atlanta, California.

**Cosby, R., Banas, D., & Guyton, M. R. (2015).** Exploratory factor analyses of overt and covert narcissistic trait measures in a forensic population. Poster presented at the American Psychology-Law Society Conference, San Diego, California.

**Guyton, M. R. (2014).** Influence of gender on experts' perceptions of risk. Paper presented at the American Psychology-Law Conference. New Orleans, Louisiana.

**Guyton, M. R. (2014).** State certification of mental health professionals who perform criminal forensic evaluations. Symposium presented at the American Psychology-Law Society Conference. New Orleans, Louisiana.

**Guyton, M. R., Brown, C., Stotler-Turner, E., Hinman, J., Isoma, Z., & Brown, E. (2013).** Getting used to the big house: Male and female inmates' adjustment in the first year of incarceration. Paper presented at the American Psychology-Law Society Conference. Portland, Oregon.

**Montes, O., & Guyton, M. R. (2013).** Feigning among Hispanic inmates: An exploratory study of the Spanish translation of the M-FAST. Paper presented at the American Psychology-Law Society Conference. Portland, Oregon.

**Rideout, K., & Guyton, M. R. (2013).** Secondary psychopathy and Borderline Personality Disorder in males. Paper presented at the American Psychology-Law Society Conference. Portland, Oregon.

**Garrett, M., & Guyton, M. R. (2013).** Using the VRAG to predict institutional misconduct in female and male inmates. Poster presented at the American Psychology-Law Society conference. Portland, Oregon.

**Guyton, M.R., Brown, C. S., Hinman, J., and Stotler-Turner, E. (2012).** Women entering and adjusting to prison. Paper presented at the Mental Health and Corrections Conference. St. Louis, Missouri.

**Cook, A. N. & Guyton, M. R. (2012).** Work attitudes and outcomes among management and non-management correctional employees. Poster presented at the Mental Health and Corrections Conference. St. Louis, Missouri.

**Prokosch, C., & Guyton, M. R. (2012).** The effect of abuse on first time female inmates. Poster presented at the Mental Health and Corrections Conference. St. Louise, Missouri.

**Cook, A. N., Hinman, J., & Guyton, M. R. (2011).** A comparison of the abuse histories of male and female subtypes of psychopathy. Paper presented at the International Association of Forensic Mental Health Services Conference. Barcelona, Spain.

**Cook, A. N., & Guyton, M.R. (2011).** Trait and childhood abuse differences in subtypes of psychopathy: Implications for risk and treatment. Paper presented at the Seventh Annual Pacific Forensic Psychiatry Conference. Vancouver, BC, Canada.

**Stotler-Turner, E., Guyton, M.R., Hinman, J., & Brown, C. (2011).** Mental illness and adjustment among first-time female prison inmates. Poster presented at the Forensic Mental Health Association of California Annual Conference. Seaside, CA.

**Cook, A.N., & Guyton, M.R. (2011).** Childhood abuse in subtypes of psychopathy among first time male prison inmates. Paper presented at the Fourth International Congress of Psychology and Law. Miami, FL.

**Isoma, Z. & Guyton, M.R. (2011).** Relational aggression among male and female inmates. Paper presented at the Fourth International Congress of Psychology and Law. Miami, FL.

**Guyton, M.R., Brown, C., Hinman, J., Stotler-Turner, E., Cook, A.N., & Isoma, Z. (2011).** First time: The mental health and abuse histories of male and female offenders entering prison. Poster presented at the Fourth International Congress of Psychology and Law. Miami, FL.

**Reckmeyer, D. & Guyton, M.R. (2011).** PAI scores in a community sample of sexually abused and non-sexually abused female sexual offenders. Poster presented at the Fourth International Congress of Psychology and Law. Miami, FL.

**Baird, S. A., & Guyton, M.R. (2010).** A Rorschach investigation of psychopathy: An assessment of self-perception and interpersonal relationship in a sample of incarcerated females. Oregon Psychological Association Annual Conference. Portland, Oregon.

**Guyton, M.R., Brown, C.S., Stotler-Turner, E., & Hinman, J. (2010).** Personality, trauma, and adjustment in first-time female inmates . Research colloquium at Oregon State Hospital, Salem, Oregon.

**Guyton, M.R., Brown, C.S., Stotler-Turner, E., & Hinman, J. (2010).** Variants of psychopathy in female offenders. American Psychology-Law Society Conference, Vancouver, British Columbia, Canada.

**Kilgust, A.R., & Guyton, M.R. (2010).** Sentencing and risk characteristics of Latino sexual offenders. American Psychology-Law Society Conference, Vancouver, British Columbia, Canada.

**Hill, D., Laffoon, L. & Guyton, M.R. (2010).** Detecting Malingering in Correctional Settings: A Comparison of Several Psychological Tests. American Psychology-Law Society Conference, Vancouver, British Columbia, Canada.

**Rideout, K., & Guyton, M.R. (2010).** Childhood Emotional Abuse In Incarcerated Females: Use Of The PAI In Identifying Complex Trauma. American Psychology-Law Society Conference, Vancouver, British Columbia, Canada.

**Guyton, M.R., Brown, C., Hinman, J., & Stotler-Turner, E. (2010).** The relationship of mental health symptoms and trauma experiences in first-time female inmates. American Correctional Health Services Association Conference. Portland, Oregon.

**Brown, C. S. & Guyton, M. R. (2008).** Incremental validity of the Static-99 and
PAI with community-treated sex offenders. Association for the Treatment of Sexual
Abusers Conference, Atlanta, GA.

**Means, J. C., Guyton, M. R., Brown, C., Buchanan, P., MacMahon, B., Marshall, K., and Vo, E. (2008).**
Extension and Validation of the Static-99. Association for the Treatment of Sexual Abusers
27th Annual Conference, Atlanta, GA.

**Means, J. C., Guyton, M. R., Brown, C., Buchanan, P., MacMahon, B., Marshall, K., and Vo, E. (2008).**
Extension and Validation of the Static-99: A Pilot Study. Oregon Psychological Association
2008 Annual Conference, Portland, OR.

**Guyton, M. R., Vo, E., Means, J., Buchanan, P., Marshall, K., Brown, T., MacMahon, B. (2008).**
A comparison of predictive validity of actuarial and dynamic measures of sexual
re-offense with a community treatment sample. American Psychology-Law
Society Conference, Jacksonville, FL.

**Vo, E., Guyton, M., Brown, C., Buchanan, P., MacMahon, B., Marshall, K., & Means, J. (2008).**
A comparison of the conviction rates and sentence length of male and
female sexual offenders. American Psychology-Law Society Conference,
Jacksonville, FL.

**McLawsen, J. E., Guyton, M. R., Vannoy, S. D., Gagliardi, G. J., Jackson, R. L., Richards, H., & Scalora, M. J. (2007).**
Professional perspectives on sexual sadism. Association for the Treatment of Sexual
Abusers Conference. (San Diego, CA).

**Guyton, M.R., Haun, J. J., & Arnaut, G. L. Y. (2006).** Differential definitions of mental illness in
prison: A comparison of disciplinary infractions. American Psychology and Law Society
Conference. (St. Petersburg, FL).

**Guyton, M. R. & Golding, S. L. (2006).** Expanding the construct of institutional maladjustment.
American Psychology and Law Society Conference. (St. Petersburg, FL).

**Guyton, M. R., & Golding, S. L. (2004).** A dimensional approach to risk assessment: Does
psychopathology predict institutional maladjustment in an incarcerated population?
American Psychology and Law Society Biennial Conference, (Scottsdale, AZ).

**Guyton, M. R., & Golding, S. L. (2004).** The concurrent and predictive validity of four
psychopathy measures within an institutionally maladjusted prison population. American
Psychology and Law Society Biennial Conference, (Scottsdale, AZ).

**Guyton, M. R., Marcus, D. K., Clawson, C., & Fox, K. A. (2004).** Take two: The effects of
perceived perpetrator dangerousness on mock jurors' verdict and sentencing
recommendations. American Psychology and Law Society Biennial Conference,
(Scottsdale, AZ).

**Guyton, M. R., & Marcus, D. K. (1999).** Does Perceived Dangerousness Affect Mock Jurors'
Verdicts? American Psychological Association Annual Conference (Boston, MA).

**Marcus, D. K., Lyons, P. M. & Guyton, M. R. (1998).** Jurors and the Five Factor Model: A

Social Relations Analysis. American Psychology and Law Society Biennial Conference, (Redondo Beach, CA).

Guyton, M. R. (1996). Priming and Juror Decision Making. Annual Great Plains Honors Conference, (Emporia, KS).

## Grants, Contracts, and Awards

**2023-present**  Contract with Multnomah County District Attorney's Office to conduct forensic mental health assessments.

**2017 - present**  Contract with Oregon Board of Pardons and Parole to conduct violence risk assessment evaluations. Contracted rate variable.

**2021-present**  Contract with Clackamas County for Rapid Fitness to Proceed Program

**2019-present**  Contract with Oregon Health Authority: Forensic Evaluator Training Program (Training Director). Multi-year contract (ongoing); annual budget: $260,433.

**2017-present**  Contract with Multnomah County for the Rapid Fitness to Proceed Program.

**2017**  Contract with Oregon Health Authority: Forensic Evaluator Training Program (Training Director). Two-year contract; award amount: $278,000.

**2017**  Contract with Washington State Department of Social and Health Services to provide training to mental health providers on forensic concepts. One-year contract; award amount: $10,000.

**2015**  Contract with Oregon Department of Addictions and Mental Health: Forensic Evaluator Curriculum and Evaluation Development and Delivery. (Program Co-Director). Two-year contract; award amount: $240,000.

**2014-present**  Presentence Investigation contract with Multnomah County Department of Community Justice to conduct violence risk assessments. Award amount: variable.

**2014**  Contract with Oregon Department of Addictions and Mental Health: Forensic Evaluator Curriculum and Evaluation Development and Delivery. (Program Director). Award amount: $118,500.

**2012**  Sabbatical leave at Pacific University. Project: Personality and adjustment to prison. Two semesters.

**2012**  Contract with Oregon Department of Addictions and Mental Health: Forensic Evaluator Curriculum and Evaluation Development. (Lead awardee) Award amount: $92,132.

**2012**  Third and fourth place in juried poster competition with co-authors Alana Cook and Courtney Prokosch, respectively, at the Mental Health and Corrections Conference. Award amount: $650.

| | |
|---|---|
| **2011** | Research grant funded by the Oregon Department of Corrections. Project: Correctional Employee Personnel Testing and Correctional Applicant Personnel Testing. Award amount: $6,528. |
| **2009** | Research grant funded by the Oregon Department of Corrections. Project: Personality and Adjustment to Prison (PAP). Award amount: $14,189. |
| **2008** | Faculty Development Award. Pacific University. Project: Multimeasure assessment of prison adjustment among female offenders. Award amount: $3,000. |
| **2003** | Graduate Research Fellowship. The Graduate School, University of Utah. Award amount: $10,000. |
| **2002** | Norman and Barbara Tanner Center Fellowship for the Prevention of Violence. The Graduate School, University of Utah. Award amount; $12,500. |
| **2002** | Professional Development Award (Most Outstanding Student). Clinical Area, Department of Psychology, University of Utah. |
| **1995** | John B. Symonds Psychology Scholarship. Department of Psychology, Sam Houston State University. |

## Graduate psychology courses taught

Adult Forensic Psychology
Psychopathology
Advanced Clinical Skills Review
Diagnosis and Treatment Planning
Ethics and Professional Issues
Statistics and Research Design II
Correctional Psychology
Assessment II: Objective Personality
Intervention I

## Undergraduate psychology courses taught

Introduction to Personality
Introduction to Psychology
Introduction to Clinical Psychology
Abnormal Psychology
Psychology of Gender
Research Methods
Theories of personality

## Community and Professional Service

| | |
|---|---|
| **2023-present** | American Academy of Forensic Psychology Board of Directors President-Elect beginning 2025, Secretary 2023-2024 |
| **2022-2023** | Member, Oregon GAINS evaluator subcommittee |

| | |
|---|---|
| **2020-2023** | Co-chair, American Psychology-Law Society (AP-LS) Telehealth Task Force |
| **2020 – present** | Member, Oregon Psychological Association Legislative Committee |
| **2018 - 2020** | Director, Oregon Psychological Association Board of Directors |
| **2019 - 2021** | Legislative workgroup for the Psychiatric Security Review Board |
| **2019 - 2023** | Fitness to Proceed Legislative Workgroup, with testimony at Senate/House Judiciary Committee hearing |
| **2018 - 2021** | North Portland Little League Board of Directors, Uniforms manager. |
| **2016 - 2017** | Leadership Institute for Women in Psychology (LIWP), invited attendee. American Psychological Association, Washington DC. |
| **2015 - present** | Workshop presenter, anchor (on-site administrator), and registration/payment assistant, American Academy of Forensic Psychology |
| **2012 - 2015** | Member, American Psychology-Law Society Dissertation Award Committee |
| **2012** | Presenter, Washington State University—Vancouver Students of the Psychology and Social Sciences Club meeting. |
| **2010** | Contributor and presenter, Juvenile Rights Project Family Law Training. |
| **2010** | CLE presenter, Metropolitan Public Defender. |
| **2009 - 2010** | Guest speaker, Hillsboro Chamber of Commerce School to Work Program at Liberty High School. |
| **2008 - 2014** | Instructor, Washington County Sheriff's Office Crisis Intervention Training. |
| **2008 - 2013** | Informal consultant, Research Department and Behavioral Health Services, Oregon Department of Corrections. |
| **2008 - 2011** | Member, Hospital-Wide Research Board, Oregon State Hospital. |
| **2007 - 2010** | Invited Speaker, Doernbecher Children's Hospital. |

**University Service**

| | |
|---|---|
| **2014 - 2015** | Chair, Appeals Board, School of Professional Psychology |
| **2011 – 2012** | Senator, University Faculty Senate, College of Health Professions Representative |
| **2010 – 2012** | Chair, College of Health Professions Standards and Appeals Committee |

| 2008 – 2012 | Director of Academic Issues, which included the following appointments: Chair, Tracks Committee; Chair, Clinical Competency Examination Committee; Chair, Curriculum Revision Taskforce; Member, Executive Committee, Member, Student Evaluation Committee; Member, Clinical Training Committee |
|---|---|
| 2006 – 2007 | Member, University Governance Task Force, College of Health Professions Representative |

## Association memberships

American Academy of Forensic Psychology
International Association of Forensic Mental Health Services
American Psychological Association
American Psychology and Law Society (APA Division 41)
International Society of Traumatic Stress Studies
International Association of Chiefs of Police, Associate General
Oregon Psychological Association
Alpha Chi Honor and Scholarship Society
Psi Chi National Psychology Honor Society
Delta Phi Alpha National German Honor Society