DAN RAYFIELD
Attorney General
JESSE B. DAVIS #052290
KRISTEN E. HOFFMEYER #085338
Senior Assistant Attorneys General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: jesse.b.davis@doj.oregon.gov
        kristen.hoffmeyer@doj.oregon.gov

Of Attorneys for State Defendants Hormann,
Krings, Riddle, Wilcox and Oregon State Police

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NICHOLAS JAMES MCGUFFIN, as an individual and as guardian *ad litem*, on behalf of S.M., a minor,<br><br>         Plaintiffs,<br><br>       v.<br><br>MARK DANNELS, PAT DOWNING, SUSAN HORMANN, MARY KRINGS, KRIS KARCHER, SHELLY MCINNES, RAYMOND MCNEELY, KIP OSWALD, MICHAEL REAVES, JOHN RIDDLE, SEAN SANBORN, ERIC SCHWENNINGER, RICHARD WALTER, CHRIS WEBLEY, ANTHONY WETMORE, KATHY WILCOX, CRAIG ZANNI, DAVID ZAVALA, ESTATE OF DAVID E. HALL, VIDOCQ SOCIETY, CITY OF COQUILLE, CITY OF COOS BAY, and COOS COUNTY,<br><br>         Defendants.<br><br><br>VIDOCQ SOCIETY,<br><br>         Cross-Claimant. | Case No. 6:20-cv-1163-MTK (Lead Case)<br>           3:21-cv-1719-MTK (Trailing Case)<br><br>NOTICE OF SETTLEMENT |

Page 1 -   NOTICE OF SETTLEMENT
        JBD/ce1/1006106717

RICHARD WALTER,

     Cross-Claimant.

---

NICHOLAS JAMES MCGUFFIN, as an individual and as guardian ad litem, on behalf of S.M., a minor,

     Plaintiff,

    v.

OREGON STATE POLICE,

     Defendant.

Pursuant to ORS 17.095, the State notifies the court that the State Defendants in these consolidated actions, specifically Susan Hormann, Mary Krings, John Riddle, Kathy Wilcox, and the Oregon State Police, have settled and resolved all claims against them pursuant to the terms contained in the settlement agreements attached and labeled as Exhibit 1 (resolving the plaintiffs' claims against the State Defendants) and Exhibit 2 (resolving the cross claims against the State Defendants).

DATED November 26, 2025.

Respectfully submitted,

DAN RAYFIELD
Attorney General

s/ Jesse B. Davis
JESSE B. DAVIS #052290
KRISTEN E. HOFFMEYER #085338
Senior Assistant Attorneys General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: jesse.b.davis@doj.oregon.gov
     Kristen.hoffmeyer@doj.oregon.gov
Of Attorneys for State Defendants Hormann, Krings, Riddle, Wilcox and Oregon State Police

Page 2 -   NOTICE OF SETTLEMENT
JBD/ce1/1006106717

## SETTLEMENT AGREEMENT, RELEASE OF CLAIMS,
## AND COVENANT NOT TO SUE OR EXECUTE

The following actions are currently pending between the parties to this Settlement Agreement, Release of Claims, and Covenant Not To Sue or Execute:

- *Nicholas James McGuffin, as an individual and as guardian ad litem, on behalf of S.M., a minor, v. Mark Dannels et al.*, U.S. District Court Case Number 6:20-cv-01163-MTK, alleging non-economic loss and other damages and costs arising out of personal physical injury or sickness;

- *Nicholas James McGuffin, as an individual and as guardian ad litem, on behalf of S.M., a minor, v. Oregon State Police*, U.S. District Court Case Number 3:21-CV-01719-MTK, alleging non-economic loss and other damages and costs arising out of personal physical injury or sickness;

- *Nicholas James McGuffin, as an individual and as guardian ad litem, on behalf of S.M., a minor, v. Mark Dannels et al.*, U.S. Court of Appeals for the Ninth Circuit Case Number 25-2585, an interlocutory appeal of a preliminary ruling by the Court in Case Nos. 6:20-cv-01163-MTK and 3:21-CV-01719-MTK.

- *Nicholas James McGuffin v. State of Oregon*, Marion County Circuit Case Number 24CV13278.

The two actions in United States District Court have been consolidated and will be described collectively herein as "the federal actions." The action in the Ninth Circuit Court of Appeals will be described herein as "the appeal." The action in Marion County Circuit Court will be described herein as "the Marion County action." Collectively, these actions will be described herein as "the Actions."

Nicholas James McGuffin and S.M. (collectively, "Plaintiffs") are represented in the Actions by Janis C. Puracal, Andrew C. Lauersdorf, and David B. Owens. Kathy Wilcox, Mary

Page 1 - SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

Krings, John Riddle, Susan Hormann, and the Oregon State Police are among the defendants in the federal actions. The State of Oregon is the defendant/respondent in the Marion County action. Hormann, Krings, Riddle, Wilcox, the Oregon State Police, and the State of Oregon will be referred to collectively herein as "the State Defendants." Hormann, Krings, Riddle, and Wilcox will be referred to collectively herein as "the individual State Defendants." The State Defendants are represented by Assistant Attorneys General Jesse B. Davis and Kristen E. Hoffmeyer. The parties to this Agreement, Nicholas James McGuffin, S.M., and the State Defendants (collectively, "the Parties"). The Parties have agreed to settle the Actions for the consideration set forth in this Settlement Agreement, Release of Claims, and Covenant Not To Sue or Execute ("Agreement").

The terms of this Agreement are as follows:

1.     **Effective Date:** This Agreement is effective on the date it is fully executed by all of the Parties to it and the Court in the federal actions has approved it.

2.     **Settlement Payment:** As consideration for Plaintiffs' Release of Claims and Covenant Not to Sue or Execute, and on behalf of the Released Parties described below, the State of Oregon, by and through the Oregon Department of Administrative Services/Risk Management ("Risk Management"), shall pay the total sum of nine million dollars ($9,000,000.00) ("settlement payment"), payable in three cash installments as specified in Exhibit A. The three installment payments shall be made by September __, 2025, consistent with the terms of Exhibit A. The Parties agree to execute such documents as may be reasonably necessary to effectuate the installment payments. An IRS Form 1099 will be issued for each year in which any portion of the settlement payment is made to any person or entity as specified in Exhibit A.

3.     **Dismissal of Appeal:** Upon execution of this Agreement, State Defendants shall dismiss the appeal no later than September __, 2025.

4.     **Resolution of the Marion County case:** The Parties agreed that Nicholas James McGuffin could continue to pursue the Marion County case solely for the purpose of obtaining

Page 2 - SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

relief in the form of a certificate of innocence pursuant to ORS 30.657(12)(a) and an order setting aside and sealing the conviction and arrest records pursuant to ORS 30.657(12)(b), and the Parties further agree that such relief was obtained.

5.      **Plaintiffs' Release of Claims:**   In consideration for the above settlement payment on the specified terms and the relief obtained in the Marion County action described above, Plaintiffs, individually and on behalf of any heirs, executors, administrators, successors, assigns, and agents, agree to release, acquit, and forever discharge the State Defendants and all those in interest with them, including the State of Oregon and all of its agencies, departments, administrators, officers, current and former employees, agents, attorneys, and insurers, as well as the individual State Defendants and their heirs, executors, administrators, successors, assigns, and agents  (collectively "Released Parties"), from any and all claims, demands, or causes of action, whether known or unknown, under any legal, equitable, or other theory, that were or could have been raised in the Actions or that exist or may exist against the Released Parties as of the Effective Date of this Agreement, except as described in paragraph 4 above.  The release, acquittal, and discharge described above ("Release") includes any claims against the Released Parties, including the Oregon Department of Justice and Risk Management, arising from the negotiation or execution of this Agreement.

The Release specifically includes, but is not limited to, claims for:

5.1. Damages, such as past and future medical and mental health expenses, lost wages, impairment of earnings, emotional distress, pain and suffering, punitive damages, and any other compensatory, economic, noneconomic, nominal, or other forms of damage;

5.2. Any form of equitable relief, including injunctions or declaratory judgments;

5.3. Any type of litigation expenses, such as attorney fees, expert witness fees, costs, and disbursements;

Page 3 - SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

5.4. Any form of relief for claims arising from alleged negligent, grossly negligent, or intentional acts or omissions;

5.5. Except as described in paragraph 4 above, any form of recovery, payment, service, or action contemplated by or made available pursuant to ORS 30.657 or any amendment to ORS 30.657 enacted after the effective date of this Agreement, including but not limited to:

(a) statutory compensation or damages pursuant to ORS 30.657(5);

(b) an award of attorney fees, costs, and disbursements pursuant to ORS 30.657(7)(a);

(c) reimbursement for restitution, assessments, fees, court costs and all other sums paid by Plaintiffs pursuant to ORS 30.657(7)(b); and

(d) an award of access to existing state, local, or other programs providing services pursuant to ORS 30.657(7)(c), although this Agreement does not prevent Plaintiffs from engaging or obtaining such services if otherwise qualified under applicable law.

5.6. Any other form of relief for claims of deprivation of rights under state or federal law.

The Release expressly excludes any and all claims alleged by Plaintiffs in the federal actions against any of the following:

5.7 Mark Dannels, Pat Downing, Kris Karcher, Shelly McInnes, Raymond McNeely, Kip Oswald, Michael Reaves, Sean Sanborn, Eric Schwenninger, Richard Walter, Chris Webley, Anthony Wetmore, Craig Zanni, David Zavala, the Estate of David E. Hall;

5.8 The Vidocq Society;

5.9 the City of Coquille;

5.10  the City of Coos Bay; or

5.11  Coos County.

Page 4 - SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

6.      **Plaintiffs Covenant Not to Sue or Execute**: This Agreement is executed by the Parties hereto pursuant to the provisions of ORS 31.815 as a covenant not to sue or execute. Specifically, the federal actions will be dismissed in their entirety as against the Released Parties, and Plaintiffs will never again institute any Released Claim against any of the Released Parties. Plaintiffs will not enforce against any of the Released Parties any judgment they may obtain in the federal actions or any judgment that they may obtain based on any other claim, demand, or cause of action, whether known or unknown, under any legal, equitable, or other theory of recovery, that was raised or could have been raised in the Actions or that exists or may exist against any party in the federal actions as of the Effective Date of this Agreement.  This Agreement is not intended to provide any benefit or advantage to any of the persons or entities identified in paragraphs 5.7 through 5.11 above, and Plaintiffs expressly reserve all rights in this regard.

7.      **Newly-Discovered Evidence:**  The Parties agree that if, after the Effective Date of this Agreement, they discover evidence different from or in addition to the evidence which they now know of or possess, this Agreement remains in full force and effect.

8.      **Each Party is Responsible for Own Attorney Fees and Costs:**  The Parties acknowledge and agree that they are solely responsible for paying any attorney fees and costs they incurred and that neither the Parties nor their attorneys will seek any award of attorney fees or costs from the other Party.

9.      **Plaintiff is Responsible for all Subrogation and Liens:**  Plaintiffs acknowledge that all subrogation and lien claims arising out of contract or under state or federal law including, but not limited to, subrogation or lien claims of or related to health care providers, insurance carriers (including personal injury protection or "PIP"), workers' compensation carriers, attorneys, and any federal or state agency or programs such as Medicare, Medicaid, or Social Security, are the sole and separate obligation of Plaintiffs which Plaintiffs agree to pay or otherwise resolve.

Page 5 - SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

Plaintiffs will defend, indemnify and hold harmless the Released Parties from and against all such lien and subrogation claims brought against the Released Parties.

10.      **Medicare Disclaimer and Waiver:**  By signing below, plaintiffs declare under penalty of perjury that: (1) plaintiffs are not currently entitled to Medicare; and (2) none of the treatment received for the injury or injuries claimed in this Action (or related to the incident giving rise to this Action) or released in this Agreement were submitted to or paid for by Medicare.  Plaintiffs waive, release, and forever discharge Released Parties from any obligations for any claim or future claim, known or unknown, arising out of the failure of Released Parties to provide for a primary payment or appropriate reimbursement to Medicare pursuant to 42 U.S.C. § 1395y(b)(3)(A), and Plaintiffs shall defend, indemnify and hold harmless the Released Parties for any claims arising out of arising out of 42 U.S.C. § 1395y(b).  Plaintiffs further understand this settlement may impact, limit or preclude plaintiffs' right or ability to receive future Medicare benefits arising out of the injuries alleged in this lawsuit.

11.      **No Tax Representations:**  No party warrants or represents how the United States Internal Revenue Service ("IRS"), the Oregon Department of Revenue, or other governmental authority will treat the settlement payment for tax purposes, and agree that no further payment of money from Released Parties will be due in the event that the payments or the release of the claims embodied in this Agreement or any portion thereof is found by the IRS, the Oregon Department of Revenue, or other governmental authority to be, or result in, taxable income to any party.  **The Released Parties, as part of their reporting requirements, may communicate with the IRS, including submitting IRS form 1099.  The Released Parties reserve the right to respond to inquiries by said authorities and to make any additional disclosures requested by the governmental authority or as required by law.  Plaintiffs are solely responsible for the tax consequences of settlement payment and Plaintiffs agree not to hold the Released Parties responsible for taxes due.**

Page 6 - SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

**12.    Entire Agreement:**  This Agreement contains and constitutes the entire agreement and understanding of the Parties, notwithstanding any and all prior negotiations, discussions, undertakings or agreements made in arriving at this Agreement.  There are no representations, agreements, or inducements between the Parties except as set forth expressly and specifically in this Agreement.

**13.    No Admission of Fault or Future Precedent:**  This Agreement is entered into solely for the purpose of settlement to avoid the burden and expense of litigation.  The Parties agree that this Agreement is not to be construed as an admission or proof of any liability or fault whatsoever on the part of the Released Parties.  This Agreement does not establish a precedent in the settlement of any current or future grievance or other dispute among the Parties, and shall not be admissible as evidence in any future court, administrative or arbitration proceeding except in a proceeding brought to enforce the terms of this Agreement.  In the event any Plaintiff pursues a claim released, waived, or discharged pursuant to this Agreement, the Released Parties may plead this Agreement as an absolute defense.

**14.    No Waiver:**  The failure by any of the Parties to enforce at any time, or for any period of time, any one or more of the terms or conditions of this Agreement or a course of dealing between the Parties, shall not be a waiver of such terms or conditions or of such Party's right to enforce each and every term and condition of this Agreement.

**15.    Invalidity:**  This Agreement does not waive any right that may not legally be waived.  If any provision contained in this Agreement shall for any reason be held to be invalid, illegal, void, or unenforceable in any respect, such provision shall be deemed modified so as to constitute a provision conforming as nearly as possible to such invalid, illegal, void, or unenforceable provision while still remaining valid and enforceable, and the remaining terms or provisions of this Agreement shall not be affected.

**16.    Binding Agreement and Ownership of Claims:**  This Agreement shall be binding upon the Parties, and their heirs, representatives, executors, administrators, successors in interest,

insurers and assigns.  The Parties represent and acknowledge that they have not transferred or assigned, or purported to transfer or assign, to any person or entity, any claim, or any portion of interest of any claim, that was or could have been raised in this Action.

17.    **Acknowledgment of the Terms of the Agreement:**  By the signatures below, the Parties acknowledge that they have read and know the contents of this Agreement, that they fully understand the Agreement's terms, and that they enter the Agreement voluntarily for the purpose of making a full compromise and settlement.  Each of the Parties further represents it has consulted or has had the opportunity to consult with legal counsel of its choice concerning the legal effect of this Agreement before signing it, and that each party executes this Agreement voluntarily.  Further, the persons executing and delivering the Agreement represent and warrant that they are fully authorized to do so, and that the execution of delivery of the Agreement is lawful and voluntary.

18.    **Judgment of Dismissal with Prejudice:**  The Parties agree to the entry of a limited judgment dismissing the State Defendants from the federal actions with prejudice and without attorney fees, costs, or disbursements to any party.  Counsel for Plaintiffs shall file a Stipulation of Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).  The Parties agree to execute these documents and any further documents and take any further actions as may be reasonable and necessary in order to carry out the purpose and intent of this Agreement.

19.    **Waiver of Rule of Construction Against Drafter:**  This Agreement was jointly drafted and approved by all Parties to this Agreement. Any rule that would otherwise require any ambiguities in this Agreement to be interpreted against the drafter(s) is hereby expressly waived.

20.    **Counterparts:**  This Agreement may be executed in counterparts, including counterparts received by facsimile or electronic transmission, with each counterpart constituting an original. The executing Parties agree that a photocopy or other signed copy of this Agreement is as effective as the original.

///

Page 8 - SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

**IT IS SO AGREED TO BY THE PARTIES:**



*Nicholas James McGuffin*                          DATED this 24th day of September, 2025.
_____
**NICHOLAS JAMES MCGUFFIN**
Plaintiff

    Subscribed and sworn to before me this 24th day of September, 2025, in the State of

Oregon, County of Washington.





*Misty D. Wilson*
_____
Notary Public for Oregon
My commission expires: April 4, 2028



*Nicholas James McGuffin*                          DATED this 24th day of September, 2025.
_____
**NICHOLAS JAMES MCGUFFIN**
As *Guardian Ad Litem* for Plaintiff S.M.

    Subscribed and sworn to before me this 24th day of September, 2025, in the State of

Oregon, County of Washington.





*Misty D. Wilson*
_____
Notary Public for Oregon
My commission expires: April 4, 2028

///

///

///

///

///

///

///

Page 9 **-** SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

**ANDY HEIDER, MAJOR**
**OREGON STATE POLICE**
On behalf of Defendant Oregon State Police

DATED this _____ day of September, 2025.

**BEN GUTMAN**
**INTERIM DEPUTY ATTORNEY GENERAL**
Oregon Department of Justice
On behalf of Respondent State of Oregon

DATED this _____ day of September, 2025.

**SUSAN HORMANN**
Defendant

DATED this _____ day of September, 2025.

**MARY KRINGS**
Defendant

DATED this _____ day of September, 2025.

**JOHN RIDDLE**
Defendant

DATED this _____ day of September, 2025.

**KATHY WILCOX**
Defendant

DATED this _____ day of September, 2025.

///

///

Page 10 **-** SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

**APPROVED AS TO FORM:**


_____          DATED this _____ day of September, 2025.
**JANIS C. PURACAL**, OSB #132288
**ANDREW C. LAUERSDORF**, OSB # 980739
**DAVID B. OWENS**, WSB # 53856
Attorneys for Plaintiffs




_____          DATED this _____ day of September, 2025
**JESSE B. DAVIS**, OSB #052290
Senior Assistant Attorney General
Of Attorneys for Defendant State of Oregon


Page 11 - SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

## EXHIBIT A

**1.0    Payments**

1.1    In consideration of the release set forth in the Agreement, the State Defendants, by and through the State of Oregon and the Oregon Department of Administrative Services/Risk Management ("Risk Management"), agrees to pay at the time of settlement the following sums upon the specified terms:

- $3,966,500.00 payable to "Maloney Lauersdorf Reiner PC, in trust and as attorneys for, Nicholas McGuffin."
- $4,000,000.00 payable to "MetLife Resources Group, Inc." to fund the periodic payments outlined in Section 1.2 below.
- $1,033,500.00 payable to "Independent Assignment Company" to fund the periodic payments outlined in Section 1.3 below.

1.2    Periodic payments made according to the schedule as follows (the "Periodic Payments"):

**Payee: Nicholas McGuffin**
- $11,123.94 for life, payable monthly, guaranteed for 40 year(s) which is 480 payments, beginning on 12/01/2025, increasing at a rate of 3.00% compounded annually, with the last guaranteed payment on 11/01/2065.
  *The cost of the above Periodic Payments is $4,000,000.*

1.3    Periodic payments made according to the schedule as follows (the "Periodic Payments"):

**Payee: S.M.**
- $500.00 payable monthly, guaranteed for 3 year(s), beginning on 11/1/2025, with the last guaranteed payment on 10/01/2028.; *then*
- $1,000.00 payable monthly, guaranteed for 4 year(s), beginning on 11/01/2028, with the last guaranteed payment on 10/01/2032.; then
- $2,000.00 payable monthly, guaranteed for 5 year(s), beginning on 11/01/2032, with the last guaranteed payment on 10/01/2037.; then
- $3,971.61 for life payable monthly, increasing at a rate of 3.00% annually, guaranteed for 30 year (s), beginning on 11/01/2037, with the last guaranteed payment on 10/01/2067.
  *The cost of the above Periodic Payments is $1,033,500.00.*

The future payment amounts outlined above are guaranteed based upon a projected annuity purchase date of **October 1, 2025**. Any delay in funding the annuity may result in a delay of the payment dates or change in payment amounts that shall be recorded in the Periodic Payment Agreement, Qualified Assignment document and Annuity Contract without the need of obtaining an amended Settlement Agreement and/or Court Order up to 90 days after the original purchase date.

All the payments set forth herein constitute damages on account of wrongful incarceration, within the meaning of Section 139(F) of the Internal Revenue Code of 1986 as well as personal, physical injuries or sickness, arising from an occurrence within the meaning of Section 104(a)(2) of the IRS Code of 1986 as amended.

**2.0     Payee's Rights to Payments**

Plaintiffs acknowledge that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiffs or any Payee; nor shall the Plaintiffs or any Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

**3.0     Payee's Beneficiary**

Any payments to be made after the death of Nicholas McGuffin pursuant to the terms of this Exhibit A to the Agreement shall be made to such person or entity as shall be designated in writing by Nicholas McGuffin to the State Defendants or the Owner. If no person or entity is so designated by Nicholas McGuffin or if the person designated is not living at the time of Nicholas McGuffin's death, such payments shall be made to the estate of Nicholas McGuffin. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the State Defendants or the Owner. The designation must be in a form acceptable to the State Defendants or the Owner before such payments are made.

Any payments to be made after the death of S.M. ███████ pursuant to the terms of this Exhibit A to the Agreement and Release shall be made to ██████ ████████ (sister) and ██████████████ (sister), paid equally or to the survivor. Upon reaching the age of majority, S.M. ███████ may submit a change of beneficiary in writing to the State Defendants or the Assignee. If no such person or entity is so designated by S.M. ████████ or if the person designated is not living at the time of S.M. ██████████ 's death, such payments shall be made to the Estate of S.M. ████████ No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the State Defendants or the Assignee. The designation must be in a form acceptable to the State Defendants or the Assignee before such payments are made.

**4.0     Consent to Transfer of Periodic Payment Obligation**

4.1     Plaintiffs acknowledge and agree that the State Defendants shall make a transfer of obligation of the State Defendants' liability to make the Periodic Payments set forth in Section 1.2 to <u>MetLife Tower Resources Group, Inc.</u> ("the Owner "). The Owner's obligation for payment of the Periodic Payments shall be no greater than that of the State Defendants (whether by judgment or agreement) immediately preceding the transfer of the Periodic Payments obligation.

4.2       Any such transfer, when made, shall be accepted by the Plaintiffs without right of rejection and shall completely release and discharge the State Defendants from the Periodic Payments obligation transferred to the Owner. The Plaintiffs recognize that, in the event of such an assignment, the Assignee shall be the sole obligor with respect to the Periodic Payments obligation, and that all other releases with respect to the Periodic Payment obligation that pertains to the liability of the State Defendants , thereupon become final, irrevocable and absolute.

**5.0       Consent to Qualified Assignment**

5.1       Plaintiffs acknowledge and agree that the State Defendants shall make a "qualified assignment", within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of the State Defendants' liability to make the Periodic Payments set forth in Section 1.3 to <u>Independent Assignment Company</u> (the "Assignee"). The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of the State Defendants (whether by judgment or agreement) immediately preceding the assignment of the Periodic Payments obligation.

5.2       Such assignment, when made, shall be accepted by the Plaintiffs without right of rejection and shall completely release and discharge the State Defendants from the Periodic Payments obligation assigned to the Assignee. The Plaintiffs recognize that, in the event of such an assignment, the Assignee shall be the sole obligor with respect to the Periodic Payments obligation, and that all other releases with respect to the Periodic Payments obligation that pertain to the liability of the State Defendants shall thereupon become final, irrevocable and absolute.

**6.0       Right to Purchase an Annuity**

The State Defendants, themselves or through the Owner, reserve the right to fund their liability to make the Periodic Payments in Section 1.2 through the purchase of an annuity policy from <u>Metropolitan Life Insurance Company (MLIC).</u> The State Defendants or the Owner shall be the sole owner of the annuity policy and shall have all rights of ownership. The State Defendants or the Owner may have MLIC mail payments directly to the Payee. Nicholas McGuffin shall be responsible for maintaining a current mailing address for Payee with MLIC.

The State Defendants, themselves or through the Assignee, reserve the right to fund their liability to make Periodic Payments in Section 1.3 through the purchase of an annuity policy from <u>Independent Life Insurance Company</u> (the "Annuity Issuer"). The State Defendants or the Assignee shall be the owner of the annuity policy and shall have all the rights of ownership. The State Defendants or the Assignee may have the Annuity Issuer mail payments directly to the Payee. The Plaintiffs and/or the Payee, upon reaching the age of majority, shall be responsible for maintaining the currency of the proper mailing address and mortality information with the Annuity Issuer.

**7.0      Discharge of Obligation**

The obligation of the State Defendants and/or the Owner to make each Periodic Payment shall be discharged upon the mailing of a valid check or electronic funds transfer in the amount of such payments on or before the due date to the last address on record for the Payee named in Section 1.2 with MLIC. If the Payee notifies the Owner that any check or electronic funds transfer was not received, the Owner shall direct MLIC to initiate a stop payment action and, upon confirmation that such check was not previously negotiated or electronic funds transfer deposited, shall have the MLIC process a replacement payment.

The obligation of the State Defendants and/or the Assignee to make each Periodic Payment shall be fully discharged upon the mailing of a valid check or electronic funds transfer in the amount of such payment on or before the due date to the last address on record for the Payee named in Section 1.3 with the Annuity Issuer.  If the Payee notifies the Assignee that any check or electronic funds transfer was not received, the Assignee shall direct the Annuity Issuer to initiate a stop payment action and, upon confirmation that such check was not previously negotiated or electronic funds transfer deposited, shall have the Annuity Issuer process a replacement payment.

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This SETTLEMENT AGREEMENT AND MUTUAL RELEASE ("Agreement") is entered by and between the Vidocq Society, Richard Walter and the State Defendants, who are identified with specificity as set forth below:

(a) VIDOCQ SOCIETY, a Pennsylvania nonprofit charitable organization, including its past and present members, agents, representatives, successors, heirs, executors, administrators, and insurers Liberty Mutual Insurance, Ohio Security Insurance Company, and the Ohio Casualty Insurance Company ("Vidocq");

(b) RICHARD WALTER, individually including his agents, heirs, executors, administrators, and insurers Liberty Mutual Insurance, Ohio Security Insurance Company, and the Ohio Casualty Insurance Company ("Walter"); and

(c) STATE DEFENDANTS refers to and includes SUSAN HORMANN, MARY KRINGS, JOHN RIDDLE, KATHY WILCOX, as individuals, including their agents, heirs, executors, administrators, and insurers; and the OREGON STATE POLICE, including its agents, representatives, successors, heirs, executors, administrators, and insurers ("State Defendants").

Vidocq, Walter, and State Defendants are collectively referred to herein as the "Parties".

## RECITALS

**WHEREAS**, Nicholas McGuffin, as an individual, and as *guardian ad litem* on behalf of S.M, his minor daughter ("S.M.") (collectively "Plaintiffs"), has asserted Federal and Oregon state law claims against Vidocq, Walter, Municipal Defendants, and State Defendants relating to damages allegedly sustained in connection with the investigation of Leah Freeman's death and McGuffin's alleged wrongful conviction of voluntary manslaughter in 2011 for Ms. Freeman's death ("the Incident"), all of which are more fully set forth in the lawsuits captioned as follows: *McGuffin et. al. v. Dannels et. al., Civil Case No. 6:20-CV-01163-MK (lead case), and McGuffin et. al v. Oregon State Police, Civil Case No. 3:21-cv-01719-MK (trailing case)* filed in United States District Court, District of Oregon, Eugene Division (the "Lawsuits").

**WHEREAS**, the Parties herein are named defendants in the Lawsuits;

**WHEREAS,** Vidocq and Walter have asserted cross claims for contribution and indemnity against all defendants in the Lawsuits;

**Notice of Settlement
Exhibit 2 Page 1 of 6**

**WHEREAS,** Vidocq, Walter, and State Defendants have reached a settlement with the Plaintiffs of all claims asserted by Plaintiffs against them in the Lawsuits, and expect to be dismissed with prejudice from the Lawsuits shortly;

**WHEREAS,** Municipal Defendants refers to and includes Mark Dannels, Pat Downing, Kris Karcher, Shelley McInnes, Raymond McNeely, Kip Oswald, Michael Reaves, Sean Sanborn, Eric Schwenninger, Chris Webley, Anthony Wetmore, Craig Zanni, David Zavala, as individuals, including their agents, heirs, executors, administrators, and insurers, Joel D. Shapiro as Administrator of the Estate of David E. Hall, including its agents, representatives, successors, heirs, executors, and administrators, and City of Coquille, City of Coos Bay, and Coos County including their agents, representatives, successors, heirs, executors, administrators, and insurers ("Municipal Defendants"), and the term Municipal Defendants is expressly intended to include each subcategory defined below of "Settling Municipal Defendants", "Dismissed Municipal Defendants" and "Appellant Municipal Defendants";

**WHEREAS,** certain Municipal Defendants, specifically Dannels, McNeely, Reaves, Sanborn, Webley, Zavala, Joel D. Shapiro as administrator of the Estate of David E. Hall, and City of Coquille ("Settling Municipal Defendants"), have reached a settlement with the Plaintiffs of all claims asserted by Plaintiffs against them in the Lawsuits, and the Settling Municipal Defendants expect to be dismissed with prejudice from the Lawsuits shortly;

**WHEREAS,** the Plaintiffs' claims against certain Municipal Defendants, specifically Downing, McInnes, Wetmore, and City of Coos Bay ("Dismissed Municipal Defendants"), have been dismissed by Order of the Court dated June 2, 2025 (Docket Nos. 383 and 272);

**WHEREAS,** certain Municipal Defendants, specifically Oswald, Karcher, Zanni, Schwenninger, and Coos County ("Appellant Municipal Defendants"), have not reached a settlement with the Plaintiffs and have filed appeals in the Ninth Circuit Court of Appeals for further adjudication;

**WHEREAS** the Parties wish to release each other from any claims for contribution or indemnity arising out of or related to the Incident;

**NOW, THEREFORE**, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the sufficiency of which is hereby acknowledged by the Parties, intending to be legally bound, the Parties agree as follows:

## TERMS AND CONDITIONS

### Section 1: Mutual Releases and Agreement to Dismiss Cross Claims

(a)      The Parties hereby mutually release, acquit, and forever discharge each other from any and all past, present and future claims, causes of action, or demands (including any previously filed or claimed), whether legal, equitable, or otherwise, which they now have

or which may hereafter accrue for contribution and/or indemnity arising out of or related to the Incident and which were or could have been alleged in the Lawsuits.

(b)      The Parties mutually release, acquit, and forever discharge each other from any and all past, present and future claims, causes of action, or demands (including any previously filed or claimed), whether based on tort, contract, constitutional principles, personal injury, common law, statute, or any other theory of recovery, whether legal, equitable, or otherwise, which they now have or which may hereafter accrue, arising out of the Incident and which were or could have been alleged in the Lawsuits.

(c)      The releases set forth in this section should be interpreted broadly. The releases set forth in this section include any claims arising from the negotiation or execution of this Agreement.

(d)      Vidocq and Walter further agree to dismiss with prejudice all cross-claims against the Parties to this Agreement for contribution and indemnity which they have asserted in the Lawsuits against each other and against the State Defendants.

(e)      The Parties acknowledge and agree that they are solely responsible for paying any attorney fees and costs they incurred and that neither the Parties nor their attorneys will seek any award of attorney fees or costs from the other Parties to this Agreement.

(f)      The Parties agree that if, after this Agreement becomes effective, they discover evidence different from or in addition to the evidence that they now know of or possess, this Agreement remains in full force and effect.

(g)      The Parties' obligations arising under this Agreement are contingent upon the Court's entry of Judgments of Dismissal with Prejudice of claims asserted by Plaintiffs in the Lawsuits as contemplated by the respective settlement agreements entered into by and between: (1) Plaintiffs and Vidocq and Walter; and (2) Plaintiffs and State Defendants. Entry by the Court of each of the aforementioned Judgments of Dismissal with Prejudice is a condition precedent to this Agreement. In the event any said Judgments of Dismissal are not entered, this Agreement is void and unenforceable.

(h) As further consideration, in exchange for these mutual promises, the Parties covenant and agree to not sue or bring any action of any kind for contribution, indemnity, or otherwise, which they have or may have against the other Parties arising out of or related to the Incident.

**Section 2: Binding on Successors**. The releases, terms, covenants, conditions, and provisions of the Agreement are binding upon the Parties hereto and their respective employees, agents, successors, executors, administrators, trustees, insurers, representatives, heirs, and assigns, without limitation. The Agreement shall inure to the benefit of the Parties hereto, as well as their predecessors, successors, attorneys, insurers, agents, and representatives, if any, without limitation. The Parties represent and acknowledge that they have not transferred or assigned, or

**Notice of Settlement
Exhibit 2 Page 3 of 6**

purported to transfer or assign, to any person or entity, any claim, or any portion of interest of any claim, that was or could have been raised in the Lawsuits.

**Section 3: Protective Order.** The Parties agree that the Stipulated Protective Order entered by the Court in the Lawsuits in this matter on August 2, 2023 (Docket Nos. 69 and 181) shall continue in full force and shall be made part of the Agreement by reference, as if set forth in full.

**Section 4: Non-Admission of Liability.** All Parties understand and agree that the Agreement is a compromise between them and that neither the Agreement nor any action pursuant thereto, is to be construed as an admission of liability, the same having been expressly denied by all the Parties to the Agreement.

**Section 5: Voluntary Agreement.** The Parties represent that they have carefully read the Agreement, that they fully understand its final and binding effect, that the only promises made to them to sign the Agreement are those stated and contained in the Agreement; that they have had an opportunity to discuss the Agreement with their attorneys; and that they are signing the Agreement knowingly and voluntarily. The Parties further declare and represent that no promise, inducement, or agreement not herein expressed has been made to them, that the Agreement contains the entire agreement between the Parties, and that the terms thereof are contractual and not a mere recital. Any rule of law, or any other statute, legal decision, or common law principle of similar effect that would require interpretation of any ambiguity in the Agreement against the party that has drafted it, is of no application here and is hereby expressly waived.

**Section 6: Stipulated Order of Dismissal of Cross-Claims.** The Parties agree to execute a Stipulated Order of Dismissal for those cross-claims asserted by Vidocq and Walter against the State and each other in the Lawsuits, pursuant to FRCP 41(a)(1)(A)(ii) and (c), after the Court's entry of orders of dismissal of Plaintiffs' claims against each of Vidocq and Walter. Vidocq and Walter will authorize and instruct their attorneys of record in the Lawsuits to promptly sign and file, within seven (7) business days after receiving notification from the Court that all Plaintiffs' claims against them are dismissed with prejudice by Order of the Court, the executed stipulated Order of Dismissal for each of the Crossclaims against the Parties to this Agreement with the Court, with each Party to bear their own attorney fees and costs. An appropriate judgment of dismissal of the cross-claims filed by Vidocq and Walter, with prejudice and without award of attorney fees or costs to any party, shall be filed promptly after the entry of each of the judgments contemplated by Section 1(g), above.

**Section 7: Governing Law.** Regardless of where executed, the Agreement shall be deemed to have been made and performed in Oregon. All rights arising under the Agreement, and all disputes and controversies arising from or in connection with the Agreement, shall be governed by and determined in accordance with the internal substantive and remedial laws of the state of Oregon only, and without regard for any choice of laws rules. The Agreement is admissible only for the purpose of establishing in court that an agreement has been reached by the Parties and for the purpose of enforcing and interpreting the Agreement.

**Section 8: Further Assurances.** The Parties hereto will execute the Agreement and will do all things and execute all such further and additional documents as shall be reasonably necessary to carry out the provisions of the Agreement.

**Section 9: Invalidity.**  The Agreement does not waive any right that may not legally be waived.  If any provision of the Agreement be held invalid, illegal, void, or unenforceable in any respect, the invalidation shall be limited to that particular provision only and the remaining provisions shall continue in full force and effect.

**Section 10: No Third Party Beneficiaries**. The Parties hereto expressly intend that this Agreement shall only inure to the benefit of these Parties and shall not provide any third party benefit to other named individuals involved in the Lawsuits, including but not limited to any Municipal Defendant.

**Section 11: Entire Agreement**. The Agreement sets forth the entire agreement and understanding between the Parties.  Any modifications to the Agreement must be in writing and signed by the Parties. The Parties have not relied on any oral statements that are not included in the Agreement. The Agreement supersedes all prior agreements and understandings concerning its subject matter.

**Section 12: Execution in Counterparts**.  The Agreement may be executed in counterparts.  Electronically executed copies are deemed to be the equivalent of physically signed originals.

PLEASE READ CAREFULLY.  THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE OF CLAIMS INCLUDES A RELEASE OF ALL KNOWN OR UNKNOWN CLAIMS.  ALL PARTIES HAVE READ THIS AGREEMENT, UNDERSTAND AND ACCEPT EACH OF ITS TERMS, AND AGREE TO BE FULLY BOUND BY IT.

Signed by:
*Richard Walter*
_____          Dated: 10/6/2025
Richard Walter


_____          Dated:_____
Barbara J. Cohan, designated representative
The Vidocq Society


_____          Dated:_____
Susan Hormann


_____          Dated:_____
Mary Krings

_____     Dated:_____
John Riddle


_____     Dated:_____
Kathy Wilcox


_____     Dated:_____
Andy Heider, Major, Oregon State Police
Designated representative of the Oregon State Police